UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| SCOTT TRAUDT,<br>　　　　　　Plaintiff,<br><br>　　　　v.<br><br>ARI RUBINSTEIN,<br>GTS SECURITIES LLC,<br>GTS EQUITY PARTNERS LLC,<br>GTS EXECUTION SERVICES LLC,<br>CHARLES W. SCHWAB AND CO. INC.,<br>SCHWAB HOLDINGS, INC.,<br>FINANCIAL INDUSTRY REGULATORY<br>AUTHORITY,<br>　　　　　　Defendants,<br><br>GARY GENSLER,<br>US SECURITIES AND EXCHANGE<br>COMMISSION,<br>　　　　　　Respondent | Case No. 2:24-cv-782 |

**MOTION TO STAY IN FAVOR OF ARBITRATION AS TO DEFENDANTS
<u>CHARLES SCHWAB & CO., INC. AND SCHWAB HOLDINGS, INC.</u>**

　　Defendant Charles Schwab & Co., Inc. ("CS&Co.") and its parent, Defendant Schwab Holdings, Inc. ("CSH," and together with CS&Co., "Schwab") respectfully request that the Court (1) compel Plaintiff to pursue any claims against Schwab in arbitration and (2) stay all proceedings relating to Schwab until after the conclusion of any arbitration.[1]  Plaintiff agreed on at least two occasions to arbitrate any dispute

---

[1] Schwab is not filing this motion pursuant to Rule 12 of the Federal Rules of Civil Procedure, as a motion to compel arbitration is not properly considered a Rule 12 motion. *See, e.g.*, *Brickstructures, Inc. v. Coaster Dynamix, Inc.*, 952 F.3d 887, 890 (7th Cir. 2020) (holding that a motion to compel arbitration is a motion under § 4 of the FAA, not Rule 12); *accord Rodgers-Rouzier v. Am. Queen Steamboat Operating*

he might have with Schwab and/or with Schwab's predecessor, TD Ameritrade. The claims Plaintiff makes here fall squarely within the scope of those arbitration agreements. And, accordingly, the Federal Arbitration Act, 9 U.S.C. § 3, requires the Court to stay this case insofar as it relates to Schwab, and to direct Plaintiff to arbitrate any claims he may wish to bring against Schwab. *See Smith v. Spizzirri*, 601 U.S. 472, 478 (2024) ("Congress's purpose in the FAA [was] 'to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible.'" (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U. S. 1, 22 (1983)).

## I. Facts

CS&Co. is a federally-registered broker-dealer based in Westlake, Texas. *See* Declaration of Maryann Allen ("Allen Decl.") ¶ 3 & Ex. 1 at 1. TD Ameritrade, Inc. was, and TD Ameritrade Clearing, Inc. is (collectively, "TD Ameritrade") a federally-registered broker-dealer based in Omaha, Nebraska. *See* Allen Decl. ¶ 3 & Ex. 1 at 1. CSH is an intermediate holding company that is the parent of CS&Co. and TD Ameritrade and a subsidiary of their ultimate publicly-traded parent, The Charles Schwab Corporation ("CSC"). *See* Allen Decl. ¶ 3 & Ex. 1 at 1.

---

*Co.*, 104 F.4th 978, 984 (7th Cir. 2024) (holding that a motion to compel arbitration is not governed by Rule 12). A contrary understanding could not be reconciled with the Supreme Court's recent decision in *Smith v. Spizzirri*, 601 U.S. 472 (2024), which held that "when a federal court finds that a dispute is subject to arbitration, . . . the court does not have discretion to dismiss the suit on the basis that all the claims are subject to arbitration," but must stay the litigation pending arbitration. *Id.* at 475–76.

On July 26, 2020, Scott Traudt, the *pro se* Plaintiff, applied to open a TD Ameritrade account.  *See* Allen Decl. ¶ 5 & Ex. 3.  In applying to open that account, Plaintiff executed an account application that stated in bold, conspicuous lettering just above his signature,

> The Client Agreement applicable to this brokerage account contains a predispute arbitration clause.  By signing this agreement, the parties agree to be bound by the terms of the Client Agreement, including the arbitration agreement located in Section 12 of the Client Agreement on page 8.

*See id.* at 3 (bolded text omitted).  Section 12 of the Client Agreement, entitled "Arbitration," reads, in part, as follows:

> I agree that any controversy between you and your affiliates, any of their respective officers, directors, employees, or agents and me (including any of my officers, directors, employees, or agents) arising out of or relating to this Agreement, our relationship, any Services provided by you, or the use of the Services, and whether arising before or after the date of this Agreement, shall be arbitrated and conducted under the provisions of the Code of Arbitration of [] FINRA.

*See* Allen Decl. ¶ 6 & Ex. 4 at 8 (bolded text omitted).  At the time Plaintiff opened his TD Ameritrade account, CS&Co. had announced plans to acquire TD Ameritrade.  *See* Allen Decl. ¶ 4 & Ex. 2 at 1.  That corporate transaction became effective on October 6, 2020.  *See* Allen Decl. ¶ 3 & Ex. 1 at 2.

Plaintiff bases his claims against Schwab on securities transactions alleged to have occurred on or around November 30, 2022, when Plaintiff used his TD Ameritrade brokerage account to purchase securities issued by a company called Meta Materials.  *See* Compl. ¶¶ 4, 199, 244.

TD Ameritrade notified Plaintiff on September 14, 2023, by email, that his brokerage account would be automatically converted into a Schwab brokerage

account on November 6, 2023 unless he chose to opt out. *See* Allen Decl. ¶ 7 & Ex. 5 at 3. The email stated that "[b]y not opting out and by having your account transferred to Schwab, you agree to the terms and conditions in the applicable Schwab Account Agreement" and provided a link to the Schwab Account Agreement. *See id.* at 4. The applicable Schwab Account Agreement was the Schwab One Account Agreement ("Schwab Agreement"), which included an arbitration clause set apart from the rest of the document by its bolded text. *See* Allen Decl. ¶ 8 & Ex. 6 at 38-39. Specifically, the Schwab Agreement provided:

> **Arbitration Agreement.** Any controversy or claim arising out of or relating to (i) this Agreement, any other agreement with Schwab, an instruction or authorization provided to Schwab or the breach of any such agreements, instructions, or authorizations; (ii) the Account, any other Schwab account or Services; (iii) transactions in the Account or any other Schwab account; (iv) or in any way arising from the relationship with Schwab, its parent, subsidiaries, affiliates, officers, directors, employees, agents or service providers ("Related Third Parties"), including any controversy over the arbitrability of a dispute, will be settled by arbitration.
>
> This arbitration agreement will be binding upon and inure to the benefit of the parties hereto and their respective representatives, attorneys-in-fact, heirs, successors, assigns and any other persons having or claiming to have a legal or beneficial interest in the Account, including court-appointed trustees and receivers. This arbitration agreement will also inure to the benefit of third-party service providers that assist Schwab in providing Services ("Third-Party Service Providers") and such Third-Party Service Providers are deemed to be third-party beneficiaries of this arbitration agreement.
>
> The parties agree that this arbitration agreement will apply even if the application to open the Account is denied and will survive the closure of your Account and/or the termination of services rendered under this Agreement.
>
> Such arbitration will be conducted by, and according to the securities arbitration rules and regulations then in effect of, the Financial Industry Regulatory Authority (FINRA) or any national securities

exchange that provides a forum for the arbitration of disputes, provided that Schwab is a member of such national securities exchange at the time the arbitration is initiated. Any party may initiate arbitration by filing a written claim with FINRA or such eligible national securities exchange. If arbitration before FINRA or an eligible national securities exchange is unavailable or impossible for any reason, then such arbitration will be conducted by, and according to the rules and regulations then in effect of, the American Arbitration Association (AAA). If arbitration before the AAA is unavailable or impossible for any reason, the parties agree to have a court of competent jurisdiction appoint three (3) arbitrators to resolve any and all disputes or controversies between or among the parties. Each party shall bear its own initial arbitration costs, which are determined by the rules and regulations of the arbitration forum. In the event of financial hardship, the arbitration forum may waive certain costs in accordance with such rules. At the conclusion of the hearing, the arbitrators will decide how to assess the costs of the arbitration among the parties.

Any award the arbitrator makes shall be final and binding, and judgment on it may be entered in any court having jurisdiction. This arbitration agreement shall be enforced and interpreted exclusively in accordance with applicable federal laws of the United States, including the Federal Arbitration Act. . . .

*Id.* (bold text eliminated).

Plaintiff did not elect to opt out.  Consequently, his TD Ameritrade account was automatically converted into a Schwab brokerage account subject to the terms of the Schwab Agreement.  *See* Allen Decl. ¶ 7.

## II.   Plaintiff Agreed to Arbitrate this Dispute.

Both through his TD Ameritrade Client Agreement and through his Schwab Agreement, Plaintiff agreed to arbitrate "any controversy" regarding any part of his "relationship" with TD Ameritrade or Schwab.  In addition, both agreements are

5

effective as to "affiliates," and the TD Ameritrade Client Agreement inures to the benefit of any of TD Ameritrade's successors. *See* Allen Decl. Ex. 4 at 1.

All of Plaintiff's claims against Schwab are controversies emerging from Plaintiff's relationship with TD Ameritrade and/or Schwab. Specifically, Plaintiff asserts four claims against Schwab: (1) violation of 15 U.S.C. §78(j)(b) and related state law (securities fraud)[2]; (2) violation of 18 U.S.C. § 1962(c) (RICO)[3]; (3) violation of 18 U.S.C. § 1962(a) (RICO)[4]; and (4) violation of 10 U.S.C. § 1030(g) (computer fraud).[5] Per Plaintiff's own acknowledgement, each of these claims stems from Plaintiff's November 2022 transactions in his brokerage account. *See* Compl. ¶¶ 206, 208, 233, 241, 244, 251. The Arbitration Agreements plainly cover these claims. Courts interpret the phrase "arising out of or relating to" broadly as encompassing all disputes (including related tort claims) between the contracting parties. *See, e.g.*, *Vt. Pure Holdings, Ltd. v. Descartes Sys. Grp., Inc.*, 140 F. Supp. 2d 331, 335 (D. Vt. 2001) (finding clause making arbitrable "any dispute or controversy . . . arising out of or relating to" the contract as the "paradigm of a broad arbitration clause"). Plaintiff's claims against Schwab are based on Plaintiff's relationship with TD Ameritrade and Schwab and are thus squarely covered by the Schwab Agreement.

Furthermore, the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"), mandates that "any doubts concerning the scope of arbitrable issues should be resolved in favor

---

[2] *See* Count II, Compl. ¶ 198, Count IX, Compl. ¶ 244, and Count X, Compl. ¶ 251.
[3] *See* Count III, Compl. ¶ 207.
[4] *See* Count VI, Compl. ¶ 232.
[5] *See* Count VIII, Compl. ¶ 242.

6

of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983); *see also AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (a dispute must be arbitrated unless there is a "positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.").

### III.   The FAA Applies to Plaintiff's Claims Against Schwab.

The Supreme Court has squarely held that the FAA applies to claims brought under the federal securities laws, *see Rodriguez de Quijas v. Shearson/Am. Exp. Inc.*, 490 U.S. 477, 485 (1989), and to claims brought under RICO, *see Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 238 (1987) ("[T]here is nothing in the text of the RICO statute that even arguably evinces congressional intent to exclude civil RICO claims from the dictates of the Arbitration Act."). Indeed, the arbitrability of claims arising from brokerage relationships has been settled law for least three decades. *See, e.g.*, *Olde Discount Corp. v. Tupman*, 1 F.3d 202, 208 (3d Cir. 1993) ("[T]he arbitration of securities disputes now is not only permitted, but favored, under federal law, according to the line of decisions culminating in *McMahon* and *Rodriguez de Quijas*."). Courts around the country routinely enforce agreements to refer all disputes to FINRA arbitration. *See, e.g.*, *Hofman v. Fid. Brokerage Servs., LLC*, No. 223CV00881MCSPVC, 2023 WL 3872564, at *4 (C.D. Cal. May 8, 2023); *Lang v. Barclays Servs. Corp.*, No. 17 CIV. 8094 (PGG), 2019 WL 13368588 at *8 (S.D.N.Y. Mar. 19, 2019); *Braintree Lab'ys, Inc. v. Citigroup Glob. Markets, Inc.*, 671 F. Supp. 2d 202, 210 (D. Mass. 2009), *aff'd in part, appeal dismissed in part*, 622 F.3d 36 (1st

Cir. 2010); *see also Bezio v. Draeger*, 737 F.3d 819, 825 (1st Cir. 2013); *Lanza v. Fin. Indus. Regul. Auth.*, 333 F. Supp. 3d 11, 17 (D. Mass. 2018).

### IV.     The FAA Requires Enforcement of the Arbitration Agreements.

Under the FAA, a written agreement to submit disputes to arbitration "'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (quoting 9 U.S.C. § 2); *see also Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) ("Courts must 'rigorously enforce' arbitration agreements according to their terms . . ."); *Daly v. Citigroup Inc.*, 939 F.3d 415, 421 (2d Cir. 2019) ("[B]y its terms the FAA leaves no place for the exercise of discretion by the district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.") (emphasis in original); *see also Knaresborough Enters., LTD v. Dizazzo*, 2021 VT 1, ¶ 11, 214 Vt. 32, 251 A.3d 950 ("Vermont law and public policy favor arbitration as an alternative to litigation for resolving disputes."). Under Section 4 of the FAA, where an arbitration agreement applies, "the court shall make an order summarily directing the parties to proceed with the arbitration in accordance with the terms" of their agreement. 9 U.S.C. § 4.

Similarly, Section 3 of the FAA, 9 U.S.C. § 3, requires the Court to stay all judicial proceedings in this case—insofar as they involve Schwab—until an arbitration is complete. *See Smith*, 601 U.S. at 476 ("Here, as in other contexts, the use of the word 'shall' creates an obligation impervious to judicial discretion. That plain statutory text

8

requires a court to stay the proceeding." (internal citation and quotation marks omitted)).

## VI. Conclusion

Schwab respectfully requests that the Court stay all proceedings insofar as they relate to Schwab, in favor of arbitration.

DATED at Burlington, Vermont, this 14th day of August 2024.

By: */s/ Justin B. Barnard*
Justin B. Barnard, Esq.
Anne B. Rosenblum, Esq.
**DINSE**
209 Battery Street
Burlington, VT  05401
802-864-5751
jbarnard@dinse.com
arosenblum@dinse.com

Jeff Goldman, Esq. (admitted *pro hac vice*)
Felipe Escobedo, Esq. (admitted *pro hac vice*)
**MORGAN, LEWIS & BOCKIUS LLP**
One Federal Street
Boston, MA 02110
Tel: (617) 341-7700
jeff.goldman@morganlewis.com
felipe.escobedo@morganlewis.com

*Counsel for Charles Schwab & Co., Inc. and Schwab Holdings, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 14, 2024, the foregoing **Motion to Stay In Favor of Arbitration as to Defendants Charles Schwab & Co., Inc. and Schwab Holdings, Inc.** and the accompanying **Declaration of Maryann Allen in support of Motion to Stay In Favor of Arbitration as to Defendants Charles Schwab & Co., Inc. and Schwab Holdings, Inc. with Exhibits 1-6** are being filed through the CM/ECF system and that a copy of the same will be sent electronically to all registered participants. A paper copy of the above-referenced documents will also be sent to the Plaintiff at the following address:

Scott Traudt
191 Kibling Hill Road
Strafford, VT 05072

 */s/ Jeff Goldman*
Jeff Goldman
One Federal Street
Boston, MA 02110
Tel: (617) 341-7700
jeff.goldman@morganlewis.com