UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

|  |  |
|---|---|
| SCOTT TRAUDT,<br><br>            Plaintiff,<br><br>    v.<br><br>ARI RUBENSTEIN, GTS SECURITIES LLC, GTS EQUITY PARTNERS LLC, GTS EXECUTION SERVICES LLC, CHARLES W. SCHWAB AND CO. INC., SCHWAB HOLDINGS, INC., and FINANCIAL INDUSTRY REGULATORY AUTHORITY,<br><br>            Defendants,<br><br>    and<br><br>GARY GENSLER, US SECURITIES AND EXCHANGE COMMISSION,<br><br>            Respondents. | Docket No.: 2:24-cv-782<br><br>Judge Christina Reiss |

### THE GTS DEFENDANTS' MOTION TO DISMISS
### THE FIRST AMENDED COMPLAINT

Defendants Ari Rubenstein,[1] GTS Securities LLC ("GTS Securities"), GTS Equity Partners LLC ("GTS Equity"), and GTS Execution Services LLC (individually, "GTS Execution," and collectively, the "GTS Defendants") respectfully move this Court for an Order dismissing Plaintiff's three claims against them with prejudice. Those claims are (i) a civil RICO claim against GTS Securities (Count IV), (ii) a civil RICO claim against Mr. Rubenstein (Count V), and (iii) a claim against GTS Securities for alleged violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(g) (the "CFAA") (Count VII).

---

[1] Plaintiff misspelled Mr. Rubenstein's name in his pleading and the caption thereto as "Rubinstein." We respectfully request that the case caption be amended accordingly.

1

As set forth below, Plaintiff does not and cannot state a civil RICO claim or CFAA claim, so each of those claims must be dismissed with prejudice under Federal Rule of Civil Procedure 12(b)(6). *See infra* Sections I(A)–(B)(2), II. In any event, Plaintiff fails to plead his claims with the requisite particularity under Federal Rule of Civil Procedure 9(b). *See infra* Sections I(B)(3), II. Further, Defendants GTS Equity and GTS Execution must be stricken from the case, as Plaintiff does not allege any conduct by them or claim against them. *See infra* Section III. Lastly, the Court may dismiss Plaintiff's claims against Mr. Rubenstein under Federal Rule of Civil Procedure 12(b)(5) because Plaintiff has failed to properly serve him. *See infra* Section IV.

## PLAINTIFF'S RELEVANT FACTUAL ALLEGATIONS

Plaintiff filed his initial Complaint in this action on July 17, 2024, naming the GTS Defendants, as well as (i) Charles W. Schwab & Co., Inc. and Schwab Holdings, Inc. (the "Schwab Defendants") and (ii) the Financial Industry Regulatory Authority ("FINRA"), as Defendants. Further, Plaintiff identified the Securities & Exchange Commission (the "SEC") and its Chairman, Gary Gensler, as Respondents in a mandamus action. *See* Dkt. No. 1. The Amended Complaint contains the same claims and adds various securities claims against the Schwab Defendants under federal and state law. *See* Dkt. No. 4.[2]

At bottom, Plaintiff takes issue with the stock trading history of "MMTLP," a series of non-voting preferred shares of Meta Materials Inc.[3] *See* Am. Compl. at 2 ¶ 4. Plaintiff asserts that MMTLP, when it began trading in October 2021, "immediately became violently shorted as it started to trade." *Id.* at 8 ¶ 32. Notwithstanding this history, more than a year later, Plaintiff

---

[2] Citations to the Amended Complaint are in the following form: Am. Compl. at _ ¶ _.

[3] The GTS Defendants dispute many of Plaintiff's factual allegations (many of which are outright false), but take all of his well-pleaded factual allegations as true solely for the purposes of this Motion. *See MLSMK Inv. Co v. JP Morgan Chase & Co.*, 651 F.3d 268, 269–70 (2d Cir. 2011).

"purchased 305 shares of MMTLP at $9.62 a share on 30 November 2022 from [the Schwab Defendants' predecessor, TD Ameritrade] for a total of $2,934.65." *See id.* at 10 ¶ 43.

Plaintiff then alleges that FINRA issued "intentionally erroneous" notices as trading of MMTLP was winding up days later, in early December 2022. *See id.* at 11–12 ¶¶ 48–54; *see also id.* at 16 n.8 (alleged "regulatory insanity"). According to Plaintiff, as a result of these notices, stakeholders, including GTS Securities and Rubenstein, "systematically destroy[ed] MMTLP's share price with a 'short attack' wherein [they] . . . , flooded the trading with counterfeit shares and used the weaponized-against []retail-investors high-frequency trading systems . . . to utterly eviscerate the possibility of a 'short squeeze' in MMTLP." *See id.* at 11–12 ¶ 54. Namely, according to Plaintiff, Rubenstein and GTS Securities were selling MMTLP shares, without "locat[ing] such . . . share[s]" then existing in the marketplace. *See id.* at 19 ¶ 95. As a result of this and other alleged conduct, MMTLP was allegedly oversold by "*at least* 50 times" the number of its existing shares, *id.* at 15 ¶ 71, through so-called "naked short" positions. *See id.* at 6 ¶ 26. Trading of MMTLP halted on December 9, 2022, pursuant to a FINRA-imposed "U3 halt," without short sellers having to cover their short positions. *See id.* at 11–12 ¶ 54, 28–29 ¶ 154.

These circumstances allegedly frustrated Plaintiff's attempt to effectuate a "short squeeze" similar to that effectuated by retail investors with respect to GameStop around January 2021. *See id.* at 21 n.13 (defining "short squeeze" as "when people who have 'borrowed' a security hoping it will then lose value . . . get caught with their pants down as a security instead gains value"). A short squeeze strategy could have allowed Plaintiff to sell his MMTLP shares at a premium when others, such as allegedly GTS Securities, were forced to cover their short positions. *See id.* at 21 ¶ 109.

3

However, even in Plaintiff's telling, Mr. Rubenstein's and GTS Securities's alleged conduct was lawful. As Plaintiff puts it, "GTS [Securities] sold naked shorts 'legally' using the market maker exception in MMTLP." *See id.* at 8 ¶ 34. In particular, Plaintiff alleges that GTS Securities uses the "market maker exemption whereby a major market maker can create shares out of thin air with the stroke of a keyboard button and introduce them to the market or sell them off." *Id.* at 18 ¶ 94 (quotation marks omitted). This exemption "allows a market maker—in this case, GTS [Securities]—to short [sell] a stock without even having to 'locate' such a share; on the barest of promises a market maker can naked short a stock." *Id.* at 19 ¶ 95.

## **ARGUMENT**

Plaintiff's MMTLP Complaint does not have a blank backdrop.[4] Several disgruntled MMTLP shareholders have brought various iterations of this lawsuit, and all of them have been met with rejection of their claims. The GTS Defendants (excluding Rubenstein) were previously sued in the U.S. District Court for the Western District of Washington under RICO and various criminal statutes for alleged MMTLP conduct, and the Court found that the plaintiff in that case "fail[ed] to state a claim." *See* Ord. Granting Defs.' Mots. to Dismiss and to Compel Arb. at 8:3–8:13, Civ. No. 23-5159 (W.D. Wash. Oct. 2, 2023), Dkt. No. 39. Other cases underscore the point. *See, e.g.*, *Park v. FINRA*, Civ. No. 23-69, 2023 U.S. Dist. LEXIS 238130, at *18 (N.D. Ga. Sept.

---

[4] This action is just the latest in a long line of baseless litigation brought by Plaintiff. In 2004, he filed a civil RICO action against an automobile repair outfit arising from issues with Plaintiff's truck, i.e. its "defective suspension system, electrical system, brake system, and fuel system. And the radio doesn't work either." *See* First Am. Compl. at 1 ¶ 1, *Traudt v. DaimlerChrysler Motors Co.*, Civ. No. 04-53 (D. Vt. June 30, 2004), Dkt. No. 3. Such RICO allegations were quickly stricken in a summary order as "conclusory." Undeterred, Plaintiff then pled RICO and Section 1983 claims against a police department and police officers that arrested him in a subsequent, unrelated incident. *See Traudt v. Roberts*, Civ. No. 10-12, 2013 U.S. Dist. LEXIS 98363, at *20–21 (D.N.H. July 15, 2013). These claims ran into the *Heck* bar and even ignoring that, Traudt failed to come up with any evidence supporting them. *See id.* at 49–53 (referencing *Heck v. Humphrey*, 512 U.S. 477 (1994)).

25, 2023) (dismissing claims against FINRA on immunity grounds); *Hofman v. Fidelity Brokerage Servs., LLC*, Civ. No. 23-881, 2023 U.S. Dist. LEXIS 81166 (C.D. Cal. May 8, 2023) (similar; as to FINRA and DTCC), *app. dismissed*, Case No. 23-55494, 2023 U.S. App. LEXIS 32425 (9th Cir. Oct. 27, 2023); *Khorassani v. FINRA*, Index. No. 153819/2023, 2023 N.Y. Misc. LEXIS 2980, at *4, 8–9 (N.Y. Sup. Ct. June 15, 2023) (denying pre-suit discovery where plaintiff alleged "illegal trading of MMTLP shares," and stating that "[p]etitioner asserts that during the Relevant Period, . . . a significant percentage of the trading volume . . . were short sales" (quotation marks omitted)), *aff'd*, 202 N.Y.S.3d 124 (N.Y. App. Div. 1st Dept. 2024).

As set forth below, Plaintiff's claims here are no better and should be dismissed.

### I.     Plaintiff's Civil RICO Claims Must Fail (Counts IV and V)

#### A.     There Is No Civil RICO Claim for Allegedly Fraudulent Securities Conduct

Plaintiff's civil RICO claims against Mr. Rubenstein and GTS Securities must fail. Indeed, the Private Securities Litigation Reform Act of 1995 amended RICO to eliminate any RICO action for securities-related conduct. In particular, "no [plaintiff] may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities" to state a RICO claim. *See* 18 U.S.C. § 1964(c) (the "RICO Bar"). This Bar exists "even where a plaintiff cannot itself pursue a securities fraud action against the defendant." *See MLSMK*, 651 F.3d at 269, 277 (affirming dismissal of civil RICO claim brought against trading partner of Bernard Madoff's "apparently legitimate market-making business"); *see also Lerner v. Colman*, 26 F.4th 71, 78–79 (1st Cir. 2022); *Dusek v. JP Morgan Chase & Co.*, 832 F.3d 1243, 1249 (11th Cir. 2016) (applying bar where "claims of mail and wire fraud are clearly based upon the fraudulent conduct of Madoff and BLMIS relating to securities investments"); *Howard v. Am. Online, Inc.*, 208 F.3d 741, 749–50 (9th Cir. 2000) (holding that RICO Bar applied even where plaintiffs lacked standing to bring securities fraud claims against defendant).

Here, Plaintiff readily concedes that his allegations may be cognizable under the rubric of securities fraud. In fact, Plaintiff alleges "multiple instances of Securities Fraud" or securities conduct against FINRA and other Defendants. *See* Am. Compl. at 34 ¶ 187 (citing 15 U.S.C. § 78j(b) and Rule 10b-5); *id.* ¶ 189 (alleged "facilitat[ion] [of] insider trading"); *id.* at 35 ¶ 193 (alleged "insider trading cartel where the predicate acts were largely enabled by GTS [Securities] and Rubenstein"); *id.* at 36 ¶ 198; *id.* at 37 ¶ 200. Plaintiff's allegations against GTS Securities and Rubenstein similarly focus on alleged securities-related conduct. *E.g.*, *id.* at 40–41 ¶ 215 ("GTS [Securities] relies almost 100% on computerized systems to create fraud, run high-frequency predatory trading systems, and create naked synthetic shares, aided and abetted by co-defendant FINRA . . . ."); *id.* at 41 ¶ 216 ("GTS [Securities] transmitted false and misleading information via interstate wire communications to include naked synthetic shares and counterfeit shares for long positions to be resold by the myriad broker-dealers in the MMTLP trading environment, . . . ."); *id.* at 43–44 ¶¶ 223–24 (similar allegations as to Rubenstein). And, for good measure, Plaintiff adds that "GTS [Securities] committed numerous . . . violations of the . . . Securities Exchange Act." *See id.* at 41 ¶ 218.

Nor can Plaintiff circumvent the RICO Bar through other predicates. At times, Plaintiff accuses GTS Securities and Rubenstein of "aiding and abetting" securities conduct. *E.g.*, *id.* at 39 ¶ 210 ("[G]TS and Rubinstein [sic] provid[ed] the computerized, internet-enabled cyber-architecture to supply counterfeit shares of MMTLP for Schwab to 'oversell' their allotment from DTCC."). However, "it is clear" that in enacting the RICO Bar, "[C]ongress was aware that [it] would place some claims—such as those for aiding and abetting securities laws violations—outside the reach of private civil RICO suits." *See MLSMK*, 651 F.3d at 279. This same principle

applies where, as here, Plaintiff drapes securities allegations with allegations of mail or wire fraud. *See id.* at 274 n.9 (collecting cases).

The RICO Bar is specifically intended to prevent the very type of RICO claims that Plaintiff has brought here, including those based upon alleged wire fraud. Indeed, its intent "is to strike artful pleadings that attempt to mask any actionable securities fraud claim as wire or mail fraud." *See Zohar CDO 2003-1, Ltd. v. Patriarch Partners, LLC*, 286 F. Supp. 3d 634, 650 (S.D.N.Y. 2017); *see also MLSMK*, 651 F.3d at 274 ("[T]he purpose of the [RICO] [B]ar was to prevent litigants from using artful pleading to boot-strap securities fraud cases into RICO cases, with their threat of treble damages." (quotation marks omitted)). Here, Plaintiff cloaks his predicate allegations of wire fraud with securities allegations. *See* Am. Compl. at 40–41 ¶¶ 215–216 (alleging wire fraud as predicate for civil RICO claim against GTS Securities, alleging false transmission of information and data, including alleged "synthetic . . . and counterfeit shares"); *id.* at 43–44 ¶¶ 223–24 (same as to Rubenstein). Likewise, Plaintiff's alleged CFAA violations target the same alleged securities-related conduct. *E.g.*, *id.* at 42 ¶ 217 ("GTS [Securities] engaged in illegal algorithmic predatory trading and created synthetic shares, . . . and depressed to zero . . . the value of Traudt's holdings in MMTLP.").

**B.**     **Plaintiff Fails to Adequately Plead His Civil RICO Claims**

**1.**     **Plaintiff Cannot and Does Not Plead Continuity, as Required**

Plaintiff's RICO claims independently fail because he cannot adequately allege a sufficient "pattern of racketeering activity" to establish a claim under 18 U.S.C. § 1962. In order to do so, he must show that the predicate RICO acts are "related, *and* that they amount to or pose a threat of continued criminal activity." *See Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir. 1999) (quotation marks omitted). To do so, he must show either "closed-ended continuity" or "open-ended continuity." *See id.* He cannot show the former, which requires a

7

pattern of RICO conduct over more than two years. *See id.*; *see also, e.g.*, *Minedmap, Inc. v. Northway*, Case No. 21-1480, 2022 U.S. App. LEXIS 5098, at *3–4 (2d Cir. Feb. 25, 2022) (summary ord.). The Second Circuit has "never held a period of less than two years to constitute a substantial period of time" for these purposes. *See Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 184 (2d Cir. 2008) (quotation marks omitted) ("This sixteen-month period of time is insufficient to establish closed-ended continuity . . . ."). Here, however, the alleged conduct occurred during a period far shorter than two years, as MMTLP traded for only 14 months. *See* Am. Compl. at 7 ¶ 30 ("MMTLP began trading on the OTC market on 6 October, 2021."); *id.* at 11 ¶ 54 (trading halted on December 9, 2022).

Plaintiff also cannot show open-ended continuity, which requires "a threat of continuing criminal activity beyond the period during which the predicate acts were performed." *See Cofacredit*, 187 F.3d at 242. Rather, Plaintiff readily (and repeatedly) admits that MMTLP trading remains halted, with no allegation that it is set to resume, absent the mandamus relief that Plaintiff seeks against the SEC, namely to force trading to resume. This halt, implemented well over a year ago, confirms that no current or future threat exists. *See El Omari v. Buchanan*, Civ. No. 20-2601, 2021 U.S. Dist. LEXIS 236933, at *20 (S.D.N.Y. Dec. 10, 2021) ("The last FARA disclosure, occurred approximately one year before El Omari'[s] original Complaint was filed, which does not establish a current or future threat."), *aff'd*, Case No. 22-55, 2022 U.S. App. LEXIS 26799 (2d Cir. Sept. 26, 2022) (summary ord.). In other words, there is no threat of future, supposed criminality, given the discrete nature of the alleged scheme, *e.g.*, *Minedmap*, 2022 U.S. App. LEXIS 5098, at *4–5, which focused on MMTLP. *E.g.*, Am. Compl. at 35–36 ¶¶ 194–95. As the Second Circuit has repeatedly put it, "[i]t defies logic to suggest that a threat of continued looting

8

activity exists when, as plaintiff admits, there is nothing left to loot." *See, e.g.*, *GICC Capital Corp. v. Tech. Fin. Grp., Inc.*, 67 F.3d 463, 466 (2d Cir. 1995).

### 2. Plaintiff's CFAA Allegations Cannot Serve as a Predicate for a Civil RICO Claim

Even if Plaintiff's allegations survive the RICO Bar, Plaintiff is nonetheless barred from using CFAA conduct as a predicate act for his RICO claims against Rubenstein and GTS Securities. Indeed, CFAA conduct, i.e. under 18 U.S.C. § 1030, is not "racketeering activity" within the meaning of RICO, 18 U.S.C. §§ 1961(1), (5), and thus, cannot serve as a predicate for a RICO claim under 18 U.S.C. § 1962. *E.g.*, *Rickett v. Smith*, Civ. No. 14-40, 2015 U.S. Dist. LEXIS 72959, at *15 (W.D. Ky. June 5, 2015) ("Neither the CFAA nor the securities fraud may serve as predicate acts.").

And without a CFAA predicate, let alone two predicates, as required, Plaintiff has failed to plead a "pattern of racketeering activity," 18 U.S.C. § 1961(5), to sustain a civil RICO claim. *See id.* § 1962.

### 3. Plaintiff's RICO Claims Are Not Stated with Particularity under Rule 9(b)

Plaintiff's RICO claims must independently fail because he has failed to plead them with particularity. *See Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 119 (2d Cir. 2013). "When the predicate acts of a civil RICO claim are grounded in fraud, the concerns associated with pleading fraud with particularity take on an even greater importance than usual." *See de La Roche v. Calcagnini*, Civ. No. 95-6322, 1997 U.S. Dist. LEXIS 7664, at *19 (S.D.N.Y. June 3, 1997). In other words, the plaintiff must give particulars as to the respect in which plaintiff contends the conduct was fraudulent, state when and where the conduct occurred, identify those responsible, *see Lundy*, 711 F.3d at 119, and if a plaintiff relies on an alleged scheme's continuing nature, how it would continue. *Minedmap*, 2022 U.S. App. LEXIS 5098, at *6. Here, Plaintiff

fails at the threshold, for he admits that any alleged conduct by Rubenstein or GTS Securities was lawful, pursuant to the market maker exemption and related securities rules and exemptions. *See* Am. Compl. at 18–19 ¶¶ 94–95.

Put simply, Plaintiff's claims against Rubenstein and GTS Securities leave much to the imagination and fall woefully short of Rule 9(b)'s strictures. They invoke "numerous acts" of supposed mail fraud, *e.g.*, Am. Compl. at 41 ¶ 220, but say nothing about "the contents of the communications" or when or where they occurred. *See Spool*, 520 F.3d at 185. And Plaintiff does not identify any GTS Defendant as having marketed MMTLP shares to Plaintiff, making any representations to Plaintiff (false or otherwise), or otherwise inducing Plaintiff to invest. Elsewhere, Plaintiff traffics in conspiracy theories, invoking unpled and unidentified circumstantial evidence "point[ing] to Rubenstein having discussions with Schwab executive Michael Dunn in June, 2021." *See id.* at 5 n.1; *see also id.* at 6 ¶ 28 ("Circumstantial evidence suggests that Ari Rubenstein conspired with Michael Dunn at Schwab . . . ."). This Court need not "draw reasonable inferences" in Plaintiff's favor where the alleged scheme "[l]ack[s] . . . rationality," *see First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 180 (2d Cir. 2004), as where a plaintiff alleges that regulators and regulated entities are in cahoots.

## II. Plaintiff's CFAA Claim Against GTS Securities Also Fails (Count VII)

Plaintiff's CFAA claim is also substantially deficient in numerous respects. First, Plaintiff's damages are insufficient to state a CFAA claim in his own individual capacity. As to such claim, he must allege a loss of "at least $5,000 in value" 28 U.S.C. § 1030(c)(4)(A)(i)(I), limited to "economic damages." *See id.* § 1030(g).[5] This, Plaintiff does not do. In fact, Plaintiff,

---

[5] Plaintiff does not invoke other possible bases for a CFAA claim, namely (i) an adverse effect on medical care, (ii) physical injury, (iii) a threat to public health or safety, or (iv) damage to a

at most, alleges losses far below $5,000 to himself. *See* Am. Compl. at 22 ¶ 113 (loss of "the inherent value of Traudt's original [$2,934.95] investment"). These allegations fall short of the statutory threshold. Otherwise, Plaintiff's proffered damages are not "economic damages" or "loss" within the meaning of CFAA. *See infra*.

Plaintiff cannot circumvent this threshold by aggregating his damages with nonparties' damages under CFAA. That is because there is no CFAA cause of action for "damage affecting 10 or more protected computers during any 1-year period." *See* 18 U.S.C. § 1030(c)(4)(a)(i)(VI); *id.* § 1030(g) (not establishing cause of action under such section); *see, e.g., GateGuard, Inc. v. Amazon.com Inc.*, Civ. No. 21-9321, 2023 U.S. Dist. LEXIS 26905, at *13 n.3 (S.D.N.Y. Feb. 16, 2023). Here, Plaintiff conjures up a violation based on the alleged creation and "deposit" of millions of "counterfeit long shares" and "naked synthetic shorts," Am. Compl. at 46 ¶ 234 ("corrupted cyber-shares"), affecting scores of retail investors and broker-dealers, *see id.* at 22–28 ¶¶ 114–52, and "dispers[ed] . . . via the internet." *Id.* at 46 ¶ 234. Elsewhere, Plaintiff points to alleged "strip mining [of] investors with an algorithmic-based machine-learning system that was a computer virus *at its core*." *See id.* at 22 ¶ 111. Given the scope of the alleged misconduct, no claim may lie under the CFAA.

Second, Plaintiff fails to properly allege that GTS Securities or Rubenstein "access[ed]" Plaintiff's computer, much less "intentionally" so, as required. To begin, a private CFAA claim under 18 U.S.C. § 1030(g) only lies for violations of 18 U.S.C. § 1030(a)(5)(B). *See* 18 U.S.C. § 1030(c)(4)(a)(i). A violation of Section 1030(a)(5)(B) involves "intentionally access[ing] a protected computer without authorization, [which] as a result of such conduct, recklessly causes

---

computer used by the United States to administer justice or provide for national defense and security. *See* 28 U.S.C. § 1030(c)(4)(a)(i).

11

damage." Plaintiff does not plead improper "access[]." He does not assert that GTS Securities "entered [his] computer system itself or any part thereof, such as its files, folders, or data." *See El Omari*, 2021 U.S. Dist. LEXIS 236933, at *43 (citing *Van Buren v. United States*, 141 S. Ct. 1648, 1657 (2021)). Rather, Plaintiff places the blame on the Schwab Defendants, for "knowingly trad[ing] in counterfeit shares by electronically transferring them into Traudt's account," *see* Am. Compl. at 20 ¶ 104, via "GTS [Securities]/Rubenstein." *See id.* at 21 ¶ 106; *id.* ¶ 107 ("Schwab . . . intentionally accessed . . . ."). In other words, any violative "access[]" was undertaken by the Schwab Defendants, not GTS Securities or Rubenstein. Put simply, the supposed CFAA conduct alleged against GTS Securities is passive and falls short of "access" within CFAA's meaning. *See id.* at 22 ¶ 113 ("The introduction of counterfeit shares from GTS into Traudt's computer system . . ."); *id.* at 46 ¶ 234 ("enter[ing] [shares] into the stream of commerce in the trading of the MMTLP security, . . . dispersed them via the internet using proprietary trading algorithms and high-frequency trading systems").

Third, Plaintiff does not allege any "economic damages" within the meaning of Section 1030(g). To begin, the statute defines "damage" itself to be "any impairment to the integrity or availability of data, a program, a system, or information." *See* 18 U.S.C. § 1030(e)(8). Section 1030(g) is more restrictive, however, because it only provides a remedy to a subset of such "damage," i.e. "economic damages." But, such damages are not what Plaintiff alleges here. *E.g.*, *Combier v. Portelos*, Civ. No. 17-2239, 2018 U.S. Dist. LEXIS 111999, at *26–28 (E.D.N.Y. July 5, 2018) (collecting cases, and stating that "plaintiff fails to allege any remedial costs of investigating or remedying damage to a computer or costs incurred because her computer would not function"). At most, Plaintiff offers conclusions, such as a "crippled . . . ability to trade, invest, and do his own 'pursuit of happiness,'" without proffering any "economic damages," i.e. those

involving damage to the computer itself, let alone such damages above the statutory damages threshold. *See* Am. Compl. at 22 ¶ 113.

And where Plaintiff attempts to plead damages greater than the statutory threshold, *see supra*, the damages he pleads fall well outside those contemplated as "damages" within the meaning of Section 1030(e)(8). *See* Am. Compl. at 16 ¶ 78 ("[T]raudt is damaged in the amount of the last verifiable dark pool share price for MMTLP at roughly $4000 a share totaling $1,220,000 and with subsequent damages involving the loss of use of those funds for at least another $1,000,000."). Indeed, "this type of damage seems far removed from the damage Congress sought to punish and remedy in the CFAA—namely, damage to computer systems and electronic information by hackers." *See In re Doubleclick Privacy Litig.*, 154 F. Supp. 2d 497, 525 n.34 (S.D.N.Y. 2001); *see also Tyco Int'l (US) Inc. v. Does*, Civ. No. 01-3856, 2003 U.S. Dist. LEXIS 11800, at *4 (S.D.N.Y. July 10, 2003) ("[T]he additional types of damages awarded by courts under [CFAA] have generally been limited to those costs necessary to assess the damage caused to the plaintiff's computer system or to resecure the system in the wake of a hacking attack."). Damages such as these, i.e. in connection with Plaintiff's alleged disadvantage in MMTLP trading, are nothing more than an improper attempt to turn alleged "lost profits resulting from [an alleged] unfair competitive edge and for [his] now wasted investment" into CFAA damages. *See Civic Ctr. Motors Ltd. v. Mason St. Import Cars, Ltd.*, 387 F. Supp. 2d 378, 382 (S.D.N.Y. 2005).

Further, Traudt fails to plead his CFAA claim with particularity, by identifying when this supposedly unauthorized computer access took place and when, where, or how GTS was involved. While authorities conflict as to whether a CFAA claim must be pleaded with particularity, *El Omari*, 2021 U.S. Dist. LEXIS 236933, at *36–37 (summarizing conflict), this Court need not resolve that conflict in determining this issue. Rather, because Plaintiff incorporates his fraud-

related allegations into his CFAA claim, *see* Am. Compl. at 33, he is required to plead the CFAA counts with particularity. *See Sec. Inv. Prot. Corp. v. Stratton Oakmont, Inc.*, 234 B.R. 293, 311 (Bankr. S.D.N.Y. 1999) (collecting cases); *see also In re DJK Res. LLC*, 416 B.R. 100, 106–07 (Bankr. S.D.N.Y. 2009) ("Fairly construed, the Claim is grounded in fraud based claims constituting mail or wire fraud or a violation of the Travel Act," 18 U.S.C. § 1952). Plaintiff fails here, as he does not precisely identify when, where, or how GTS Securities allegedly accessed his CFAA-protected equipment. Nor does he allege anything, other than mere conclusions, indicating that his MMTLP shares corresponded to the supposedly "counterfeit shares" that GTS Securities allegedly created in the marketplace.

### III. Defendants GTS Equity and GTS Execution Must Be Stricken Under Rules 8(a)(2) and 12(b)(6)

The Court should strike Plaintiff's pleading against GTS Equity and GTS Execution. Under Federal Rule of Civil Procedure 8(a)(2), a plaintiff's complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Likewise, a complaint must contain sufficient allegations "to state a claim to relief that is plausible on its face." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Here, however, Plaintiff says nothing about GTS Equity or GTS Execution (other than in the case caption). Instead, he defines "GTS" to only include GTS Securities. Am. Compl. at 2 ¶ 3. Accordingly, GTS Equity and GTS Execution must be dismissed.

### IV. Plaintiff's Claims Against Mr. Rubenstein Should Be Dismissed Under Rule 12(b)(5) for Improper Service of Process

Dismissal of Plaintiff's claims against Mr. Rubenstein is independently warranted because Plaintiff has failed to properly serve him. In particular, Plaintiff initially attempted to serve Mr. Rubenstein (a Florida resident) through U.S. Mail sent to GTS Securities's New York office, and Plaintiff then directed a summons and pleading to him through GTS Securities' registered agent.

This service is inadequate for two main reasons. First, without more, an executive or other employee may not be served through his company's registered agent. *E.g.*, *Parfitt Way Mgmt. Corp. v. GSM by Nomad, LLC*, Civ. No. 17-299, 2018 U.S. Dist. LEXIS 87190, at *14 n.3 (N.D.N.Y. May 24, 2018) ("[D]efendants have adduced evidence that Mr. Martin was neither authorized to receive process for the individual Defendants nor designated by the corporate Defendant to do so."); *Stampf v. Long Island R.R. Auth.*, Civ. No. 07-3349, 2010 U.S. Dist. LEXS 58551, at *48 n.12 (E.D.N.Y. June 14, 2010) ("Plaintiff has failed to identify any law that authorizes the MTA's general counsel to accept service on behalf of its employees."), *aff'd on other grounds*, 761 F.3d 192 (2d Cir. 2014).

*Second*, Plaintiff's mailing of process is improper. Federal Rule of Civil Procedure 4(e) only potentially authorizes such service if the laws of the state where the court is located or where service is made allow such service. Under New York law, where service was attempted, he was required to transmit "two copies of a statement of service by mail and acknowledgment of receipt . . . , with a return envelope." *See Obot v. Navient Sols., Inc.*, 726 F. App'x 47, 48 (2d Cir. 2018) (citing N.Y. C.P.L.R. § 312-a) (quotation marks omitted). This, Plaintiff did not do. And, as to Vermont, "service by mail is insufficient for individuals . . . under the federal rules as well as under Vermont state law." *See Coon v. Shea*, Civ. No. 14-85, 2014 U.S. Dist. LEXIS 142929, at *12–13 (D. Vt. Sept. 5, 2014), *mooted by* 2014 U.S. Dist. LEXIS 160213, at *1–2 (D. Vt. Nov. 12, 2014) (waiver of service effectuated). Indeed, under Vermont law, service by mail could only be proper after the plaintiff undertook efforts to serve the defendant by ordinary means. Vt. R. Civ. P. 4(f)(1).

## **CONCLUSION**

For the foregoing reasons, the GTS Defendants respectfully request the entry of an Order dismissing Plaintiff's claims with prejudice and providing any further relief to the GTS Defendants that the Court deems just and proper.

Dated:  August 23, 2024                                                          Respectfully submitted,

/s/ Jonathan R. Voegele
Aaron T. Morris
Jonathan R. Voegele
MORRIS KANDINOV LLP
4915 Mountain Rd.
Stowe, VT 05672
Tel.: 332-910-5229
aaron@moka.law
jonathan@moka.law

Jonathan Miller (PHV forthcoming)
Stephen A. Fraser (PHV forthcoming)
WILLIAMS BARBER & MOREL LTD.
233 S. Wacker, Ste. 6800
Chicago, IL 60606
Tel.: 312-443-3200
jm@williamsbarbermorel.com
saf@williamsbarbermorel.com

## **CERTIFICATE OF SERVICE**

      I hereby certify that on August 23, 2024, the foregoing Motion to Dismiss the First Amended Complaint was filed through the CM/ECF system and that a copy of the same will be sent electronically to all registered participants. An electronic and paper copy of the above-referenced documents will also be sent to the Plaintiff at the following addresses:

Scott Traudt
191 Kibling Hill Road
Strafford, VT 05072

sct545@proton.me

                                                            /s/ Jonathan R. Voegele