# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| SCOTT TRAUDT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No. 2:24-cv-00782 |
| | ) |
| ARI RUBINSTEIN, | ) |
| GTS SECURITIES, LLC, | ) |
| CHARLES W. SCHWAB & CO., INC., | ) |
| FINANCIAL INDUSTRY | ) |
| REGULATORY AUTHORITY, and | ) |
| GARY GENSLER, | ) |
| | ) |
| Defendants. | ) |

## FINANCIAL INDUSTRY REGULATORY AUTHORITY'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRESERVATION ORDER

I.  **PRELIMINARY STATEMENT**

Defendant Financial Industry Regulatory Authority, Inc. ("FINRA") submits this memorandum of law in opposition to Plaintiff's motion for a preservation order (ECF No. 13), in which Plaintiff demands that the Court enter an order requiring FINRA to preserve data and emails that he believes FINRA has in its possession, and which are purportedly relevant to his alleged claims.

Plaintiff's motion is one of several attempts by this pro se litigant to obtain premature discovery on meritless claims. Plaintiff filed this motion before FINRA formally appeared in the action, before FINRA and several other defendants had responded to the complaint, and before any Rule 26(f) meeting among the parties or conference with the Court. Plaintiff filed an equally baseless motion for expedited discovery (ECF No. 14), seeking to compel FINRA to produce various categories of records.[1] Finally, Plaintiff also issued numerous third-party subpoenas prematurely and without adequate notice to FINRA.

Plaintiff's claims, as well as this motion, are based on a morass of speculative, false, and conclusory allegations of a non-existent conspiracy. In 2022, Plaintiff made a last minute, $2,900 investment in a security, MMTLP, hoping for a "short squeeze" that never materialized. Now, Plaintiff is seeking to blame FINRA and other parties for his alleged loss and claims $9 million in alleged damages.

Plaintiff's claims and the motion to preserve are generally consistent with a series of attempts by former MMTLP shareholders to seek relief from FINRA, broker-dealer firms, and others related to MMTLP trading activity they believe is illegal. Notwithstanding the dismissal of

---

[1]   FINRA will file a separate opposition to the motion for expedited discovery.

each previously filed case against FINRA, Plaintiff still proceeded with his lawsuit and now seeks an immediate preservation order imposed on FINRA, including a specific demand that FINRA preserve Blue Sheet Data, which is confidential, non-public trading data that FINRA collects as part of its regulatory functions under the Exchange Act. Plaintiff believes this data exists in a form that will be helpful to Plaintiff, can be produced easily, and will prove Plaintiff's conspiracy theory.

FINRA has notified Plaintiff that FINRA intends to file a motion to dismiss the claim against it for multiple reasons. As an initial matter, FINRA is not subject to personal jurisdiction in this Court.[2]  Moreover, because all of FINRA's alleged misconduct was regulatory in nature, FINRA is absolutely immune from suit, and Plaintiff cannot state a private right of action against FINRA.  Further, Plaintiff fails to state a RICO claim because such claim cannot be predicated on alleged securities fraud and, even if it could, Plaintiff still fails to adequately plead a civil RICO claim against FINRA. Nonetheless, Plaintiff's motion to preserve is premature, thereby compelling FINRA to respond before its Fed. R. Civ. Pr. 12(b)(6) motion because Plaintiff is improperly attempting to weaponize the discovery process.

Even if there were some merit to his underlying claims (there is not), Plaintiff fails to meet the requirements for obtaining a preservation order. As the requesting party, Plaintiff bears the burden of establishing there is a specific or imminent threat that evidence will be lost or destroyed. Absent such a threat, a request for a preservation order should be denied. Here, Plaintiff fails to meet his burden.

---

[2] By filing this opposition to Plaintiff's motion, FINRA does not intend to submit to the jurisdiction of this Court.  Given the premature nature of Plaintiff's motion, FINRA reserves all arguments in support of its anticipated motion to dismiss, including lack of personal jurisdiction.

A preservation order in this case is also entirely unnecessary. FINRA is subject to rules and regulations promulgated pursuant to the Exchange Act. Those rules expressly require FINRA to preserve records for five years, including "at least one copy of all documents, including all correspondence, memoranda, papers, books, notices, accounts, and other such records as shall be made or received by it in the course of its business as such and in the conduct of its self-regulatory activity." 17 CFR 240.17a-1.

Plaintiff's demand for a preservation order fails as a matter of law because he fails to establish any basis under the Federal Rules of Civil Procedure, or need, for such an order.

## II. STATEMENT OF FACTS

### A. FINRA's Role in Regulating the Securities Markets

FINRA[3] is a self-regulatory organization ("SRO") registered with the Securities and Exchange Commission ("SEC") as a national securities association under the Maloney Act of 1938, 15 U.S.C. §§ 78o-3 et seq., amending the Exchange Act, 15 U.S.C. §§ 78a–78rr. As an SRO, FINRA is part of the Exchange Act's comprehensive plan for regulating the national securities markets. See 15 U.S.C. §§ 78q, 78s; Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc., 191 F.3d 198, 201 (2d Cir. 1999). FINRA's regulatory duties are imposed by Congress and require FINRA to conduct daily regulation and administration of the national securities markets.

The Exchange Act requires FINRA to establish rules "designed to prevent fraudulent and manipulative acts and practices, to promote just and equitable principles of trade, to foster cooperation and coordination with persons engaged in regulating, clearing, settling, processing information with respect to, and facilitating transactions in securities, . . . and, in general, to protect

---

[3] FINRA was formed in 2007 through the merger of the National Association of Securities Dealers, Inc. ("NASD") and the regulatory operations of the New York Stock Exchange ("NYSE").

investors and the public interest . . . ." 15 U.S.C. § 78o-3(b)(6). FINRA rules are "part of the apparatus of federal securities regulation." Kurz v. Fid. Mgmt. & Rsch. Co., 556 F.3d 639, 641 (7th Cir. 2009). The Exchange Act also mandates that FINRA investigate and discipline member firms and their associated persons for violations of FINRA rules and the federal securities laws. Loftus v. Fin. Indus. Regul. Auth., Inc., 20-Cv-7290, 2021 U.S. Dist. LEXIS 18823, at *2 (S.D.N.Y. Feb. 1, 2021); see also 15 U.S.C. § 78o-3(b).

FINRA also performs several regulatory functions specific to overseeing the over-the-counter ("OTC") market for equity securities, like MMTLP, that are not listed on a national securities exchange. For instance, FINRA maintains a symbol directory for OTC equity securities, and in appropriate circumstances can issue and delete security trading symbols, *see* https://otce.finra.org/otce/symbol-directory; adopts rules regarding quoting and trading in OTC equity securities, *see* FINRA Rule 6400 Series;[4] reviews, processes, and announces information about corporate actions regarding OTC equity securities, see SEC Rule 10b-17, 17 C.F.R. § 240.10b-17; see also FINRA Rule 6490;[5] and is authorized to halt trading and quoting of OTC equity securities if FINRA determines that doing so is necessary to protect investors and the public interest. See FINRA Rule 6440.[6]

---

[4] The FINRA Rule 6400 Series is publicly available at https://www.finra.org/rules-guidance/rulebooks/finra-rules/6400.

[5] FINRA Rule 6490 is publicly available at https://www.finra.org/rules-guidance/rulebooks/finra-rules/6490.

[6] FINRA Rule 6440 is publicly available at https://www.finra.org/rules-guidance/rulebooks/finra-rules/6440-0.

B. **Plaintiff's Complaint**

Plaintiff filed his Complaint on July 17, 2024. (ECF No. 1.) Plaintiff then filed an Amended Complaint on July 23, 2024, adding a cause of action and otherwise reiterating the sprawling, speculative, and incomprehensible allegations contained in the original Complaint. (ECF No. 4).

Besides FINRA, the Amended Complaint names as Defendants (i) GTS Securities LLC, GTS Equity Partners LLC, and GTS Execution Services, LLC, along with Ari Rubenstein (the Chief Executive Officer of GTS Securities, LLC) (collectively, the "GTS Defendants"), and (ii) Charles W. Schwab and Co. Inc. and Schwab Holdings, Inc. (the "Schwab Defendants"). The Amended Complaint also identifies the SEC and the SEC's chairman, Gary Gensler, as Respondents, against whom Plaintiff seeks a Writ of Mandamus.

The Amended Complaint includes more than 250 separate paragraphs that rely on conclusory statements, speculation, and conspiratorial theories relating to the volume of trading in the MMTLP security and related entities dating back to 2020.[7] Plaintiff, however, admits that he did not acquire his MMTLP shares until November 30, 2022. (ECF No. 4, ¶¶ 11-12, 43). Based on his purchase of 305 shares of MMTLP at $9.62 per share, a total of $2,934.95, Plaintiff somehow demands $3,000,000.00 in lost profit compensatory damages, trebled for a total of $9,000,000 in total alleged damages. (ECF No. 4, ¶ 43 & Prayer for Relief p. 49).

With regard to FINRA, Plaintiff acknowledges he has no facts to support his claims. For example, Plaintiff asserts that "FINRA was allegedly made aware" of purported falsification of records and did not keep the stock from trading. (ECF No. 4, ¶ 24). The Amended Complaint is replete with similarly speculative allegations based on nothing but pure conjecture and conclusory

---

[7] Indeed, Plaintiff acknowledges that his claims are based on "circumstantial evidence" (Am. Cplt. P. 5, fn. 1 & ¶28).

statements. (See, e.g., ECF No. 4, ¶ 38 (claiming FINRA operates its own stock exchange and coordinates activities with JP Morgan Chase), ¶ 48 (alleging FINRA issued an "intentionally erroneous" corporate action notice); ¶ 60 (alleging FINRA "broke its own rule"); ¶ 61 (characterizing FINRA's alleged "pattern and practice of conduct in securities prior to the MMTLP U3 halt.")).

The crux of Plaintiff's claims against FINRA is the baseless assertion that FINRA failed to comply with its own rules in reviewing a corporate action involving the MMTLP shares and in issuing a U3 halt. In making this argument, Plaintiff claims (without any support) that FINRA implemented the halt without notice to retail investors, such as Plaintiff, but with notice to corporate investors, hedge funds, and market makers. (See, e.g., ECF No. 4, ¶¶ 60-64). Plaintiff goes on to conclude that FINRA improperly issued the U3 halt, and allegedly lied to Congress about it. (Id., ¶ 69). The Amended Complaint likewise includes conclusory allegations that are complete non-sequiturs, with outlandish statements like "FINRA attempted perhaps the greatest, most brazen attempt at CYA that has ever been seen since the first investor gave medium rare rabbit legs in a dried goat stomach to some Stone Age hominid in return for future stone tool production . . . ." (Id., ¶ 62). Plaintiff also claims that FINRA allegedly backdated documents in 2023, though it is not clear exactly to what documents Plaintiff refers (Id., ¶ 75), while also trying to tie in random statements by the chairman of an unrelated company – OTC Markets (Id., ¶¶ 76-77), hearsay descriptions of random conversations with TD Ameritrade (now Schwab) (Id., ¶¶ 80-92), and bald assertions relating to alleged naked shorts and counterfeit shares (Id., ¶ 104). The Amended Complaint also includes additional wide-ranging claims that Plaintiff believes constitute evidence of some conspiracy, though it is not clear how the allegations support Plaintiff's claims.

Plaintiff asserts the following legal claims in the Amended Complaint:

- RICO claims against FINRA (Count I), the Schwab Defendants (Count II and III & VI), and the GTS Defendants (Count IV & V);
- Computer Fraud and Abuse Act (10 USCS 1030(g)) claims against the GTS Defendants (Count VII) and the Schwab Defendants (Count VIII); and
- Federal and State Securities Fraud claims against the Schwab Defendants (Counts IX & X).

C.   **Defendants' Responses to the Complaint**

The Schwab Defendants responded to Plaintiff's Amended Complaint with a motion to compel arbitration pursuant to Plaintiff's customer agreement with Schwab (formerly TD Ameritrade). (ECF No. 8). The GTS Defendants responded to Plaintiff's Amended Complaint with a motion to dismiss all counts, on various legal grounds. (ECF No. 18). Respondents SEC and Mr. Gensler have yet to appear, and it is not clear from the docket whether they have been properly served.

FINRA was not properly served, but agreed to waive service in accordance with the Federal Rules of Civil Procedure such that FINRA's response to the Amended Complaint is due on or before October 7, 2024. (See ECF No. 20). FINRA intends to respond with a motion to dismiss because Plaintiff's Amended Complaint does not (and cannot be amended to) contain any viable causes of action against FINRA and therefore is subject to dismissal under the Federal Rules of Civil Procedure for multiple independent reasons. Specifically, and without waiving any other potential arguments for dismissal, FINRA intends to establish the following:

1. This Court does not have personal jurisdiction over FINRA in this matter.
2. FINRA is absolutely immune from suit because all of FINRA's alleged misconduct was taken in connection with its role as regulator of the securities markets. See, e.g., D'Alessio v New York Stock Exch., Inc., 258 F.3d 93, 105 (2d Cir. 2001); In re NYSE Specialists Sec. Litig., 503 F.3d 89, 9 (2d Cir. 2007); Standard Inv. Chartered, Inc. v. National Ass'n of Securities Dealers, Inc., 637 F.3d 112, 116 (2d Cir. 2011).

3. Plaintiff fails to state a claim against FINRA because neither the Exchange Act nor any other statute provides Plaintiff with a private right of action against FINRA for acts or omissions in connection with its duties as a regulator including alleged violations of FINRA's own rules. In re Series 7, 548 F.3d 110, 114 (D.C. Cir. 2008); Desiderio, 191 F.3d at 208; MM&S Financial, Inc. v. NASD, 364 F.3d 908, 911-912 (8th Cir. 2004); Spicer v. Chicago Board of Options Exchange, Inc., 977 F.2d 255, 260 (7th Cir. 1992); Matyuf v. NASD DR, Inc., 2004 U.S. Dist. LEXIS 25174, *10 (W.D. Pa. Oct. 4, 2004); In re Olick, 2000 U.S. Dist. LEXIS 4275, *11 (E.D. Pa. Apr. 4, 2000); Feins v. AMEX, 81 F.3d 1215 (2d Cir. 1996); Meyers v. NASD, 1996 U.S. Dist. LEXIS 6044 (E.D. Mich. Mar. 29, 1996); Jablon v. Dean Witter Reynolds, Inc., 614 F.2d 677, 681 (9th Cir. 1980); Pinnacle Security Investment Associates, L.P. v. AMEX, 946 F. Supp. 290, 293-94 (S.D.N.Y. 1996); Shamirzadi v. Smith Barney, Harris Upham & Company Inc., 636 F. Supp. 49, 52 (D.D.C. 1985).

4. Plaintiff fails to state a claim against FINRA for alleged RICO violations because such claims cannot be predicated on alleged securities fraud. Monterey Bay Military Housing, LLC v. Ambac Assurance Corp., 531 F. Supp. 3d 673, 716 (S.D.N.Y. 2021); SEC v. Conradt, 947 F. Supp. 2d 406, 407 (S.D.N.Y. 2013).

5. Plaintiff also fails to adequately plead the elements of a civil RICO claim against FINRA with the particularity required by Fed. R. Civ. P. 9(b).

D. **FINRA Blue Sheets and Other Lawsuits**

Plaintiff's claims in this case, and his efforts to expedite discovery, are consistent with unsuccessful attempts by other former MMTLP shareholders to obtain (i) relief from FINRA and other parties for a short squeeze that did not materialize, and (ii) non-public trading data, including "Blue Sheet Data" (an investigative tool available to FINRA[8]) and other information they speculate support their claims.

As noted in the GTS Defendants' motion to dismiss, Plaintiff is not the first allegedly aggrieved former MMTLP shareholder to assert claims related to their failed attempt to effectuate

---

[8] FINRA rules authorize FINRA to request Blue Sheet Data from broker-dealers for the purpose of conducting regulatory investigations. See FINRA Rules 8211, 8213. FINRA Rule 8211 is publicly available at https://www.finra.org/rules-guidance/rulebooks/finra-rules/8211. FINRA Rule 8213 is publicly available at https://www.finra.org/rules-guidance/rulebooks/finra-rules/8213.

a short squeeze. See, e.g., Park v. FINRA, No. 2:23-CV-69-RWS, 2023 WL 11795601, at *1–2 (N.D. Ga. Sept. 25, 2023) (dismissing claims against FINRA on immunity grounds); Hofman v. Fidelity Brokerage Servs., LLC, Civ. No. 23-881, 2023 WL 3872564 (C.D. Cal. May 8, 2023) (same, as to FINRA and DTCC), app. dismissed, Case No. 23-55494, 2023 WL 8447277 (9th Cir. Oct. 27, 2023); Hensley v. TD Ameritrade, Inc., et al., No. 23-cv-5159, slip op. (W.D. Wash. Oct. 2, 2023) (granting FINRA motion to dismiss claims by MMTLP investor who asserted similar claims to Plaintiff's claims in this action, against FINRA, the Schwab Defendants, and the GTS Defendants);[9] Tawil v. FINRA, No. 22-cv-440, 2023 WL 4353179, at *1-2 (N.D. Fla. May 24, 2023) (denying MMTLP shareholder's request for preliminary injunction and dismissing complaint on immunity grounds).

Courts have likewise rejected efforts by investors such as Mr. Traudt to obtain Blue Sheet Data from FINRA. See Khorassani v. FINRA, Index. No. 153819/2023, 2023 WL 4029701, at *2-4 (N.Y. Sup. Ct. June 15, 2023) (denying pre-suit discovery for Blue Sheet Data from FINRA and finding that claims of alleged "illegal trading of MMTLP shares," and statements regarding "a significant percentage of the trading volume . . . were short sales" were speculative and lacking), aff'd, 223 A.D.3d 589, 590, 202 N.Y.S.3d 124 (2024) (affirming N.Y. Supreme Court decision and noting that the MMTLP shareholder's "conclusory allegations fall far short of the showing necessary to obtain pre-action disclosure."); see also, Steamroller v. OTC Markets Group, Inc., Index no. 160854/2023, slip op. at 1-2, N.Y. Sup. Ct. Aug. 15, 2024 (relying on the decision in Khorassani and denying pre-action disclosure of trading data and finding former MMTLP shareholder's allegations to be "vague and conclusory allegations of supposed fraud . . . .").

---

[9] A true and correct copy of the Hensley court's decision is attached as **Exhibit B** to the Declaration of Walter Judge in Support of FINRA's Opposition to Plaintiff's motion for a preservation order and motion for expedited discovery.

9

### E.     Plaintiff's Efforts to Obtain Discovery Are Premature

Before FINRA ever entered its appearance in this matter, and without properly serving FINRA with the Amended Complaint, Plaintiff filed two discovery motions. (ECF Nos. 13, 14). First, Plaintiff filed a motion for a preservation order, seeking entry of an overbroad order directed not only at FINRA but also at 105 non-party brokers. (ECF No. 13). The proposed order, demanding that FINRA and 105 non-parties preserve evidence is also wildly overbroad. However, because there is no basis for entry of any sort of preservation order, the scope is somewhat irrelevant.

Plaintiff also filed a motion for expedited discovery, demanding that FINRA be required to produce, among other information, electronic Blue Sheet Data and email communications that Plaintiff argues are relevant to his claims. (ECF No. 14). But Plaintiff has failed to provide any basis permitting expedited discovery.

In addition, on August 5, 2024, Plaintiff apparently obtained from the Clerk seven separate subpoenas—one to Respondent Mr. Gensler and six to non-parties. Copies of the subpoenas were sent to FINRA's CEO at an address in Washington DC in an envelope post-marked August 5, 2024.[10] According to tracking information, those subpoenas were not delivered to FINRA until August 13, 2024. Judge Dec. ¶5. Nonetheless, on August 6, 2024, Plaintiff announced on X (formerly "Twitter") that "The subpoenas are going out":

---

[10] A true and correct copy of the subpoenas are attached as **Exhibit C** to the Declaration of Walter Judge in Support of FINRA's Opposition to Plaintiff's motion for a preservation order and motion for expedited discovery ("Judge Dec.").

10



**Scott Traudt** ✓
@Greenhills303

#MMTLP #MMTLParmy $MMTLP #FINRAfraud #MMTLPfiasco #DJT $DJT

Scorched Earth Volume 3: The Ground War Begins

The subpoenas are going out.

I have 6 signed and stamped "subpoena duces tecums" (subpoenas for documents, email records, computer files, trading records") from US District Court (Burlington, VT: CANO: 2:24-cv-00782 "Scott Traudt v. Ari Rubinstein et. al.") that need to be served on the following individuals and companies for records directly relating to the RICO, CFAA, and Securities Act claims contained in the lawsuit. (I am waiting on a response for #7).

Unless the targets of the SDT's agree to service via 1st Class Mail, Return Receipt, they will need to be served individually.

As Marvin Gaye would say: "Let's get it on."

So here's on who and where I need volunteers to serve these SDT's:

1. Gary Gensler, SEC Chairman. 100 F. St. NE, Washington DC 20549. CONTENTS OF SDT: "Electronic Blue Sheets" records for MMTLP that existed on 8 December 2022 at 3:59:59 PM EST. EBS records for Charles Schwab for same time hack and date.

2. Greg McCabe, Next Bridge Hydrocarbons CEO. 6300 Ridglea Place, Suite 950, Ft. Worth TX 76116. CONTENTS OF SDT: Identifying documents of all 105 broker dealers or trading entities that traded MMTLP as of 8 December 2022. Names.



11

In contravention of Fed. R. Civ. P. 45, Plaintiff failed to provide FINRA with the required notice prior to serving the subpoenas on the non-parties to whom the subpoenas are directed.

---

[11] https://x.com/Greenhills303/status/182082412786434215

Moreover, the subpoenas are an obvious fishing expedition because the relevance of the information sought in the subpoenas is questionable.

All of Plaintiff's efforts to obtain discovery at this point in the litigation are premature and Plaintiff's claim against FINRA is subject to dismissal for the reasons FINRA will assert in its motion to dismiss. Thus, Plaintiff is asking the Court to ignore the requirements of the Federal Rules of Civil Procedure, which establish an orderly process of discovery, so that he can obtain information that is purportedly relevant to claims. At this time, there is no need or basis for a preservation order, and Plaintiff's motion for preservation should be denied.

### III.    LEGAL ARGUMENT

#### A.    Plaintiff Bears the Burden of Proving a Preservation Order is Necessary

"[A] specific order from the court directing one or both parties to preserve evidence is not ordinarily required." Treppel v. Biovail Corp., 233 F.R.D. 363, 370 (S.D.N.Y. 2006). Rather,

> Parties to a lawsuit are duty bound to preserve relevant material, including electronically stored information ('ESI'), in anticipation of and during litigation under the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 37(e). Therefore, an order from the Court directing a party to preserve evidence is not typically asked for or even needed.

Tyler v. Peterson, No. 20-CV-06186, 2022 WL 11629009, at *3 (E.D.N.Y. Oct. 20, 2022) (citations omitted).

The test applied by courts in the Second Circuit (and elsewhere) varies, but generally speaking, "[i]n considering motions to preserve evidence, courts have applied a balancing test, weighing the specific, significant, and imminent threat of loss or destruction of evidence against the burden that preserving that evidence would impose." See, e.g., Treppel v. Biovail Corp., 233 F.R.D. 363, 370–72 (S.D.N.Y. 2006) & Capricorn Power Co., Inc. v. Siemens Westinghouse Power, 220 F.R.D. 429, 435 (W.D. Pa. 2004)).

Here, Plaintiff has not and cannot establish the need for a preservation order to prevent the loss or destruction of evidence, and he has provided only unsupported theories speculating how documents might be lost or destroyed. See, e.g., Treppel v. Biovail Corp., 233 F.R.D. at 370–72 (denying motion for preservation order because plaintiff was unable to demonstrate any documents in fact had been destroyed and therefore failed to meet burden of demonstrating a significant threat that additional documents would be destroyed, proposed a "sweeping" order and otherwise failed to demonstrate that the order was "not unduly burdensome.") (citations omitted).

### B. Plaintiff Has Not Established a Preservation Order is Necessary

#### 1. Plaintiff Has Not Made Any Showing to Support That a Preservation Order is Necessary to Prevent Loss or Destruction of Critical Evidence.

"The burden of establishing the risk that documents will be destroyed in the future is 'often met by demonstrating that the opposing party has lost or destroyed evidence in the past or has inadequate retention procedures in place.'" Treppel, 233 F.R.D. at 371 (quoting Pueblo of Laguna v. United States, 60 Fed.Cl. 133, 138 (2004), and also citing Capricorn Power Co. v. Siemens Westinghouse Power Corp., 220 F.R.D. 429, 437 (W.D. Pa. 2004), where the court held "[h]ad there been evidence of attempted damage or destruction of the report or the data compilations used to produce it, the Court's level of concern for the protection of the integrity and existence of the evidence would have been different.")).

Here, Plaintiff has made no showing whatsoever that FINRA has lost or destroyed evidence in the past or has inadequate retention procedures in place. Instead, his argument that a preservation order is necessary to prevent the loss or destruction of critical evidence rests on the following:

- Plaintiff's conclusory statement that "illegal sharing of the CIK number between MMTLP and MMAT" somehow complicates the matter and gives rise to a presumption that evidence will go missing. (ECF No. 13, at p. 2 & 15). This unsupported theory in no way indicates that FINRA has lost or destroyed any evidence or has inadequate procedures in place for preserving potential evidence. It is also patently incorrect—the SEC assigned Central Index Key number/CIK#:

14

0001431959 to Meta Materials, Inc. The common stock (MMAT) and Series A preferred shares (MMTLP) were both securities of Meta Materials, Inc.[12]

- A number of other purported "facts" that Plaintiff seems to believe indicate that evidence will be lost (or that FINRA will destroy evidence) are, in reality, completely baseless and unsupported. For example, Plaintiff alleges that FINRA has "doubled down on the fraud" by issuing the former Torchlight CUSIP number to another entity. (Id., at p. 2). FINRA does not issue CUSIP numbers. Even if FINRA did issue CUSIP numbers (it does not), Plaintiff fails to explain how this indicates relevant (or any) evidence was lost or destroyed. The same is true for the remainder of Plaintiff's claims. (See, e.g., id. at p. 3 (conclusory claims of "orchestrated chaos in MMTLP and its associated entities"); p. 4 (summary conclusion that FINRA violated FINRA Rule 6940 in connection with its notices of MMTLP corporate actions (it did not)); p. 8 (unsupported claim that FINRA allowed or knew MMTLP short sales continued overseas, based on a random screen shot from someone's cell phone of trading data (ECF No. 13, p. 69-70); pp. 8-9 (baseless statement "FINRA had to know" about some alleged "gray market" activity); p. 10 ¶ 22 (inexplicable statement that an alleged duplicate CUSIP results in a "phenomenal risk of data corruption" and accusation it was due to "human intervention and intent"); p. 10 ¶ 23 (accusation that brokers' "corporate executives on the FINRA Uniform Practice Committee" were conflicted and "took action to nuke MMTLP with the U3" (the FINRA UPC is an advisory committee that was not involved in the MMTLP U3 trading halt)); p. 10-11, ¶ 25 (unsupported statement that "FINRA has the mechanism to hide trades by virtue of its own [allegedly unconstitutional] trading platform" (Plaintiff's conclusions and allegations in this regard are particularly incomprehensible as FINRA does not have a trading platform)). Plaintiff's filing includes innumerable misstatements and inflammatory allegations like these, but they need not be addressed as they all suffer from the same flaw – none of them constitute evidence of attempted damage to or destruction of evidence.

- The court's holding in Ayyash v. Bank Al-Madina, 233 F.R.D. 325, 326 (S.D.N.Y. 2005). That decision had nothing to do with ordering preservation of evidence. Rather, in Ayyash the court addressed the requirements for establishing good cause to permit expedited discovery—a decision that is also inapplicable in this case because (i) unlike the plaintiff in Ayyash, this Plaintiff has made no strong evidentiary showing of the substantiality of his claims, (ii) unlike the defendant in Ayyash, FINRA is not a foreign individual or corporation with incentive or capacity to hide assets; and (iii) unlike the case in Ayyash, there is no urgency to Plaintiff's request.

- General case law relating to the duty to preserve under the Federal Rules and the scope of discoverable information. If this general duty to preserve warrants a broad-based preservation order be entered pre-answer, pre-motion to dismiss, and pre-Rule 26(f) conference, such relief would be available in all cases. That outcome is

---

[12] See https://www.sec.gov/search-filings/cik-lookup

directly contrary to Federal law. <u>Treppel v. Biovail Corp.</u>, 233 F.R.D. 363, 370 (S.D.N.Y. 2006) ("[A] specific order from the court directing one or both parties to preserve evidence is not ordinarily required").

Accordingly, there is no basis for the relief sought, and Plaintiff's motion for a preservation order should be denied.

### 2. A Preservation Order Is Not Necessary Because FINRA Already Has a Legal Obligation to Retain Records

Plaintiff's position that an order is necessary to protect against loss or destruction of relevant information is also contradicted by the fact that FINRA is already under a legal obligation to retain all trading data and any other records that would potentially fall within the scope of Plaintiff's premature and overbroad proposed preservation order.

Code of Federal Regulations Title 17 includes express rules and regulations applicable to registered securities associations such as FINRA. Part 240 contains the General Rules and Regulations for the Securities Exchange Act of 1934 for "Preservation of Records and Reports of Certain Stabilizing Activities" and states the following "Recordkeeping rule" for, among other entities, national securities associations:

> Every national securities exchange, national securities association, registered clearing agency and the Municipal Securities Rulemaking Board shall keep and preserve at least one copy of all documents, including all correspondence, memoranda, papers, books, notices, accounts, and other such records as shall be made or received by it in the course of its business as such and in the conduct of its self-regulatory activity.

17 CFR 240.17a-1(a). The rules further provide that

> Every national securities exchange, national securities association, registered clearing agency and the Municipal Securities Rulemaking Board shall keep all such documents for a period of not less than five years, the first two years in an easily accessible place….

17 CFR 240.17a-1(b).
16

With Federal law already obligating FINRA to retain all records related to its business for a period of five years, and not a single shred of evidence indicating FINRA has lost or destroyed evidence in the past or has inadequate retention procedures in place, there is no "concern for the protection of the integrity and existence of the evidence" that would compel the Court to enter Plaintiff's proposed preservation order. See Capricorn Power, 220 F.R.D. at 437.

  C. **Plaintiff Has Also Failed to Establish That Any Relevant Documents Were Destroyed**

A request for a preservation order should also be denied where the requesting party has not "made even the most basic showing that any documents potentially relevant to this litigation were lost." Treppel, 233 F.R.D. at 372.

As stated in Treppel, the moving party must "demonstrate that certain types of relevant documents existed and that they were necessarily destroyed" by the responding party. Here, the Plaintiff has no support for his motion other than misguided, conclusory statements about reference numbers that were allegedly "illegally shared" and self-serving claims that he cannot effectively prosecute his RICO claims if the preservation order is not entered. (ECF No. 13, at p. 15). Plaintiff also cites Pension Comm. Of the Univ. of Montreal Pension Plan v. Bank of Amerc. Sec. LLC, 685 F. Supp. 2d 456 (2010), and states in conclusory fashion that the general requirements on when and how to issue a written legal hold somehow support the need for a preservation order in this case. (ECF No. 13, at p. 16-17).

These irrelevant and conclusory arguments do not support the extraordinary relief that Plaintiff seeks. Plaintiff has the burden to show some specific, significant, and imminent threat of loss or destruction of evidence. Without having done so, Plaintiff's motion must be denied. See Treppel, 233 F.R.D. at 372 (concluding that "[t]he plaintiff's application for a preservation order,

17

then, is denied as premature. In the event that Mr. Treppel can later demonstrate that evidence has in fact been lost, that it was likely relevant to claims or defenses in this action, and that an order will not impose undue hardship on Biovail, I will again consider his application.").

### D. Plaintiff Has Also Failed to Establish That the Proposed Preservation Order is Not Unduly Burdensome

A party seeking a preservation order must also establish that the preservation order is "not unduly burdensome." Treppel, 233 F.R.D. at 372 (quoting Pueblo of Laguna, 60 Fed. Cl. at 138).

Much like the case in Treppel, "Plaintiff has made no such effort here." Treppel, 233 F.R.D. at 372. Rather, Plaintiff devotes a mere two sentences to the burden on FINRA, concluding the burden is "minimal" and FINRA "has the resources to comply" without further explanation. (ECF No. 13, at p. 18). Plaintiff's application also concludes with an admission of the overbroad and burdensome nature of the relief sought: he asks for an order compelling "FINRA and all 105 broker-dealers involved in the trading of MMTLP to preserve" all evidence, with an equally broad proposed order. (ECF No. 13, at p. 19 and proposed order).

### IV. CONCLUSION

Plaintiff has not met any of the requirements to satisfy his burden and justify a motion for a preservation order. Accordingly, FINRA respectfully requests that the Court deny Plaintiff's motion.

Dated at Burlington, Vermont, this 30th day of August, 2024.

                                              DOWNS RACHLIN MARTIN PLLC

                                  By:  /s/ Walter E. Judge, Jr.
                                              Walter E. Judge, Jr., Esq.
                                              199 Main Street, P.O. Box 190
                                              Burlington, VT 05402-0190
                                              (802) 863-2375
                                              wjudge@drm.com

CERTIFICATE OF SERVICE

      I, Walter E. Judge, Jr., attorney for Financial Regulatory Authority, hereby certify that on Friday, August 30, 2024, I electronically filed with the Clerk of Court the foregoing Opposition to Motion for Preservation Order, using the CM / ECF system, which will provide service of such filing to the parties.  I also certify that I served the document by email on the following:

Scott Traudt   sct545@proton.me

Felipe Escobedo, Esq.   felipe.escobedo@morganlewis.com
Jeff Goldman, Esq.   jeff.goldman@morganlewis.com
Justin B. Barnard, Esq.   jbarnard@dinse.com
Anne B. Rosenblum, Esq.   arosenblum@dinse.com

Jonathan R. Voegele, Esq.   jonathan@moka.law
Jonathan D. Miller, Esq.   jm@williamsbarbermorel.com
Stephen A. Fraser, Esq.   saf@williamsbarbermorel.com

                                          /s/ Walter E. Judge, Jr.
                                          Walter E. Judge, Jr.

23001539.1