UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| SCOTT TRAUDT, * | |
| Plaintiff * | |
| * | |
| v. * | Docket Number: 2:24-cv-782 |
| * | JURY TRIAL DEMANDED |
| ARI RUBENSTEIN * | |
| Defendant * | 1st Amended Complaint |
| * | |
| GTS SECURITIES LLC * | |
| GTS EQUITY PARTNERS LLC * | |
| GTS EXECUTION SERVICES LLC * | |
| Defendant * | |
| * | |
| CHARLES W. SCHWAB AND CO. INC. * | |
| SCHWAB HOLDINGS, INC. * | |
| Defendant * | |
| * | |
| FINANCIAL INDUSTRY * | |
| REGULATORY AUTHORITY * | |
| Defendant * | |
| * | |
| GARY GENSLER * | |
| US SECURITIES AND EXCHANGE * | |
| COMMISSION * | |
| Respondent * | |
| * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### TRAUDT'S MOTION TO HOLD ALL MOTIONS TO DISMISS AND MOTIONS FOR ARBITRATION IN ABEYANCE

Plaintiff Scott Traudt ("Traudt") respectfully moves this Court to hold all pending and

alerted motions to dismiss and the motion for a stay in favor of arbitration in abeyance until the

Court resolves critical threshold issues regarding whether Defendant Financial Industry

Regulatory Authority ("FINRA") possesses immunity or is even legally qualified to act as a Self-

1

Regulatory Organization (SRO) in light of recent Supreme Court decisions.[1] Traudt further requests that the Court first address Traudt's multiple motions for injunctive relief which were raised in his **Plaintiff Traudt's Reply Memorandum of Law in Opposition to Defendant FINBRA's Memorandum of Law in Objection to Plaintiff's Motion for Expedited Limited. ("Reply Opposition Expedited")**

Traudt neglected to cite in his **Reply Opposition Expedited** the appropriate FRCP for his motions for injunctive relief contained therein and Traudt preserves the record here by stating his motions were pursuant to FRCP 65(a).

Traudt contacted Atty. Jeff Goldman for Defendant Charles Schwab and Co. ("Schwab") on 9 September 2024 and asked if he opposed an abeyance and he said he would. Traudt did not go further contacting any other counsel for the various defendants as one objection was enough.

## I.    The Standard of Review in the 2nd Circuit

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 96 (2d Cir. 2012) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254, 57 S. Ct. 163, 81 L. Ed. 153 (1936)). In determining whether to enter a stay, "courts in this [D]istrict consider five factors: '(1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as

---

[1] **Motion to Stay in Favor of Arbitration as to Defendants Charles Schwab & Co. and Schwab Holdings, Inc. ("Arbitration")** was filed by Schwab supposedly on 14 August 2024 per the signature page but did not get to Traudt until 24 August 2024 necessitating an agreed to extension of time to respond. **The GTS Defendants' Motion to Dismiss the First Amended Complaint** ("GTS Dismiss") was filed on 23 August 2024. FINRA claimed immunity in its **Financial Industry Regulatory Authority's Memorandum of Law in Opposition to Plaintiff's Motion for Expedited Discovery. ("Opposition Expedited")**.

balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden

on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to

the civil litigation; and (5) the public interest.'" *Loftus v. Signpost Inc.*, 464 F. Supp. 3d 524, 526

(S.D.N.Y. 2020) (quoting *Kappel v. Comfort*, 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996)). "These

factors are to be balanced, with the principal objective being the avoidance of unfair

prejudice." *Am. Steamship Owners Mut. Prot. & Indem. Ass'n v. Lafarge N. Am., Inc.*, 474 F.

Supp. 2d 474, 482 (S.D.N.Y. 2007), *aff'd in part, vacated in part sub nom. N.Y. Marine &*

*Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102 (2d Cir. 2010).

## II.    Smith  v. Spizzirri No. 22-1218 US Supreme Court (May, 20224)

In a case that may have bearing[2] on *Traudt v. Rubenstein*, *Smith* held under the Federal

Arbitration Act:

If there were any doubt, the FAA's structure and purpose confirm that a stay is required.

When a court denies a request for arbitration, § 16 of the FAA authorizes an immediate

interlocutory appeal. See 9 U.S.C. § 16(a)(1)(C). When a court compels arbitration, by contrast,

Congress made clear that, absent certification of a controlling question of law by the district

court under 28 U.S.C. § 1292(b), the order compelling arbitration is not immediately appealable.

See 9 U.S.C. § 16(b). The choice to "provid[e] for immediate interlocutory appeals of orders

denying—but not of orders granting—motions to compel arbitration," *Coinbase, Inc. v. Bielski,*

*599 U.S. 736, 740, 143 S.Ct. 1915, 216 L.Ed.2d 671 (2023)*, is consistent with Congress's

purpose in the FAA "to move the parties to an arbitrable dispute out of court and into arbitration

---

[2] Unless, as Traudt argues, there can be no arbitration because FINRA is a defendant in
this matter and is conflicted out, or even better, is shuttered by court order because it is an
illegal private actor non-profit corporation executing Executive Branch authority. **(See
Appendix A – Excerpt from Schwab Client Agreement)**

as quickly and easily as possible," *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp., 460 U.S. 1, 22, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).* If a district court dismisses a suit subject to arbitration even when a party requests a stay, that dismissal triggers the right to an immediate appeal where Congress sought to forbid such an appeal.

(Traudt wishes not to lead the court astray – the "stay" referenced above in *Smith* dealt with the stay of proceedings if the court concludes that the arbitration must take place; Traudt is not contending that stay was of the same flavor he is asking for here.)

Traudt argues that due to *Smith*, he has no ability to take an interlocutory appeal to the 2nd Circuit, thus the need to get things right at the District Court level. Moreover, since the mandatory stay in *Smith* guarantees Traudt a "return ticket" (*Smith* § II) should he not be happy with the outcome of arbitration, in the interests of judicial economy *per se,* there should be a stay on the various motions so that ground isn't covered two or three times.

More importantly to Traudt's case, *Smith* was instructive in discovery availability and the rights of the party being forced into arbitration under the FAA: [F]inally, staying rather than dismissing a suit comports with the supervisory role that the FAA envisions for the courts. The FAA provides mechanisms for courts with proper jurisdiction to assist parties in arbitration by, for example, appointing an arbitrator, see 9 U.S.C. § 5; enforcing subpoenas issued by arbitrators to compel testimony or produce evidence, see § 7; and facilitating recovery on an arbitral award, see § 9. Keeping the suit on the court's docket makes good sense in light of this potential ongoing role, and it avoids costs and complications that might arise if a party were required to bring a new suit and pay a new filing fee to invoke the FAA's procedural protections. District courts can, of course, adopt practices to minimize any administrative burden caused by the stays that § 3 requires. (*Smith* § II).

III.     **The controlling law in the Schwab arbitration contract is Nebraska**

Traudt has reviewed the arbitration agreement with Schwab and there are several grounds immediately identifiable as in conflict with *Smith,* but for the purposes of this motion are not needing discussion here save for one: the controlling case law in Nebraska regarding contracts.

Per the arbitration agreement ostensibly signed by Traudt with TD Ameritrade prior to being bought by Schwab in 2023, Nebraska is the controlling law. "Good faith" is a component to Nebraska contracts law:

The implied covenant of good faith and fair dealing exists in every contract and requires that none of the parties to the contract do anything which will injure the right of another party to receive the benefit of the contract. *Reichert v. Rubloff Hammond, L.L.C., 264 Neb. 16, 645 N.W.2d 519 (2002).*  See, also, *Restatement (Second) of Contracts & sect;  205 (1981); Steven J. Burton & Eric G. Andersen, Contractual Good Faith (1995).* However, the nature and extent of an implied covenant of good faith and fair dealing is measured in a particular contract by the justifiable expectations of the parties.   Where one party acts arbitrarily, capriciously, or unreasonably, that conduct exceeds the justifiable expectations of the second party. *Dunfee v. Baskin-Robbins, Inc., 221 Mont. 447, 720 P.2d 1148 (1986)*, cited with approval, *Cimino v. FirsTier Bank, 247 Neb. 797, 530 N.W.2d 606 (1995).*   A violation of the covenant of good faith and fair dealing occurs only when a party violates, nullifies, or significantly impairs any benefit of the contract.   See *Idaho Power Co. v. Cogeneration, Inc., 134 Idaho 738, 9 P.3d 1204 (2000).* The scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract.  *Carma Developers v. Marathon Dev. Cal., 2 Cal.4th 342, 826 P.2d 710, 6 Cal.Rptr.2d 467 (1992). Spanish Oaks, Inc. v. Hy-Vee, Inc. No. S-02-012(2003).*

**IV.** <u>**FINRA Declared Illegal and Discovery Impact**</u>

      FINRA is a Delaware Corporation. Under Delaware law and federal precedent, once a corporation enters receivership, its corporate officers and underlings lose the protection of lawyer-client confidentiality.  If FINRA is declared illegal, it could be placed into receivership in Delaware. The lawyer-client privilege shifts to the receiver, as established by the U.S. Supreme Court in *Commodity Futures Trading Commission v. Weintraub, 471 U.S. 343 (1985)*, which held that in corporate bankruptcy or receivership, the receiver or trustee controls the corporation's privilege.

      This would significantly simplify Traudt's discovery process by granting access to otherwise privileged communications. Such a shift would expose the internal workings of FINRA, making it easier to uncover evidence of potential misconduct. The findings could also implicate other market participants involved in related activities, expanding the scope of defendants.

**V.** <u>**Argument: Domino Theory and the Need for an Abeyance**</u>

      Traudt can check all the boxes as the party seeking the stay in these proceedings, and more importantly as the vanguard plaintiff using *Loper Bright Enterprises v. Raimondo No. 22-451, US Sup. Ct. No. 22-1219 (2024), Biden v. Nebraska US Sup. Ct. No. 22-506 (2023), SEC v. Jarkesy No. 22-859 US Sup. Ct. (2024),* and *Alpine Sec. Corp. v. Fin, Indus. Reg. Auth. No. 23-5129 (D.C. 2023)* to at least remove FINRA's immunity and at best dissolve it and have its duties properly returned to the SEC an abeyance in all other motions is timely.

      Traudt's interests (and others similarly situated) in proceeding slowly at the strategic level in this litigation are far more important than any tactical advantages gained by a flurry of motion activity. To these ends it is in Traudt's and the US public's best interests to pursue a legal

Domino Theory: should FINRA be deemed illegal, the ramifications downstream for discovery and currently filed motions would completely alter the legal terrain Traudt would have to traverse; if FINRA becomes *civiliter mortuus*, then the Schwab arbitration agreement with Traudt is null and void as either FINRA is conflicted out or the arbitration is unenforceable because it is directed to a "dead" corporate entity. (Traudt asserts that even an arbitration using "FINRA rules" is null and void for unconstitutionality because FINRA is without Congressional authority under *Loper* to craft them. Because they impact millions of Americans and it appears that arbitration agreements with brokers prejudice US citizens via discovery starvation (*Biden*'s core is that major questions effecting millions can't be left to unelected bureaucrats at an agency, let alone a private sector corporation), they are similarly sidelined.[3]

The dominoes would begin to fall rapidly after a FINRA shut down gets read into the court record:

In receivership, there'd be no hiding behind lawyer-client confidentiality in decisions made in the U3 MMTLP halt.

Other "bad actors" could be found and Traudt would vigorously apply his right and duty to make criminal referrals to the US Department of Justice of Justice under 18 UCSC 4 (Misprision of a Felony).[4]

---

[3] Traudt cannot think of a more pressing situation calling for an ALL STOP at the helm than asking the Court to wipe out a federal agency or SRO having such a huge presence in the US economy.

[4] FINRA Chief Robert Cook is already in the hotseat for the whoppers he told Congress on 31 January 2024; if FINRA Fraud VP  Sam Draddy knowingly passed on trading data on 5 December 2022 to insiders who then used it for personal gain on the UPC committee that ordered the U3 halt, he could be seeking legal counsel for something other than his next real estate closing.

Racketeer Influenced and Corrupt Organizations ("RICO") actions would of necessity be handed over to USDOJ for criminal prosecution.

Discovery of FINRA bluesheets, other tracking data, plus the introduction of the newer, higher powered Artificial Intelligence ("AI") systems could be used to harvest broad discovery data in GTS systems and identify where naked shorts were never located, erego the gestation of numerous felony charges against GTS and Rubenstein.[5]

The defendants in this matter are not prejudiced by a slight delay in proceedings and are not being asked to do anything with this abeyance except to hold station. (FINRA is the subject, solely, of the prior filings in **Traudt's Plaintiff Traudt's Motion for a Preservation Order Pursuant to FRCP 26(c) ("Preserve")** and **Plaintiff Traudt's 20 August 2024 Motion for Limited Expedited Discovery for Electronic Blue Sheets and Other Tangible Things Against Defendant FINRA ("Expedited Discovery").** Since these are part and parcel of why this abeyance is being asked for, Traudt will accept that the parts of those motions requesting the preservation of data and documents as well as the requested production of the blue sheets under seal to this court be held naturally in abeyance until the injunctive relief sought and the US Constitutional issues raised to date are dispatched with by this court.

Following into the injunction arguments, a preliminary injunction is an extraordinary remedy never awarded as of right. In each case, courts must balance the competing claims of injury and consider the effect of granting or withholding the requested relief, paying particular

---

[5] Traudt is already in negotiations with AI systems operators and believes this would come with advantages yet complexities as we enter a "brave new world" so to speak of AI; crunching data is one thing but how would the *Traudt* court handle expert witness testimony from an AI "learning machine." Pretty sure that since even the AI expert people/cyber midwives admit they don't know how machines "learn" and create their own neural networks that we will be in the Twilight Zone, legally speaking, trying to figure out how that testimony from a machine gets admitted.

regard to the _public consequences_. (emphasis added) _Winter v. NRDC, 555 U.S. 7 (2008)_ citing _Weinberger_ v. _Romero-Barcelo_, 456 U. S. 305, 312. Injunctive relief should be considered before any motions to dismiss or compel arbitration, as injunctive remedies can address imminent and irreparable harm. _Winter, Id._ Thus, Traudt requests that this Court hear the motions for injunctive relief first, as they directly affect the integrity of the proceedings and the rights of the parties involved.

Resolving the threshold issue of FINRA's immunity and regulatory authority before addressing motions to dismiss or compel arbitration will serve to preserve judicial economy. A ruling on FINRA's status could significantly streamline the litigation by reducing the potential for duplicative litigation and may render certain issues moot. By addressing this fundamental question first, the Court can avoid unnecessary litigation efforts and ensure that the case proceeds on a proper legal foundation.

Since this is the first time a U3 trading halt has been litigated, broader discovery should be favored to ensure a full and fair investigation. The Court should encourage expansive discovery _eventually and only if necessary,_ not only to aid Traudt in establishing his claims but also to reduce future burdens on other potential plaintiffs facing similar circumstances. This would also streamline potential defenses for other defendants in future cases involving similar issues.[6]

The constitutional framework established in this case could guide the voluminous litigation that is expected in the future regarding SROs and their authority. All parties should

---

[6] Traudt still believes that this case can be resolved without massive discovery nor undue burdens to defendants as the production of the blue sheets will tell the tale for the most part.

seek to ensure that the proper legal foundation is established here, as it will shape the litigation to come.

Before addressing the merits of the Defendants' motions to dismiss and Schwab's motion to compel arbitration, this Court must first determine whether FINRA has the legal authority to serve as an arbitrator or to regulate the securities industry at all. These foundational questions, along with the motion for injunctive relief, must be resolved to ensure fairness in the proceedings.

WHEREFORE, Traudt respectfully requests that this Court:

a. Hold all motions to dismiss and Schwab's motion to compel arbitration in abeyance until the Court resolves the legal questions concerning Defendant FINRA's immunity and its authority as a Self-Regulatory Organization.

b. Hear Traudt's motions for injunctive relief, as outlined in his **Reply Opposition Expedited** before addressing any other dispositive motions; and

c. Grant such other relief as the Court deems just and proper.

Dated: September 10, 2024

191 Kibling Hill Road
Strafford, VT 05072

_____
Scott Traudt, *pro se ipso*

I hereby certify that a true copy of the foregoing was sent to all named defendants and respondent at the addresses delineated below either by 1st Class mail or via email on this 10 day of September 2024.

SCOTT TRAUDT

**Ari Rubenstein/GTS Securities LLC** Atty. Jonathan R. Voegele, Morris Kandinov LLP, 4915 Mountain Rd., Stowe, VT 05672

**Ari Rubenstein/GTS Securities LLC** Atty. Aaron T. Morris, Morris Kandinov LLP, 4915 Mountain Rd.,  Stowe, VT 05672

**Ari Rubenstein/GTS Securities LLC** Atty. Jonathan Miller, Williams, Barber & Morel Ltd., Willis Tower, 233 S. Wacker Dr., Ste. 6800, Chicago, IL 60606

**Ari Rubenstein/GTS Securities LLC** Atty. Stephen Fraser, Williams, Barber & Morel Ltd., Willis Tower, 233 S. Wacker Dr., Ste. 6800, Chicago, IL 60606

**FINRA** Atty. Walter Judge, DRM, 199 Main St. POB 190 Burlington VT 054020-190

**FINRA** Atty. John P. Mitchell, Faegre, Drinker, Biddle & Reath LLP 105 College Road East 105 College Road East, POB 627 Princeton NJ 08542-0627

**Schwab** Atty. Justin Barnard, Dinse P.C. 209 Battery St., Burlington VT 05401

**Schwab** Atty. Anne B. Rosenblum, Dinse P.C. 209 Battery St., Burlington VT 05401

**Schwab** Atty. Felipe Escobedo, Morgan, Lewis & Bockius LLP One federal St., Boston MA 02110-1726

**Schwab** Atty. Jeff Goldman Morgan, Lewis & Bockius LLP One federal St., Boston MA 02110-1726

**SEC** Atty. Mike Bailey 100 F Street, NE Washington, D.C. 20549