UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| SCOTT TRAUDT,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>ARI RUBINSTEIN, GTS SECURITIES LLC, GTS EQUITY PARTNERS LLC, GTS EXECUTION SERVICES LLC, CHARLES W. SCHWAB AND CO. INC., SCHWAB HOLDINGS, INC., FINANCIAL INDUSTRY REGULATORY AUTHORITY,<br><br>　　　　　Defendants,<br><br>GARY GENSLER, US SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　　Respondent. | CASE NO.  2:24-cv-782 |

**DEFENDANT FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC.'S
MOTION TO DISMISS AND INCORPORATED
MEMORANDUM OF LAW IN SUPPORT OF MOTION**

Defendant Financial Industry Regulatory Authority, Inc. ("FINRA"), by and through its undersigned counsel, respectfully moves this Court for an order, pursuant to Rule 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure, dismissing Plaintiff Scott Traudt's ("Plaintiff") sole cause of action, a civil RICO claim,[1] against FINRA.

## I.    INTRODUCTION

Plaintiff's Amended Complaint is based upon little more than speculation and unsupported conclusions, but the key takeaway is simple: Plaintiff, along with many others, speculated on a "short squeeze" in a security ("MMTLP") traded on the over-the-counter ("OTC") market that never materialized.  Now, Plaintiff brings the latest in a series of baseless lawsuits arising out of FINRA's regulatory activities related to MMTLP trading, which seeks to blame the securities markets, its regulators, broker-dealers, and others for his own losing bet.  At bottom, the lawsuits filed by retail investors, including Plaintiff's, stem from fundamental misunderstandings of how the securities markets operate and are fueled by an online echo chamber of conspiracy theories and misinformation.

Like the other lawsuits, Plaintiff's claim against FINRA is fatally flawed for multiple independent reasons.[2]  First, this Court lacks personal jurisdiction over FINRA in this matter.

---

[1] Plaintiff styles his only cause of action against FINRA as "COUNT I: RICO 19 USCS 1961(1)(d) and 15 USCS 78((j)(b) and 78(ff) FINRA: R.I.C.O Insider Trading Under the Securities Act of 1934 at Rule 10b-5 Fraudulent Activities in Connection with the Purchase or Sales of Securities." [Amended Complaint, p. 34.]

[2] Each of the following lawsuits related to MMTLP were dismissed with prejudice against FINRA based on findings that FINRA was immune from suit.  *See, e.g.*, *Hensley v. TD Ameritrade, Inc.*, No. 23-cv-5159, slip op. (W.D. Wash. Oct. 2, 2023) (a true and correct copy of this decision is attached as Exhibit A to the Declaration of Walter E. Judge, Jr. ("Walter Dec.")); *Park v. Financial Industry Regulatory Authority, Inc.*, 2023 WL 11795601, at *3-5 (N.D. Ga. Sept. 25, 2023); *Hofman v. Fidelity Brokerage Servs., LLC*, 2023 WL 3872564, at *6-8 (C.D. Cal. May 8, 2023); *Tawil v. Financial Industry Regulatory Authority, Inc.*, 2023 WL 4353179, at *1-2 (N.D. Fla. May

Second, even if the Court could exercise jurisdiction over FINRA, Plaintiff's claim fails because FINRA is immune from suit challenging its regulatory activities. Finally, Plaintiff's claim also fails because (i) there is no private right of action against FINRA here, (ii) a RICO claim cannot be predicated on alleged acts of securities fraud, and (iii) Plaintiff fails to plead his claim against FINRA with the requisite particularity required by Rule 9(b) of the Federal Rules of Civil Procedure. For these reasons, Plaintiff's claim against FINRA should be dismissed as a matter law.

## II.     FACTUAL BACKGROUND

### A.     FINRA's Role in Regulating the Securities Industry

FINRA is a self-regulatory organization ("SRO") registered with the Securities and Exchange Commission ("SEC") as a national securities association under the Securities and Exchange Act of 1934 (the "Exchange Act"). 15 U.S.C. §§ 78a-78rr.[3] As an SRO, FINRA is part of the Exchange Act's comprehensive plan for regulating the national securities markets. *See* 15 U.S.C. §§ 78q, 78s; *Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.,* 191 F.3d 198, 201 (2d Cir. 1999). FINRA's regulatory duties are mandated by Congress and require that FINRA conduct daily regulation and administration of the national securities markets.

The Exchange Act requires FINRA to establish rules "designed to prevent fraudulent and manipulative acts and practices, to promote just and equitable principles of trade, to foster

---

24, 2023). In addition, retail investors' attempts to obtain pre-action discovery related to MMTLP have also failed. *See Khorassani v. Financial Industry Regulatory Authority, Inc.*, 2023 WL 4029701 (N.Y. Sup.Ct. N.Y. Cty. June 15, 2023); *see also Steamroller, LLC v. OTC Markets Group, Inc.*, 2024 WL 3850536 (N.Y. Sup.Ct. N.Y. Cty. Aug. 15, 2024).

[3] FINRA was formerly known as the National Association of Securities Dealers, Inc. ("NASD"). In 2007, NASD changed its name to FINRA when it merged with the regulatory operations of the New York Stock Exchange ("NYSE"). The name change does not impact the precedential value of the NASD cases or authorities cited herein.

cooperation and coordination with persons engaged in regulating, clearing, settling, processing information with respect to, and facilitating transactions in securities, . . . and, in general, to protect investors and the public interest . . . ." 15 U.S.C. § 78o-3(b)(6). FINRA's rules are "part of the apparatus of federal securities regulation." *Kurz v. Fid. Mgmt. & Rsch. Co.*, 556 F.3d 639, 641 (7th Cir. 2009). The Exchange Act also mandates that FINRA investigate and discipline member firms and their associated persons for violations of FINRA rules and the federal securities laws. *See Loftus v. Fin. Indus. Reg. Auth., Inc.*, 20-Cv-7290 (SHS), 2021 WL 325773, at *1 (S.D.N.Y.); *see also* 15 U.S.C. § 78o-3(b).

FINRA performs multiple regulatory functions to oversee the OTC market for equity securities, like MMTLP, that are not listed on a national securities exchange. For example, FINRA (i) maintains a symbol directory for OTC equity securities and, when appropriate, can issue and delete security trading symbols, *see* https://otce.finra.org/otce/symbol-directory; (ii) adopts rules regarding quoting and trading in OTC equity securities, *see* FINRA Rule 6400 Series;[4] (iii) reviews, processes, and announces information about corporate actions regarding OTC equity securities, *see* SEC Rule 10b-17, 17 C.F.R. § 240.10b-17, *see also* FINRA Rule 6490;[5] and (iv) is authorized to halt trading and quoting of OTC equity securities if FINRA determines that doing so is necessary to protect investors and the public interest. *See* FINRA Rule 6440.[6]

---

[4] The FINRA Rule 6400 Series is publicly available at https://www.finra.org/rules-guidance/rulebooks/finra-rules/6400.

[5] FINRA Rule 6490 is publicly available at https://www.finra.org/rules-guidance/rulebooks/finra-rules/6490.

[6] FINRA Rule 6440 is publicly available at https://www.finra.org/rules-guidance/rulebooks/finra-rules/6440-0.

One investigative tool available to FINRA's examination and investigative teams is the ability to request electronic blue sheet data from clearing firms ("Blue Sheet Data"). FINRA rules explicitly authorize FINRA to request Blue Sheet Data to obtain detailed transactional data regarding a specific security over a specified period of time as relevant to its investigations. *See* FINRA Rules 8211, 8213.[7] *See also* ECF No. 29-2, (Affidavit of Sam Draddy) ¶ 6 (for additional background information on Blue Sheet Data).

B.    **Procedural History and Plaintiff's Relevant Allegations**

In his Amended Complaint, Plaintiff asserts ten causes of action against six parties and names Gary Gensler and the SEC as Respondents in a mandamus action. [Amended Complaint, ¶ 1.] Plaintiff's sole cause of action against FINRA is a civil RICO claim based on alleged insider trading in violation of the Exchange Act. [*See* Amended Complaint, ¶¶ 186-195.]

Plaintiff's claim against FINRA stems from its regulatory activities related to MMTLP—a series of non-voting preferred shares issued by Meta Materials Inc. and traded on the OTC market between October 7, 2021, and December 8, 2022. [Amended Complaint, ¶¶ 54, 110.] According to Plaintiff, MMTLP was "violently shorted as it started to trade [in October of 2021] and never came off FINRA's OTC 'Threshold List' for the entirety of its brief trading history . . . ." [Amended Complaint, ¶ 32.] Nevertheless, Plaintiff alleges that he "purchased 305 shares of MMTLP at $9.62 a share on 30 November 2022 . . . ." [Amended Complaint, ¶ 43.] Shortly thereafter, Plaintiff claims that FINRA issued "intentionally erroneous" notices as trading in MMTLP was winding down in early December 2022. [*See* Amended Complaint, ¶¶ 48-54.] The notices were followed by what Plaintiff alleges to be FINRA's "illegal" U3 halt to stop trading of

---

[7] FINRA Rule 8211 is available at https://www.finra.org/rules-guidance/rulebooks/finra-rules/8211. FINRA Rule 8213 is available at https://www.finra.org/rules-guidance/rulebooks/finra-rules/8213.

the MMTLP security on December 9, 2024. [Amended Complaint, ¶ 40.] According to Plaintiff, FINRA's notices gave broker-dealers and other stakeholders an advantage allowing them to "systematically destroy MMTLP's share price with a 'short attack' wherein [they] . . . flooded the trading with counterfeit shares . . . to utterly eviscerate the possibility of a 'short squeeze' in MMTLP." [*See* Amended Complaint, ¶ 54.] And Plaintiff alleges that all of FINRA's actions were taken for "the financial gain . . . of members of the U3 trading committee [and to otherwise] . . . facilitate[] insider trading in MMTLP." [Amended Complaint, ¶¶ 188-89.]

### III.   ARGUMENT

#### A.   Legal Standard

Plaintiff bears the burden to establish jurisdiction over a defendant moving to dismiss pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. *See Elsevier Inc. v. W.H.P.R., Inc.*, 692 F. Supp. 2d 297, 313 (S.D.N.Y. 2010) ("On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff 'bears the burden of showing that the court has jurisdiction over the defendant.'") (citing *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003)).

When considering a Rule 12(b)(6) motion to dismiss, the court accepts all well-pleaded facts as true and draws all inferences in the plaintiff's favor. *See Allaire Corp. v. Okumus*, 433 F.3d 248, 249-50 (2d Cir. 2006). To survive a motion to dismiss, a complaint must contain enough facts for the allegations to be plausible on their face. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 1955, 1974 (2007).

#### B.   This Court Lacks Personal Jurisdiction Over FINRA

A court must have jurisdiction over both the parties and the claims asserted in a plaintiff's complaint to decide the case. Personal jurisdiction over a party can be obtained by establishing: (i) general jurisdiction over the party to hear any claim asserted against it in the forum; or (ii)

specific jurisdiction over the party to hear only those claims arising out of a party's activities directed at the forum.  A federal court undertakes a "two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009); *see also, In re Roman Catholic Diocese of Albany, New York, Inc.*, 745 F.3d 30, 37 (2d Cir. 2014).  Because that inquiry establishes the Court lacks both general and specific personal jurisdiction over FINRA, Plaintiff's claim against FINRA must be dismissed.

### 1. FINRA is not subject to general personal jurisdiction in Vermont.

FINRA is an out-of-state corporation that is not subject to general personal jurisdiction in Vermont.  While Vermont's long-arm statute "reflects 'a clear policy to assert jurisdiction over individual defendants to the full extent permitted by the Due Process Clause,'" *see In re Roman Catholic Diocese of Albany*, 745 F.3d at 37; Vt. Stat. Ann. Title 12 § 913(b), only certain affiliations with a forum are sufficient to establish general personal jurisdiction over a party in the forum.  *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) ("[O]nly a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there."); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (noting that a corporation is subject to general personal jurisdiction when "their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State.").  A corporation is considered "essentially at home" in two places: (1) its state of incorporation, and (2) the state in which its principal place of business is located.[8] *Daimler AG*, 571 U.S. at 137.

---

[8] A corporation's principal place of business is "the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010).  Typically, a corporation's headquarters qualifies as its principal place of business, and, as

FINRA is not incorporated in Vermont, and it does not maintain its principal place of business in Vermont. Instead, FINRA is incorporated in Delaware and its principal place of business is in Washington D.C. [*Webb v. FINRA*, 889 F.3d 853, 856 (7th Cir. 2018) (noting that "FINRA is a Delaware corporation with its principal place of business in Washington, D.C."); *see also* Amended Complaint, ¶ 5.]. Accordingly, FINRA is not at home in the forum, and the Court lacks general personal jurisdiction over FINRA.

### 2. The Court does not have specific personal jurisdiction over FINRA.

A forum may exercise personal jurisdiction over an out-of-state defendant not otherwise subject to personal jurisdiction in the forum when the defendant has "certain minimum contacts with [the State] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Goodyear*, 564 U.S. at 923 (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). In other words, there must be "some act by which the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* at 924 (citing *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). It is not enough that an act was allegedly directed at the plaintiff. Instead, to be consistent with due process, the defendant must have taken action "purposefully directed toward the forum State." *Asahi Metal Ind. Co., v. Sup. Court of Cal.*, 480 U.S. 102, 112 (1987).

---

a result, the corporation is subject to general personal jurisdiction in the courts of that state. *See OneWest Bank, N.A. v. Melina*, 827 F.3d 214, 218 (2d Cir. 2016) (noting that a corporation's principal place of business "should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination, i.e., the 'nerve center.'") (quoting *Hertz Corp.*, 559 U.S. at 93)).

Plaintiff fails to allege any facts establishing that his claims "arise[] out of or [are] related to [FINRA's] contacts with the forum [Vermont]." *See In re Terrorist Attacks on September 11, 2001*, 714 F.3d 659, 673-74 (2d Cir. 2013). In fact, Plaintiff does not allege that FINRA has or had *any* contacts with the forum. [*See* Amended Complaint, ¶ 8 (alleging that "Defendants **Rubinstein** [sic], **Schwab**, and **GTS** have sufficient local contacts via their securities businesses in Vermont to meet *de minima* standards of participation in the securities ecosystem in Vermont all the while having the resources to defend themselves in [this Court]. Defendant **FINRA has local offices in New York city** . . . .") (emphasis added/supplied?).] The Amended Complaint does include unsupported, conclusory statements such as (i) FINRA "engaged in the illegal and conspiratorial use of bluesheet data on MMTLP . . . to the financial gain . . . of the U3 trading committee that took part in the U3 trading halt in MMTLP on 9 December 2022," and (ii) "FINRA facilitated insider trading in MMTLP . . . using the insider knowledge in the form of bluesheets and access to cumulative FTD information showing there was at least 900 million short shares in MMTLP on or about 9 December 2022." [Amended Complaint, ¶¶ 188-89.] But these allegations do not establish that FINRA's conduct was directed at Vermont. Finally, Plaintiff's reliance on allegations that, as a result of FINRA's purported conduct, he "suffered financial losses, including but not limited to loss of investment value, loss of other investment opportunities, and expenses and time involved in this litigation" are insufficient to establish this Court's jurisdiction over FINRA. [Amended Complaint, ¶ 196]; *see Asahi Metal Ind. Co.,* 480 U.S. at 112 (finding that a plaintiff cannot establish specific personal jurisdiction over an out-of-state defendant by simply alleging that defendant harmed the plaintiff in the forum state).

Plaintiff has not identified any conduct to establish specific personal jurisdiction over FINRA. As a result, Plaintiff's claim against FINRA must be dismissed.

### C. Plaintiff Cannot Maintain Suit Against FINRA for Alleged Misconduct Arising Out of its Role as Regulator of the Securities Market

FINRA is immune "from suit for conduct falling within the scope of [its] regulatory and general oversight functions." *D'Alessio v. New York Stock Exch., Inc.*, 258 F.3d 93, 105 (2d Cir. 2001); *see In re NYSE Specialists Secs. Litig.*, 503 F.3d 89, 98 (2d Cir. 2007) (the application of regulatory immunity "depends only on whether specific acts and forbearances were incident to the exercise of regulatory power, and not on the propriety of those actions or inactions").

The Second Circuit recognizes that alleged misconduct concerning (1) "the enforcement of security rules and regulations and general regulatory oversight over exchange members, . . . [(2)]; the interpretation of the securities laws and regulations as applied to the exchange or its members; . . . [and]" (3) the announcement of enforcement and regulatory decisions are all examples of regulatory functions for which FINRA is immune from suit. *See Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Secs. Dealers, Inc.*, 637 F.3d 112, 116 (2d Cir. 2011) (citations omitted); *see also DL Capital Group, LLC v. Nasdaq Stock Market, Inc.*, 409 F.3d 93, 98 (2d Cir. 2006) (an SRO is immune from suit challenging the manner in which it announced regulatory decisions).

Here, the conduct in which Plaintiff alleges FINRA engaged, even if it were true, arises out of FINRA's regulatory activities. [*See* Amended Complaint, ¶¶ 186-196.] For example, Plaintiff alleges that FINRA "engaged in the illegal and conspiratorial use of bluesheet data on MMTLP by and through the offices of [Sam Draddy] at FINRA and to the financial gain . . . of members of the U3 trading committee that took part in the U3 trading halt in MMTLP on 9 December 2022." [Amended Complaint, ¶ 188.] Plaintiff further claims that: (1) "FINRA facilitated insider trading in MMTLP . . . using the insider knowledge in the form of bluesheets and access to cumulative FTD information . . ." [*Id.*, at ¶ 189.]; (2) "FINRA did not enforce Rule

204 against short position holders in MMTLP . . ." [*Id.*, at ¶ 191.]; and (3) FINRA "accept[ed] falsified paperwork in the MMTLP stock to facilitate the trading, setting the conditions . . . that justified [FINRA's] U3 halt" [*Id.*, at ¶ 195.]. These allegations, which, among other things, relate to FINRA's use of Blue Sheet Data and FTD information, the decision to issue the trading halt, and decisions related to the enforcement of securities laws, are all quintessential examples of FINRA's regulatory activities. *See, e.g., In re Facebook, Inc., IPO Sec. and Derivative Litig.*, 986 F.Supp.2d 428, 454 (S.D.N.Y. 2013) (dismissing claim against an SRO alleging its decision not to halt trading of a security was negligent on regulatory immunity grounds because "[t]he capacity to suspend trading . . . is a quintessentially regulatory function."); *In re NYSE Specialists Secs. Litig.*, 503 F.3d 89, 99 (2d Cir. 2007) (dismissing claims that SRO "violated its own internal rules" because the "enforcement (or nonenforcement) of these rules clearly implicates the quasi-governmental functions" for which an SRO is entitled to absolute immunity). Because it arises solely from quintessential regulatory activity, Plaintiff's RICO claim against FINRA is barred on immunity grounds and should be dismissed.

### D.  Plaintiff Fails to State a Claim Against FINRA

Courts have determined that it is particularly important to weed out and dispose of meritless civil RICO claims at the motion to dismiss stage because of the stigmatizing effects of such claims. *See Katzman v. Victoria's Secret Catalogue*, 67 F.R.D. 649, 655 (S.D.N.Y. 1996) ("Civil RICO is an unusually potent weapon—the litigation equivalent of a thermonuclear device. Because the mere assertion of a RICO claim . . . has an almost inevitable stigmatizing effect on those named as defendants, . . . courts should strive to flush out frivolous RICO allegations at an early stage of the litigation."). Here, Plaintiff's RICO claim fails as a matter of law because: (i) Plaintiff does not have a private cause of action against FINRA under the Exchange Act or otherwise; (ii) a RICO claim cannot be based on an alleged predicate act of securities fraud; and (iii) Plaintiff fails to

plead his RICO claim against FINRA with the requisite particularity required by Rule 9(b) of the Federal Rules of Civil Procedure.

### 1. Plaintiff has no private right of action against FINRA.

Neither the Exchange Act nor any other statute or common law principle provides Plaintiff with a private right of action against FINRA for acts or omissions in connection with its duties as a regulator. To the contrary, courts routinely hold that no private right of action exists against an SRO like FINRA for its regulatory acts or omissions. *See In re Series 7*, 548 F.3d at 114 ("By specifically adopting an appeals process which does not provide monetary relief, Congress has displaced claims for relief based on state common law."); *Desiderio*, 191 F.3d at 208 ( "[T]here is no private right of action available under the Securities Exchange Act to . . . challenge an exchange's failure to follow its own rules."); *MM&S Financial, Inc. v. NASD*, 364 F.3d 908, 911-912 (8th Cir. 2004) ("[T]he Exchange Act does not create a private right of action against NASD defendants for violating their own rules" and a party's attempt to bypass the absence of a private right of action by asserting a claim under state contract law is "fruitless."); *Spicer v. Chicago Board of Options Exchange, Inc.,* 977 F.2d 255, 259-60 (7th Cir. 1992) (no private right of action exists under the Exchange Act against an SRO for failing to enforce its rules); *Matyuf v. NASD DR, Inc.,* 2004 WL 2915304, *3 (W.D. Pa. Oct. 4, 2004) (there is no cause of action against NASD to enforce its own rules); *In re Olick*, 2000 WL 354191, *4 (E.D. Pa. Apr. 4, 2000) (a party "may not maintain a private cause of action against the NASD under the Exchange Act, or at common law, for regulatory actions taken by the NASD"); *Feins v. AMEX*, 81 F.3d 1215, 1219-1224 (2d Cir. 1996) (no private right of action exists against an SRO under Section 19 of the Exchange Act); *Meyers v. NASD*, 1996 WL 1742619, at *5 (E.D. Mich. Mar. 29, 1996) (dismissing action against

FINRA because allegations were "an unsuccessful attempt to create a private cause of action for the violation of [FINRA's] rules where none exists.").

Here, Plaintiff's RICO claim against FINRA is based on predicate acts that allegedly violated the Exchange Act. [*See* Amended Complaint, ¶¶ 186-196.] But there is no private right of action against FINRA under the Exchange Act, or otherwise, allowing Plaintiff to challenge FINRA's alleged acts or omissions in its role as an SRO.

### 2. Plaintiff's RICO claim against FINRA is barred because the alleged predicate acts sound in securities fraud.

In 1995, Congress amended the RICO Act to eliminate civil RICO claims arising out of predicate acts sounding in securities fraud (the "RICO Amendment"). *See* 18 U.S.C. § 1964(c) ("[N]o person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of [the RICO Act.]"); *see also MLSMK Inv. Co. v. JP Morgan Chase & Co.*, 651 F.3d 268, 273-74 (2d Cir. 2011). Specifically, claims of insider trading arising out of alleged violations of the Exchange Act cannot support a civil RICO claim. *See, e.g., In re Platinum-Beechwood Litigation*, 427 F.Supp.3d 395, 447 (S.D.N.Y. 2019) (dismissing RICO claims when the predicate acts were alleged violations of Section 10(b), Rule 10b-5, and Section 20 of the Exchange Act). Similarly, claims of aiding and abetting insider trading cannot support a civil RICO claim. *See, e.g., Cohain v. Klimley*, 2010 WL 3701362, at *10 (S.D.N.Y. Sept. 20, 2010) (rejecting civil RICO claim based on aiding and abetting securities fraud because the RICO Amendment "bars all RICO claims based on any conduct that could be actionable under the securities laws, including conduct that constitutes aiding and abetting securities fraud."); *Estate of Gottdiener v. Sater*, 35 F.Supp.3d 386, 396-97 (S.D.N.Y. 2014) (allegations of aiding and abetting securities fraud cannot form the basis of a civil RICO claim).

Here, Plaintiff's RICO claim against FINRA is based solely on allegations of insider trading, securities fraud, and facilitating the alleged illegal trading of a security.[9] [*See* Amended Complaint, ¶¶ 187-195.] Plaintiff's allegations against FINRA further confirm that the alleged RICO conspiracy falls squarely within the RICO Amendment's ban on claims based on "fraud in the purchase or sale of securities." For example, Plaintiff alleges, among other things, that:

- "FINRA engaged in a pattern of racketeering activity . . . by committing at least two acts of racketeering activity . . . *including* but not limited to *multiple instances of Securities Fraud.*" [Amended Complaint, ¶ 187 (emphasis added).]

- FINRA "engaged in the illegal and conspiratorial use of bluesheet data on MMTLP . . . to the *financial gain* . . . of members of the U3 *trading* committee that took part in the U3 *trading* halt . . . ." [*Id.*, ¶ 188 (emphasis added).]

- "FINRA facilitated *insider trading* in MMTLP and other transactions involving the MMTLP security using the *insider knowledge* in form of bluesheets and access to cumulative FTD information . . . ." [*Id.*, ¶ 189 (emphasis added).]

- "FINRA shared *insider information* with Defendant Schwab . . . . and . . . to at least three members of the SEC who were then able to *disseminate that information for illegal gain* and/or avoided costs to other broker-dealers, hedge funds, and banks." [*Id.*, at ¶ 190 (emphasis added).]

- "FINRA acted as the lynchpin of an *insider trading* cartel . . . ." [*Id.*, at ¶ 193 (emphasis added).]

- FINRA "accept[ed] falsified paperwork in the MMTLP stock to *facilitate the trading,*" and "covered up the misdeeds of [other defendants] related to "*overselling*" MMTLP shares. [*Id.*, at ¶ 195 (emphasis added).]

---

[9] In fact, Plaintiff's description of the RICO claim against FINRA concedes that the claim is based on allegations of Securities Fraud. [*See* Amended Complaint, at p. 34 ("FINRA: R.I.C.O *Insider Trading Under the [Exchange Act] at Rule 10b-5 Fraudulent Activities in Connection with the Purchase or Sales of Securities.*") (emphasis added).] Moreover, in Plaintiff's reply in support of his motion for expedited discovery, Plaintiff admits "RICO civil cases cannot be brought if they involve securities fraud (ostensibly, though Traudt aims to change that)." [ECF No. 36, at 24 n.22.]

Like the plaintiffs' causes of action in *In re Platinum-Beechwood Litigation*, Plaintiff's RICO claim against FINRA is barred by the RICO Amendment because the predicate acts in the Amended Complaint, as detailed above, are based on alleged violations of securities laws. And to the extent that Plaintiff alleges that FINRA "aided and abetted" the alleged securities fraud committed by other Defendants, [*see* Amended Complaint, ¶¶ 215, 220, 223, 228], such allegations cannot support a civil RICO claim against FINRA either. *See Cohain*, 2010 WL 3701362, at *10. It does not matter that Plaintiff could not otherwise assert his claim against FINRA under the Exchange Act, as explained in Section D.1 *supra*. *See Thomas H. Lee Equity Fund V, L.P. v. Mayer Brown, Rowe & Maw LLP*, 612 F.Supp.2d 267, 282 (S.D.N.Y. 2009) ("The RICO Amendment bars claims based on conduct that could be actionable under the securities laws ***even when the plaintiff, himself, cannot bring a cause of action under the securities laws***.") (emphasis added/supplied?).

Accordingly, Plaintiff's civil RICO claim against FINRA should be dismissed.

### 3. Plaintiff fails to adequately plead a civil RICO claim against FINRA.

Finally, to state a claim for civil RICO based on predicate acts sounding in alleged fraud, the plaintiff "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see also Moore v. PaineWebber, Inc.*, 189 F.3d 165, 172 (2d Cir. 1999). Plaintiff's Amended Complaint, however, lacks the requisite particularity required under Rule 9(b) of the Federal Rules of Civil Procedure. *See Gruber v. Gilbertson*, 2019 WL 4458956, at *2 (S.D.N.Y. 2019) (insider trading claims are subject to the heightened pleading requirements of Rule 9(b) "since insider trading is a species of fraud, the facts comprising the fraud must be pleaded with particularity."). In addition, to survive a motion to dismiss for failure to state a civil RICO claim, a plaintiff must plausibly plead, among other things, a sufficient pattern of alleged racketeering activity. *See DeFalco v. Bernas*, 244 F.3d 286, 320 (2d Cir. 2001); *see also*, *Cruz v.*

*FXDirectDealer, LLC*, 720 F.3d 115, 120 (2d Cir. 2013) (describing the elements of a civil RICO claim as "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.").

The Amended Complaint is devoid of factual allegations supporting any alleged predicate act of insider trading. *See In re Take-Two Interactive Sec. Litig.*, 551 F.Supp.2d 247, 309 (S.D.N.Y. 2008) (to state a claim for insider trading, a plaintiff must "(1) plead a predicate insider trading violation of the Exchange Act, and (2) allege sufficient facts showing that the defendant traded the security at issue contemporaneously with the plaintiff."). Instead, Plaintiff offers a mix of unsupported conclusions [*see, e.g.,* Amended Complaint, ¶¶ 48, 53, 67, 75, 186-195], and confusing, misinformed, and incendiary comments that fail to support a cause of action. [*See id.*, at ¶ 62 ("FINRA attempted perhaps the greatest, most brazen attempt at CYA that has ever been seen since the first investor gave medium rare rabbit legs in a dried goat stomach to some Stone Age hominid in return for future stone tool production,"), ¶ 95 ( "FINRA enforce[ed] the 'locate at some point in time when you get around to it' rules the way prostitution ordinances are enforced during the US Navy's Fleet Week in NY City.").] Therefore, Plaintiff's Amended Complaint falls far short of the heightened pleading standard in Rule 9(b).

In addition, Plaintiff's Amended Complaint fails to establish a sufficient pattern of racketeering activity, which requires a plaintiff to "allege predicate acts that are 'related' and 'amount to or pose a threat of continued criminal activity.'" *Highmore Financing Co., I, LLC v. Greig Companies, Inc.*, 2023 WL 4865722, at *5 (S.D.N.Y. July 31, 2023) (citing *DeFalco*, 244 F.3d at 320). The continuity requirement can be established by showing either (1) "closed-ended" or (2) "open-ended" continuity. *DeFalco*, 244 F.3d at 320. "Closed-ended" continuity exists when a plaintiff can demonstrate "a series of related predicate acts extending over a substantial period of time." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008); *see also,*

*H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 242 (1989) ("Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement."); *Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.*, 187 F.2d 229, 242 (2d Cir. 1999) ( "Since the Supreme Court decided *H.J., Inc.*, this Court has never held a period of less than two years to constitute a 'substantial period of time.'"). "Open-ended" continuity requires that a plaintiff show a "pattern of racketeering activity that poses a threat of continuing criminal conduct beyond the period during which the predicate acts were performed." *Spool*, 520 F.3d at 183. No threat of current or future criminal conduct exists when the source of the alleged conspiracy ends months prior to the plaintiff initiating suit.

Here, Plaintiff fails to plead either form of continuity in his RICO claim against FINRA because, as his Amended Complaint establishes, the security that was the alleged source of the insider trading conspiracy—MMTLP—has not traded since December 8, 2022, the security no longer exists, and the alleged racketeering activity did not occur over a substantial period of time. [*See* Amended Complaint, ¶¶ 48, 54]; *see also, First Capital Asset Management, Inc. v. Satinwood, Inc.*, 385 F.3d 159, 180-81 (2d Cir. 2004) (plaintiff could not establish "open-ended" continuity because the alleged bankruptcy fraud concluded years prior to the plaintiff filing suit); *El Omari v. Buchannan*, 2021 WL 5889341, at *7 (S.D.N.Y. Dec. 10, 2021) (dismissing RICO claim, in part, because the last alleged predicate act took place "approximately one year before [the complaint] was filed, which does not establish a current or future threat."); *GICC Capital Corp. v. Technology Finance Group, Inc.*, 67 F.3d 463, 466 (2d Cir. 1995) (it "defies logic to suggest that threat of continued looting activity exists when, as plaintiff admits, there is nothing left to loot."); *One World, LLC v. Onoufriadis*, 2021 WL 4452070, at *2 (2d Cir. 2021) (a scheme lasting at most 15 months could not establish "closed-ended" continuity); *Red Rock Sourcing LLC v. JGX LLC*,

2024 WL 1243325, at *18 (S.D.N.Y. Mar. 22, 2024) (five-month period over which alleged racketeering activity took place was too short to establish "closed-ended" continuity). Therefore, Plaintiff cannot establish continuity sufficient to state a civil RICO claim against FINRA under either theory.

Accordingly, Plaintiff's RICO claim against FINRA fails to meet the heightened pleading requirements under the Federal Rules of Civil Procedure, and Plaintiff's claim against FINRA must be dismissed.

E. **Permitting amendment to the Complaint would be futile**

Once a responsive pleading has been filed, the Federal Rules of Civil Procedure provide that "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). However, "it is well established that leave to amend a complaint need not be granted when amendment would be futile." *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003) (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), and quoting *Jones v. New York State Div. of Military & Naval Affairs*, 166 F.3d 45, 50 (2d Cir. 1999)); *Jones*, 166 F.3d at 50 ("a district court may properly deny leave when amendment would be futile"); *Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011) (confirming district court dismissal of complaint without leave to amend and noting that "[w]here a proposed amendment would be futile, leave to amend need not be given") (citations omitted). "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6)." *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002); *In re IBM Arb. Agreement Litig.*, 76 F.4th 74, 87 (2d Cir. 2023), *cert. denied sub nom. Abelar v. Int'l Bus. Machines Corp.*, 144 S. Ct. 827, 218 L. Ed. 2d 33 (2024) (same); *Balintulo v. Ford Motor Co.*, 796 F.3d 160, 164–65 (2d Cir. 2015) ("proposed amendment to a complaint is futile when it 'could not withstand a motion to dismiss.'") (quoting *Lucente*, 310 F.3d at 258).

Here, any proposed amendment would be futile. As an initial matter, because FINRA's only connection to this case is its regulatory activities, Plaintiff cannot state a private right of action against FINRA, as a matter of law, and FINRA is entitled to immunity. As a result, no amendment to the Complaint could cure these fatal defects. Second, because FINRA is not at home in Vermont and none of FINRA's alleged conduct occurred in Vermont, no amendments to the Complaint could establish personal jurisdiction in this Court. Because amendment to the Complaint would be futile, this Court can and should dismiss this case with prejudice. *In re IBM Arb. Agreement Litig.*, 76 F.4th 74, 87 (2d Cir. 2023), *cert. denied sub nom. Abelar v. Int'l Bus. Machines Corp.*, 144 S. Ct. 827, 218 L. Ed. 2d 33 (2024) (affirming denial of leave to amend where the complaint "could not withstand a motion to dismiss) (citations omitted); *Balintulo v. Ford Motor Co.*, 796 F.3d 160, 164–65 (2d Cir. 2015) (reiterating Second Circuit law that "[a] proposed amendment to a complaint is futile when it 'could not withstand a motion to dismiss.'") (citation omitted).

## IV.   CONCLUSION

For the foregoing reasons, FINRA respectfully requests that the Court grant FINRA's Motion, dismiss Plaintiff's sole cause of action asserted against FINRA in the Amended Complaint, and grant such other relief to which FINRA may be entitled. Furthermore, on the basis of this fully-dispositive motion to dismiss Plaintiff's claim against FINRA with prejudice and without leave to amend, Plaintiff's several pending preliminary and discovery motions (ECF Nos. 13-14 32, 37, 39) should be denied or declared moot

Respectfully submitted,

September 16, 2024                                FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC.

By:   /s/ Walter E. Judge, Jr.
Walter E. Judge, Jr.
Downs Rachlin Martin PLLC
199 Main Street, P.O. Box 190
Burlington, VT  05402-0190
Telephone: 802-863-2375
E-mail: wjudge@drm.com

John P. Mitchell, *Pro Hac Vice*
Faegre Drinker Biddle & Reath, LLP
105 College Rd. East, P.O. Box 627
Princeton, NJ  08542
john.mitchell@faegredrinker.com

*Attorneys for Financial Industry Regulatory Authority ("FINRA")*

## CERTIFICATE OF SERVICE

I, Walter E. Judge, Jr., attorney for Financial Regulatory Authority, hereby certify that on Friday, September 16, 2024, I electronically filed with the Clerk of Court the foregoing Defendant Financial Industry Regulatory Authority, Inc.'s Motion to Dismiss and Memorandum Of Law In Support Of Motion, using the CM / ECF system.  The CM / ECF system will provide service of such filing via Notice of Electronic Filing to counsel for the parties.

                              /s/ Walter E. Judge, Jr.
                              Walter E. Judge, Jr.

23032939.1