Scott Traudt
191 Kibling Hill Rd.
Strafford VT 05072
sctraudt@gmail.com
802-318-0429
Charles Schwab Account No. 7242-6548

DATE:

**Appendix I**

Charles Schwab & Co. Inc.
3000 Schwab way
Westlake, TX 76262-8104
SEC# 801-29938, 8-16514

Gentlemen:

I purchased MMTLP stock from Schwab on or about 30 November 2022.[1] On 9 December, 2022, MMTLP was subject to an extremely rare U3 trading halt authorized by the Financial Industry Regulatory Authority ("FINRA") that at this juncture appears to have been issued for reasons that are not defensible, but for our purposes here in this letter I wish to begin to understand how my shares in MMTLP were obliterated by that U3 halt on 9 December 2022, and access any and all relevant documents, data points, trading records, communications records, and other miscellaneous items that I need to assess what steps I may have to recover my investment in MMTLP.

If for any of my requests Schwab asserts privilege or any SEC or FINRA rule precluding disclosure, please cite it.

FINRA Rule 2232 requires Schwab to respond to my inquiries within the following timeframes:

- For inquiries related to account balances, positions, or transactions, you must respond within 2 business days.
- For inquiries related to account statements, confirmations, or other account-related documents, you must respond within 5 business days.
- For all other inquiries, you must respond within 10 business days.

FINRA Rule 2232 also requires broker-dealers to maintain records of all customer inquiries and responses, and to provide customers with a written acknowledgement of receipt of their inquiries. I expect this will be followed with all of my requests.

In addition to FINRA Rule 2232, Schwab may also have internal policies and procedures that require you to respond to my inquiries within a certain timeframe.

---

[1] It was actually a TD Ameritrade account at that time before Schwab merged with TDA.

1

These internal policies may be more stringent than the FINRA rule, and may task you to respond to my requests within a shorter timeframe.

### 1. My Schwab Account Information

a. When was my account opened?

b. What was my original account number?

c. Did you ever change my account number, and if so, when and why?

d. MMTLP originally appeared in my account as MMTLP. After the trade halt it appeared as a CUSIP number. What was that original CUSIP number?

e. Did you ever change the CUSIP number in my account for the former MMTLP shares? If so, when and for what purpose?

### 2. Schwab Information

a. What are Schwab's CRD (Central Registration Depository) number and CIK number?

b. Has Schwab ever had its license suspended or disciplinary action against it been taken within the last 5 years by FINRA and/or the SEC?

c. Was Schwab licensed by FINRA to legally trade in MMTLP at the time I purchased it?

d. Was Schwab allowing short selling of MMTLP to clients? And if it was allowing clients to short MMTLP, did it provide shares to trade short on 5 December 2024, 6 December 2024, 7 December 2024, and 8 December 2024?[2]

e. Did Schwab provide shares to trade long of MMTLP on 6 December 2024, 7 December 2024, and 8 December 2024?

### 3. Trading information on MMTLP – My Ownership Interest

a. For every purchase or sale of MMTLP I made, please confirm the number of shares bought/sold, when, and what the trade confirmation numbers were.

b. For every trade I made in MMTLP, please confirm who the market maker was who executed those trades for Schwab on my behalf.

c. Designate who would have been the person or persons within Schwab who would have been contacted by FINRA regarding any possible fraud in MMTLP stock?

d. For the person or persons identified in "d" above, please provide copies of any and all emails, letters, phone calls, or text messages that show or tend to show that Schwab was alerted to the possibility, probability, or certainty that there would be a U1, U2, or U3 halt in MMTLP. If the Schwab has none, please tell me that affirmatively.

e. If there had been any real or constructive knowledge by Schwab that MMTLP would be suspended or halted with a U1, U2, or U3 halt, for every communication incident for which MMTLP was discussed I would like the following:

---

[2] Did anyone *employed* by Schwab sell MMTLP short from 20 November 2022 through the Schwab?

- Date(s) of each email or letter
- Subject line(s) of each email or letter
- Content of each email or letter
- Attachments to each email or letter (if applicable)
- Date(s) and time(s) of each phone call or meeting
- Duration of each phone call or meeting
- Notes or summary of each phone call or meeting
- Any recordings or transcripts of each phone call or meeting (if applicable)
- The identity of each Schwab employee handling this information, its intended recipient, and any management review of such communications.

f. Did any Schwab employee, supervisor, administrator, trade desk person, customer service representative, owner, executive, auditor, accountant, or other personnel receive information regarding a potential U1, U2, or U3 trade halt at any time before 9 December 2022 from any of the following people either directly, indirectly, or constructively (with "constructively" being defined as seeing other information available *within the financial ecosystem* that MMTLP was to be annihilated):

    Patricia Casimates (FINRA)

    Chris Stone (FINRA)

    John Meegan (Hefren-Tillotson)

    Tom Nicholson (D.A. Davidson & Co.)

    Mathew Price (Fidelity Investments)

    Jeffrey Sheftic (Lincoln Financial)

    Joseph Iraci (Robinhood)

    Christopher Haines (Edward Jones)

    Kelly Bell (Hilltop Securities)

    Steven Paul Dapcic (Pershing LLC)

g. Did Schwab conduct an After Action Report ("AAR") or reasonable facsimile thereof to consider the implications of emails obtained by MMTLP Americans via the Freedom of Information Act (5 USCS 552) where FINRA's operational group involved in trade fraud had identified and flagged MMTLP as early as late November, 2022, that there were fraud beacons flashing in MMTLP as trade anomalies multiplied at a viral rate and broker-dealers were desperate for shares? (**See Appendix A**).

### 4. Trading information on TRCH, MMAT, and MMTLP – Prior to My Ownership Interest

Prior to my purchase of MMTLP, did Schwab ever receive and review information on the transition of the ticker TRCH ("Torchlight") into MMAT ("Meta Materials") and


subsequently into MMTLP?[3] Did this review include a review of any FINRA or SEC filings by TRCH executives and/or shareholders? If so, I would like copies of these documents. (This question assumes that Schwab traded in TRCH and MMAT. If this is not the case, please ignore this question.)

### 5. Regulatory requests

a. I would like copies of FINRA Form 211 as filed by Schwab for MMTLP.[4]

b. I would like copies of any and all regulatory reports you have on MMTLP.

c. I would like to know if Schwab oversold MMTLP and if any internal warnings about being in an oversold condition were at any time before the 9 December 2022 trading halt discussed internally. I request copies of any and all internal and external communications incidents regarding Schwab discussing in any way, shape, or form this situation.

d. If MMTLP was oversold by Schwab, how large was the overage? What exactly was the share imbalance?

### 6. Notice

At any time before 9 December 2022, did Schwab receive any information distributed to Schwab pursuant to SEC Rule 17a-3 that should have been shared with me but was not regarding the status of MMTLP?

### 7. Fiduciary duties under the "Client Agreement."

Schwab had a fiduciary obligation to attempt to recover my losses sustained in the U3 trading halt of MMTLP. Per the agreement and controlling SEC mandates, Schwab had a duty to act in my best interests and to manage my account professionally, with diligence, and with skill. This includes a duty to take reasonable steps to minimize losses.

In the context of a U3 trading halt, Schwab had fiduciary obligation to attempt to recover for losses caused by the halt by investigating the circumstances surrounding the illegal U3 halt in MMTLP to determine whether the bad actors' activities were illegal or unethical.

If this has been done, please forward any correspondence regarding this matter and any steps that Schwab has taken to recover my damages to include:

> A. *Requests of FINRA or the SEC to identify what the "event" was that FINRA stated had happened and warranted shutting down trading in MMTLP on 9 December 2022.*
>
> B. *Requests to FINRA or the SEC asking for a time when MMTLP might trade again and under what circumstances?*

---

[3] TRCH, MMAT, and MMTLP share a common CIK number with FINRA and the SEC: 1431959.

[4] This is known as the "new issue" or "initial quotation" filing that would be necessary for Schwab to even begin to trade in MMTLP.

4

C. Questions to FINRA as to why the S-1 for MMTLP stated trading would trade until 12 December 2022 but was later changed after the fact by FINRA in publicly released documents?

D. Asking FINRA if MMTLP has ever traded since 9 December 2022 on any other market, as it appears that MMTLP/MMAT/TRCH traded on FINRA's own exchange (XADF) on 17 January 2024 where approximately 2.2 million shares were traded?

E. Inquire as to why a security that should technically not exist (TRCH.US) aka "Torchlight Energy Resources Inc." (same ID number as MMAT and MMTLP) was trading in Poland on the "XTB" market as late as 24 June 2024? (**See Appendix B**). It is linked at https://www.xtb.com/int/cashstocks/trch-us[5]

Sincerely,

*[signature: Scott Traudt]*

SCOTT TRAUDT

Date:

---

[5] Is this potential evidence that TRCH/MMAT/MMTLP is being "offshored" to hide potentially hundreds of millions of knockoffs? Have you contacted FINCENS about this?

5

Non Responsive Record

# APPENDIX A

**From:** Draddy, Sam <Sam.Draddy@finra.org>
**Sent:** Monday, November 29, 2021 5:03 PM
**To:** (b)(6); (b)(7)(C) @SEC.GOV>; (b)(6); (b)(7)(C) @SEC.GOV>
**Cc:** (b)(6); (b)(7)(C) @SEC.GOV>; Casimates, Patricia <Patricia.Casimates@finra.org>
**Subject:** RE: Inquiry

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

(b)(6); (b)(7)(C) —I believe it was Patti Casimates from our Market Ops group who reached out to (b)(6);(b)(7)(C). I have included her on the email so you can reach out to her directly. Hope all is well!

Sam

Non Responsive Record

6

| | |
|---|---|
| **From:** | Boyle, Richard |
| **To:** | (b)(6); (b)(7)(C) |
| **Cc:** | Gibbon, Jay |
| **Subject:** | Meta Materials Inc. (MMAT and MMTLP) / Next |
| **Date:** | Friday, December 2, 2022 10:46:34 AM |
| **Attachments:** | image001.png |

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Good morning (b)(6); (b)(7)(C) I believe you've had conversations with FINRA's OTC Corporate Actions team regarding the above issuer and its proposed spin-off transaction. Would one of you have time on Monday or Tuesday to discuss this matter? FINRA's Market Fraud Investigations team recently received several tips that appear to have also been sent to the SEC. Below are some proposed times to discuss but we can work around your schedules if these don't work for you. Thanks.

Monday – between 11:30 ET and 2:30 ET or between 4:30 ET and 5:30 ET
Tuesday – between 4:30 ET and 5:30 ET


**Rich Boyle**

National Cause and Financial Crimes Detection Programs | 15200 Omega Drive, Suite 210 | Rockville, MD 20850
Phone: (240) 386-5008 | richard.boyle@finra.org | www.finra.org

# FINRA

Confidentiality Notice:: Information contained in or attached to this email may be non-public, privileged, or confidential. Do not use, save, or copy any of that information, and do not share it with anyone else, unless you are the intended recipient. The sender has not authorized you to save, copy, use, or share any information provided to you in error. If the sender sent you this email or any attachment by mistake, please let the sender know by replying to this email and then deleting it.

7

[Non Responsive Record]

**From:** Draddy, Sam <Sam.Draddy@finra.org>
**Sent:** Monday, December 5, 2022 9:07 AM
**To:** (b)(6), (b)(7)(C) @SEC.GOV>
**Cc:** (b)(6); (b)(7)(C) @SEC.GOV>; (b)(6); (b)(7)(C) @SEC.GOV>; Boyle, Richard <Richard.Boyle@finra.org>; Gibbon, Jay <Jay.Gibbon@finra.org>
**Subject:** RE: Inquiry

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

(b)(6) --looks like this MMAT/MMTLP matter has now hit my Fraud team's radar screen (and seemingly a lot of other radar screens as well). I know you have spoken to Patti Casimates and our General Counsel's office—but was wondering if it made sense for my Fraud team to have a conversation directly with you and your folks working on the matter so we are not duplicating efforts. We are looking at the two issuers from a fraud/manipulation angle and, in fact, bluesheeting both MMAT and MMTLP as we speak.

If you think a comparison of notes is worth a quick call—let me know a good day/time. I can set up a zoom and feel free to let me know if (b)(6); (b)(7)(C) or anyone else should be included.

Thanks (b)(6); (b)(7)(C)

Sam

[Non Responsive Record]

[Non Responsive Record]

**From:** Draddy, Sam <Sam.Draddy@finra.org>
**Sent:** Monday, December 5, 2022 9:29 AM
**To:** [(b)(6); (b)(7)(C)] @SEC.GOV>
**Cc:** Boyle, Richard <Richard.Boyle@finra.org>; Gibbon, Jay <Jay.Gibbon@finra.org> [(b)(6); (b)(7)(C)] [(b)(6); (b)(7)(C)] @SEC.GOV>
**Subject:** RE: Inquiry

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

[(b)(6), (b)(7)(C)] I sent you and [(b)(6); (b)(7)(C)] the zoom invite for 1pm today. Look forward to talking to you.

[Non Responsive Record]

9



11