UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| SCOTT TRAUDT, | \* | |
| Plaintiff | \* | |
| | \* | |
| v. | \* | Docket Number: 2:34-cv-782 |
| | \* | **JURY TRIAL DEMANDED** |
| ARI RUBINSTEIN | \* | |
| Defendant | \* | 1st Amended Complaint |
| | \* | |
| GTS SECURITIES LLC | \* | |
| GTS EQUITY PARTNERS LLC | \* | |
| GTS EXECUTION SERVICES LLC | \* | |
| Defendant | \* | |
| | \* | |
| CHARLES W. SCHWAB AND CO. INC. | \* | |
| SCHWAB HOLDINGS, INC. | \* | |
| Defendant | \* | |
| | \* | |
| FINANCIAL INDUSTRY | \* | |
| REGULATORY AUTHORITY | \* | |
| Defendant | \* | |
| | \* | |
| GARY GENSLER | \* | |
| US SECURITIES AND EXCHANGE | \* | |
| COMMISSION | \* | |
| Respondent | \* | |
| | \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### PLAINTIFF TRAUDT'S REPLY DEFENDANT FINRA'S OBJECTION TO EXTRA PAGES

NOW COMES Scott Traudt ("Traudt") in the instant matter and does hereby move this

Court grant extra pages in Traudt's replies and filings. For cause:

1

Defendant's all have virtually unlimited resources and the facts stated against them in this lawsuit all have had virtually unlimited horrific financial, legal, and personal consequences for the 65,000 investors in MMTLP.[1]

FINRA get emotional over a few extra pages that can be read at about 3 minutes a page even by someone who attended an Ivy League school. Others read them a little faster at about 2 minutes a page. In the brief in question, written by a non-lawyer, this is no undue burden. Traudt points to what FINRA calls unnecessary historical arguments involving a battle in the US Revolutionary War (a battle in Narragansett Bay, RI in 1772) which was a flashpoint for much the same reasons Traudt points out FINRA's operations and existence are abhorrent today: the national government back then was given to using brute force and private corporations to enforce its rule with dire consequences for the colonists and to extend favoritism to its own favored corporate interests. FINRA never got the memo nor was bright enough to see the historical parallels.

Every court ruling or decision Traudt has seen of substance where lawsuits are dismissed at the gate seem almost entirely to hinge on some "failure to raise the issue" or "insufficiently plead allegations" or some other legal situation where a "t" wasn't crossed or an "i" wasn't dotted. In particular in securities cases, there is a "heightened" (and Traudt would argue unconstitutional) pleading standard Traudt has to meet, and in RICO cases the burden to state with specificity is even more onerous. If Traudt runs over a few

---

[1] There have been at least two suicides – both US military veterans – over their losses in MMTLP. Traudt and other folks involved in MMTLP have talked people out of ending their lives over this situation in MMTLP while FINRA's attorney condescendingly states we all invested for a short squeeze that "never materialized." There's 6 billion barrels (roughly) of oil in the Orogrande (Texas) field that Next Bridge Hydrocarbons owns and MMTLP holders were supposed to be owners of as investors.

pages, it's about preserving the record and not leaving any stone unturned. Whereas Defendant FINRA ("FINRA") merely files the same motions over and over again (in different cases) using the same arguments (one can almost see the old Xerox ink marks in their filings) and is filling up this Court's files with multiple prints of other cases - *Hensley v. TD Ameritrade et. al.* No. 3:23-cv-05159 US District Court Western District of Washington at Tacoma (2023) for example - related to the MMTLP situation that are contextually different from *Traudt* in the wake of *Securities and Exchange Commission v. Jarkesy* US Supreme Court No. 22-859 (2024)*, West Virginia v. Environmental Protection Agency* US Supreme Court No. 20-1530 (2022)*, Alpine Sec. Corp. v. Fin. Indus. Regul. Auth.* D.C. Cir. No. 23-5129 (2023)*, Loper Bright Enterprises v. Raimondo* US Sup. Ct. No. 22-451*,* No. 22-1219 (2024), and *Biden v. Nebraska* US Sup. Ct. No. 22-506 (2023)*,* Traudt is trying to call attention to the major constitutional issues, the destruction of evidence by Defendant Schwab, and the obvious destruction of evidence by FINRA. FINRA's whining about too many pages being filed by Traudt comes against the backdrop of the spoliation of evidence by Schwab and FINRA and the potential perjury and obstruction of justice charges that FINRA VP Sam Draddy may face if properly cross examined for the affidavit submitted in *Henseley* and *Traudt*.  All of this has happened *pre-discovery*.  There are additional arguments to bring to bear, however.

    In both of FINRA's replies to Traudt's **Motion for Expedited Limited Discovery ("ELD")**  and **Motion for a Preservation Order Pursuant to FRCP 26(c) ("Preserve")** FINRA twice mentioned it would raise immunity as a defense, did a basic outline of this defense,  and elaborated on other defenses it would raise. Traudt isn't a lawyer but knows from reading caselaw that every time an antagonist raises an issue, if

you ignore it the Court can "deem it admitted" or "by his silence acquiesced" or "waived any objection." Out of an abundance of caution, Traudt took the bait and challenged FINRA's immunity defense early thus preserving the issue for appeal.

One should view Traudt's filing as it was intended not only to make sure Traudt covered the waterfront on the initial Constitutional issues but also in the interests of judicial economy; he has filed a **Motion to Hold All Motions to Dismiss and to Stay Proceedings** to deal with his Constitutional challenges to not have duplicitous filings later.

**1. Matters outside the pleadings from FINRA are attempts to mislead the court**

FINRA says Traudt is an experienced *pro se* litigator and Traudt has a little more experience than most in court rooms. Yes, Traudt has won a recent case using 18 USCS 1030 (the "Computer Fraud and Abuse Act") in 2021 and is proud of it, but the way FINRA has mentioned Traudt's legal dust ups is completely disingenuous.[2]

FINRA tries to paint Traudt as some litigious criminal, more than likely because their need to sully Traudt in the court has a photo negative in their lack of (now) viable arguments to keep FINRA from being shut down.

A quick look at FINRA's legal proceedings referenced as being negative:

a. *Traudt v. Daimler-Chrysler, Civ. No. 04-53* (D. Vt. June 30. 2004). The ground truth: Traudt filed an action to force a major car manufacturer to recall defective pickup trucks after his pregnant wife and himself were seconds away from tragedy on Christmas Day, 2003. Traudt's 2003 Dodge Dakota pickup truck's fuel system started smoldering

---

[2] Traudt defeated Sheehey, Furlong, & Behm P.C., 30 Main St., 6th Floor, Burlington, VT 05402-0066 in the matter of *Scott Traudt v. Comcast Xfinity*, CANO: 20-CV-00844 in June, 2021.

(after major ball joint repairs in the steering system had just been done) at the fuel tank at a gas station while filling it up. Traudt yanked his wife out of the vehicle and disabled the electrical system to stop a mini-Hiroshima at a gas station in Enfield, NH. The result of the lawsuit? The case ended and Traudt got the vehicle purchased back by Dodge after local counsel was engaged. Dodge shortly thereafter issued a recall on these vehicles based in part on the local and national attention Traudt's lawsuit received.

*Traudt v. Roberts 1:10-CV-00012 (D. N.H. 2010)*. Traudt filed a civil rights action under 42 USCS 1983 again *pro se* against a police department. Traudt used the proceedings and discovery to find out that the police department and a prosecutor had withheld *Brady v. Maryland* (373 US 83) (1963) evidence in Traudt's criminal trial in October 2008. The evidence eventually led *10 years later* to a successful *coram nobis* decision in January, 2023 in the trial court and before the trial judge that overturned a criminal conviction for assault on a police officer (that never happened) and disorderly conduct (that never happened).[3] Traudt, represented by competent counsel again in US District Court, New Hampshire (Manchester), just prevailed on a partial motion to dismiss (18 September 2024) in another 42 USCS 1983, 1985, 1988 action against these same crooked cops and police chiefs.[4] ( Traudt's *habeas corpus* filing in *Traudt v. NH*

---

[3] *Coram nobis* wins for criminals are exceedingly rare at any level. Traudt's victory was nothing short of a miracle in having the best criminal lawyer using a profound NH Supreme Court ruling that went far in balancing the scales after years of police departments hiding records on crooked, violent cops.

[4] See *Scott Traudt v. Lebanon Police Department* Civ. 23-cv-500-LM-TSM. Nothing puts a steel rod in a man's back and leaves him with ZERO tolerance for both corruption in public officials and abuse of Americans by bureaucratic despots such as exist in FINRA like doing a year in prison as an innocent man and then living 15 years as a convicted felon.

*Atty. Gen* 1:13-CV-00234 D. N.H. (2013) was denied because Traudt was no longer incarcerated.)

*Traudt v. Huntress Inc.* 1:03-CV-00241 (D.R.I. 2003). Traudt volunteered to be the lead Plaintiff in a class action brought by sailors against an employer that was forcing commercial fishermen aboard freezer trawlers to sign blank employment agreements. The men were subject to arbitrary pay scales by the employer, so Traudt again took action.

*Traudt v. Hard Bottom Fisheries Inc.* 1:03-CV-12015 (D. Mass. 2003). Traudt used a Boston law firm to sue a fishing boat after sustaining a severe shoulder injury during offload operations. Per admiralty law, the vessel's insurer said while recovering from his injuries, Traudt could only receive $15 a day as "maintenance" per the Jones Act (46 USCS 31004). When it was obvious Traudt was going to be out on the street forced to live on this insane amount, he hired competent admiralty lawyers out of Boston and prevailed.

*Traudt v. Traudt* No. 21-AP-200 (2022) was a divorce proceeding, so whatever relevance FINRA claims it has to the instant matter may be slight, but it does show that FINRA is really reaching to mention a divorce case in the context of defending itself from fraud, perjury by its employees, market manipulation, insider trading, securities fraud, money laundering…etc…etc…if this is part of FINRA's legal strategy then obviously the cardiovascular health of its attorneys is above reproach from the amount of ambulance chasing they perform.

*Fayle v. Traudt* A. 2d 58 (2003) was unique, however;  a lawyer Traudt hired didn't do his job for 2 years and Traudt  fired him. He sued Traudt. Traudt countersued. The attorney  got nothing and was made to look like an idiot in court, destroying his legal

6

career but also saving other folks from the heart ache of hiring him for his core competencies of delay, late filings, poor legal research, and lack of diligently representing his clients.

**2. Public interest litigation**

In 1999, Traudt sued a local town, police department, NBC, and others in *Traudt v. Town of North Providence* (July 1999) in US District Court for the District of Rhode Island) to stop illegal gun buybacks sponsored by a local police department. 1100 guns were turned in. 900 made it to the smelter. The local *carbinieri* – true to form – stole the other 200 weapons that were valuable WW2 and Korean War bring backs the widows of US military veterans brought to dispose of and who did not know their value. The cops gave the women $50 for each classic firearm, some of them valued at or near $1,000 a weapon. Traudt sued to stop it. The federal judge dismissed the case on standing issues but nonetheless thanked Traudt for calling attention to the rampant violations of the Gun Control Act of 1968 inherent in the "gun buybacks." In his dismissal ruling, the judge told the feds that enough is enough and to knock it off as the feds were putting up Housing and Urban Development ("HUD") money for the buys. HUD Director Andrew Cuomo ceased the buybacks shortly after the dismissal.

When a computer hacker with some horsepower tried to hack Traudt's computer in June 2020, Google, Yahoo, and Traudt's intrusion shields caught the attempt and retrieved the internet protocol ("IP") number for the hack. Geo-locate tools identified the locus of the attack…and off Traudt went into Orange County Superior Court after identifying that Comcast-Xfinity internet services provided the hacker with internet service. After a six month court battle, Traudt was able to successfully get a court order

forcing the release of the identity of the hacker – and it was the IT department of Novo Nordisk ("Novo"), a biotech/weapons multinational corporation in Lebanon, NH. Bad operators in Novo were attempting to hack people throughout the Upper Valley. See *Scott Traudt v. Comcast Xfinity*, CANO: 20-CV-00844.

Consider that Traudt has done all this *pro bono* work in preventing unsafe vehicles from rolling down the roads, stopping crooked cops from stealing weapons and laundering them into the black/gray market in violation of federal law, and stopped a high-octane hack attack throughout Vermont and New Hampshire. FINRA would argue that Traudt does all this for personal gain; Traudt would argue that he's out at least $20,000 in missed fishing trips and court fees to get it all done. Traudt wagers that the soccer team of lawyers Traudt is facing in this case combined haven't done $20,000 in pro bono work in the last few years.

### 3. Character counts

If there was only one reason why this court should not listen too long to FINRA's brevity arguments (where, after all, they have gone 656 days without explaining why MMTLP was halted and deleted), especially since they felt comfortable bringing up Traudt's prior legal entanglements, perhaps the one case they ignored was ignored precisely because it illustrates the difference between Brand-X (FINRA, GTS, Rubenstein, and Schwab) and the MMTLP shareholders in terms of character.

During testimony on 4 November 2022 in Grafton County Superior Court, NH during Traudt's *coram nobis* hearing that eventually overturned his convictions, the Grafton Attorney initialized a line of inquiry as to why Traudt didn't come to the court in 2018 with information he'd learned about a cop's disciplinary history. The information was

explosive, and it had been withheld at Traudt's criminal trial by the cops and the prosecutor. In fact, the prosecutor told the jury that cops were squeaky clean, had not even a hint of impropriety in their records, and not so much a single complaint against them.

It was all a lie.

Officer Richard Smolenski had been suspended for having an illicit sexual relationship with an 18 year old woman that started when she was 17. He threatened a woman who was going to expose it. He attempted to cover his tracks. NH State Police did the investigation, and he was busted in rank and suspended. He ate a "conduct unbecoming an officer" hit to his record.

Sure, prosecutor, that sounds like no complaint or bad mark on his record…

Officer Phil Roberts (now the police chief in Lebanon, NH) had led a drunken home invasion in Hartford, Vermont in April 2002. A man was injured and humiliated. The drunken cops beat him and "fake raped" him. Two cops were suspended.

Neither of these two incidents were given to Traudt's defense counsel before trial despite *Brady* requests.

Traudt could have cleared himself and ended the misery of his felony conviction in 2018 if he burned the young woman by naming her when he asked for court appointed counsel. But the information on the relationship between Smolenski and the girl was nebulous at best – Traudt had her name and age, but out of an abundance of caution didn't want to use it because he had a great fear that this locally notorious police department may have coerced her into sex with a bad bust or some other black mail.

It happens all the time. So Traudt had the Devil's Catch-22: *he could have freed himself by destroying someone else's life.* Traudt chose to stay a convicted criminal even if at that point that might have been his last chance to clear his name and salvage his life.

Flash forward to 4 November 2022: the *coram nobis* hearing.

> **Traudt:** Well, there were -- as -- after my conviction and after a year in prison, I got out, and I started asking around Lebanon, talking to different people, different people in the community, police officers that had been in the Lebanon PoliceDepartment, and other individuals that might have had knowledge of the inner workings of Lebanon Police Department. And it turned out that there was a chorus of whispers,we'll call it, that he had had a profound disciplinary involving a minor. And I never was able to get the core of it. I was -- you know, I -- I tried as -- as hard as I couldto get people to go on the record, to give me an affidavit, to give me a statement under oath of some kind, to -- to – to allow me to try and unravel this, the -- the -- the ball ofyarn on that, that -- that -- that situation. And it took years and years and years. Finally, I got to one woman who gave me the names and had a very, I would say, inside knowledge onto exactly the character and the event -- disciplinary event that he was found guilty of and suspended for.
>
> **Attorney Bedrick:** Did you request records related to that?
>
> **Traudt:** For years, I've requested records.

The hearing continued, and Traudt stated exactly why "character counts:"

> **Attorney Bedrick:** And between these affidavits, the interrogatory

10

answer, and the deposition, and the rumors, did you have any other -- oh, and interview with one person who wouldn't go on the record, did you have any idea of what was in --

**Traudt:** I had a -- yes.

**Attorney Bedrick:** The disciplinary file of Richard Smolenski?

**Traudt:** Well, in this -- I did. And what happened was that's what led to me getting -- frankly, *I did not want to throw a young woman under the bus when it became obvious that she might have been a minor when the affair started.*

## 4. Conclusion

For all of the above, Traudt states he will do better to keep his filings shorter. On critical issues of professional responsibility, duty, and honor, Traudt is a direct opposite of his administrative self.

A few extra pages won't hurt and in the long run will aid in justice being done. After what Traudt has been through in the US legal system, he shouldn't even be here at all. Anyone else would be jaded and would be correct to believe the US court system is profoundly flawed and a "rich man's game." Traudt still trusts it all. And finally, FINRA opened the door on Traudt's history. Traudt now closes that door.

Dated: September 24, 2024

Scott Traudt, *pro se ipso*
191 Kibling Hill Road
Strafford, VT 05072

11

I hereby certify that a true copy of the foregoing was sent to all named defendants and respondent at the addresses delineated below either by 1st Class mail or via email on this 24 day of September, 2024.

SCOTT TRAUDT

**Ari Rubenstein/GTS Securities LLC** Atty. Jonathan R. Voegele, Morris Kandinov LLP, 4915 Mountain Rd., Stowe, VT 05672

**Ari Rubenstein/GTS Securities LLC** Atty. Aaron T. Morris, Morris Kandinov LLP, 4915 Mountain Rd., Stowe, VT 05672

**Ari Rubenstein/GTS Securities LLC** Atty. Jonathan Miller, Williams, Barber & Morel Ltd., Willis Tower, 233 S. Wacker Dr., Ste. 6800, Chicago, IL 60606

**Ari Rubenstein/GTS Securities LLC** Atty. Stephen Fraser, Williams, Barber & Morel Ltd., Willis Tower, 233 S. Wacker Dr., Ste. 6800, Chicago, IL 60606

**FINRA** Atty. Walter Judge, DRM, 199 Main St. POB 190 Burlington VT 054020-190

**FINRA** Atty. John P. Mitchell, Faegre, Drinker, Biddle & Reath LLP 105 College Road East 105 College Road East, POB 627 Princeton NJ 08542-0627

**Schwab** Atty. Justin Barnard, Dinse P.C. 209 Battery St., Burlington VT 05401

**Schwab** Atty. Anne B. Rosenblum, Dinse P.C. 209 Battery St., Burlington VT 05401

**Schwab** Atty. Felipe Escobedo, Morgan, Lewis & Bockius LLP One federal St., Boston MA 02110-1726

**Schwab** Atty. Jeff Goldman Morgan, Lewis & Bockius LLP One federal St., Boston MA 02110-1726

**SEC** Atty. Mike Bailey 100 F Street, NE Washington, D.C. 20549