## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| SCOTT TRAUDT,<br>　　　　　　Plaintiff,<br><br>　　　　v.<br><br>ARI RUBENSTEIN,<br>GTS SECURITIES LLC,<br>GTS EQUITY PARTNERS LLC,<br>GTS EXECUTION SERVICES LLC,<br>CHARLES W. SCHWAB AND CO. INC.,<br>SCHWAB HOLDINGS, INC.,<br>FINANCIAL INDUSTRY REGULATORY<br>AUTHORITY,<br>　　　　　　Defendants,<br><br>GARY GENSLER,<br>US SECURITIES AND EXCHANGE<br>COMMISSION,<br>　　　　　　"Respondent" | Case No. 2:24-cv-782 |

## CHARLES SCHWAB & CO., INC. AND SCHWAB HOLDINGS, INC.'S MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT

Pursuant to Rules 9 and 12 of the Federal Rules of Civil Procedure, Defendants Charles Schwab & Co., Inc. and Schwab Holdings, Inc. (collectively, "Schwab") submit this motion seeking dismissal with prejudice of all claims asserted against Schwab in Plaintiff Scott Traudt's ("Plaintiff") amended complaint (Dkt. No. 4).

## I.     SUBJECT TO MOTION TO STAY IN FAVOR OF ARBITRATION

This motion is submitted without waiver of, and subject to, Schwab's earlier motion to stay in favor of arbitration.  Dkt. No. 8.  Under *Smith v. Spizzirri*, 601 U.S. 472 (2024), Section 3 of the Federal Arbitration Act "overrides any discretion a district

court might otherwise have had to dismiss a suit when the parties have agreed to arbitration." *Id.* at 477; *see also* 9 U.S.C. § 3. Thus, a motion to stay in favor of arbitration may no longer be viewed as equivalent to a Rule 12 motion to dismiss. It would seem that a motion under 9 U.S.C. § 3 still should operate automatically to postpone an obligation to respond to a complaint pursuant to Rule 12. However, given the newness of the *Spizzirri* decision, Schwab is submitting this motion while its motion to stay remains pending before the Court in order to eliminate any later question as to whether this motion was timely filed.

## II.   **INTRODUCTION**

Plaintiff's Amended Complaint regurgitates a conspiracy theory that has received widespread press attention[1] and that multiple other courts have held insufficient to state any cognizable claim.[2] Insofar as it even tangentially involves Schwab, Plaintiff's voluminous Amended Complaint boils down to the following:

1.     On November 23, 2022, a company called Meta Materials announced that its previously-disclosed plans to cancel a class of previously issued preferred shares, which had traded under the symbol "MMTLP," would become effective as of December 14, 2022. In exchange for each to-be-cancelled MMTLP share, holders of

---

[1] *See, e.g.*, Alexander Osipovich, *How the Stock Ticker MMTLP Became an Anti-Wall Street Rallying Cry*, Wall St. J. (June 7, 2023, 10:00 AM) https://www.wsj.com/articles/how-the-stock-ticker-mmtlp-became-an-anti-wall-street-rallying-cry-3e2a512a (last accessed Oct. 7, 2024); Eva Su, Cong. Rsch. Serv., IN12228, *Meme Stock MMTLP and FINRA Trading Halt* (2023) (available at https://crsreports.congress.gov/product/pdf/IN/IN12228).

[2] *See, e.g.*, *Park v. Fin. Ind. Regul. Auth., Inc.*, No. 2:23-CV-69-RWS, 2023 WL 11795601 (N.D. Ga. Sept. 25, 2023); *Hofman v. Fid. Brokerage Servs., LLC*, No. 2:23-cv-881-MSC-PVC, 2023 WL 3872564 (C.D. Cal. May 8, 2023).

record as of December 14, 2022, would receive one share of common stock in a new company called Next Bridge Hydrocarbons.  Am. Compl. ¶¶ 42, 48–49.

2.      Subsequent to that announcement—and trading solely on his own volition, without any recommendation or advice from Schwab or TD Ameritrade[3]—on November 30, 2022, Plaintiff spent $2,934.95 to buy 305 shares of MMTLP, on the over-the-counter ("OTC") market.  Am. Compl. ¶ 43.  He effectuated the purchase through his account at TD Ameritrade.  *Id.*

3.      Ten days later, effective December 9, 2022, FINRA—which is a regulator responsible for the orderly operation of the OTC market—halted trading in MMTLP.  *See* Am. Compl. ¶ 63.

4.      Traudt does not allege that he tried to sell his MMTLP holdings before the December 9 trading halt, nor that he had any plans to do so had the halt not occurred.

5.      Traudt merely alleges that the real value of his 305, un-tradable MMTLP shares on December 9, 2022 should have been $1,220,000.  These are the same shares he had bought for less than $3,000 ten days earlier.  Am. Compl. ¶ 78.[4]

---

[3] The Charles Schwab Corporation acquired TD Ameritrade Holding Corporation and its subsidiaries in October 2020.  *See* Dkt. No. 8-4.

[4] There were 165,470,000 shares of MMTLP outstanding at the time.  Given Traudt's supposition, those shares would have been worth a combined $660 *billion*.  Meta Materials' book value as of its then most-recent Form 10-Q was under $400 million.  In other words, Traudt contends that the MMTLP shares should have traded for approximately 1,700 times their issuer's book value.  (Meta Materials also had outstanding common stock.)

6. Traudt contends that Schwab acted wrongfully in allowing other customers to short MMTLP shares. Am. Compl. ¶ 200. However, Traudt does not explain how other customers' short selling could have caused him harm. Traudt also seems to suggest that Schwab, itself, held a short interest in MMTLP. *See* Am. Compl. ¶ 201. However, Traudt offers no facts remotely supportive of that supposition, and could not.

7. Traudt also complains that, in 2023, he had a supposedly revelatory telephone conversation with a Schwab call center representative, and that Schwab has declined to provide him with a recording of that conversation. Am. Compl. ¶¶ 100–02. Traudt does not allege that he bought or sold any security as a result of the 2023 conversation.

These allegations fail to state any legally-cognizable claim against Schwab, much less a claim under the heightened pleading standards that govern private claims under the federal securities laws. *See* 15 U.S.C. § 78u-4(b). Claims under the securities laws, such as Traudt's, require the plaintiff, "with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *See* 15 U.S.C. § 78u-4(b)(2)(A). That legally bars allegations based on surmise and "belief," such as the allegations Traudt forwards here. Federal law also requires that any securities fraud complaint allege *how* the defendant's allegedly wrongful actions directly caused the plaintiff's loss. *See* 15 U.S.C. § 78u-4(b)(4). Traudt makes no effort to do so. The same statute prohibits plaintiffs from seeking damages based on

hypothetical valuations, such as Plaintiff's theory here that his $3,000 purchase should have resulted in $1,220,000 in profits. *See* 15 U.S.C. § 78u-4(e). Federal securities laws also preclude Traudt from disguising his securities fraud claims as RICO claims—and Traudt would fail to state any RICO claim even without that prohibition.

Traudt makes only one other federal claim, under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(g). That claim is dead in the water for two reasons. First, it allows a private right of action only when out-of-pocket damages exceed $5,000—which Traudt's do not. Second, the CFAA is limited to recompensing damage to computers or computer files, which Traudt does not allege.

This leaves only Traudt's state law claim. The Court would normally lack jurisdiction over that claim, because Traudt's alleged damages are too small to qualify for diversity jurisdiction. Nonetheless, the Court may exercise its supplemental jurisdiction to dismiss the state securities fraud claim for substantially the same reasons that the federal securities claims fail, and, additionally, because Traudt fails to plead facts sufficient to bring Schwab within the reach of the state statute.

As Schwab has previously explained, this action belongs in arbitration. Dkt. No. 8. However, if the Court were to consider the sufficiency of the Amended Complaint, all of Plaintiff's claims against Schwab must be dismissed.

## III.   RELEVANT FACTUAL BACKGROUND

On July 14, 2024, Plaintiff filed his initial Complaint against Defendants Ari Rubenstein, GTS Securities LLC, GTS Equity Partners LLC, GTS Execution Services LLC; Charles Schwab & Co., Inc. and Schwab Holdings, Inc.; and the Financial

5

Industry Regulatory Authority ("FINRA"). Plaintiff simultaneously filed a mandamus action, listing the Securities and Exchange Commission and its Chairman, Gary Gensler, as Respondents.[5] *See* Dkt. No. 1. Plaintiff then filed an Amended Complaint on July 24, 2024, adding a securities fraud claim against Schwab under state law. *See* Dkt. No. 4.

Plaintiff's claims stem from stock trading of "MMTLP," a series of non-voting preferred shares of Meta Materials Inc. that were traded over-the-counter between October 7, 2021 and December 8, 2022. Am. Compl. ¶¶ 54, 110. In the Amended Complaint, Plaintiff alleges that in October 2021, MMTLP "immediately became violently shorted as it started to trade." *Id.* ¶ 32. Plaintiff "purchased 305 shares of MMTLP at $9.62 a share on 30 November 2022 from [TD Ameritrade] for a total of $2,934.65." *Id.* ¶ 43.

Plaintiff alleges that FINRA issued "intentionally erroneous" notices as MMTLP trading was winding down in early December 2022. *See id.* ¶¶ 48–54. Plaintiff also alleges that FINRA "illegally" issued a U3 halt to stop trading of the MMTLP security on December 9, 2022. *Id.* ¶ 40. In Plaintiff's conception, FINRA's notices permitted broker-dealers to "systematically destroy MMTLP's share price with a 'short attack' wherein [they] . . . flooded the trading with counterfeit shares . . . to utterly eviscerate the possibility of a 'short squeeze' in MMTLP." *Id.* ¶ 54.

---

[5] Plaintiff has since voluntarily dismissed the mandamus action against Chairman Gensler. *See* Dkt. No. 63.

Plaintiff alleges that Schwab was a part of this "short attack," vaguely asserting that he possesses unpled "circumstantial evidence" of a conspiracy between Defendant Rubenstein and a Schwab representative. *Id.* ¶ 28.  Plaintiff also alleges that the U3 halt in trading has damaged him in the amount of "roughly $4000 a share" of MMTLP. *Id.* ¶ 78.  Plaintiff further alleges that he spoke with an individual at TD Ameritrade who claimed that the U3 halt was done in an effort "to protect ourselves." *Id.* ¶ 86.[6]  According to Plaintiff, FINRA also "shared insider information" with Schwab for "illegal gain and/or [to] avoid[] costs." *Id.* ¶¶ 188–89.

Plaintiff seeks to bring the following claims against Schwab: (1) civil RICO under 18 U.S.C. §§ 1962(a) and 1962(c), and RICO conspiracy under 18 U.S.C. § 1962(d) (Counts II, III, and VI); (2) securities fraud in violation of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b)), and Rule 10b-5 thereunder (Count IX); (3) securities fraud in violation of the Vermont Uniform Securities Act, 9 V.S.A. § 5501 *et seq.* (Count X); and (4) violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030(g) (Count VIII).  For the reasons that follow, each claim must be dismissed.

---

[6] Plaintiff claims that, since having that conversation, he has been unsuccessful in recovering recordings on that conversation and other records related to his account from Schwab. *See* Am. Compl. ¶¶ 100–02.

## IV.   ARGUMENT

### A.   Legal Standards

#### 1.   Rule 12(b)(6)

When considering a Rule 12(b)(6) motion to dismiss, the court accepts all well-pleaded facts as true and draws all reasonable inferences in the plaintiff's favor.  *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).  To survive a motion to dismiss, the complaint must contain enough facts for the allegations to be plausible on their face.  *See Cunningham v. Cornell Univ.*, 86 F.4th 961, 972 (2d Cir. 2023) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

#### 2.   Rule 9(b)

Additionally, when a plaintiff's allegations sound in fraud, the claim must be alleged with particularity.  Under Rule 9(b), a plaintiff must "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 403 (2d. Cir. 2015).  Rule 9(b) is "rigorously enforce[d]" in order to "provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from improvident charges of wrongdoing, and to protect a defendant against the institution of a strike suit."  *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 25 (2d. Cir. 2016).

### B. <u>Plaintiff Fails to State a Claim Against Schwab</u>

In the Amended Complaint, Plaintiff fails to state viable claims against Schwab. Accordingly, they must be dismissed.

### 1. Civil RICO Claims (Counts II, III, and VI)

As some courts have described, civil RICO is "'an unusually potent weapon—the litigation equivalent of a thermonuclear device.'" *Flexborrow LLC v. TD Auto Fin. LLC*, 255 F. Supp. 3d 406, 414 (E.D.N.Y. 2017) (quoting *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y. 1996)). Given the stigmatizing nature of these claims, courts endeavor to "flush out frivolous RICO allegations at an early stage of the litigation," *Katzman*, 167 F.R.D. at 655, as plaintiffs "almost always miss the mark" with civil RICO claims, *Flexborrow*, 255 F. Supp. 3d at 414. *See also Gross v. Waywell*, 628 F. Supp. 2d 475, 479–83 (S.D.N.Y. 2009) (in surveying 145 civil RICO cases filed in the Southern District of New York between 2004 and 2007, finding that all thirty-six cases resolved on the merits resulted in judgments against the plaintiffs).

For years, it has been established that civil RICO claims cannot be predicated on alleged acts of securities fraud. This preclusion came to be with the enactment of Section 107 of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), commonly referred to as the "RICO Amendment." The RICO Amendment provides that "no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962." 18 U.S.C. § 1964(c); *see also MLSMK Inv. Co. v. JP Morgan Chase & Co.*, 651 F.3d 268, 277 (2d

Cir. 2011) ("We conclude that section 107 of the PSLRA bars civil RICO claims alleging predicate acts of securities fraud[.]").

Plaintiff asserts a civil RICO claim against Schwab under 18 U.S.C. §§ 1962(a) and (c). He alleges that Schwab "is an intrinsic component to an enterprise" within the meaning of 18 U.S.C. § 1961(4), acting "together and in concert with GTS, Rubinstein [*sic*], and FINRA to achieve, replicate, conceal, and profit from their enterprise," Am. Compl. ¶ 197, and alleges predicate acts related to mail fraud, wire fraud, and money laundering, *id.* ¶¶ 208–10. But, in the Amended Complaint, Plaintiff concedes that these allegations are rooted in securities fraud. In his very own words, Plaintiff alleges that Schwab "engaged in a pattern of racketeering activity . . . including but not limited to ***multiple instances of Securities Fraud***," *id.* ¶ 198 (citing 15 U.S.C. § 78j(b) and Rule 10b-5) (emphasis added). *See also id.* at ¶ 199 ("Schwab . . . engaged in the illegal and conspiratorial use of bluesheet data on MMTLP" to avoid losses stemming from the U3 trading halt); *id.* ¶ 200 ("Schwab facilitated insider trading in MMTLP and other transactions involving the MMTLP security . . ."); *id.* ¶ 208 ("Schwab . . . sen[t] false and misleading investment statements to investors, including Plaintiff, to perpetuate its fraudulent scheme by omitting to report the emplacement of counterfeit long shares of MMTLP in [his] account."). Reviewing the allegations in the Amended Complaint, it is plain that Plaintiff's racketeering allegations sound in securities fraud, which is proscribed by the RICO Amendment. Thus, Plaintiff's civil RICO claims against Schwab are precluded.

Other predicate acts that Plaintiff has alleged, such as aiding and abetting securities conduct, fare no better against the bar established by the RICO Amendment. *See, e.g.*, *id.* ¶ 205 ("Schwab continues to aid and abet the enterprise and uses the advanced, machine learning system provided by and through GTS and Rubinstein [*sic*] to attempt to make its activities in the cartel untraceable."); *id.* ¶ 210 ("GTS and Rubinstein [*sic*] provid[ed] the computerized, internet-enabled cyber-architecture to supply counterfeit shares of MMTLP for Schwab to 'oversell' their allotment from DTCC."). Through the RICO Amendment, "Congress was aware that it would place some claims—such as those for aiding and abetting securities laws violations—outside the reach of private civil RICO suits." *MLSMK*, 651 F.3d at 279. No matter whether Plaintiff paints his allegations as mail fraud, wire fraud, or money laundering, as Plaintiff has alleged, the predicate acts are based in securities fraud, which are improperly brought as civil RICO claims. *See Zohar CDO 2003-1, Ltd. v. Patriarch Partners, LLC*, 286 F. Supp. 3d 634, 650 (S.D.N.Y. 2017) ("[T]he congressional intent behind the RICO Amendment . . . is to strike artful pleadings that attempt to mask any actionable securities fraud claim as wire or mail fraud."). Here, Plaintiff once more runs afoul of the bar imposed by the RICO Amendment. As his civil RICO claims are precluded, they must be dismissed.

Plaintiff's civil RICO claims also fail for a separate reason: He fails to sufficiently plead the requisite elements of the claim. To state a claim under 18 U.S.C. § 1962(c), a plaintiff must show that a person engaged in (1) "conduct" (2) "of an enterprise" (3) "through a pattern" (4) "of racketeering activity." *Cruz v.*

*FXDirectDealer, LLC*, 720 F.3d 115, 120 (2d Cir. 2013).  When a civil RICO claim is predicated on alleged fraud, the heightened pleading standard of Rule 9(b) applies, requiring the complaint to "allege facts that give rise to a strong inference of fraudulent intent."  *Berman v. Morgan Keegan & Co.*, 455 F. App'x 92, 95 (2d Cir. 2012) (summary order).

First, Plaintiff fails to specify conduct by Schwab with particularity.  Instead, Plaintiff makes cursory allegations regarding securities fraud, insider trading, aiding and abetting.  The Amended Complaint lacks allegations to establish a sufficient pattern of racketeering activity.  To do so, a plaintiff must "allege predicate acts that are 'related' and 'amount to or pose a threat of continued criminal activity.'" *Highmore Financing Co., I, LLC v. Greig Cos., Inc.*, No. 21 Civ. 11021 (AT), 2023 WL 4865722, at *5 (S.D.N.Y. July 31, 2023) (quoting *DeFalco v. Bernas*, 244 F.3d 286, 320 (2d Cir. 2001)).  This continuity requirement can be satisfied if a plaintiff either shows "close-ended" continuity or "open-ended" continuity.  "Close-ended" continuity is "a series of related predicate acts extending over a substantial period of time," whereas "open-ended" continuity is "a pattern of racketeering activity that poses a threat of continuing criminal conduct beyond the period during which the predicate acts were performed." *Id.* (quoting *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008)).

The allegations in Plaintiff's Amended Complaint fail to establish either form of continuity in his RICO claims against Schwab.  As Plaintiff alleges, MMTLP began trading in October 2021 and ceased trading in December 2022.  Am. Compl. ¶¶ 48,

54. This is not a substantial period of time, nor is the threat ongoing. *See One World, LLC v. Onoufriadis*, No. 21-374-cv, 2021 WL 4452070, at *2 (2d Cir. 2021) (summary order) ("[W]e have never held a period of less than two years to constitute a substantial period of time."); *Spool*, 520 F.3d at 186 ("It defies logic to suggest that a threat of continued looting activity exists when, as plaintiff admits, there is nothing left to loot." (quoting *GICC Cap. Corp. v. Tech. Fin. Grp., Inc.*, 67 F.3d 463, 466 (2d Cir. 1995))).

As previously mentioned, the Amended Complaint falls short of meeting the particularity standard imposed by Rule 9(b). More specifically, the complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Lerner v. Fleet Bank, N.A.*, 459 F.2d 273, 292–93 (2d. Cir. 2006). To satisfy Rule 9(b), *all* elements of Plaintiff's RICO claim must meet this heightened standard. Yet, conspicuously absent from the Amended Complaint are any allegations—let alone well-pled ones—by Plaintiff of "the statements made" by Schwab that he contends were fraudulent, as well as who made the statements, where and when they were made, and why the statements are fraudulent. Plaintiff does not identify any statements or misrepresentations made by Schwab that induced him to invest in shares of MMTLP. At most, Plaintiff invokes unpled "circumstantial evidence," *see* Am. Compl. ¶ 28 ("Circumstantial evidence suggests that Ari Rubinstein [*sic*] conspired with Michael Dunn at Schwab . . ."). But a threadbare allegation is insufficient for Plaintiff to meet his burden. Other

conclusory allegations in the Amended Complaint do not save Plaintiff from this pleading deficiency.   Because Plaintiff's unspecific allegations cannot satisfy the heightened pleading requirement of Rule 9(b), the civil RICO claims against Schwab must be dismissed.

Plaintiff additionally brings a RICO conspiracy claim under 18 U.S.C. § 1962(d).  To maintain a RICO conspiracy claim, a plaintiff must adequately allege: "(1) that there existed a conspiracy to commit acts that, if successful, would constitute a substantive civil RICO violation; (2) that defendant agreed to join in, and knowingly participated in, that conspiracy; and (3) that defendant acted in furtherance of the conspiracy in some manner (although not necessarily by the commission of any RICO predicate acts himself)." *Martin Hilti Fam. Tr. v. Knoedler Gallery, LLC*, 386 F. Supp. 319, 340 (S.D.N.Y. 2019).  However, because his underlying civil RICO claims must be dismissed, Plaintiff's § 1962(d) conspiracy claim fails as well.  *Monterey Bay Mil. Hous., LLC v. Ambac Assurance Corp.*, 531 F. Supp. 3d 673, 727 (S.D.N.Y. 2021) ("[T]here can be no RICO conspiracy without a substantive RICO violation.").

For these reasons, Counts II, III, and VI must be dismissed.

### 2.    Securities Fraud Claims (Counts IX and X)

Plaintiff claims that Schwab committed securities fraud, invoking Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, when it allowed him to buy "305 counterfeit shares of MMTLP" despite supposedly having "actual knowledge" that the shares were "counterfeit."  Am. Compl. ¶¶ 224–25.

As with other claims in fraud, securities fraud claims are subject to the heightened pleading requirement of Rule 9(b) and the PSLRA.  "A plaintiff cannot

base securities fraud claims on speculation and conclusory allegations." *Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001).  To state a claim for securities fraud under Section 10(b) and Rule 10b-5, a plaintiff must allege "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *In re Telefonaktiebolaget LM Ericsson Sec. Litig.*, 675 F. Supp. 3d 273, 285 (E.D.N.Y. 2023). Any misstatement must be both false and material.  *Id.* at 285–86.

The Amended Complaint does little to advance particularity as to any of the elements required to plead securities fraud.  Although Plaintiff states that Section 10(b) prohibits the making of any untrue statement of a material fact in connection with the purchase or sale of a security, the Amended Complaint is silent as to what misrepresentation Schwab made to him regarding MMTLP.  Indeed, Plaintiff alleges nothing regarding Schwab encouraging him to buy MMTLP.  Failing to identify any misrepresentation, Plaintiff likewise fails to plead the elements of causation and reliance.  Nor does Plaintiff adequately allege scienter by stating facts that show "an intent to deceive, manipulate, or defraud," *Ganino v. Citizens Utilities Co.*, 228 F.3d 154, 161 (2d Cir. 2000), by Schwab.  Finally, Plaintiff's summation of the injury he suffered is confined to a single sentence: "[Plaintiff] suffered economic damage as a result of the acts and/or omissions to act of Schwab in that his finances were damaged, his ability to trade with the funds no frozen or lose due to the U3 halt is impossible, and he cannot use that money for other purposes."  Am. Compl. ¶ 248.  The allegations

in the Amended Complaint do not rise to the level of particularity that is required to maintain a claim of securities fraud under Rule 9(b).  Accordingly, this claim must be dismissed.

Plaintiff's claim of securities fraud under Vermont law similarly fails.  Plaintiff merely rehashes the same conclusory allegations that he claimed under Section 10(b) of the Exchange Act under the Vermont Uniform Securities Act.  *See* 9 V.S.A. § 5509.

To begin, even though the Amended Complaint offers no allegations that would bring the state securities fraud claim against Schwab within the Court's jurisdiction, the Court may exercise supplemental jurisdiction to dismiss the claim.  *See Chenensky v. N.Y. Life Ins. Co.*, 942 F. Supp. 2d 388, 391 (S.D.N.Y. 2013) ("A district court's decision whether to exercise jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary."); *see also Brzak v. United Nations*, 597 F. 3d 107, 113–14 (2d Cir. 2010) (when "a plaintiff's federal claims are dismissed before trial, the state law claims should be dismissed as well").

The same particularity that is required to bring a fraud claim under federal securities law equally applies to a fraud claim under state securities law.  As with his claim under federal law, Plaintiff's Amended Complaint is devoid of any allegation regarding conduct by Schwab related to his decision to purchase MMTLP.  Plaintiff's decision was his and his alone.  Moreover, the Amended Complaint is similarly devoid of any allegation of action on the part of Schwab that caused him damages—no allegation offers any details as to any alleged wrongful acts by Schwab that caused Plaintiff to suffer damages, much less any wrongful acts that would fall within the

purview of the Vermont Uniform Securities Act.  Just as he was unable to plead fraud with particularity under federal law, Plaintiff does not do so under state law. Accordingly, his state law claim fails for the same reason.

For these reasons, Counts IX and X must be dismissed.

### 3.    CFAA Claim (Count VIII)

Finally, Plaintiff claims that Schwab violated the CFAA when it "knowingly allowed falsified securities certificates representing phantom shares of MMTLP to be illegally introduced into [Plaintiff's] brokerage account and by virtue of that into [Plaintiff's] computer system and software," which Plaintiff alleges "corrupt[ed] its ability to represent the financial data therein as accurate."  Am. Comp. ¶ 241.  He alleges that Schwab "intentionally accessed [his] account and traded in counterfeit shares without [his] knowledge or consent," *id.* ¶ 107, and that these allegedly counterfeit shares of MMTLP were "miniature computer viruses," *id.* ¶ 108.  In so doing, Plaintiff continues, Schwab had "unauthorized access to" his brokerage account and "manipulat[ed]" it, thereby causing damage to the "computer system, software, financial account information, and ability to trade."  *Id.* ¶¶ 242–43.

Plaintiff's CFAA claim fares no better than his other claims because there are fatal deficiencies in his pleading.  To state a claim under the CFAA, a plaintiff must allege an aggregated loss of "at least $5,000 in value," 28 U.S.C. § 1030(c)(4)(A)(i)(I), and such losses are limited to "economic damages," *id.* § 1030(g); *Nexans Wires S.A. v. Sark-USA, Inc.*, 319 F. Supp. 2d 468, 474 (S.D.N.Y. 2004) ("Even cases which have taken an expansive view of the CFAA jurisdictional threshold have not suggested that 'loss' can include a cost unrelated to a computer.").  Right out of the gates,

Plaintiff stumbles.  The loss that he pleads falls well short of this statutory threshold. *See* Am. Compl. ¶ 113 ("The introduction of counterfeit shares from GTS into [Plaintiff's] computer system crippled [Plaintiff's] ability to trade, invest, and do his own 'pursuit of happiness' as these actions . . . destroyed the inherent value of [Plaintiff's] original investment").  That inherent value was $2,934.95. *See id.* ¶ 43. And, where Plaintiff avers damages in excess of $5,000, those damages are not *economic* damages. *See id.* ¶ 78 ("[Plaintiff] is damaged in the amount of the last verifiable dark pool share price for MMTLP at roughly $4000 a share totaling $1,220,000 and with subsequent damages involving the loss of use of those funds for at least another $1,000,000.").  Plaintiff's conclusory statements about his inability to trade or invest do not concern any damage to a computer, its contents, or its system, and his statements about unspecified "damage" to software and financial information do not explain the type of damage to a computer, its contents, or its system, or the associated costs of addressing such damage, as contemplated by the CFAA. *See* 28 U.S.C. § 1030(e)(8) ("the term 'damage' means any impairment to the integrity or availability of data, a program, a system, or information"); *see also Nexans Wires*, 319 F. Supp. 2d at 474; *Tyco Int'l (US) Inc. v. Does*, No. 01 Civ. 3856 RCCDF, 2003 WL 21638205, at *1 (S.D.N.Y. July 11, 2003) ("[T]he additional types of damages awarded by courts under the [CFAA] have generally been limited to those costs necessary to assess the damage caused to the plaintiff's computer system or to resecure the system in wake of a hacking attack.").

Because nowhere in the Amended Complaint does Plaintiff plead loss or damages that satisfy the CFAA's threshold requirement, his CFAA claim fails. Accordingly, Count VIII must be dismissed.

## V.   <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant Schwab's motion to dismiss, and dismiss with prejudice all claims against Schwab.

DATED at Burlington, Vermont, this 7th day of October 2024.

By:   */s/ Justin B. Barnard*
       Justin B. Barnard, Esq.
       Anne B. Rosenblum, Esq.
       **DINSE P.C.**
       209 Battery Street
       Burlington, VT 05401
       Tel: (802) 864-5751
       jbarnard@dinse.com
       arosenblum@dinse.com

       Jeff Goldman, Esq. (admitted *pro hac vice*)
       Felipe Escobedo, Esq. (admitted *pro hac vice*)
       **MORGAN, LEWIS & BOCKIUS LLP**
       One Federal Street
       Boston, MA 02110
       Tel: (617) 341-7700
       jeff.goldman@morganlewis.com
       felipe.escobedo@morganlewis.com

       *Counsel for Charles Schwab & Co., Inc. and*
       *Schwab Holdings, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 7, 2024, the foregoing document is being filed through the CM/ECF system and that a copy of the same will be sent electronically to all registered participants.  A paper copy of the foregoing document will also be sent to the Plaintiff, at the address stated on his Complaint.


 */s/ Jeff Goldman*
Jeff Goldman