UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| SCOTT TRAUDT, | * |
| Plaintiff | * |
| | * |
| v. | * |
| | * |
| ARI RUBENSTEIN | * |
| Defendant | * |
| | * |
| GTS SECURITIES LLC | * |
| GTS EQUITY PARTNERS LLC | * |
| GTS EXECUTION SERVICES LLC | * |
| Defendant | * |
| | * |
| CHARLES W. SCHWAB AND CO. INC. | * |
| SCHWAB HOLDINGS, INC. | * |
| Defendant | * |
| | * |
| FINANCIAL INDUSTRY | * |
| REGULATORY AUTHORITY | * |
| Defendant | * |
| | * |
| GARY GENSLER | * |
| US SECURITIES AND EXCHANGE | * |
| COMMISSION | * |
| Respondent | * |
| | * |

Docket Number: 2:34-cv-782
**JURY TRIAL DEMANDED**

1st Amended Complaint

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### PLAINTIFF TRAUDT'S MOTION TO STRIKE DEFENDANT CHARLES SCHWAB AND CO., INC.'S MOTION TO DISMISS PURSUANT TO RULE 12(f) AS UNTIMELY AND PREJUDICIAL

NOW COMES Plaintiff Scott Traudt ("Traudt") and respectfully moves this Court to strike

Schwab's Motion to Dismiss on the grounds that it is untimely and prejudicial, as it seeks to

dismiss this case without the resolution of key threshold issues, namely arbitration and

spoliation. Pursuant to Federal Rule of Civil Procedure 12(f), which allows the court to "strike

from a pleading… any redundant, immaterial, impertinent, or scandalous matter," this motion to

1

dismiss should be stricken as it disrupts the orderly adjudication of this matter. Additionally, judicial economy and fairness require that the arbitration and spoliation claims be decided before any substantive motion to dismiss is entertained.

**1. The Motion to Dismiss is Untimely as Arbitration is Unresolved**

Schwab's motion to dismiss is untimely because the arbitration issue has not yet been decided. Traudt has raised significant issues that challenge whether any arbitration should be ordered by this Court at all. The arguments against arbitration are critical threshold matters that must be fully addressed before this Court can entertain a motion to dismiss. Under the Federal Arbitration Act (FAA), arbitration is a threshold issue, and the Supreme Court has made it clear that courts are to stay proceedings rather than dismiss them when arbitration is involved. In *Smith v. Spizzirri,* 142 S. Ct. 1218 (2024), the U.S. Supreme Court unanimously held that when arbitration is compelled under the FAA, the district court must stay the litigation and lacks the discretion to dismiss the case, emphasizing the mandatory nature of the FAA's stay provision under 9 U.S.C. § 3. The Court found that the district court's role is to preserve its supervisory function over the arbitration process, rejecting the argument that dismissals can serve as a procedural alternative to a stay.

The Supreme Court's reasoning in *Smith* complements the earlier holding in *Scherk v. Alberto-Culver Co.,* 417 U.S. 506 (1974), where the Court stressed the importance of ensuring arbitration decisions are rendered quickly at the outset of proceedings. In both cases, the focus remains on arbitration as a threshold issue that must be resolved before the litigation process continues. Thus, Schwab's motion to dismiss is premature because this Court must first determine whether arbitration will proceed. Moving forward with dismissal now risks

inefficiency and inconsistent rulings, violating the spirit of the FAA as interpreted in *Smith* and *Scherk*.

## 2. Spoliation Issues and Judicial Economy Require Resolution Before Considering a Motion to Dismiss

In addition to the unresolved arbitration issue, Traudt has raised significant concerns regarding Schwab's destruction of key evidence, which constitutes spoliation. Courts routinely hold that spoliation claims must be resolved before substantive motions like dismissals, as spoliation can affect the scope and fairness of the litigation. In *Treppel v. Biovail Corp.*, 233 F.R.D. 363 (S.D.N.Y. 2006), the court made it clear that spoliation must be addressed early because the destruction of evidence can distort the record and prejudice a party's ability to prosecute its case. If Schwab has destroyed crucial evidence, allowing their motion to dismiss to proceed without resolving these spoliation concerns would severely prejudice Traudt and undermine the integrity of the litigation process.

Judicial economy also strongly favors resolving these threshold issues before addressing substantive motions like dismissal. Federal courts are tasked with addressing procedural matters such as arbitration and spoliation first, as these decisions often dictate how the case should proceed. The Supreme Court in *Sinochem International Co. v. Malaysia International Shipping Corp.,* 549 U.S. 422 (2007), held that threshold issues should be resolved before courts dive into the merits of a case, particularly when these issues are straightforward. Resolving arbitration and spoliation before addressing the merits of the case prevents unnecessary and duplicative litigation, ensuring that the court's resources are used efficiently.

Here, Schwab's motion to dismiss is not only premature but risks wasting the Court's time by forcing it to address a substantive motion before determining whether the case will

proceed in arbitration or litigation, and before assessing whether the destruction of evidence has

prejudiced Traudt's ability to litigate. If the Court ultimately rules in favor of arbitration, or if

spoliation materially affects the evidence available to the parties, any decision on the motion to

dismiss would be premature and could necessitate further litigation.

**3. Schwab's Motion to Dismiss Contradicts Its Request for a Stay Pending Arbitration**

Schwab's simultaneous filing of a motion to compel arbitration and a motion to dismiss

creates contradictory legal positions. On the one hand, Schwab argues that this case should be

stayed and compelled into arbitration, while on the other hand, it argues that the case should be

dismissed outright. This inconsistency creates procedural confusion and is a prime example of

why the Court should address the arbitration issue first. In *Smith* and *Scherk*, the Supreme Court

emphasized the importance of resolving arbitration disputes before moving forward with

litigation. Allowing Schwab's motion to dismiss to proceed before deciding on arbitration

contradicts the FAA's core purpose and undermines judicial efficiency.

**4. If Clayton Act Claims and Additional PSLRA Counts Are Amended, Schwab Will Have an Opportunity for a Comprehensive Motion Later**

Should the Court allow Traudt to amend the complaint to include Clayton Act claims, as

well as additional counts under the PSLRA, Schwab will be afforded the opportunity to file a

more comprehensive motion to dismiss at that time. The Clayton Act, codified at 15 U.S.C. § 12

et seq., is part of the broader framework of the Sherman Antitrust Act, codified at 15 U.S.C. § 1

et seq., both of which regulate anti-competitive behavior. If leave is given to amend claims

against Schwab at that stage, the arbitration issues will have been decided in Traudt's favor as a

matter of course due to either spoliation issues or the unenforceability of the arbitration

agreement between Traudt and Schwab and probably with an adverse inference order from this

4

Court regarding the destroyed audio recordings once held by TDA/Schwab. This would mean that when Schwab later attempts to file a timely motion to dismiss, they would be doing so in the face of an adverse inference for evidence destruction, which would severely undermine their defense.[1]

This approach would promote judicial economy, as Schwab would have a full and fair opportunity to address all the claims in one comprehensive motion rather than filing piecemeal motions before the Court has even resolved the foundational issues in the case. Moreover, as referenced in the foregoing, Traudt has requested leave to add more counts under the PSLRA, which would further substantiate the claims against Schwab. Allowing both the Clayton Act claims and these additional PSLRA counts to be amended into the complaint would provide Schwab with a full opportunity to address all claims in a singular motion to dismiss. This would not only streamline the litigation process but also promote judicial efficiency by resolving all claims in one proceeding rather than through multiple, staggered motions.

Furthermore, allowing the Clayton Act claims and additional PSLRA counts to be amended into the complaint would provide a clear procedural path forward. As there is no automatic discovery stay under antitrust laws, unlike the securities-related claims governed by the PSLRA, the Court could ensure a streamlined and efficient litigation process without the constant risk of prematurely addressing substantive motions before threshold matters are resolved.

5. **Schwab is under investigation for MMTLP-related fraud, destruction of evidence, and unjust enrichment in the MMTLP stock trading scandal**

---

[1] Traudt is aware he has at least several new claims to add under the Securities Exchange Act for securities fraud, market manipulation, and insider trading as in the time from filing this suit to the present he has become aware that the RICO issues may not survive but other claims are available to replace them.

Traudt filed a complaint regarding Schwab (and TD Ameritrade's) conduct in this matter on 7 October 2024 and requested that Schwab's illicit profits in the MMTLP trading halt that it was given advance notice of and profited from be disgorged to the 7500 Schwab/TDA shareholders.[2] **(See Appendix A)**  This alone may be grounds for a stay of proceedings while the SEC conducts its investigation.

**6. Newly released Freedom of Information Act ("FOIA") documents produced on 7 October 2024 show the SEC and FINRA executives meeting on 23 December 2022 to address the MMTLP trade halt.**

Upon information and belief, the FOIA documents attached as **Appendix B** show all the SEC and FINRA heavy breathers meeting to discuss the trade halt in MMTLP. Per the SEC and FINRA rules, a trade halt can only go for 10 days. The meeting on 23 December 2022 was 14 days after the U3 halt. SEC Chairman Gary Gensler attended this meeting as did Haoxiang Zhu, the SEC's Director of Trading and Markets. More importantly, Traudt suspects that part of the discussions may have centered on *SEC v. Sloan* 436 US 103 (1978). In *SEC v. Sloan*, the Supreme Court considered whether the SEC had the statutory authority to indefinitely suspend trading in a company's securities by renewing 10-day trading suspensions under Section 12(k) of the Securities Exchange Act of 1934. Richard D. Sloan was the CEO of a publicly traded company whose shares the SEC repeatedly suspended for 10-day periods, citing concerns over misleading and inaccurate financial statements. Sloan challenged the SEC's authority, arguing that the repeated suspensions violated the statutory 10-day limit imposed by Section 12(k).

Section 12(k) of the Securities Exchange Act authorizes the SEC to suspend trading in any security for up to 10 days if it deems it necessary for the public interest and the protection of investors. However, Sloan contended that the SEC's practice of continuously *renewing*

---

[2] Schwab's Ron Fleming admitted that TDA had requested the trade halt to protect itself (the now infamous 20 March 2023 Traudt-Fleming call).

suspensions beyond the initial 10-day period contravened the clear language of the statute, which only allowed for a temporary halt. This parallels the madness in MMTLP, which not only was killed with two days of trading left as per FINRA's own altered corporate notices on MMTLP, but it was also never brought back for trading. It was first cancelled, then deleted by FINRA – the first time EVER a security had ever been atomized in such fashion.

The Supreme Court ruled in favor of Sloan, holding that the SEC exceeded its statutory authority by ordering successive suspensions beyond the 10-day limit set by the statute. The Court emphasized that the statute's plain language limited the SEC's power to suspend trading for only 10 days, and the SEC was required to either let trading resume after the suspension or pursue other legal remedies, such as seeking an injunction in federal court if longer-term action was necessary. The takeaways from *Sloan*:

**Non-discretionary Duty:** The Court held that the SEC's duty under Section 12(k) was non-discretionary in that after a 10-day suspension, the agency was obligated to allow trading to resume unless it obtained a court order to extend the suspension.[3]

**Statutory Limitation:** The decision made clear that the SEC could not extend a suspension beyond the statutory 10-day period without violating its authority under the Securities

---

[3] This non-discretionary finding by the Supreme Court sets the stage for a perfected Writ of Mandamus. Mandamus is proper only if "(1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to plaintiff." *Council of and for the Blind of Delaware Cnty. Valley v. Regan,* 709 F.2d 1521, 1533 (D.C.Cir.1983) ( *en banc* ). The party seeking mandamus has the "burden of showing that [its] right to issuance of the writ is 'clear and indisputable.' " *Gulfstream Aerospace Corp. v. Mayacamas Corp.,* 485 U.S. 271, 289, 108 S.Ct. 1133, 99 L.Ed.2d 296 (1988) (citing *Bankers Life & Cas. Co. v. Holland,* 346 U.S. 379, 384, 74 S.Ct. 145, 98 L.Ed. 106 (1953)). The threshold for mandamus relief, as Defendants note, is a high one. *Fornaro v. James,* 416 F.3d 63, 69 (D.C.Cir.2005) ("Mandamus is a 'drastic' remedy, 'to be invoked only in extraordinary circumstances.' ") (internal citations omitted). *Citizens for Responsibility & Ethics in Washington v. U.S. Sec. & Exch. Comm'n,* 858 F. Supp. 2d 51, 64-65 (D.D.C. 2012)

Exchange Act. This case confirmed that the SEC Chairman had a mandatory duty to order the resumption of trading after the 10-day halt or seek judicial intervention for a longer suspension.

**Impact on Regulatory Practice:** The case established important limits on the SEC's authority to manage trading suspensions, preventing the agency from indefinitely delaying trading by repeatedly renewing suspensions under Section 12(k).

## Conclusion

For the foregoing reasons, Traudt respectfully requests that the Court strike Schwab's Motion to Dismiss as untimely, pursuant to Federal Rule of Civil Procedure 12(f). The unresolved issues of arbitration and spoliation make Schwab's motion premature and inefficient. Judicial economy, fairness, and proper procedure require that these threshold issues be resolved before any substantive motion is entertained. Furthermore, allowing the Clayton Act claims and additional PSLRA counts to be amended into the complaint will provide Schwab with a more appropriate opportunity to file a comprehensive motion to dismiss once the arbitration and spoliation matters have been decided. Thus, Schwab's motion to dismiss should be stricken, and the case should proceed in a manner that preserves the integrity of the litigation process.

## Other relief sought:

a. In the event this Court denies a stay and arbitration as filed in Schwab's previous motion to force Traudt into arbitration, Traudt requests this court give him 21 days from the date of any subsequent refiling by Schwab of all motions to dismiss to answer any renewed Schwab motion to dismiss under FRCP 12(b)(6).

b. Traudt requests that if any adverse inference order is ordered by this Court, Traudt should be entitled leave to amend his complaint that the adverse inference can be used as an accepted proof of scienter in any further proceedings in this matter involving Schwab. "A

complaint alleging securities fraud must also satisfy heightened pleading requirements set forth in Federal Rule of Civil Procedure 9(b) and the [PSLRA]." *Set Cap. LLC v. Credit Suisse Grp. AG*, 996 F.3d 64, 75 (2d Cir. 2021). The heightened pleading standard of Rule 9(b) requires: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). *Harrington Glob. Opportunity Fund v. CIBC World Mkts. Corp.*, 585 F. Supp. 3d 405, 413-14 (S.D.N.Y. 2022).

c. Traudt requests judicial notice of *Sloan* and raises it here for the court to consider whether in the interests of judicial economy a Writ of Mandamus to force two days of trading to close out MMTLP short positions is warranted.[4]

Dated: October ⌀ , 2024

Scott Traudt, *pro se ipso*
191 Kibling Hill Road
Strafford, VT 05072

I hereby certify that a true copy of the foregoing was sent to all named defendants and respondent at the addresses delineated below either by 1st Class mail or via email on this _____ day of October, 2024.

SCOTT TRAUDT

---

[4] FINRA CEO Robert Cook admitted in January, 2024, that there were 2.65 million unclosed short positions in MMTLP. Traudt thinks that number may be missing more than a few right-side zeroes, but given that admission, there can be no doubt that a Writ of Mandamus to force those short positions closed is needed to insure "fair and free markets" as FINRA is proud of saying....