**Scott Traudt**
**191 Kibling Hill Rd.**
**Strafford, VT 05072**
**802-318-0429**
**sctraudt@gmail.com**

7 October, 2024

Securities and Exchange Commission
Office of Investor Education and Advocacy
100 F Street, NE
Washington, D.C. 20549

## Subject: Complaint Against Charles Schwab & Co., Inc. (CRD #5393, SEC #801-29938, 8-16514) for Violations of Securities Laws, Destruction of Evidence, and Request for Disgorgement

To Whom It May Concern,

I, Scott Traudt submit this formal complaint against Charles Schwab & Co., Inc. ("Schwab") (CRD #5393, SEC #801-29938, 8-16514) for violations of federal securities laws, specifically the destruction of crucial communications and account records that they were legally obligated to preserve. This destruction directly interfered with my ability to pursue legal recourse over the unlawful halt of MMTLP stock trading and the destruction of value of my 305 shares of MMTLP. Additionally, Schwab knowingly oversold at least 90,000,000 MMTLP shares, despite having an initial allotment of 12,012,877 shares from the Depository Trust and Clearing Corporation (DTCC). Ther are approximately 7,500 MMTLP shareholders.[1] Schwab's actions violated securities laws, and I believe their conduct warrants an investigation, a request for disgorgement, and the suspension of their broker-dealer license. At all times herein, TD Ameritrade clients that existed at the time of the U3 trade halt in MMTLP should be held in the same position as Schwab customers as Schwab bought TDA in 2020. I purchased my shares from TDA on 30 November 2022. TDA was allotted 53,823, 154 shares from the DTCC.

## Background and Overview

### a. Failure to Preserve Critical Records

On December 22, 2022, I notified TDA of my intent to pursue legal action regarding the trading halt of MMTLP shares and the disappearance of 305 shares from my account. Under federal law and industry regulations, TDA had a duty to preserve all relevant emails, account records, and communications.

---

[1] Statistical analysis by one research group studying MMTLP's true issued share count by doing surveys of Schwab clients resulted in a range of at least 90,000,000 oversold shares by Schwab to as many as 150,000,000. This can be provided upon request and approval from the source.

On September 14, 2024, Schwab admitted to me that they had destroyed email communications related to my account. Two days later, on September 16, 2024, Schwab admitted to destroying an audio recording of a conversation between myself and Ron Fleming, a licensed Series 7, 9, and 63 broker at TD Ameritrade (now part of Schwab). This critical audio recording, made on March 20, 2023, from 4:50 PM EST to 5:10 PM EST, contained material information regarding my MMTLP shares and the wrongful halt. Fleming admitted that MMTLP was trading at 100 times the posted market price in alternative trading systems.

## b. Overselling of MMTLP Shares and Disgorgement Request

Schwab facilitated the overselling of at least 90,000,000 MMTLP shares, despite having an initial allotment of 12,012,877 shares from the DTCC and approximately 7,500 MMTLP shareholders at Schwab. TDA oversold MMTLP by at least a 2x or 3x multiple. This overselling far exceeded the legally available supply of this stock. This conduct is in direct violation of the Securities Exchange Act of 1934, as it involved fraudulent misrepresentation of stock availability and allowed short positions to grow exponentially beyond permissible levels. Schwab's overselling practices contributed to market manipulation, ultimately causing harm to shareholders like myself.

Schwab profited from the sale of these oversold shares, with prices ranging from approximately $2.90 to $12 per share. I respectfully request that the SEC investigate how many long shares Schwab sold and at what price over time. Based on this investigation, I request disgorgement of the profits Schwab obtained through the overselling of MMTLP shares, to be distributed among the affected 7,500 Schwab and TD Ameritrade clients. The disgorgement figure should be determined through a thorough SEC-led investigation that tracks the full history of these sales and determines the financial impact on shareholders.

## c. Refusal to Trade MMTLP, Even If Ordered by FINRA or the SEC

In emails to Schwab customers, Schwab explicitly stated that even if the SEC or FINRA were to order the resumption of trading in MMTLP shares—or any newly issued ticker representing MMTLP's CUSIP or Next Bridge Hydrocarbons shares transferred back to brokers for reintroduction of trading—they would refuse to execute trades in the security. This refusal to comply with a potential order from the SEC or FINRA to trade MMTLP shares represents a violation of Schwab's regulatory duties.

Under FINRA Rule 5310 ("Best Execution and Interpositioning"), broker-dealers are required to execute orders in a manner that ensures the best possible execution for their customers. Refusing to trade a security—even when ordered by a regulator—would violate this duty to provide best execution, as it would prevent customers from buying or selling the security at prevailing market prices.

SEC Rule 15c3-5 further emphasizes that broker-dealers must establish and maintain risk management controls and supervisory procedures to manage financial and regulatory risks associated with trading. This includes ensuring compliance with all regulatory requirements before executing any trades. Refusing to execute trades after a FINRA or SEC order would

violate this rule, as it undermines the requirement for broker-dealers to follow regulatory instructions and manage the risks associated with non-compliance. The rule also ensures that brokers prevent access to trading systems for unauthorized personnel and that appropriate surveillance personnel receive immediate post-trade execution reports. Schwab's refusal to trade would deny its customers rightful market access and could create systemic risks by disregarding regulatory oversight.

### d. Violations of FINRA and SEC Regulations

1.  Failure to Retain Records (SEC Rule 17a-4 and FINRA Rule 4511)

    Schwab violated SEC Rule 17a-4 and FINRA Rule 4511, which mandate the retention of customer records, communications, and transaction data. By intentionally destroying emails and the audio recording of my communication with Ron Fleming, Schwab failed to comply with its obligations under these rules.

2.  Fraudulent Conduct and Market Manipulation (SEC Rule 10b-5)

    Schwab's conduct in overselling MMTLP shares constitutes a violation of SEC Rule 10b-5, which prohibits manipulative or deceptive practices in connection with the sale of securities. Schwab's fraudulent actions resulted in significant financial damage to MMTLP shareholders, including myself, by allowing an unsustainable short position to develop, ultimately collapsing the price of the security.

3.  Breach of Commercial Honor (FINRA Rule 2010)

    Schwab has breached FINRA Rule 2010, which requires brokers to "observe high standards of commercial honor and just and equitable principles of trade." By destroying key evidence and overselling shares far beyond the available float, Schwab acted in bad faith, disregarding both their regulatory duties and the interests of their clients.

4.  Violation of Best Execution Requirements (FINRA Rule 5310)

    By preemptively refusing to trade MMTLP shares or any successor securities, even if ordered to by the SEC or FINRA, Schwab has violated FINRA Rule 5310, which obligates brokers to seek the best execution of trades for their customers. This refusal to comply with regulatory orders places Schwab customers at a disadvantage and disrupts market integrity.

5.  Violation of Risk Management Controls (SEC Rule 15c3-5)

    Schwab's refusal to resume trading in MMTLP shares or successor securities violates SEC Rule 15c3-5, which requires brokers with market access to establish risk management controls that ensure compliance with all federal securities laws and applicable rules. This rule mandates that broker-dealers prevent orders from entering unless all pre-order regulatory requirements are met, including compliance with orders

3

from regulatory authorities such as the SEC and FINRA. Schwab's refusal to trade, even under regulatory instruction, disrupts proper market access and increases systemic risk.

## Request for Investigation, Sanctions, and Disgorgement

In light of Schwab's egregious misconduct, I respectfully request that the SEC:

1. Conduct a Full Investigation

   Initiate an investigation into Schwab's violations of securities laws, specifically related to their failure to preserve critical records, their participation in overselling MMTLP shares, and their refusal to trade the stock even under regulatory orders. This investigation should include a detailed review of Schwab's internal practices regarding recordkeeping, compliance with SEC Rule 17a-4, and its role in the overselling of MMTLP shares.

2. Disgorgement of Profits

   Investigate how many long shares Schwab sold, at what price, and over what time period. Based on the findings, I request that Schwab be required to disgorge the profits earned from selling the oversold 90,000,000 MMTLP shares, which ranged in price from $2.90 to $12 per share. The disgorged amount should be distributed to the 7,500 Schwab and TD Ameritrade clients who held MMTLP shares and should not be considered a settlement of any claims any Schwab client may have in US District Courts nationwide and in their state courts for securities fraud against Schwab.

3. Suspension or Revocation of Broker-Dealer License

   Given the severity of Schwab's actions, I request that the SEC suspend or revoke Charles Schwab & Co., Inc.'s broker-dealer license (CRD #5393, SEC #801-29938, 8-16514) for 90-120 minimum days and beyond that timeframe at least until the SEC is satisfied that they will not perform in this manner again. Schwab's destruction of evidence, fraudulent practices, and refusal to trade MMTLP even under potential regulatory orders represent a clear violation of both SEC and FINRA regulations.

4. Implementation of Corrective Measures

   Schwab should be required to implement and enforce corrective measures that ensure the proper preservation of all client records and prohibit overselling of securities. Additionally, Schwab should be compelled to comply with any regulatory orders related to MMTLP trading or any successor securities, ensuring their customers are not unfairly barred from market participation.

## Conclusion

Charles Schwab & Co., Inc. has acted in flagrant violation of securities laws and regulations, causing significant financial harm to me and other investors. I ask the SEC to take

4

immediate action to hold Schwab accountable for its misconduct, prevent further violations, and restore faith in the integrity of the securities markets.

Thank you for your attention to this matter. I am available to provide any additional information or documentation you may require to support this complaint.

Sincerely,

SCOTT TRAUDT
Strafford, VT

5