UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| SCOTT TRAUDT,<br>               Plaintiff,<br>v.<br><br>ARI RUBENSTEIN, GTS SECURITIES LLC, GTS EQUITY PARTNERS LLC, GTS EXECUTION SERVICES LLC, CHARLES W. SCHWAB AND CO. INC., SCHWAB HOLDINGS, INC., and FINANCIAL INDUSTRY REGULATORY AUTHORITY,<br><br>               Defendants,<br>  and<br><br>GARY GENSLER, US SECURITIES AND EXCHANGE COMMISSION,<br><br>               Respondents. | Docket No.: 2:24-cv-782<br><br>Judge Christina Reiss |

**THE GTS DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS
THE FIRST AMENDED COMPLAINT**

Plaintiff's opposition changes nothing.[1]  *See* Dkt. No. 60.  Nearly three months after launching this case and after a myriad of filings, Plaintiff fails to defend the civil RICO and CFAA claims that he brought against certain GTS Defendants and asks the Court to indulge new claims, this time under Rule 10b-5, the Sherman Act, the Stored Communications Act, and the Vermont Securities Act, as well as duplicative claims under the CFAA.  *See* Opp. at 22; *see also* Opp. App. J (proposed amendment).  For the reasons that follow, Plaintiff's gambit must fail, and this Court should dismiss his claims against the GTS Defendants with prejudice.

## ARGUMENT

**I.    Plaintiffs' Existing Claims Against the GTS Defendants Must Fail**

**A.    Plaintiffs' Civil RICO Claims Must Fail (Counts IV and V)**

Plaintiff fails to defend his civil RICO claims.[2]  First, the GTS Defendants urged their dismissal based upon the RICO Bar, which prohibits civil RICO claims for securities-related conduct.  Mot. at 5–7.  As to this argument, Plaintiff has no and provides no response.  Instead, he openly recognizes the threat that the GTS Defendants' argument poses to these claims.  *See* Opp. at 2 n.3 ("Traudt is requesting leave of the Court to amend his complaint to include SEC 10b-5 market manipulations [sic] claims . . . against GTS should the RICO claims be barred by the Private Securities Litigation Reform Act of 1995 . . . ."); *see also id.* at 7 (similar; heading); *id.* at 9 (similar; heading).  Plaintiff summarizes it thusly: "Traudt understands that the civil RICO claims may fail . . . ."  *See id.* at 22.  Dismissal is independently warranted for this reason alone.

---

[1] Citations to the same and to the appendices thereto are in the following forms: Opp. at _ and Opp. App. _ at _.  This Reply otherwise adopts the abbreviation and citation form set forth in the GTS Defendants' Motion to Dismiss the First Amended Complaint, Dkt. No. 18 (the "Motion").  Citations to the Motion are in the following form: Mot. at _.

[2] Once more, while the GTS Defendants accept Plaintiff's allegations as true for the purpose of their Motion to Dismiss, they vigorously dispute their truth and intend to disprove them should this litigation proceed on the merits.  *See* Mot. at 2 n.3.

1

Where Plaintiff does challenge the GTS Defendants' RICO-related arguments, his arguments confirm that dismissal is independently warranted for additional reasons. Specifically, Plaintiff suggests that he can establish continuity, Opp. at 7–8, one of many necessary elements of a civil RICO claim. Here too, Plaintiff falls short. Ostensibly, Plaintiff does not dispute that he cannot show closed-ended continuity, which requires a pattern of RICO conduct over more than two years. *See* Mot. at 7–8; *see also* Opp. at 7 (heading referencing only "open-ended continuity"). Rather, he again confirms that the challenged activity took place during a shorter period of time, "starting on or about 6 October 2021" and "end[ing] on 8 December 2022." Opp. at 7; *see also* Mot. at 8 (invoking similar allegations).

Instead, Plaintiff attempts to suggest open-ended continuity, by reference to alleged trading conduct relating to MMTLP's successor, Next Bridge Hydrocarbons ("NBH"), by non-party Tiger Brokers on the Singapore exchanges. *See* Opp. at 7. Those allegations cannot be bootstrapped to Plaintiff's MMTLP allegations here, which relate to an over-the-counter security allegedly bought and sold in the United States. *See* Am. Compl. at 5 ¶ 22; *see also id.* at 9 ¶ 40 (alleging conduct of "two Wall Street back benchers and . . . a cartel sitting in the room with them"); *id.* at 16 n.8 ("heavy breathers in the NYSE financial ecosystem"); Opp. at 10 (alleging conduct as to "national securities exchange"). At bottom, for open-ended continuity to exist, a RICO enterprise must "function[] as a continuing unit," not one that leapfrogs from the United States to Singapore. *See Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 186 (2d Cir. 2008) (quotation marks omitted).

Plaintiff does not meet the pleading threshold here. At the outset, his Singapore allegations rest upon August 2023 events, long before Plaintiff filed this case. This is not open-ended continuity as a matter of law. *See First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159,

2

165, 180–82 (2d Cir. 2004) (noting that open-ended continuity requires threat of "future" criminality, and holding that none existed where predicate acts discontinued in December 1999, months before action was filed); *see also, e.g.*, *El Omari v. Buchanan*, Civ. No. 20-2601, 2021 U.S. Dist. LEXIS 236933, at *20 (S.D.N.Y. Dec. 10, 2021) ("The last FARA disclosure, occurred approximately one year before El Omari'[s] original Complaint was filed, which does not establish a current or future threat."), *aff'd*, Case No. 22-55, 2022 U.S. App. LEXIS 26799 (2d Cir. Sept. 26, 2022) (summary ord.).

Even were it not so, Plaintiff's Singapore allegations are wholly dissimilar to his underlying RICO allegations. Indeed, Plaintiff proffers nothing to tie the GTS Defendants (or any other party here) to his Singapore allegations. Moreover, Tiger Brokers, according to Plaintiff, was operating at loggerheads with the supposed RICO scheme. In particular, as Plaintiff alleges, Tiger Brokers "was oversold and/or needed to cover open short positions in MMTLP and was so desperate to do so it falsified and released a [press release] on 8 August 2023 stating that NBH had released a tender to buy back MMTLP shares." *See* Am. Compl. at 31 ¶ 167. But, the supposed purpose of the alleged RICO scheme he pleads was to protect short sellers from having to cover their open short positions, by supposedly suppressing the price of MMTLP shares. Mot. at 3 (citing Am. Compl. at 11–12 ¶ 54, 28–29 ¶ 154). It was not, according to the Amended Complaint, to create a market price between $500 and $1,000 per share on MMTLP, the gravamen of his allegations as to Tiger Brokers. *See* Opp. at 7. Thus, Plaintiff has not alleged and cannot allege the required nexus or "common purpose" here to make out continuity for a RICO claim using Tiger Brokers. *First Cap.*, 385 F.3d at 174.

Nor can Plaintiff make out open-ended continuity by attempting to tie the GTS Defendants to the Cayman Islands. Here, Plaintiff conjures up the GTS Defendants' supposed "laundering

[of] short sales through [non-party GTS Systematic Equity Index Master Fund LP] through the Cayman Islands." *See* Opp. at 7–8; *id.* at 9–10 ("It washed its own naked shorts into the Cayman Islands and into its subsidiary there using Rule 4560 to remove its own short positions from its U.S. books in violation of anti-money laundering . . . statutes."). Moreover, Plaintiff's pleading is supported only by unadorned "information and belief," Opp. at 7, 12, without any statement of facts indicating how any such belief was formed (or any clear statement that it has anything to do with MMTLP). This alone warrants dismissal. *See Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990) (holding that information and belief pleading is not "license to base claims of fraud on speculation and conclusory allegations. Where pleading is permitted on information and belief, a complaint must adduce specific facts supporting a strong inference of fraud or it will not satisfy even a relaxed pleading standard"); *see, e.g.*, *421–A Tenant's Ass'n v. 125 Court St., LLC*, Civ. No. 17-563, 2017 U.S. Dist. LEXIS 215752, at *12 (E.D.N.Y. Nov. 2, 2017).

### B. Plaintiff's CFAA Claim Against GTS Securities Also Fails (Count VII)

The Court should also dismiss Plaintiff's CFAA claim with prejudice. Here, instead of responding to any of the GTS Defendants' arguments for dismissal, Plaintiff ignores them, hoping the Court will simply allow him to pursue the claim under the auspices of another amended complaint with duplicative CFAA claims. *See* Opp. at 22 (proposing two CFAA claims). But, Plaintiff's proposed amendment is no better. Indeed, he continues to fail to allege (much less with particularity) that the GTS Defendants somehow accessed his electronic systems. Mot. at 11–12. Instead, he alleges that they provided "counterfeit shares . . . to "Schwab and other brokers, who then sold them to retail investors, including Traudt." *See* Opp. App. J at 4–5 ¶ 269; *see also* Am. Compl. at 20 ¶ 104 (alleging that "[S]chwab . . . electronically transferr[ed] [the shares] into Traudt's account . . . on or about 30 November 2022"). What's more, he continues to fail to allege

4

(much less with particularity) any CFAA damages, by seeking to recover the alleged lost value of his investment rather than damages associated with computer repairs and the like.  Mot. at 12–13.[3]

To be clear, Plaintiff's pro se status, Opp. at 10, does not give him carte blanche to disregard particularity requirements (or rules requiring a plain and concise statement of the claim).  *E.g.*, *Chen v. China Green Agric. Inc.*, Civ. No. 20-9232, 2022 U.S. Dist. LEXIS 156481, at *9–10 (S.D.N.Y. Aug. 30, 2022).

### C. Defendants GTS Equity and GTS Execution Must Be Stricken Under Rules 8(a)(2) and 12(b)(6)

Plaintiff never disputes that GTS Equity and GTS Execution must be dismissed because he fails to plead any claim against them.  Mot. at 14.  He does not propose to cure the problem through his amendment.  *See* Opp. App. J.  Rather, he incorporates his First Amended Complaint, *id.* at 1 ¶ 253, including its defined terms that limit his allegations to GTS Securities, not GTS Equity or GTS Execution.  *See* Mot. at 14.

### D. Plaintiff's Claims Against Mr. Rubenstein Should Be Dismissed Under Rule 12(b)(5) for Improper Service of Process

Plaintiff has failed to properly serve Mr. Rubenstein.  At bottom, Plaintiff does not dispute the Motion's account of Plaintiff's ineffective service efforts and bristles about Mr. Rubenstein's allegedly (on "information and belief") having been out of the country in April 2023, months before the case was even filed.  *See* Opp. at 21–22.  Plaintiff also references Mr. Rubenstein's ownership of "several properties."  *See id.* at 22.  If that is so, he should have attempted service there.  He indisputably did not and thus, his pleading as to Mr. Rubenstein must be dismissed.

---

[3] Where Plaintiff cloaks his allegations as involving "corrupted . . . data," his only asserted damages are related to his MMTLP shares, which cannot be recovered under CFAA.  *See* Opp. App. J at 5 ¶ 270 ("[G]TS [Securities] corrupted the data in Traudt's brokerage account, causing the value of his MMTLP shares to plummet to zero.").

### III. The Court Should Reject Plaintiff's Proposed Pivot to Additional Claims

The Court should also reject with prejudice the new claims that Plaintiff attempts to assert. *Accord Taylor v. Keen*, Civ. No. 11-5221, 2012 U.S. Dist. LEXIS 126131, at *15–16 (E.D.N.Y. Sept. 5, 2012) (Bianco, J.) (denying leave to amend to pro se plaintiff, based upon, among other things, statements in opposition to motion to dismiss). As to Proposed Claim XI for alleged Rule 10b-5 violations, Plaintiff fails to state a claim founded upon market manipulation or any other actionable misconduct. In short, Plaintiff fails to "alleg[e] that [he] was told of [the GTS Defendants' alleged] artificial trading, or purchased [MMTLP] in reliance on such trading." *See Fezzani v. Bear, Stearns & Co.*, 716 F.3d 18, 21, 23 (2d Cir. 2013) (alleged scheme to "park[] stock with trusted . . . investors," who would receive a guaranteed profit). Indeed, "[o]nly the person who communicates [a manipulated price] is liable in private actions under Section 10(b)." *Id.* at 25. Plaintiff, however, does not plead, much less with particularity, where he obtained information about MMTLP's share price when he decided to buy shares. And, certainly, his pleading is devoid of allegations in these regards that meet the particularity standard as to the GTS Defendants at the very least. *See Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 129 (2d Cir. 2011); *see also* Opp. at 9 (conceding that particularity is required).

His pleading is likewise devoid of other key allegations meeting the particularity standard. As to the elements of causation, for example, Plaintiff is remarkably circumspect. *See* Opp. App. J at 1–2 ¶ 256 ("As a direct and proximate result of Defendants' wrongful conduct, Traudt suffered damages in that he held his shares in MMTLP only to have them wiped out when MMTLP was U3 halted by FINRA . . . . Traudt relied on an assumption of an efficient market free of manipulation. Traudt would have never bought MMTLP shares had these behind the scenes

6

machinations by GTS been known to Traudt."). Here, Traudt impermissibly relies on group pleading, lumping GTS Defendants in with "[D]efendants' wrongful conduct," *id.*, more generally. *See In re ShengdaTech, Inc. Sec. Litig.*, Civ. No. 11-1918, 2014 U.S. Dist. LEXIS 112190, at *26–28 (S.D.N.Y. Aug. 12, 2014) (rejecting practice except in circumstances not relevant here). And, moreover, Plaintiff asserts nothing to suggest that supposed, unidentified "machinations by GTS" actually caused him any injury. Rather, he lays the entire blame with the U3 trading halt implemented by another defendant, an independent regulator. *See* Am. Compl. at 16 ¶ 78.

The Court should similarly reject Plaintiff's proposed parallel state claim under Section 5501 of the Vermont Securities Act (Count XII), alleging the same securities-related conduct. At the outset, this state law parallels Rule 10b-5 in the respects asserted above and thus, should be dismissed for the same reasons as above. *See Hoehl Family Found. v. Roberts*, Civ. No. 19-229, 2020 U.S. Dist. LEXIS 258005, at *72 (D. Vt. Oct. 15, 2020). It should be dismissed for an additional reason based upon a distinction with Rule 10b-5. In particular, Section 5501 of the Vermont Securities Act applies only to "person[s] who advise[] others for compensation." *Compare with* 17 C.F.R. § 240.10b-5 (containing no such limitation to persons who "advise[] others"). The GTS Defendants, however, are market makers and explicitly did not advise Mr. Traudt with respect to his alleged MMTLP investment. *See* Am. Compl. at 2 ¶ 3, 18 ¶ 94; *see also* Opp. at 3 (arguing that market makers "print shares"). Thus, they cannot be liable under Section 5501, which regulates "persons who advise clients concerning the relative advantages and disadvantages of investing in securities in general as compared to other investments," not securities market makers. *Accord In re Living Bens. Asset Mgmt., L.L.C.*, 916 F.3d 528, 534 (5th Cir. 2019) (quotation marks omitted).

In yet another attempt to allege securities conduct, Plaintiff attempts to plead a claim founded upon an alleged violation of FINRA Rule 203(b)(2) (Count XVI). That attempt must also fail. Indeed, "there is no private right of action for alleged violation of industry rules," including those of FINRA. *See Valelly v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 464 F. Supp. 3d 634, 645 (S.D.N.Y. 2020); *see also, e.g.*, *Lobaito v. FINRA*, Civ. No. 13-6011, 2014 U.S. Dist. LEXIS 101052, at *13–14 & n.3 (S.D.N.Y. July 22, 2014).

The Court should also reject Plaintiff's proposed Stored Communications Act claim (Count XV). Plaintiff's gripe is with the GTS Defendants' alleged conduct with respect to his MMTLP shares in his brokerage account with other defendants—and intimates that the GTS Defendants were unauthorized *by him* to engage in this alleged conduct. *See* Opp. App. J at 6 ¶ 276. This is irrelevant as a matter of law. Rather, what matters is Traudt's broker served as a willing intermediary for the GTS Defendants, as Traudt would have it. *See, e.g.*, Mot. at 12 (collecting relevant allegations). The existence of this intermediary precludes a Stored Communications Act claim against the GTS Defendants, as where an Internet user accesses information on the Internet through an Internet service provider. *See In re Doubleclick Inc. Privacy Litig.*, 154 F. Supp. 2d 497, 508–11 (S.D.N.Y. 2001); *see also Combier v. Portelos*, Civ. No. 17-2239, 2018 U.S. Dist. LEXIS 111999, at *33 (E.D.N.Y. July 5, 2018) (collecting cases rejecting application of the Act in the context of commercial websites), *adopted by* 2018 U.S. Dist. LEXIS 168804 (E.D.N.Y. Sept. 29, 2018), *aff'd*, 788 F. App'x 774 (2d Cir. 2019) (summary ord.). Were the result otherwise, employers would be powerless to search their current and former employees' e-mails. *Accord Kinchen v. St. John's Univ.*, Civ. No. 17-3244, 2019 U.S. Dist. LEXIS 50954, at *21–22 (E.D.N.Y. Mar. 26, 2019), *aff'd*, 830 F. App'x 691 (2d Cir. 2020) (summary ord.). What's more—the Stored Communications Act involves temporary, fleeting storage of data, not data of the kind at issue

8

here, namely alleged "counterfeit shares," which permanently reside in Plaintiff's account (absent further action by him). *See Doubleclick*, 154 F. Supp. 2d at 511–12.

Nor can Plaintiff find any footing in the antitrust laws (Count XVII). Here, he throws out loose accusations of "price-fixing," Opp. App. J at 8 ¶ 284, monopolistic conspiracies, *id.* ¶¶ 285–86, and the like. At the heart of such allegations, however, must be a "plausible," not merely "conceivable," allegation of an agreement to restrain trade. *See Bell Atl. Corp. v. Twombly*, 540 U.S. 544, 548, 556 (2007). *Twombly*, a case brought under Section 1 of the Sherman Act, warned of reliance on the very kind of "labels and conclusions" that Plaintiff invokes here, *id.* at 555, whether in the form of shopworn references to the Cayman Islands, self-styled (and unidentified) "circumstantial evidence" of supposed meetings among defendants, Mot. at 10, or stereotypes. *See also, e.g.*, *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50–51 (2d Cir. 2007).

Plaintiff's antitrust allegations are otherwise wholly inadequate. Plaintiff does not take issue with conduct involving direct competitors, i.e. Coke and Pepsi, but, rather, entities and regulators at different levels of the distribution chain. Thus, Plaintiff must allege a vertical agreement in violation of the antitrust laws. Such vertical agreements are not per se illegal, Opp. at 16, as Plaintiff would seem to have it. *See Madison 92nd St. Assocs. v. Courtyard Mgmt. Corp.*, 624 F. App'x 23, 28–29 (2d Cir. 2015) (summary order). Rather, they must violate the rule of reason. Here too, Plaintiff makes no effort to meet the standard. He offers no allegations concerning a relevant product and geographic market, nor can he. *E.g.*, *Kalmanovitz v. G. Heileman Brewing Co.*, 576 F. Supp. 922, 928 (D. Del. 1983) (collecting cases, and holding that stock of single issuer "cannot constitute a relevant market for Section 2 purposes"), *aff'd*, 769 F.2d 152 (3d Cir. 1985).

## CONCLUSION

For the foregoing reasons, the GTS Defendants respectfully request the entry of an Order dismissing Plaintiff's claims with prejudice and providing any further relief to the GTS Defendants that the Court deems just and proper.

Dated: October 15, 2024

Respectfully submitted,

*/s/ Jonathan R. Voegele*
Jonathan R. Voegele
MORRIS KANDINOV LLP
4915 Mountain Rd.
Stowe, VT 05672
Tel.: 332-910-5229
jonathan@moka.law

Christopher J. Barber (*pro hac vice*)
Stephen A. Fraser  (*pro hac vice*)
WILLIAMS BARBER & MOREL LTD.
233 S. Wacker, Ste. 6800
Chicago, IL 60606
Tel.: 312-443-3200
cjb@williamsbarbermorel.com
saf@williamsbarbermorel.com

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was filed electronically today via the Court's CM/ECF Electronic Filing System. A Notice of Electronic Filing will be sent by e-mail to all parties via operation of the Court's CM/ECF Electronic Filing System or by mail to anyone unable to accept electronic filing as indicated on the Notice.

Dated: October 15, 2024

*/s/ Jonathan R. Voegele*
Jonathan R. Voegele