U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2024 NOV -8 PM 4:00

CLERK
BY _____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| SCOTT TRAUDT, \* <br> Plaintiff \* <br> \* <br> v. \* <br> \* <br> ARI RUBENSTEIN \* <br> Defendant \* <br> \* <br> GTS SECURITIES LLC \* <br> GTS EQUITY PARTNERS LLC \* <br> GTS EXECUTION SERVICES LLC \* <br> Defendant \* <br> \* <br> CHARLES W. SCHWAB AND CO. INC. \* <br> SCHWAB HOLDINGS, INC. \* <br> Defendant \* <br> \* <br> FINANCIAL INDUSTRY \* <br> REGULATORY AUTHORITY \* <br> Defendant \* <br> \* <br> GARY GENSLER \* <br> US SECURITIES AND EXCHANGE \* <br> COMMISSION \* <br> Respondent \* <br> \* | Docket Number: 2:24-cv-00782 <br> **JURY TRIAL DEMANDED** <br><br> 1st Amended Complaint |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## PLAINTIFF SCOTT TRAUDT'S ("TRAUDT") FIRST MOTION TO AMEND THE 1ST AMENDED COMPLAINT

Pursuant to FRCP 15(a)(2), Plaintiff Scott Traudt ("Traudt") hereby request leave of the court to amend the 1st Amended Complaint. In order to preserve judicial economy:

1.  Traudt abandons his RICO and CFAA claims against Defendants Charles Schwab and Co. Inc. ("Schwab"), GTS Securities ("GTS"), Ari Rubenstein ("Rubenstein'), and Financial Industry Regulatory Authority ("FINRA"). At this juncture, Traudt has assessed that the RICO and CFAA claims will most likely fail for a variety of reasons, but that basic securities fraud

1

claims and Clayton Act /Sherman Antitrust Act claims are more on point given the weight of evidence.

1. Traudt hereby requests leave to amend his 1st Amended Complaint and add additional facts to support claims as follows against FINRA, and to advise that these newly tailored COUNTS super cede and supplant any already filed:

## COUNT XI: VIOLATION OF SECURITIES EXCHANGE ACT RULE 10b-5
### (Insider Trading)

Traudt incorporates by reference all preceding paragraphs as if fully set forth herein.

At all relevant times, FINRA had access to material non-public information regarding the trading of MMTLP in which Traudt held a financial interest.

FINRA, either directly or through its agents, engaged in disseminating information in the blue sheets for MMTLP not available to the trading public and did so for the specific benefit of at least 6 of the members of the UPC Board that halted MMTLP trading on 9 December 2024 in violation of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder.

FINRA's insider trading lead to the Schwab requested trading halt that destroyed the value of Traudt's MMTLP shares resulting in financial loss to Traudt.

As a direct and proximate result of FINRA's unlawful insider trading, Traudt suffered damages, including but not limited to the devaluation of securities, lost investment opportunities, and consequential losses.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment against Defendant FINRA and award the following relief:

    a. Damages in an amount to be determined at trial.

    b. Reasonable attorney's fees and costs of suit.

c. Any other relief this court deems necessary.

## COUNT XII: VIOLATION OF SECTION 9(a)(2) OF THE SECURITIES EXCHANGE ACT (Market Manipulation)

Traudt incorporates by reference all preceding paragraphs as if fully set forth herein.

At all relevant times, FINRA, in its role as a self-regulatory organization, engaged in practices that were designed to manipulate the market for MMTLP securities.

Specifically, FINRA colluded with market makers and brokers to artificially control the price of MMTLP and allowed naked synthetic short shares to enter the market destroying the MMTLP price. FINRA did not ever force GTS to do a locate on the naked synthetics it created. FINRA knew there were problems with MMTLP shorts from at least October 2021 to the present. This was done creating a false impression of market activity and distorting price discovery.

FINRA's conduct violated Section 9(a)(2) of the Securities Exchange Act of 1934, which prohibits the creation of an artificial price level or the appearance of active trading when such activity is not reflective of the actual market but instead an artificial construct allowed certain market makers.

As a direct and proximate result of FINRA's market manipulation, Traudt suffered damages, including the devaluation of securities and the loss of investment returns.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment against Defendant FINRA and award the following relief:

a. Damages in an amount to be determined at trial.

b. Reasonable attorney's fees and costs of suit.

c. Any other relief this court deems necessary.

## COUNT XIII: CLAYTON ACT CLAIM FOR DAMAGES UNDER SECTION 4
## (15 U.S.C. § 15)

Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

This claim arises under Section 4 of the Clayton Act (15 U.S.C. § 15), which provides for the recovery of treble damages, costs, and attorney's fees for injuries caused by antitrust violations. Defendant FINRA has engaged in monopolistic operations in collaboration with brokers, market makers, and hedge funds. Through its regulatory practices, trading halts, and selective enforcement of rules, FINRA has facilitated:

- Market manipulation and price suppression by allowing market makers to create and conceal naked short positions in securities such as MMTLP, directly harming Plaintiff's investments.
- Frustration of price discovery by failing to enforce transparency rules under Regulation SHO and enabling brokers to hide short positions through FINRA Rule 4560.
- Collusive activities between FINRA and hedge funds, brokers, and market makers that foreclose small investors like Plaintiff from participating in fair markets.

FINRA's monopoly over arbitration and dispute resolution, tied through brokers like Schwab, has deprived investors of access to the courts, forcing reliance on a system that shields FINRA and its market participants from accountability.

FINRA's conduct has created anti-competitive market conditions, allowing brokers, market makers, and hedge funds to operate without transparency or meaningful oversight, to the detriment of Traudt and other small investors.

As a direct and proximate result of Defendant's unlawful monopolistic operations, Traudt has suffered significant financial harm, including:

1. Loss of the value of MMTLP shares due to the U3 trading halt.

2. Financial injury from the artificial manipulation of share prices through undisclosed short positions.

3. Ongoing harm resulting from exclusion from fair and open markets. Plaintiff seeks treble damages under Section 4 of the Clayton Act.

4. Pursuant to 15 USCS 15, Traudt seeks costs of the suit and reasonable attorney's fees.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment against Defendant FINRA and award the following relief:

a. Damages in an amount to be determined at trial.

b. Reasonable attorney's fees and costs of suit.

c. Any other relief this court deems necessary.

## COUNT XIV: VIOLATION OF SEC RULE 10b-5 – RELIANCE ON THE INTEGRITY OF THE MARKET

Traudt incorporates by reference all preceding paragraphs as if fully set forth herein.

This claim arises under SEC Rule 10b-5, which prohibits any act, practice, or course of business that operates as a fraud or deceit upon any person in connection with the purchase or sale of securities. FINRA, through its improper conduct, including the U3 halt of MMTLP trading, manipulation of short position data, and failure to enforce Regulation SHO, facilitated market practices that deceived investors. Specifically, FINRA's actions and omissions created the false appearance of a fair and transparent market, upon which Plaintiff reasonably relied.

Traudt relied on the integrity of the market, assuming that all trading activity in MMTLP and other securities was conducted in accordance with the rules and regulations governing

securities markets. This reliance is consistent with the fraud-on-the-market theory, which presumes that the prices of publicly traded securities reflect all material information.

FINRA's facilitation of naked short selling, concealment of short positions under Rule 4560, and arbitrary halting of MMTLP trading corrupted the market and misled Traudt into believing that he was trading in a fair and lawful market environment. This reliance was reasonable given FINRA's role as a regulator tasked with ensuring market integrity.

As a direct and proximate result of FINRA's conduct, Plaintiff suffered significant financial harm, including:

a. Loss of value of MMTLP shares to zero.

b. Prevention of being able to trade, manage, or liquidate positions in MMTLP due to the illegal U3 halt.

c. Reliance on distorted market information, leading to Traudt's losses.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment against Defendant FINRA and award the following relief:

a. Damages in an amount to be determined at trial.

b. Reasonable attorney's fees and costs of suit.

c. Any other relief this court deems necessary.

2. Traudt hereby wishes to super cede any and all claims for damages filed in prior motions against GTS and replace with the following:

### COUNT XV. Claim for Relief for Market Manipulation in Violation of Section 10(b) of the Exchange Act of 1934 and Rule 10b-5(a) and (c) Promulgated Thereunder Against GTS

Traudt incorporates by reference paragraphs from his 1st Amended Complaint ("1AC") and all additional facts as made available to this Court in the motions Traudt has filed in this matter as if more fully set forth herein.

GTS engaged in and employed devices, schemes, illegal acts, practices, and a course of conduct that were intended to manipulate the market price of MMTLP shares which were listed and traded on the OTC Link LLC and NYSE ARCA Global OTC trading venues, and which operated as a fraud and deceit upon MMTLP shareholders to include Traudt.

By reason of the conduct described above, GTS directly used the mails, and instrumentalities of interstate commerce, and a facility of a national securities exchange, to affect a series of transactions in MMTLP securities that was designed to create oversold conditions in MMTLP securities at Defendant Charles Schwab and Co. Inc. ("Schwab") and also to provide enormous quantities of naked synthetic shares into the market to provide for the destruction of the MMTLP share price. GTS engaged in a market manipulation strategy which was essentially a predatory trading strategy made possible by a high frequency trading system which artificially affected the prices of MMTLP securities. GTS provided the systemic risk inherent in creating approximately one billion naked synthetic shares and overselling of 700 million shares of MMTLP to broker-dealers. GTS made a safe and efficient market impossible.

As a direct and proximate result of Defendants' wrongful conduct, Traudt suffered damages in that he held his shares in MMTLP only to have them wiped out when MMTLP was U3 halted by FINRA on 9 December 2024. Traudt relied on an assumption of an efficient market free of manipulation. Traudt would never have bought MMTLP shares had these behind the scenes machinations by GTS been known to Traudt.

Defendants' conscious misbehavior or recklessness artificially affected the price of MMTLP shares, that Traudt held from 30 November 2022 to the present. Traudt's financial injuries would not have been as extensive but for the Defendants' conscious misbehavior or recklessness.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment against Defendant GTS and award the following relief:

    a. Damages in an amount to be determined at trial.

    b. Reasonable attorney's fees and costs of suit.

    c. Any other relief this court deems necessary.

## COUNT XVI. Additional Claim for Relief: Common Law Fraud Under 9 VSA § 5501 Against GTS

Traudt incorporates by reference all preceding paragraphs as if fully set forth herein.

The illegal registration and trading of MMTLP orchestrated by GTS Securities, constitutes a clear case of market manipulation and common law fraud not just upon Traudt but on the general market so as to be clearly a fraud upon the market. This scheme, executed in violation of FINRA Rule 6622(b) and SEC Rule 15c-211, knowingly created an illegal trading situation in MMTLP that was fraudulent and in so doing violated 6622(b) in that it was "in furtherance of a trading or investment strategy" which is illegal per the rule.

GTS knowingly and recklessly created a deceptive device in the form of a ticker for MMTLP and thus knowingly or recklessly injected into the market false and misleading information concerning the origins, supply, and market durability of MMTLP shares that appeared available for trading. This interfered with the natural market forces of supply and demand and made the share price of MMTLP subject to the whims of GTS and others.

Market confusion was evidenced in the final days of US trading on the OTC as GTS' and others had superior knowledge that a trade halt was coming and acted accordingly. GTS has never done locates for any of the shares it naked shorted and created for MMTLP as required by law. Traudt suffered damages as a result of the U3 trade halt executed by FINRA in concert with GTS and others. Traudt damages were directly and proximately caused by GTS' fraud.

When Traudt bought MMTLP shares, he did not possess any specific facts demonstrating that the market price of MMTLP shares were being manipulated and therefore, he relied on the efficiency of the market that had been unlawfully manipulated. Traudt suffered damages that were directly and proximately caused by GTS' fraud.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment against Defendant GTS and award the following relief:

    a. Damages in an amount to be determined at trial.

    b. Reasonable attorney's fees and costs of suit.

    c. Any other relief this court deems necessary.

## Count XVII: Violation of the Clayton Act – Treble Damages for Antitrust Violations Under the Sherman Antitrust Act, 15 U.S.C.S. § 1 et seq.

Traudt incorporates by reference all preceding paragraphs as if fully set forth herein.

Traudt alleges that GTS Securities, in concert with Charles Schwab & Co. and FINRA, violated Section 1 of the Sherman Antitrust Act (15 U.S.C.S. § 1) by engaging in anti-competitive practices, including price-fixing and market manipulation, which suppressed fair competition in the trading of MMTLP securities.

GTS, Schwab, and FINRA, acting as a monopoly, manipulated the price of MMTLP shares by artificially inflating the price to $12.26 on 22 November 2022, then flooding the

market with counterfeit shares to depress the price. This manipulation directly harmed Traudt and other retail investors.

GTS and Schwab conspired to control the supply and pricing of MMTLP shares through illegal naked short selling, which violated the SEC's Best Execution Rule (Regulation NMS, Rule 611). This rule mandates that brokers seek the most favorable terms for their customers when executing trades. By manipulating the supply of shares and artificially depressing the price, GTS, Schwab, and FINRA prevented retail investors, including Traudt, from receiving the best execution on their trades. GTS and Schwab's actions amounted to price-fixing, as they set the market price below the true value of the shares by introducing counterfeit shares into the market.

GTS, Schwab, and FINRA acted together as a monopoly to suppress competition in the MMTLP market. By coordinating to manipulate share prices and trading activity, they created artificial barriers that limited fair market access for retail investors. This conduct violated antitrust principles by stifling competition and preventing fair pricing mechanisms from functioning in the market.

On 8 December 2022, computerized trading platforms showed sell orders for MMTLP being accepted at prices ranging from $200 per share to thousands of dollars per share. Despite this, GTS's manipulation ensured that Traudt could not sell his 305 shares at fair market value, effectively denying him access to fair competition and pricing.

This coordinated effort between GTS, Schwab, and FINRA resulted in the violation of the Sherman Antitrust Act (15 U.S.C.S. § 1) by restraining trade, fixing prices, and creating monopolistic control over the trading of MMTLP shares.

As a result of GTS's anti-competitive conduct, Traudt lost the opportunity to sell his 305 shares at prices ranging from $200 to thousands of dollars per share. The damage from this price-

fixing and market manipulation far exceeds $5,000. Under the Clayton Act, 15 U.S.C.S. § 15(a), Traudt is entitled to recover three times the damages he sustained. Based on the potential value of his shares, Traudt seeks treble damages, as well as interest, costs, and attorney's fees.

Traudt seeks treble damages under 15 U.S.C.S. § 15(a) of the Clayton Act, compensatory damages, attorney's fees, and other relief as deemed just and proper by this Court.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment against Defendant GTS and award the following relief:

a. Damages in an amount to be determined at trial.

b. Reasonable attorney's fees and costs of suit.

c. Any other relief this court deems necessary.

3. Traudt hereby requests leave to amend his 1st Amended Complaint regarding Schwab and does hereby add the following claims for securities fraud in addition to the complaint:

## COUNT XVIII: VIOLATION OF SEC RULE 10b-5 – RELIANCE ON THE INTEGRITY OF THE MARKET

Traudt incorporates by reference all preceding paragraphs as if fully set forth herein.

This claim arises under SEC Rule 10b-5, which prohibits any act, practice, or course of business that operates as a fraud or deceit upon any person in connection with the purchase or sale of securities. Schwab, through its improper conduct, including the self-requested, self-serving U3 halt of MMTLP trading facilitated market practices that deceived investors. Specifically, Schwab's actions and omissions created the false appearance of a fair and transparent market, upon which Plaintiff reasonably relied.

Traudt relied on the integrity of the market, assuming that all trading activity in MMTLP and other securities was conducted in accordance with the rules and regulations governing

securities markets. This reliance is consistent with the fraud-on-the-market theory, which presumes that the prices of publicly traded securities reflect all material information.

Schwab's massive overselling of MMTLP constituted counterfeiting, and requesting the arbitrary halting of MMTLP trading corrupted the market and misled Traudt into believing that he was trading in a fair and lawful market environment. This reliance was reasonable given Schwab's role as the largest broker-dealer in the US markets.

As a direct and proximate result of FINRA's conduct, Plaintiff suffered significant financial harm, including:

a. Loss of value of MMTLP shares to zero.

b. Prevention of being able to trade, manage, or liquidate positions in MMTLP due to the illegal U3 halt.

c. Reliance on distorted market information, leading to Traudt's losses.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment against Defendant FINRA and award the following relief:

a. Damages in an amount to be determined at trial.

b. Reasonable attorney's fees and costs of suit.

c. Any other relief this court deems necessary.

### Count XIX: Violation of the Clayton Act – Treble Damages for Antitrust Violations Under the Sherman Antitrust Act, 15 U.S.C.S. § 1 et seq.

Traudt incorporates by reference all preceding paragraphs as if fully set forth herein.

Traudt alleges that Schwab, in concert with GTS and FINRA, violated Section 1 of the Sherman Antitrust Act (15 U.S.C.S. § 1) by engaging in anti-competitive practices, including

12

price-fixing and market manipulation, which suppressed fair competition in the trading of MMTLP securities.

GTS, Schwab, and FINRA, acting as a monopoly, manipulated the price of MMTLP shares by artificially inflating the price to $12.26 on 22 November 2022, then flooding the market with counterfeit shares to depress the price. This manipulation directly harmed Traudt and other retail investors.

GTS and Schwab conspired to control the supply and pricing of MMTLP shares through illegal naked short selling, which violated the SEC's Best Execution Rule (Regulation NMS, Rule 611). This rule mandates that brokers seek the most favorable terms for their customers when executing trades. By manipulating the supply of shares and artificially depressing the price, GTS, Schwab, and FINRA prevented retail investors, including Traudt, from receiving the best execution on their trades. GTS and Schwab's actions amounted to price-fixing, as they set the market price below the true value of the shares by introducing counterfeit shares into the market.

GTS, Schwab, and FINRA acted together as a monopoly to suppress competition in the MMTLP market. By coordinating to manipulate share prices and trading activity, they created artificial barriers that limited fair market access for retail investors. This conduct violated antitrust principles by stifling competition and preventing fair pricing mechanisms from functioning in the market.

On 8 December 2022, computerized trading platforms showed sell orders for MMTLP being accepted at prices ranging from $200 per share to thousands of dollars per share. Despite this, GTS's manipulation ensured that Traudt could not sell his 305 shares at fair market value, effectively denying him access to fair competition and pricing.

This coordinated effort between GTS, Schwab, and FINRA resulted in the violation of the Sherman Antitrust Act (15 U.S.C.S. § 1) by restraining trade, fixing prices, and creating monopolistic control over the trading of MMTLP shares.

As a result of Schwab's anti-competitive conduct, Traudt lost the opportunity to sell his 305 shares at prices ranging from $200 to thousands of dollars per share. The damage from this price-fixing and market manipulation far exceeds $5,000. Under the Clayton Act, 15 U.S.C.S. § 15(a), Traudt is entitled to recover three times the damages he sustained. Based on the potential value of his shares, Traudt seeks treble damages, as well as interest, costs, and attorney's fees.

Traudt seeks treble damages under 15 U.S.C.S. § 15(a) of the Clayton Act, compensatory damages, attorney's fees, and other relief as deemed just and proper by this Court.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment against Defendant GTS and award the following relief:

a. Damages in an amount to be determined at trial.

b. Reasonable attorney's fees and costs of suit.

c. Any other relief this court deems necessary.

## ARGUMENTS OF LAW

Plaintiff proceeds in this matter without the benefit of an attorney. District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). The Second Circuit has cautioned that district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v.*

*USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)).*Grajales v. Eli Lilly & Co.*, 23-CV-6972 (JPO), 10-11 (S.D.N.Y. Sep. 26, 2023)

Traudt has documented volumes of misconduct in this matter and should be given lead to "tighten things up" with an amended complaint. *Grajales v. Eli Lilly & Co.*, 23-CV-6972 (JPO), 11 (S.D.N.Y. Sep. 26, 2023) ("Because Plaintiff may be able to allege additional facts to state valid claims against the defendants, the Court grants him 60 days' leave to replead his claims in a second amended complaint.")

## CONCLUSION

Traudt requests this relief and any other relief deemed necessary by the Court to be granted and he be given 30 days to amend the complaint after all Motions to Dismiss are reviewed by the Court and decisions rendered highlighting any shortcomings in Traudt's pleadings.

Dated: November ___, 2024

Scott Traudt, *pro se ipso*
191 Kibling Hill Rd.
Strafford, VT 05072

I hereby certify that a true copy of the foregoing was sent to all named defendants and respondent at the addresses delineated below either by 1st Class mail or via email on this ___ day of November, 2024.

SCOTT TRAUDT

**Ari Rubenstein/GTS Securities LLC** Atty. Jonathan R. Voegele, Morris Kandinov LLP, 4915 Mountain Rd., Stowe, VT 05672

15

**Ari Rubenstein/GTS Securities LLC** Atty. Aaron T. Morris, Morris Kandinov LLP, 4915 Mountain Rd., Stowe, VT 05672

**Ari Rubenstein/GTS Securities LLC** Atty. Jonathan Miller, Williams, Barber & Morel Ltd., Willis Tower, 233 S. Wacker Dr., Ste. 6800, Chicago, IL 60606

**Ari Rubenstein/GTS Securities LLC** Atty. Stephen Fraser, Williams, Barber & Morel Ltd., Willis Tower, 233 S. Wacker Dr., Ste. 6800, Chicago, IL 60606

**FINRA** Atty. Walter Judge, DRM, 199 Main St. POB 190 Burlington VT 054020-190

**FINRA** Atty. John P. Mitchell, Faegre, Drinker, Biddle & Reath LLP 105 College Road East 105 College Road East, POB 627 Princeton NJ 08542-0627

**Schwab** Atty. Justin Barnard, Dinse P.C. 209 Battery St., Burlington VT 05401

**Schwab** Atty. Anne B. Rosenblum, Dinse P.C. 209 Battery St., Burlington VT 05401

**Schwab** Atty. Felipe Escobedo, Morgan, Lewis & Bockius LLP One federal St., Boston MA 02110-1726

**Schwab** Atty. Jeff Goldman Morgan, Lewis & Bockius LLP One federal St., Boston MA 02110-1726

**SEC** Atty. Mike Bailey 100 F Street, NE Washington, D.C. 20549