UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2024 NOV -8 PM 4:00

CLERK

BY _____
DEPUTY CLERK

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

SCOTT TRAUDT,                              \*
Plaintiff                                      \*
                                               \*
v.                                             \*          Docket Number: 2:24-cv-00782
                                               \*          **JURY TRIAL DEMANDED**
ARI RUBENSTEIN                             \*
Defendant                                      \*          1st Amended Complaint
                                               \*
GTS SECURITIES LLC                        \*
GTS EQUITY PARTNERS LLC                \*
GTS EXECUTION SERVICES LLC            \*
Defendant                                      \*
                                               \*
CHARLES W. SCHWAB AND CO. INC.     \*
SCHWAB HOLDINGS, INC.                    \*
Defendant                                      \*
                                               \*
FINANCIAL INDUSTRY                       \*
REGULATORY AUTHORITY                  \*
Defendant                                      \*
                                               \*
GARY GENSLER                              \*
US SECURITIES AND EXCHANGE          \*
COMMISSION                                 \*
Respondent                                     \*
                                               \*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## PLAINTIFF SCOTT TRAUDT'S ("TRAUDT") REPLY IN SUPPORT OF HIS OBJECTION TO GTS DEFENDANTS MOTION TO DISMISS AND MOTION TO AMEND THE 1ST AMENDED COMPLAINT WITH RESPECT TO GTS AND RUBENSTEIN

Defendants GTS Securities ("GTS") and Ari Rubenstein ("Rubenstein") have a long record of

securities fraud and misconduct as documented in Traudt's Opposition Memo.[1] That a *pro se*

litigant is following the evidence to new and more satisfactory claims before even the entry of a

---

[1] GTS and Rubenstein unless where noted otherwise are included together when GTS is
mentioned herein.

1

discovery order and before any motions to amend have been decided is clearly not prejudicial to

GTS. That the newer claims for Sherman Antitrust violations and securities fraud were included

early in the process and defined clearly shows Traudt is acting within his rights, with respect for

judicial economy, and with an understanding that some of the claims may fail but newer and

more accurate counts were presented to this Court. Traudt therefore abandons his RICO and

CFAA claims in the interests of judicial economy but requests leave of the Court to add in the

more on-point Clayton Act, Securities Fraud, Market Manipulation, and Vermont state law

claims attached in his Objection to GTS Motion to Dismiss.

## 1. Traudt should be granted leave to amend new claims and new defendants under the Sherman Antitrust Act *inter alia.*

After a responsive pleading has been filed, "a party may amend its pleading only with the

opposing party's written consent or the court's leave. . . [which] the court should freely give when

justice so requires." Fed. R. Civ. P. 15(a)(2). Rule 15 has been applied liberally, so that the

Federal Rules "facilitate a proper decision on the merits." *Foman v. Davis,* 371 U.S. 178,

182 (1962) *(quoting Conley v. Gibson,* 355 U.S. 41, 48 (1957)).

The Court has broad discretion to determine whether or not to allow a party to amend its

complaint, considering "undue delay, bad faith or dilatory motive on the part of the movant,

repeated failure to cure deficiencies by amendments previously allowed undue prejudice to the

opposing party by virtue of allowance of the amendment, [and] the futility of

amendment." *Foman,* 371 U.S. at 182.

Traudt has opposed the motion to dismiss with a virtual Encyclopedia Brittanica of other

cases that GTS is being sued in and its long history of fines and punishments from the SEC and

FINRA. Traudt has documented prior actions by GTS that mimic what happened in MMTLP,

and that alone should give this Court pause before showing Traudt the door on any claims as this

case is being pursued not just for Traudt but it is the public interest to see that free and fair

markets exist. They do not now. GTS is one of the prime reasons for this. GTS is not prejudiced

by allowing Traudt to amend his complaint. *Santiago v. Rossi*, Civil No. 3:12cv132 (JBA), 4 (D.

Conn. Jun. 5, 2013) ("Because the motion for leave to amend was timely, delay is not an issue.

Further, even in circumstances where there was significant delay and discovery had been

completed, the Second Circuit has granted leave to amend, particularly where the amendments

sought were just "variations on the original theme." *See Hanlin v. Mitchelson*, 794 F.2d 834,

841 (2d Cir. 1986); *see also United States for & on Behalf of Mar. Admin v. Cont'l Ill. Nat. Bank

& Trust Co. of Chi.*, 889 F.2d 1248, 1255 (2d Cir. 1989)")

      GTS clears through Goldman Sachs. Traudt has established the same playbook used by

GTS during the Overstock Squeeze was used in MMTLP. Former Overstock CEO Patrick Byrne

just won (again) in the 10th Circuit when short sellers who shorted his company failed to cover

their short positions, brought claims against Overstock and Byrnes, and then were defeated at the

10th Circuit after the lower US District Court dismissed the case. The United States Court of

Appeals for the Tenth Circuit reviewed the case and affirmed the district court's dismissal. The

appellate court held that the plaintiff failed to plausibly allege reliance on the defendants'

misstatements, as the plaintiff admitted that it bought shares to avoid breaching lending

contracts, not because of the defendants' statements. The court also found that the fully disclosed

dividend did not constitute manipulative conduct, as it did not deceive investors about the market

value of Overstock's shares. Additionally, the court dismissed the plaintiff's claims of material

omissions, finding no evidence that the defendants intended to register the dividend all along or

that issuing the unregistered dividend was illegal. *In re: Overstock Securities Litigation*, No. 21-

4126 (10th Cir. 2024).

Traudt suspects GTS got hurt financially in the Overstock play by Byrne when the shorters were forced to cover, but the depths to which Traudt can't know. But as a market maker who worked to get Overstock trading, GTS would have been scorched and would therefore have taken future steps to prevent that from happening again – hence the MMTLP corruption.

Byrne called out the SEC on 18 September 2019 and the major financial apex predators in the market to confirm exactly the same methods and "cartel-like" behavior to protect the finances of the elites on display in MMTLP's trade halt:

*"Something funny happened to me over the weekend here in Asia. I started receiving detailed messages saying that since the morning of last Friday (13th), major prime brokers on Wall Street (e.g. JP Morgan, Morgan and Goldman) were telling clients that the SEC had let them know last Thursday night and Friday morning that they going to do something special to let short-sellers off the hook (and incidentally I can easily trace back the names of the people at the prime saying that). They (sic) SEC informed the prime brokers that if Overstock went forward with the dividend, they (the SEC) would be sending them Wells Notices (essentially, letters that say "We are going to come after you!") these prime brokers were telling that to clients. In short the prime brokers were promising clients that the SEC would call "Bazoomba!" for them.[2]*

If the cartel could do it in a much larger company than Meta Materials Inc., the cartel of which GTS was a part could have done it with ease in MMTLP.[3]

The counts Traudt wishes to add as surviving claims against GTS are:

---

[2] *The SEC Cries "Bazoomba!"* Deep Capture, by Patrick Byrne, 18 September 2019 see https://www.deepcapture.com/2019/09/the-deep-state-cries-bazoomba/
[3] They just caught in MMTLP with all the oversold conditions as what was acknowledged by Tradestation.

XI. Claim for Relief for Market Manipulation in Violation of Section 10(b) of the Exchange Act of 1934 and Rule 10b-5(a) and (c) Promulgated Thereunder Against GTS

XII. Additional Claim for Relief: Common Law Fraud Under 9 VSA § 5501 Against GTS

XVI: Violation of FINRA Rule 203(b)(2) – Naked Short Selling Without Proper Locates in Violation of SEC Rule 10b-5

XVII: Violation of the Clayton Act – Treble Damages for Antitrust Violations Under the Sherman Antitrust Act, 15 U.S.C.S. § 1 et seq.

## 2. The Court should accept new the claims

GTS completely mischaracterizes Traudt's positioning on the securities fraud, state claims, and the Clayton Act claims.

Traudt has alleged with sufficient particularity that GTS had capacity, motive and opportunity to print millions of both counterfeit shares for long positions and naked synthetics for short positions. Traudt also stated with particularity that they never located the millions of naked short shares of MMTLP they printed under Rule 203.[4] This was by design showing the requisite scienter needed to be established for Traudt to proceed under the PSLRA. Traudt argues that all of the securities fraud claims that would be added as amendments likewise are sturdy in this respect. Traudt identified the incept of the GTS actions with Schwab to get it trading illegally, then their financial benefit from being a cyber printing press for fake shares of every flavor naturally followed thereafter.

---

[4] Further discovery would come up with these numbers; Traudt is at a disadvantage to get these exact numbers from GTS externally but production requests would achieve this coupled with FINRA's bluesheets on MMTLP.

GTS looks to *Accord Taylor v. Keen,* Civ. No. 11-5221, 2012 U.S District LEXIS 126131, at *15-16 (E.D.N.Y. Sept. 5, 2012 to prevent Traudt from amending. A 42 USCS 1983 case, the factual basis of the *Accord* ruling was a supposed 1st Amendment violation, holding a paradox essentially couldn't be litigated: " A plaintiff cannot deny the statements at issue were made, and simultaneously claim that his First Amendment rights were violated due to punishment for the speech that he asserts never occurred. In other words, a First Amendment claim cannot exist as a matter of law when the claim is based upon speech that plaintiff asserts never took place." *Taylor § 7.* This has absolutely zero to do with *Traudt* or Clayton Act claims.

Market manipulation involves any activity that artificially affects a security's price or trading volume to deceive investors. This can include practices like spoofing, wash trading, and pump-and-dump schemes. Without any discovery and far before any discovery schedules have been set forth, it stands to reason that in the case of MMTLP, the simple mathematics shows that there were roughly 165,000,000 shares created and distributed by Depository Trust Clearing Corporation but nearly a billion shares short from Torchlight Energy Inc. ("TRCH") were merged into what would become MMTLP. They were never closed out. GTS knew, as the market maker for MMTLP, that that volume of shares was on the market and their duty to identify such a fraud and account for those shares violated their duty to preserve a free and fair market. Traudt had no way of knowing that MMTLP was so heavily shorted nor so heavily oversold, and GTS was in a position to know this but violated its duties under SEC Rule 15c3-5 – *Market Access Rule* which ensures that broker-dealers, including market makers, maintain proper controls to prevent trading practices that could harm market integrity. Market makers must have risk management and supervisory systems to manage risks and ensure compliance with applicable rules. GTS violated SEC Rule 15c2-11 – *Initiation or Resumption of Quotations*

6

*Without Current Information* in that market makers must collect and review sufficient information about the securities they create markets for have quotations they publish are not fraudulent or misleading. Finally, Exchange Act Section 11A – *National Market System Requirements* instructs that the SEC emphasizes that market makers must contribute to the efficiency, transparency, and integrity of the market system by upholding standards and practices that promote fair markets.

Based on the foregoing, GTS created a fraud-upon-the-market by its actions. *Basic Inc. v. Levinson*, 485 U.S. 224, 225 (1988) (" The courts below properly applied a presumption of reliance, supported in part by the fraud-on-the-market theory, instead of requiring each plaintiff to show direct reliance on Basic's statements. Such a presumption relieves the Rule 10b-5 plaintiff of an unrealistic evidentiary burden, and is consistent with, and supportive of, the Act's policy of requiring full disclosure and fostering reliance on market integrity. The presumption is also supported by common sense and probability: an investor who trades stock at the price set by an impersonal market does so in reliance on the integrity of that price. Because most publicly available information is reflected in market price, an investor's reliance on any public material misrepresentations may be presumed for purposes of a Rule 10b-5 action. Pp. 241-247.")

## 3. The Clayton Act and monopolistic behavior

There can be no doubt that a cursory evaluation of the nexus between GTS, FINRA, and Schwab shows that all entities share a common purpose and play different roles in the rigging of trading, share prices, corporate action notices, ticker deletion, and above all else the ongoing trade halt in MMTLP s in violation of *SEC v. Sloan* 436 US 103 (1978). *California Dental Ass'n v. Federal Trade Commission*, 526 U.S. 756, 757 (1999) ("An abbreviated or "quick-look" analysis is appropriate when an observer with even a rudimentary understanding of economics

could conclude that the arrangements in question have an anticompetitive effect on customers and markets. See, *e.g., National Collegiate Athletic Assn.* v. *Board of Regents of Univ. of Okla.*, 468 U.S. 85. ") If Traudt hasn't recited all the factual allegations needed to maintain a Clayton Act claim, leave should be given to amend.

GTS did participate in price fixing – the ultimate kind. By printing share after share as the main market maker for MMTLP, it allowed its monopoly partners to trade long and short at will without regulatory consequences because that was either the implied or verbalized or emailed or phoned in part of the deal: GTS would print at will. The brokers would trade into the death spiral knowing the shorting would be allowed to go uncovered in the same way Patrick Byrne's writings on what happened regulatory wise from the SEC: they would NOT force shorts to cover.

Hence, *prima facie* evidence of a monopoly.

So we are talking about pure restraint of trade, ultimately; MMTLP has 2 days left to *trade*. This complaint documents much of the misconduct that led to the halt. Holding back 2 days of trading is monopolistic predation wherein three of the most powerful operators in the US stock market named as defendants here effectively killed price discovery via killing trading, favored market participants over others, and eventually liquidated the financial interests of 65,000 Americans. *Nat'l Collegiate Athletic Ass'n* v. *Alston*, 141 S. Ct. 2141, 2151 (2021) ("This Court has "long recognized that in view of the common law and the law in this country when the Sherman Act was passed, the phrase 'restraint of trade' is best read to mean 'undue restraint.' " *Ohio* v. *American Express Co.* , 138 S.Ct. 2274, 2283, 201 L.Ed.2d 678 (2018) (brackets and some internal quotation marks omitted). Determining whether a restraint is undue for purposes of the Sherman Act "presumptively" calls for what we have described as a "rule of reason

8

619 (1911). That manner of analysis generally requires a court to "conduct a fact-specific assessment of market power and market structure" to assess a challenged restraint's "actual effect on competition." *American Express*, 138 S.Ct., at 2284 (internal quotation marks omitted). Always, "[t]he goal is to distinguish between restraints with anticompetitive effect that are harmful to the consumer and restraints stimulating competition that are in the consumer's best interest." *Ibid.* (brackets and internal quotation marks omitted). ")

The ongoing trade halt in MMTLP is an ongoing Sherman Antitrust violation.

## CONCLUSION

1. Traudt urges this Court to deny GTS and Rubenstein's motion to dismiss.

2. Traudt requests this Court for leave to amend to add claims for which plausible claims for relief can be made.

3. Traudt requests oral argument on this matter.

Dated: October 28 2024

Scott Traudt, *pro se ipso*
191 Kibling Hill Road
Strafford, VT 05072

I hereby certify that a true copy of the foregoing was sent to all named defendants and respondent at the addresses delineated below either by 1st Class mail or via email on this 28 day of October, 2024.

SCOTT TRAUDT

**Ari Rubenstein/GTS Securities LLC** Atty. Jonathan R. Voegele, Morris Kandinov LLP, 4915 Mountain Rd., Stowe, VT 05672

**Ari Rubenstein/GTS Securities LLC** Atty. Aaron T. Morris, Morris Kandinov LLP, 4915 Mountain Rd., Stowe, VT 05672

9

**Ari Rubenstein/GTS Securities LLC** Atty. Jonathan R. Voegele, Morris Kandinov LLP, 4915 Mountain Rd., Stowe, VT 05672

**Ari Rubenstein/GTS Securities LLC** Atty. Aaron T. Morris, Morris Kandinov LLP, 4915 Mountain Rd., Stowe, VT 05672

**Ari Rubenstein/GTS Securities LLC** Atty. Jonathan Miller, Williams, Barber & Morel Ltd., Willis Tower, 233 S. Wacker Dr., Ste. 6800, Chicago, IL 60606

**Ari Rubenstein/GTS Securities LLC** Atty. Stephen Fraser, Williams, Barber & Morel Ltd., Willis Tower, 233 S. Wacker Dr., Ste. 6800, Chicago, IL 60606

**FINRA** Atty. Walter Judge, DRM, 199 Main St. POB 190 Burlington VT 054020-190

**FINRA** Atty. John P. Mitchell, Faegre, Drinker, Biddle & Reath LLP 105 College Road East 105 College Road East, POB 627 Princeton NJ 08542-0627

**Schwab** Atty. Justin Barnard, Dinse P.C. 209 Battery St., Burlington VT 05401

**Schwab** Atty. Anne B. Rosenblum, Dinse P.C. 209 Battery St., Burlington VT 05401

**Schwab** Atty. Felipe Escobedo, Morgan, Lewis & Bockius LLP One federal St., Boston MA 02110-1726

**Schwab** Atty. Jeff Goldman Morgan, Lewis & Bockius LLP One federal St., Boston MA 02110-1726

**SEC** Atty. Mike Bailey 100 F Street, NE Washington, D.C. 20549