UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2024 DEC 30 PM 2: 30

CLERK

BY_____
DEPUTY CLERK

```
************************************
SCOTT TRAUDT,                       *
Plaintiff                           *
                                    *
v.                                  *
                                    *
ARI RUBENSTEIN                      *
Defendant                           *
                                    *
                                    *
GTS SECURITIES LLC                  *
GTS EQUITY PARTNERS LLC             *
GTS EXECUTION SERVICES LLC          *
Defendant                           *
                                    *
CHARLES W. SCHWAB AND CO. INC.      *
SCHWAB HOLDINGS, INC.               *
Defendant                           *
                                    *
FINANCIAL INDUSTRY                  *
REGULATORY AUTHORITY                *
Defendant                           *
                                    *
GARY GENSLER                        *
US SECURITIES AND EXCHANGE          *
COMMISSION                          *
Respondent                          *
                                    *
************************************
```

Docket Number: 2:24-cv-00782
**JURY TRIAL DEMANDED**

2nd Amended Complaint

## MOTION FOR RECONSIDERATION OF GRANT OF STAY IN FAVOR OF ARBITRATION PURSUANT TO FRCP 59(e)

Plaintiff Scott Traudt ("Traudt") moves this Court for reconsideration of its decision to

grant a stay in favor of arbitration with Defendant Charles Schwab and Co. Inc.

("Schwab").

### 1. The Court's decision on 16 December 2024

In its ruling staying proceedings against Schwab, this Court held in part that:

1

"Under Vermont law, a contract provision may be unenforceable where the provision is procedurally unconscionable, substantively unconscionable, or both." *Gingras,* 922 F.3d at 126 (citing *Glassford v. BrickKicker,* 2011 VT 118, 113, 191 Vt. 1, 9, 35 A.3d 1044, 1048-49). A contract may be unconscionable if there is "unequal bargaining power between the parties, lack of opportunity to read the contract, [or] use of fine print in the contract[.]" *Val Preda Leasing, Inc. v. Rodriguez,* 540 A.2d 648, 652 (Vt. 1987) (citing *Davis v. ML.G. Corp.,* 712 P.2d 985, 991 (Colo. 1986)); *see also KPC Corp. v. Book Press, Inc.,* 636 A.2d 325, 329 (Vt. 1993) ("In considering whether a party has been unfairly surprised by a contract term or its application, we take into account the party's relative business experience and education, the party's opportunity to understand the terms of the contract, and whether the terms were hidden in the fine print."). Courts also consider "the terms of the contract, including substantive unfairness." *Val Preda Leasing, Inc.,* 540 A.2d at 652.

The Court's ruling did not address and only barely referenced Traudt's spoliation claims against Schwab, all of which were not contested by Schwab:

1. Schwab destroyed emails and account records of Traudt's ongoing ownership of an account at Schwab.

2. Schwab personnel admitted they had asked for the U3 trade halt to protect themselves and their corporate bottom line and that trading in MMTLP was at over "100 times" the lit market. That recorded voice call was on 20 March 2024. Schwab personnel admitted on or about 16 September 2024 that they deleted it in violation of SEC rules mandating records and call retentions.

2

Traudt provided ample evidence that Schwab has not complied with FINRA Rule 4511 regarding access to trading records that would be vital to Traudt in either arbitration or litigation. These requests were filed on 26 June 2024 and are a part of Traudt's objection to the stay first filed in October, 2024. To date Schwab has answered none of them. These all dealt with trading data regarding MMTLP and what positions Schwab had.

## 2. Reconsideration based on *Glassford v. Brickner* not being interpreted thoroughly by this Court

This Court relied in part on an assessment of *Glassford* but did not plumb its depths to the bottom; in particular, the arbitration clauses at work in the instant matter are paralleled by the holdings quoted in *Glassford*:

Because the contract before us contains what are, in effect, exculpatory clauses in consumer transactions, we turn to *Dalury,* 164 Vt. at 331, 670 A.2d at 797, for guidance. *Dalury* holds that exculpatory clauses are valid as long as they do not violate public policy. In determining whether exculpatory clauses violate public policy, we adopted the standards from *Tunkl v. Regents of University of California,* 60 Cal.2d 92, 32 Cal.Rptr. 33, 383 P.2d 441, 444 (1963), as "relevant considerations." *Dalury,* 164 Vt. at 333, 670 A.2d at 798. The *Tunkl* standards provide that an exculpatory agreement is invalid if it exhibits some or all of the following characteristics:

It concerns a business of a type generally thought suitable for public regulation. The party seeking exculpation is engaged in performing a service of great importance to the public, which is often a matter of practical necessity for some members of the public. The party holds [it]self out as willing to perform this service for any member of the public who seeks it, or at least for any member coming within certain established

3

standards. *As a result of the essential nature of the service, in the economic setting of the transaction, the party invoking exculpation possesses a decisive advantage of bargaining strength against any member of the public who seeks [the party's] services.* (emphasis added) In exercising a superior bargaining power the party confronts the public with a standardized adhesion contract of exculpation, and makes no provision whereby a purchaser may pay additional reasonable fees and obtain protection against negligence. Finally, as a result of the transaction, the person or property of the purchaser is placed under the control of the seller, subject to the risk of carelessness by the seller or [the seller's] agents. *Tunkl,* 32 Cal.Rptr. 33, 383 P.2d at 445–46. *Glassford v. Brickkicker*, 35 A.3d 1044, 1050 (Vt. 2011)

*Glassford* went further:

*Dalury* involved a clause, contained in a ski lift ticket, that released the ski area from all liability caused by its negligence and resulting in injury to the skier. Over arguments that operating a ski area is not a business suitable for public regulation and does not perform a "service of great importance to the public," this Court found that the exculpatory clause was void as against public policy. *Dalury,* 164 Vt. at 332–34, 670 A.2d at 797–99. We stressed that the ski area was open to the public, and that thousands of people skied at the resort every day. We also stressed the premises liability policy placing responsibility for maintenance of the land on those who own or control it. *Id.* at 334–35, 670 A.2d at 799. *Glassford v. Brickkicker*, 35 A.3d 1044, 1050 (Vt. 2011)

Traudt's argument here is that the Schwab/Traudt arbitration agreement was filed with exculpatory clauses, not the least of which limited discovery. Like *Dalury*, Traudt and Schwab came at the agreement from different positions of strength; for this Court to

4

assess them as equals also requires the Court to evaluate that Schwab's announcement over the last 2 years to many shareholders in MMTLP that they would not allow it to trade again even if FINRA ordered the trading in MMTLP to commence was clearly a breach of the contract. This Court was silent on Traudt's anticipatory breach claims even though the evidence against Schwab in the form of affidavits from Erbacher and Givens was submitted with Schwab personnel asserting that there would be no more trading in MMTLP by Schwab.

Traudt was certainly *surprised* to find out that Schwab could destroy evidence with impunity, ask for a trade halt that destroyed Traudt's investment, counterfeit shares and oversell, and be allowed to violate FINRA rules regarding access to records. This Court could have analogized this surprise by Traudt to that identified in *KPC Corp. v. Book Press, Inc.,* 636 A.2d 325, 329 (Vt. 1993) ("In considering whether a party has been unfairly *surprised by a contract term or its application*, we take into account the party's relative business experience and education, the party's opportunity to understand the terms of the contract, and whether the terms were hidden in the fine print.") (emphasis added) but did not.

The *Glassford* Court focused ultimately on accountability and if arbitration agreements were structured in a way that immunized them (in this case home inspectors) from negligence then they were illegal:

As in *Dalury,* a legitimate public interest arises "as a result of the seller's general invitation to the public to utilize the ... services in question." *Dalury,*164 Vt. at 334, 670 A.2d at 799. Thus, as in *Dalury,* public policy requires consequences when home inspectors do not perform with due care. Only the inspectors are able to conform their

services to their contractual obligations and the necessary quality. If the law immunizes them from liability for their negligence, it eliminates the greatest and most important incentive for proper performance. *Glassford v. Brickkicker*, 35 A.3d 1044, 1051 (Vt. 2011)

### 3. Argument: Schwab voided the contract and arbitration was wrongly decided due to bad faith and spoliation of evidence

In Vermont, the duty of good faith and fair dealing is implied in every contract, ensuring that each party performs its obligations honestly and fairly. This principle has been firmly established in Vermont law, as demonstrated in *Monahan v. GMAC Mortgage Corp.*, 179 Vt. 167 (2005). In *Monahan*, the Vermont Supreme Court emphasized that a party acts in bad faith when it frustrates the other party's ability to benefit from the contract. GMAC's misapplication of mortgage payments and initiation of foreclosure proceedings without justification were found to potentially breach the covenant of good faith and fair dealing, as these actions undermined the Monahans' rights under the agreement.

The covenant of good faith and fair dealing is implied by law in all contracts, to protect against "conduct which violates community standards of 'decency, fairness, or reasonableness.' " *Harsch Properties, Inc. v. Nicholas,* 2007 VT 70, ¶ 14, 182 Vt. 196, 932 A.2d 1045, 1050 (quoting *Carmichael v. Adirondack Bottled Gas Corp.,* 161 Vt. 200, 635 A.2d 1211, 1216 (1993)). *One Source Environmental, LLC v. M + W Zander, Inc.*, 13 F. Supp. 3d 350, 361 (D. Vt. 2014). There was no good faith in deleting emails and audio recordings vital to Traudt's claims in anticipation of litigation and discovery by Schwab. On this issue alone Traudt does not belong in arbitration.

Schwab's spoliation of evidence is not merely a procedural misstep; it strikes at the heart of the contract itself. Without the preserved evidence, Traudt is deprived of key information necessary to prove Schwab's bad faith conduct, including its advance knowledge of FINRA's trading halt of MMTLP and its refusal to trade the security. This directly parallels *Monahan*, where GMAC's actions deprived the Monahans of the ability to retain their home—a key benefit of their mortgage agreement. Schwab's actions here similarly prevent Traudt from receiving the benefit of his agreement with Schwab as his broker.

Moreover, Schwab's spoliation of evidence is not only a breach of the implied covenant of good faith but also constitutes a common law tort. In this case, Schwab's actions satisfy the elements of this tort: the evidence destroyed or lost was critical to Traudt's claims, the spoliation occurred under Schwab's control, and Traudt suffered prejudice as a result. Schwab's bad faith conduct invalidates any reliance on the arbitration clause in the contract. Arbitration agreements rely on the premise that both parties will engage in the process in good faith. By spoliating evidence, Schwab has preemptively sabotaged the arbitration process, ensuring that Traudt cannot fairly present his claims. This renders the arbitration agreement unenforceable, as it would be unjust to require Traudt to arbitrate under conditions created by Schwab's own bad faith conduct. Finally, Vermont contract law, as articulated in *Monahan*, supports the conclusion that Schwab's actions void the contract itself. When a party to a contract acts in bad faith in such a way as to destroy the other party's ability to benefit from the agreement, the contract can no longer be enforced against the injured party. Schwab's spoliation of evidence and its refusal to allow trading of MMTLP securities are actions that rise to this

level of bad faith. Traudt's inability to fully access critical information due to Schwab's conduct justifies the court in holding that the arbitration agreement—and the contract as a whole—cannot be enforced against him.

In light of Schwab's bad faith actions, including the spoliation of evidence necessary for Traudt to substantiate his claims, this Court should reverse its decision and allow litigation to proceed against Schwab and find that the contract is void and the arbitration clause unenforceable. This result is consistent with Vermont law and the principles articulated in *Monahan*, ensuring that Traudt is not further disadvantaged by Schwab's breaches of the duty of good faith and fair dealing.

## 4. Conclusion

For all of the foregoing, Traudt respectfully requests that it reconsider its 16 December 2024 decision, void the agreement between Schwab and Traudt as Traudt has challenged the entirety of the contract, and keep Traudt out of arbitration.

Dated: December 30, 2024

Scott Traudt, *pro se ipso*
191 Kibling Hill Road
Strafford, VT 05072

I hereby certify that a true copy of the foregoing was sent to all named defendants and respondent at the addresses delineated below either by 1st Class mail or via email on this 30 day of December, 2024.

SCOTT TRAUDT

**Ari Rubenstein/GTS Securities LLC** Atty. Jonathan R. Voegele, Morris Kandinov LLP, 4915 Mountain Rd., Stowe, VT 05672

**Ari Rubenstein/GTS Securities LLC** Atty. Aaron T. Morris, Morris Kandinov LLP, 4915 Mountain Rd.,  Stowe, VT 05672

**Ari Rubenstein/GTS Securities LLC** Atty. Jonathan Miller, Williams, Barber & Morel Ltd., Willis Tower, 233 S. Wacker Dr., Ste. 6800, Chicago, IL 60606

**Ari Rubenstein/GTS Securities LLC** Atty. Stephen Fraser, Williams, Barber & Morel Ltd., Willis Tower, 233 S. Wacker Dr., Ste. 6800, Chicago, IL 60606

**FINRA** Atty. Walter Judge, DRM, 199 Main St. POB 190 Burlington VT 054020-190

**FINRA** Atty. John P. Mitchell, Faegre, Drinker, Biddle & Reath LLP 105 College Road East 105 College Road East, POB 627 Princeton NJ 08542-0627

**Schwab** Atty. Justin Barnard, Dinse P.C. 209 Battery St., Burlington VT 05401

**Schwab** Atty. Anne B. Rosenblum, Dinse P.C. 209 Battery St., Burlington VT 05401

**Schwab** Atty. Felipe Escobedo, Morgan, Lewis & Bockius LLP One federal St., Boston MA 02110-1726

**Schwab** Atty. Jeff Goldman Morgan, Lewis & Bockius LLP One federal St., Boston MA 02110-1726

**SEC** Atty. Mike Bailey 100 F Street, NE Washington, D.C. 20549