# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF VERMONT

|                                             |     |                          |
|---------------------------------------------|-----|--------------------------|
| SCOTT TRAUDT,                               | )   |                          |
|                                             | )   |                          |
| Plaintiff,                                  | )   |                          |
|                                             | )   |                          |
| v.                                          | )   | Case No. 2:24-cv-00782   |
|                                             | )   |                          |
| ARI RUBINSTEIN,                             | )   |                          |
| GTS SECURITIES, LLC,                        | )   |                          |
| GTS EQUITY PARTNERS, LLC,                   | )   |                          |
| GTS EXECUTION SERVICES, LLC,                | )   |                          |
| CHARLES W. SCHWAB & CO., INC.,              | )   |                          |
| SCHWAB HOLDINGS, INC., and                  | )   |                          |
| FINANCIAL INDUSTRY                          | )   |                          |
| REGULATORY AUTHORITY, INC.,                 | )   |                          |
|                                             | )   |                          |
| Defendants, and                             | )   |                          |
|                                             | )   |                          |
| GARY GENSLER, and                           | )   |                          |
| U.S. SECURITIES AND EXCHANGE                | )   |                          |
| COMMISSION,                                 | )   |                          |
|                                             | )   |                          |
| Respondents.                                | )   |                          |

### FINANCIAL INDUSTRY REGULATORY AUTHORITY INC.'S

### MEMORANDUM OF LAW IN OPPOSITION TO

### PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

## PRELIMINARY STATEMENT

Defendant Financial Industry Regulatory Authority, Inc. ("FINRA") files this memorandum of law in opposition to Plaintiff Scott Traudt's ("Plaintiff") Motion for Leave to Amend (ECF no. 112) (the "Plaintiff's Motion"), in which Plaintiff moves the Court for an order granting him leave to file his proposed Second Amended Complaint. *See* ECF no. 112-3 (the "Proposed SAC").

Plaintiff commenced this action in July 2024 by filing his original Complaint (ECF no. 1) and then amended that complaint days later ("Amended Complaint") (ECF no. 4). What followed can only be described as a "scorched earth" approach by a pro se litigant who has consistently demonstrated a callous disregard for the Court's rules and the Courts' and other parties' time and resources. Armed with nothing more than conspiracy theories, irrelevant and unsupported "facts," and conclusory and inflammatory statements, Plaintiff filed a multitude of meritless applications, including a since-withdrawn motion for writ of mandamus (ECF no. 2), a motion in limine for limited class action certification (ECF no. 3), and numerous premature motions lacking any factual or legal basis (e.g., ECF nos. 13, 14, 32, 39), all before FINRA had an opportunity to respond to the Amended Complaint.

Then, after FINRA engaged in voluminous briefings on his meritless motions and filed a dispositive motion, Plaintiff filed another non-compliant motion seeking to amend his complaint and abandoning all of the purported claims he asserted in the Amended Complaint. ECF no. 88. After the Court entered an order warning Plaintiff of "vexatious filings" and noting that Plaintiff had filed twenty-two (22) separate motions since the case commenced (ECF no. 102), the Court rejected Plaintiff's motion to amend but graciously provided Plaintiff an opportunity to seek leave to amend his pleading in a manner that complies with the Court's rules (ECF no. 103). In doing so, the Court gave Plaintiff explicit instructions:

> Pursuant to this court's Local Rules, "[a] motion to amend a filing must include... a redlined version of the proposed amendment clearly designating additions and deletions" as well as "a non-redlined reproduction of the entire amended filing." See D. Vt. L.R. 15(a).... This filing must include a proposed Second Amended Complaint that sets forth the claims Plaintiff seeks to assert against each defendant and the relief he seeks.

ECF no. 103.

Because Plaintiff blatantly ignores the Court's explicit instructions, there is an independent basis to deny Plaintiff's Motion. In addition, the Proposed SAC is futile because it fails to assert any viable cause of action against FINRA. First, the Proposed SAC continues to suffer the most fundamental of shortcomings: it fails to establish that this Court has personal jurisdiction over FINRA. Indeed, Plaintiff acknowledged his original pleadings did not include sufficient allegations to establish personal jurisdiction (ECF no. 78, p. 8), and yet the Proposed SAC does nothing to remedy that acknowledged deficiency. Instead, Plaintiff merely added a few conclusory (and contradictory) allegations to the Proposed SAC concerning FINRA operations generally (Proposed SAC, ¶ 5), and makes no effort to directly tie those operations to Plaintiff's claims against FINRA or to the forum.

Second, the voluminous, incendiary, and conclusory claims in the Proposed SAC also do not overcome the fact that all of Plaintiff's allegations against FINRA relate to FINRA's regulatory activities. As a result, Plaintiff's proposed amendment is futile because irrefutable, black letter precedent establishes that FINRA is immune from suit and that there is no private right of action against FINRA for conduct falling within the scope of its regulatory functions. Further, the Proposed SAC fails to state any cognizable claim for relief against FINRA.

For these reasons, the Proposed SAC would be subject to dismissal and is therefore futile. Accordingly, Plaintiff's Motion should be denied with prejudice and without further leave to amend, and judgment should be entered dismissing FINRA from this action, with prejudice.

**ARGUMENT**

I.    **PLAINTIFF'S MOTION FOR LEAVE SHOULD BE DENIED BECAUSE IT REMAINS NON-COMPLIANT**

Plaintiff's Motion remains non-compliant because, in direct violation of Local Civil Rule 15(a)(1) and this Court's explicit directive to "include . . . a redlined version of the proposed amendment clearly designating additions and deletions . . .," Plaintiff did not include a single document identifying the additions to and deletions from the Amended Complaint (ECF no. 4) in the Proposed SAC (ECF no. 112-3). Instead, Plaintiff submitted two documents--one purported redline allegedly showing additions (ECF no. 112-2) and a second allegedly showing deletions (ECF no. 112-1). The clean copy of the Proposed SAC also contains allegations not identified in either of the purported redlines. *Compare* Redline additions (ECF no. 112-2) with Proposed SAC ¶ 196 (ECF no. 112-3) (adding allegation "This number does not include short positions it was saved from closing out by the U3 halt of 9 December 2022" not identified in redline). *See also, e.g.*, Proposed SAC ¶ 295 (entirely new allegation not in redline). Thus, Plaintiff failed to comply with Local Civil Rule 15(a)(1) and the Court's Order. Plaintiff's failure makes a review of the Proposed SAC both confusing and difficult.

As noted in the GTS Defendants' opposition to Plaintiff's Motion (ECF 116), Plaintiff's conduct over the course of this litigation, the nature of his prior amendments, the new claims asserted in the Proposed SAC, and his failure to comply with the Court's Order all warrant denial of Plaintiff's Motion with prejudice. *See* ECF no. 116, pp. 3-6. For efficiency's sake, FINRA incorporates those arguments and will not repeat them here. FINRA does, however, emphasize that: (a) Plaintiff's Motion was filed after dispositive motions had been fully briefed, at great expense and over many months; (b) the Proposed SAC fails to comply with Federal Rule of Civil Procedure 8 requiring "a short and plain statement of the claim showing that the pleader is entitled

to relief." Fed. R. Civ. P. 8(a)(2);[1] and (c) the Proposed SAC contains new legal theories based on the same irrelevant, illogical, conclusory, and unsupported assertions presented in the Amended Complaint. For these reasons alone, Plaintiff's motion should be denied with prejudice.

## II.    PLAINTIFF'S PROPOSED CLAIMS AGAINST FINRA ARE FUTILE, AND PLAINTIFF SHOULD NOT BE PERMITTED LEAVE TO AMEND

### A.    Motions for Leave Should Be Denied Where the Proposed Amendment is Futile

"[I]t is well established that leave to amend a complaint need not be granted when amendment would be futile." *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003) (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962), and quoting *Jones v. New York State Div. of Military & Naval Affairs*, 166 F.3d 45, 50 (2d Cir. 1999)); *Miller v. U.S. ex rel. Miller*, 110 F.4th 533, 550 (2d Cir. 2024) (same); *Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011) (confirming district court dismissal of complaint without leave to amend and noting that "[w]here a proposed amendment would be futile, leave to amend need not be given") (citations omitted); *Jones*, 166 F.3d at 50 ("[A] district court may properly deny leave when amendment would be futile."). "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002); *In re IBM Arb. Agreement Litig.*, 76 F.4th 74, 87 (2d Cir. 2023), *cert. denied sub nom. Abelar v. Int'l Bus. Machines Corp.*, 144 S. Ct. 827, 218 L. Ed. 2d 33 (2024) (same); *Balintulo v. Ford Motor Co.*, 796 F.3d 160, 164–65 (2d Cir. 2015) (same); *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995) (in reviewing a motion for leave to amend, courts will "consider: bad faith, undue delay, prejudice to the opposing party, futility of the amendment, and

---

[1] The Proposed SAC contains 324 separate paragraphs and 15 causes of action against the defendants in this action. ECF no. 112-3.

whether the party has previously amended his pleadings…" but "each is not given equal weight. Futility of amendment can, by itself, justify the denial of a motion for leave to amend."), cert. denied, 506 U.S. 822, 113 S. Ct. 74, 121 L. Ed. 2d 39 (1992) (citations omitted)).

Here, granting Plaintiff's Motion "would be nothing more than an exercise in futility." *Bonin*, 59 F.3d at 845 (citing *Outdoor Systems, Inc. v. City of Mesa*, 997 F.2d 604, 614 (9th Cir. 1993)). As discussed in detail below, the Proposed SAC is subject to dismissal for multiple reasons. Most critically, the Proposed SAC fails to establish that this Court has personal jurisdiction over FINRA. FINRA is not at home in Vermont and none of FINRA's alleged conduct giving rise to Plaintiff's claims occurred in Vermont. In addition, because the Proposed SAC challenges only FINRA's regulatory activities, Plaintiff's claims against FINRA are barred by regulatory immunity, and Plaintiff cannot state a private right of action against FINRA. No amendment to the Proposed SAC could cure these fatal defects.

Further, Plaintiff "presents no new facts but only new theories and provides no satisfactory explanation for his failure to fully develop his contentions originally." *Bonin*, 59 F.3d at 845 (citing *Allen v. City of Beverly Hills*, 911 F.2d 367, 374 (9th Cir. 1990)). Moreover, Plaintiff's claims against FINRA demonstrate a fundamental misunderstanding of the law, and the nature of FINRA's role as regulator of the securities markets. *See Miller*, 110 F.4th at 550 (finding on *de novo* review that the District Court "properly found that [plaintiff]'s complaint did not state a claim for relief" because it was "'premised on a misunderstanding of the kinds of obligations covered by the [applicable statute.]'").

For these reasons, the Court can and should deny Plaintiff's Motion with prejudice.

**B.      Plaintiff's Claims Are Futile Because the Proposed SAC Does Not Allege Facts Establishing Personal Jurisdiction Over FINRA**

"[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007). A federal court undertakes a "two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute, and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009); *see also In re Roman Catholic Diocese of Albany, New York, Inc.*, 745 F.3d 30, 37 (2d Cir. 2014).

That inquiry establishes that FINRA is not subject to either general or specific personal jurisdiction in this case, and Plaintiff's Motion should be denied.

### 1.      FINRA is not subject to general personal jurisdiction in Vermont

FINRA is an out-of-state corporation that is not subject to general personal jurisdiction in Vermont. While Vermont's long-arm statute "reflects 'a clear policy to assert jurisdiction over individual defendants to the full extent permitted by the Due Process Clause,'" only certain affiliations with a forum are sufficient to establish general personal jurisdiction over a party in the forum. *See In re Roman Catholic Diocese of Albany*, 745 F.3d at 37 (citation omitted); Vt. Stat. Ann. Title 12 § 913(b); *see also Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) ("[O]nly a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there."). The Constitution permits general jurisdiction only where a defendant's contacts with the forum state "are so 'continuous and systematic' as to render [it] essentially at home" there. *Daimler AG*, 571 U.S. at 127 (citation omitted); *see also Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (same). For a corporation like FINRA, the "paradigm" forums for general

6

jurisdiction are its "formal place of incorporation" and its "principal place of business." *Daimler AG*, 571 U.S. at 137, 139 n.19.

Plaintiff's Proposed SAC does not attempt to establish that FINRA is at home in Vermont. Rather, Plaintiff included only the following allegations:

> FINRA conducts business in Vermont, has local offices in New York City, conducts trainings of broker-dealers for approximately 1,000 broker-dealers in Vermont, is chartered by Congress to conduct business as a national securities exchange, and works in local communities across the USA. See https://www.finra.org/about/locations. It has sufficient local contacts to be sued in this jurisdiction.

Proposed SAC, ECF no. 112-3, ¶ 5. These statements are insufficient to establish that FINRA could be deemed "at home" in the State of Vermont. Plaintiff does not allege that FINRA is incorporated in Vermont. Instead, Plaintiff admits that FINRA does not maintain its principal place of business in Vermont.[2] *Id.* (FINRA's headquarters are in Washington, D.C.). It is undisputed that FINRA is incorporated in Delaware, and its principal place of business is in Washington, D.C. *See Webb v. FINRA*, 889 F.3d 853, 856 (7th Cir. 2018) ("FINRA is a Delaware corporation with its principal place of business in Washington, D.C."); *see also* Proposed SAC, ECF no. 112-3, ¶ 5. Only in a truly "exceptional case" could a corporation like FINRA be deemed "essentially at home" in a place where it is not incorporated or headquartered. *Daimler AG*, 571 U.S. at 139 n.19. In this case, the vague claims that FINRA "conducts business in Vermont" and that it "operates as a national

---

[2] A corporation's principal place of business is "the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010). Typically, a corporation's headquarters qualifies as its principal place of business, and, as a result, the corporation is subject to general personal jurisdiction in the courts of that state. *See OneWest Bank, N.A. v. Melina*, 827 F.3d 214, 218 (2d Cir. 2016) (noting that a corporation's principal place of business "should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination, i.e., the 'nerve center.'") (quoting *Hertz Corp.*, 559 U.S. at 93).

securities exchange . . . work[ing] in local communities across the USA" are insufficient to establish that FINRA is "essentially at home" in Vermont because "[a] corporation that operates in many places can scarcely be deemed at home in all of them." *Id.* at 139 n.20. Accordingly, FINRA is not "at home" in Vermont, and the Court lacks general personal jurisdiction over FINRA.

### 2.    FINRA is not subject to specific personal jurisdiction in Vermont

The Proposed SAC also fails to establish that FINRA is subject to specific personal jurisdiction in Vermont because Plaintiff failed to assert any connection between his claims and FINRA's alleged contacts with Vermont.

"In contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of 'issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *Goodyear*, 564 U.S. at 919 (also noting that specific jurisdiction "depends on an 'affiliatio[n]' between the forum and the underlying controversy,' principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation…") (citations omitted). In other words, specific jurisdiction is only exercised in cases where the Plaintiff's claims "aris[e] out of or relate[] to the defendant's contacts with the forum." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567–68 (2d Cir. 1996); *see also In re Terrorist Attacks on September 11, 2001*, 714 F.3d 659, 673-74 (2d Cir. 2013) (personal jurisdiction only extends to claims that "arise[] out of or [are] related to [a party's] contacts with the forum.").

The Proposed SAC fails to allege that the claims against FINRA arise out of its contacts with the forum. Instead, Plaintiff alleges that FINRA has "local" offices in New York City, and he cites to FINRA's website, which confirms it does not have any office presence in Vermont. ECF no. 112-3, ¶ 5. Plaintiff also claims FINRA trains broker-dealers in Vermont, but he does not allege in any way that his claims arise out of such training. *Id.* Any attempt to allege that now would belie

all of the allegations Plaintiff has already made, where he argues *ad nauseum* that it was FINRA's U3 halt that caused him damage.[3] *Id.*

Plaintiff fails to establish this Court has specific personal jurisdiction over FINRA for his claims, the Proposed SAC against FINRA is futile, and Plaintiff's Motion should be denied.

## C.    Plaintiff's Claims Are Futile Because They are Barred by FINRA's Regulatory Immunity

Plaintiff's claims are also futile because he cannot maintain suit against FINRA for alleged misconduct arising out of FINRA's regulatory activities. It is well settled in this and other circuits that a self-regulatory organization ("SRO") such as FINRA is absolutely immune "from suit for conduct falling within the scope of [its] regulatory and general oversight functions." *D'Alessio v. New York Stock Exch., Inc.*, 258 F.3d 93, 105 (2d Cir. 2001); *see also In re NYSE Specialists Secs. Litig.*, 503 F.3d 89, 98 (2d Cir. 2007) (the application of regulatory immunity "depends only on whether specific acts and forbearances were incident to the exercise of regulatory power, and not on the propriety of those actions or inactions"); *Weissman v. NASD, Inc.*, 500 F.3d 1293, 1296 (11th Cir. 2007) ("when an SRO is 'acting under the aegis of the Exchange Act's delegated authority'" it is immune from suit); *Sparta Surgical Corp. v. NASD, Inc.*, 159 F.3d 1209, 1214 (9th Cir. 1998) (an SRO is absolutely immune from suit for any claims regarding regulatory activities performed "under the aegis of the Exchange Act's delegated authority").

Courts "focus on 'the nature of the function performed' . . . in order to determine whether an SRO . . . is entitled to immunity." *In re NYSE Specialists Secs. Litig.*, 504 F.3d at 96; *see also*

---

[3] To the extent Plaintiff attempts to argue that he suffered damages in Vermont as a result of FINRA's alleged conduct, that is insufficient to establish personal jurisdiction as well. *See Asahi Metal Ind. Co.*, 480 U.S. at 112 (finding that a plaintiff cannot establish specific personal jurisdiction over an out-of-state defendant by simply alleging that defendant harmed the plaintiff in the forum state).

*Weissman*, 500 F.3d at 1297 (courts "look to the objective nature and function of the activity for which the SRO seeks to claim immunity"); *Sparta Surgical Corp.*, 159 F.3d at 1214 (SROs "do not enjoy complete immunity from suits; it is only when they are acting under the aegis of the Exchange Act's delegated authority that they so qualify"). Here, Plaintiff admits that FINRA acted "[a]t all relevant times…in its role as a self-regulatory organization…." Proposed SAC, ECF no. 112-3, ¶ 237. Further, in this Circuit "the central question…SRO-immunity cases ask is not whether the SRO is acting (or not acting) 'consistent with' the laws it is supposed to apply but rather whether the plaintiff's allegations concern the exercise of powers with the bounds of the government functions delegated to [the SRO]." *In re NYSE Specialists Secs. Litig.*, 504 F.3d at 98. Here, all of the conduct in which Plaintiff alleges FINRA engaged is regulatory in nature. For example, Plaintiff alleges, without any support, that FINRA "engaged in disseminating information in the blue sheets . . . for the specific benefit of . . . the UPC Board that halted MMTLP . . . ." Proposed SAC, ECF no. 112-3, ¶ 234. Putting aside that the allegation is false, "few functions [are] more quintessentially regulatory than the suspension of trading." *Sparta Surgical*, 159 F.3d at 1214.[4] Further, the immunity afforded to FINRA in performing its regulatory activities is absolute and extends to the "improper performance of regulatory, adjudicatory, or prosecutorial duties delegated to the SEC." *In re Series 7 Broker Qualifications Exam Scoring Litig.*, 548 F.3d 110, 114 (D.C. Cir. 2008). Here, Plaintiff alleges that FINRA engaged in "improper conduct, including the U3 halt, manipulation of short position data, and failure to enforce Regulation SHO," among many similar allegations. *See, e.g.*, Proposed SAC, ECF no. 112-3, ¶¶ 238, 248. These

---

[4] To the extent Plaintiff complains, with no support, about what FINRA purportedly did with Blue Sheet Data it collected, the collection and use of that data are also regulatory activities. *See* FINRA Rules 8210, 8211, and 8213, *available at* https://www.finra.org/rules-guidance/rulebooks/finra-rules/8200.

allegations, however, all relate to quintessential examples of FINRA's regulatory activities. *See, e.g.*, *In re Facebook, Inc., IPO Sec. and Derivative Litig.*, 986 F. Supp. 2d 428, 454 (S.D.N.Y. 2013) (dismissing claim against an SRO alleging its decision not to halt trading of a security was negligent on regulatory immunity grounds because "[t]he capacity to suspend trading . . . is a quintessentially regulatory function."); *In re NYSE Specialists Secs. Litig.*, 503 F.3d at 99 (dismissing claims that SRO "violated its own internal rules" because the "enforcement (or nonenforcement) of these rules clearly implicates the quasi-governmental functions" for which an SRO is entitled to absolute immunity); *see also Tawil v. FINRA*, 2023 U.S. Dist. LEXIS 117247, *2-3 (N.D. Fla. May 24, 2024) ("Suspending trading – when warranted – is precisely the kind of activity FINRA can undertake in its quasi-regulatory capacity. A claim that FINRA got it wrong – that trading should not have been suspended – is precisely the kind of claim from which FINRA should and does have immunity."). The allegations included in the Proposed SAC cannot overcome this form of immunity, which is "an integral part of the American system of securities regulation." *Dexter v. Depository Tr. & Clearing Corp.*, 406 F. Supp. 2d 260, 263 (S.D.N.Y. 2005), *aff'd* 219 F. App'x 91 (2d Cir. 2007). The claims against FINRA in the Proposed SAC are barred by regulatory immunity. Thus, the Proposed SAC is futile, and Plaintiff's Motion should be denied.

### D. Plaintiff's Claims Are Futile Because He Has No Private Right of Action Against FINRA

Likewise, neither the Exchange Act nor any other statute or common law principle provides Plaintiff with a private right of action against FINRA for acts or omissions in connection with its duties as a regulator. To the contrary, courts routinely hold that no private right of action exists against an SRO like FINRA for its regulatory acts or omissions. *See In re Series 7 Broker Quali. Exam*, 548 F.3d 110, 114 (D.C. Cir. 2008) ("By specifically adopting an appeals process which does not provide monetary relief, Congress has displaced claims for relief based on state common

law."); *Desiderio v. Nat'l Ass'n of Secs. Dealers, Inc.*, 191 F.3d 198, 208 (2d Cir. 1999) ( "[T]here is no private right of action available under the Securities Exchange Act to . . . challenge an exchange's failure to follow its own rules."); *MM&S Financial, Inc. v. NASD*, 364 F.3d 908, 911-912 (8th Cir. 2004) ("[T]he Exchange Act does not create a private right of action against NASD defendants for violating their own rules" and a party's attempt to bypass the absence of a private right of action by asserting a claim under state contract law is "fruitless."); *Spicer v. Chicago Board of Options Exchange, Inc.*, 977 F.2d 255, 259-60 (7th Cir. 1992) (no private right of action exists under the Exchange Act against an SRO for failing to enforce its rules); *Matyuf v. NASD DR, Inc.*, 2004 WL 2915304, at *3 (W.D. Pa. Oct. 4, 2004) (there is no cause of action against NASD to enforce its own rules); *In re Olick*, 2000 WL 354191, *4 (E.D. Pa. Apr. 4, 2000) (a party "may not maintain a private cause of action against the NASD under the Exchange Act, or at common law, for regulatory actions taken by the NASD"); *Feins v. AMEX*, 81 F.3d 1215, 1219-1224 (2d Cir. 1996) (no private right of action exists against an SRO under Section 19 of the Exchange Act); *Meyers v. NASD*, 1996 WL 1742619, at *5 (E.D. Mich. Mar. 29, 1996) (dismissing action against FINRA because allegations were "an unsuccessful attempt to create a private cause of action for the violation of [FINRA's] rules where none exists.").

Here, as discussed above, all of the conduct in which FINRA is alleged to have engaged (or not engaged) is regulatory conduct, *see supra*, and Plaintiff's claims are based on alleged violations of the Exchange Act. *See generally* Proposed SAC, ECF no. 112-3. Because Plaintiff cannot assert a private right of action against FINRA under the Exchange Act, or otherwise, the Proposed SAC is futile. Accordingly, Plaintiff's Motion should be denied.

### E.     Plaintiff Fails to State a Claim Against FINRA

#### 1.     Plaintiff Does Not State an Insider Trading Claim Against FINRA (Proposed SAC Count I)

Plaintiff attempts to reframe his previously alleged RICO claim against FINRA, in which he alleged FINRA purportedly aided and abetted the other defendants' insider trading, as a direct insider trading claim in violation of the Exchange Act. *See* Proposed SAC, Count I, ECF no. 112-3 at p. 54. Plaintiff alleges, without support, that FINRA "disseminated information in the blue sheets" not available to the public "for the specific benefit of at least 6 of the members of the UPC Board that halted MMTLP trading…in violation of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder." Proposed SAC, ECF no. 112-3, ¶ 234. Plaintiff further claims that FINRA's insider trading led to the "trading halt that destroyed the value of Traudt's MMTLP shares…." *Id.* ¶ 235.

These allegations do not form a basis for an insider trading claim against FINRA:

> "Under the 'traditional' or 'classical theory' of insider trading liability," a corporate insider violates Section 10(b) and Rule 10b–5 if he "trades in the securities of his corporation on the basis of material, nonpublic information."

*In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 309–10 (S.D.N.Y. 2008) (quoting *United States v. O'Hagan*, 521 U.S. 642, 651–52, 117 S. Ct. 2199, 138 L. Ed. 2d 724 (1997)). Here, FINRA is not a "corporate insider," and Plaintiff does not allege that FINRA traded the MMTLP security. *See generally* SAC, ECF no. 112-3. Further, Plaintiff does not allege that FINRA engaged in any trading on the basis of material, nonpublic information. *Id.* Plaintiff therefore fails to allege that FINRA engaged in any conduct that meets the elements of insider trading.

The insider trading allegations pled in the Proposed SAC also lack the requisite particularity. *See In re FBR Inc. Sec. Litig.*, 544 F. Supp. 2d 346, 353–54 (S.D.N.Y. 2008). In the Proposed SAC, Plaintiff vaguely alleges that FINRA disseminated information in blue sheets—a

wholly unsupported, conclusory statement with no specificity or support whatsoever. In *In re FBR Inc. Sec. Litig.*, the court addressed similar allegations where the plaintiff claimed that defendant "knowingly provided substantial assistance to an illegal insider trading scheme that violated the securities laws." *Id.* In dismissing the plaintiff's claims, the court noted that

> "Insider trading ... is subject to the heightened pleading requirements of Fed.R.Civ.P. 9(b), not the liberal notice-pleading standard of Rule 8(a)."

*In re FBR*, 544 F. Supp. 2d at 353-54 (citations omitted). Given the heightened pleading standard, the court rejected the plaintiff's purported insider trading claim, which alleged "no facts that support [plaintiff's] conclusory allegation that [the defendants] knowingly provided substantial assistance to those engaged in insider trading...." *Id.* at 354. The court also noted that the "Plaintiffs' allegations suffer from a similar opacity as to whom defendants are alleged to have provided substantial assistance," and the pleading failed to specify "on what circumstances plaintiffs base this belief." *Id*.

Much like the allegations in *In re FBR*, Plaintiff does not offer any particularized statements supporting his insider trading claim. Plaintiff also fails to offer any basis for his conclusory claims that FINRA disseminated information that is not available to the trading public, and Plaintiff fails to provide any support for the basis of his beliefs. Accordingly, in addition to being futile, Plaintiff's insider trading claims under Section 10(b) and Rule 10b–5 of the Exchange Act are not stated as a matter of law. Accordingly, Count I in the Proposed SAC is futile, and Plaintiff should not be granted leave to amend his complaint to include this count against FINRA.

### 2. Plaintiff Does Not State a Section 9(a)(2) Market Manipulation Claim Against FINRA (Proposed SAC Count II)

Plaintiff also fails to state a market manipulation claim against FINRA. *See* Proposed SAC, Count II, ECF no. 112-3, p. 55.

To state a claim for market manipulation, a plaintiff must allege "(1) manipulative acts; (2) damage; (3) caused by reliance on an assumption of an efficient market free of manipulation; (4) scienter; (5) in connection with the purchase or sale of securities; (6) furthered by defendant's use of the mails or any facility of a national securities exchange." *Steginsky v. Xcelera Inc.*, 741 F.3d 365, 369 (2d Cir. 2014). A plaintiff must plead "particular facts giving rise to a strong inference that [defendant] acted with scienter in manipulating the market in [the relevant] stock" and "allegations of specific acts by [defendant] to manipulate the market...." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 104–05 (2d Cir. 2007); *see also Steginsky*, 741 F.3d at 369 ("[T]he [Private Securities Litigation Reform Act] heightened standards of pleading scienter . . . apply."). The Proposed SAC is woefully deficient and fails to state a market manipulation claim.

Specifically, rather than alleging any specific manipulative acts by FINRA, Plaintiff relies on a conclusory allegation that FINRA "engaged in practices that were designed to manipulate the market for MMTLP securities." Proposed SAC, ECF no. 112-3, ¶ 237. Further, Plaintiff fails to plead any scienter with the requisite specificity and instead asserts vague, unsupported conclusions that "FINRA colluded with market makers and brokers" and "knew there were problems with MMTLP shorts from at least October 2021 to the present." Proposed SAC, ECF no. 112-3, ¶ 238. Plaintiff's market manipulation claim against FINRA is woefully insufficient.

Plaintiff also fails to allege that his purported damages were caused by any reliance on an efficient market free of manipulation. *See generally* Proposed SAC, ECF no. 112-3, p. 55. For these reasons, the market manipulation claim asserted in Count II of the Proposed SAC is futile, and the Court should deny Plaintiff leave to assert this claim.

**3.    Plaintiff Does Not State a Clayton Act Claim for Damages Under Section 4 Against FINRA (15 U.S.C. § 15) (Proposed SAC Count III)**

The Proposed SAC likewise fails to state a Clayton Act claim. *See* Proposed SAC, Count III.

Section 4 of the Clayton Act establishes a private right of action under the antitrust laws as it permits a private individual to bring suit under the antitrust laws if that individual has been "injured in his business or property by reason of anything forbidden in the antitrust laws." 15 U.S.C. § 15. Thus, as an initial matter, a plaintiff must allege an antitrust violation that can be remedied pursuant to Section 4 of the Clayton Act. No such allegations exist in the Proposed SAC. Instead, Plaintiff asserts conclusory and unsupported allegations that FINRA "engaged in monopolistic operations in collaboration with GTS and Schwab," and FINRA's purported "monopoly over arbitration and dispute resolution . . . [that] has deprived investors of access to the courts." Proposed SAC, ECF no. 112-3, ¶¶ 241-242. For this reason alone, Count III of the Proposed SAC is futile.

The Supreme Court has also found that the securities laws preclude application of the antitrust laws where "the two are 'clearly incompatible.'" *Credit Suisse Sec. (USA) LLC v. Billing*, 551 U.S. 264, 275 (2007). To determine whether there is "sufficient incompatibility to warrant an implication of preclusion," courts look to the following factors: "(1) the existence of regulatory authority under the securities law to supervise the activities in question; (2) evidence that the responsible regulatory entities exercise that authority;…(3) a resulting risk that the securities and antitrust laws, if both applicable, would produce conflicting guidance, requirements, duties, privileges, or standards of conduct[; and] (4) . . . the possible conflict affected practices that lie squarely within an area of financial market activity that the securities law seeks to regulate." *Id.* at 275-76 (citing *Gordon v. NYSE*, 422 U.S. 659 (1975); *U.S. v. NASD, Inc.*, 422 U.S. 694 (1975)).

Here, as discussed above, the allegations in the Proposed SAC all relate to FINRA's regulatory activities. *See supra.* The Proposed SAC does not assert any allegations that would establish the securities laws do not preclude any purported antitrust violations. As such, the Clayton Act claim in the Proposed SAC is futile, and the Court should deny Plaintiff leave to assert Count III in the Proposed SAC.

### 4. Plaintiff Does Not State a Claim for Violation of SEC Rule 10b-5 Against FINRA (Proposed SAC Count IV)

Count IV in the Proposed SAC suffers from similar deficiencies.

To make a claim for fraud on the market, "plaintiffs must demonstrate that the alleged misrepresentations were publicly known[,] ... that the stock traded in an efficient market, and that the relevant transaction took place between the time the misrepresentations were made and the time the truth was revealed." *GAMCO Invs., Inc. v. Vivendi Universal, S.A.*, 838 F.3d 214 (2d Cir. 2016). If a plaintiff makes this showing, the burden shifts to the defendant to rebut the presumption of reliance. *Id.*

First, as the GTS Defendants note in their opposition to Plaintiff's Motion, a plaintiff cannot proceed with a fraud-on-the-market theory based on trades in an over-the-counter ("OTC") security such as MMTLP. *See Burke v. China Aviation Oil Corp.*, 421 F. Supp. 2d 649, 653 (S.D.N.Y. 2005) ("[T]he Court is unaware of any court holding that the OTCBB or Pink Sheets meets" the standard of an efficient market); *ScripsAm., Inc. v. Ironridge Global LLC*, 119 F. Supp. 3d 1213, 1252 (C.D. Cal. 2015) (same and collecting the following additional cases: *Salvani v. ADVFN PLC*, 50 F. Supp. 3d 459, 473 n. 9 (S.D.N.Y. 2014) ("[W]hile the NASDAQ is recognized as maintaining an efficient market ... the Court is unaware of any court holding that the OTCBB ... meet[s] this same standard.") (internal quotation marks omitted)); *Alki Partners, L.P.*, 769 F. Supp. 2d at 493 (same); *Krogman v. Sterritt*, 202 F.R.D. 467, 478 (N.D. Tex. 2001) (concluding

that "the presumption of market efficiency, which would support an application of the fraud on the market theory, does not apply [to the OTC stock at issue]"); *Epstein v. Am. Reserve Corp.*, No. 79–CV–4767, 1988 WL 40500, \*5 (N.D. Ill. Apr. 21, 1988) ("Although the issue was not briefed, we believe that the over-the-counter market is incapable of meeting the Supreme Court test [as set forth in *Basic Inc. v. Levinson*, 485 U.S. 224, (1988)]"); *In re Data Access Sys. Securities Litigation*, 103 F.R.D. 130, 138 (D.N.J. 1984) ("The trading on the over-the-counter market may not constitute an 'active and substantial' market necessary to apply the fraud-on-the-market theory.")).

Second, Plaintiff's claim fails because there is no allegation of a "link between [any] alleged misrepresentation [by FINRA] and either the price received (or paid) by the plaintiff, or his decision to trade at a fair market price." *Basic*, 485 U.S. at 248. Indeed, Plaintiff's own allegations contradict any claim that he relied on the integrity of the market for MMTLP. Instead, he states that the MMTLP oil and gas assets were "worthless" and had "zero productive capacity since 2014." Proposed SAC, ECF no. 112-3, ¶ 16. Given Plaintiff's admitted knowledge of the lack of any meaningful company assets when he purchased 305 MMTLP shares for $3,000 in November 2022 [*id.* ¶ 293], and the claim that MMTLP stock was "violently shorted as it started to trade [in October of 2021] and never came off FINRA's OTC 'Threshold List' for the entirety of its brief trading history . . . ," [*id.* ¶ 32], Plaintiff cannot reasonably argue that the stock was trading in an efficient market or argue reliance. *See Salvani v. InvestorsHub.com, Inc.*, 628 F. App'x 784, 786 (2d Cir. 2015) (summary ord.) ("Even assuming that Doe's post caused CodeSmart's precipitous stock price drop, Salvani purports he knew about this 'market manipulation,' and he cannot 'be said to have relied on the integrity of a price he knew had been manipulated.'").

Accordingly, Count IV in the Proposed SAC is futile, and this Court should deny Plaintiff leave to assert the claim in the Proposed SAC.

### 5.    Plaintiff Does Not State Claims for Declaratory Judgment or Injunctive Relief (Proposed SAC Count V)

Count V in the Proposed SAC, which seeks a declaratory judgment and injunctive relief against FINRA, fails as a matter of law for multiple, independent reasons.

#### a.    Claims for declaratory and injunctive relief are remedies and not independent causes of action

As an initial matter, Plaintiff's claim for a declaratory judgment is futile because it is well-settled that a "[p]laintiff cannot sustain an independent cause of action for a declaratory judgment. A declaratory judgment is a remedy, not a cause of action." *Spectre Air Cap., LLC v. WWTAI AirOpCo II DAC*, No. 23 CIV. 10929 (KPF), 2024 WL 3030404, at *9 (S.D.N.Y. June 17, 2024) (also addressing injunctive relief, and quoting *In re Joint Eastern & Southern Dist. Asbestos Litig.*, 14 F.3d 726, 731 (2d Cir. 1993) ("A request for relief in the form of a declaratory judgment does not by itself establish a case or controversy involving an adjudication of rights."), *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240, 57 S. Ct. 461, 81 L. Ed. 617 (1937) (stating that the Declaratory Judgment Act does not provide an independent cause of action), and *Blue Angel Realty, Inc. v. United States*, No. 20 Civ. 8220 (KPF), 2022 WL 94599, at *14 (S.D.N.Y. Jan. 8, 2022) (noting that "declaratory judgments ... are remedies, not causes of action")).

Likewise, an "injunction is a remedy, not a cause of action, and therefore can issue only on the basis of an independent claim for relief." *Spectre*, 2024 WL 3030404, at *9 (quoting *Pitcairn Props., Inc. v. LJL 33rd Street Assocs., LLC*, No. 11 Civ. 7318 (JSR), 2013 WL 705861, at *2 n.1 (S.D.N.Y. Feb. 21, 2013), *Aretakis v. Caesars Entm't*, No. 16 Civ. 8751 (KPF), 2018 WL 1069450, at *13 (S.D.N.Y. Feb. 23, 2018) ("[I]njunctions are remedies, not causes of action.") (internal

quotations and citations omitted), and *Manrique v. State Farm Mut. Auto. Ins. Co.*, No. 21 Civ. 224 (KMK), 2021 WL 5745717, at *8 (S.D.N.Y. Dec. 2, 2021) (same)).

Count V, as an independent cause of action, is therefore subject to dismissal. In addition, because all of Plaintiff's other claims against FINRA fail as a matter of law, the request for a declaratory judgment and injunctive relief cannot survive in any form. Accordingly, Count V in the Proposed SAC is futile.

> **b.    Plaintiff lacks Article III standing to pursue a declaratory judgment and injunctive relief**

Even if Plaintiff's declaratory judgment and injunctive relief claims did state an independent cause of action, Plaintiff lacks standing to assert claims based on any alleged "Violation of Separation of Power[s]," "Violation of the Appointments Clause of the U.S. Constitution," and "Unconstitutional Delegation," or other constitutional claim. To have such standing, Plaintiff must show that (i) he "has suffered . . . a concrete and particularized 'injury in fact'; (ii) that is 'fairly traceable to the challenged action of the defendant' and (iii) that is 'likely to be redressed by a favorable judicial decision.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338-39 (2016); *see also TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). In his declaratory judgment and injunctive relief "claim," Plaintiff makes only generalized grievances about FINRA's structure and operations. *See generally* Proposed SAC, ECF no. 112-3, pp. 57-60. Without allegations of any "personal, particularized injury," Plaintiff cannot establish Article III standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 556 (1992) ("This Court has consistently held that a plaintiff claiming only a generally available grievance . . ., unconnected with a threatened concrete interest of his own, does not state an Article III case or controversy."); *see also Hollingsworth v. Perry*, 570 U.S. 693, 706 (2013) (collecting cases).

In fact, Plaintiff does not predicate his purported constitutional claims upon FINRA's application of any particular rule as applied to him individually.[5] Rather, Plaintiff expressly states that his claim seeks, among other relief, to declare the laws empowering FINRA to be deemed unconstitutional, to prevent FINRA from carrying out the duties delegated to it by Congress, and an order that the "U3 trade halt issued by FINRA was ultra vires and illegal." *See* Proposed SAC, ECF No. 112-3, p. 60. Essentially, Plaintiff is attempting to challenge FINRA's very existence. Thus, "[t]he only injury [P]laintiff[] allege[s] is that the law . . . has not been followed," which is "precisely the kind of undifferentiated, generalized grievance" that is not redressable in federal court. *See Lance v. Coffman*, 549 U.S. 437, 442 (2007) (per curiam). Plaintiff simply cannot circumvent the constitutional bar on asserting generalized grievances by framing FINRA's very existence as harm to him.

Challenges to a regulatory body's constitutional structure are not exempt from Article III's requirement that a plaintiff allege a concrete, particularized injury. As the Supreme Court has emphasized, constitutional-structure challenges remain "subject to the Article III requirements . . . applicable to all litigants." *Bond v. United States*, 564 U.S. 211, 225 (2011) (explaining that a litigant must "show actual or imminent harm that is concrete and particular" and that "[t]hese requirements must be satisfied before an individual may assert a constitutional claim"). Because Count V does not assert a concrete, particularized injury traceable to FINRA and redressable by a

---

[5] For example, Plaintiff complains generally that "FINRA exercises wide-ranging executive power," [Proposed SAC, ECF no. 112-3, ¶ 254], criticizes FINRA's Board [*id.* ¶¶ 258-262] and argues that the Exchange Act improperly delegates legislative power to FINRA. [*id.* ¶ 264]. However, none of these allegations relate to any FINRA proceeding, or threatened disciplinary action, being taken against Plaintiff. Instead, Plaintiff simply disagrees with a regulatory decision FINRA made to halt trading in the MMTLP security on in December 2022. In sum, there is no ongoing, threatened concrete injury to Plaintiff's interest that would enable him to seek the declaratory or injunctive relief set forth in Count V.

favorable judicial determination, and because the claim cannot survive as a standalone cause of action, Count V is futile.

### c.    FINRA is not a state actor

Plaintiff's claims for a declaratory judgment and injunctive relief based on purported constitutional violations are further rendered futile because to assert a constitutional violation, a plaintiff must "demonstrate 'that in denying plaintiff's constitutional rights, the defendant's conduct constituted state action.'" *D.L. Cromwell Invs., Inc. v. NASF Reg., Inc.*, 279 F.3d 155, 161 (2d Cir. 2002) (*quoting Desiderio*, 191 F.3d at 206); *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 256-57 (2d Cir. 2008) (dismissing First Amendment claims and other claims where plaintiff failed to plead state action); *Desiderio*, 191 F.3d at 206-07 (affirming dismissal of plaintiff's Fifth Amendment claim because plaintiff failed to show NASD's actions constituted state action). Courts nationwide have held that FINRA, like its predecessor the NASD and other SROs, "is a private actor, not a state actor." *Desiderio*, 191 F.3d at 206-07; *see also Perpetual Secs., Inc. v. Tang*, 290 F.3d 132, 138 (2d Cir. 2002) ("It is clear that NASD is not a state actor."); *Barbara v. New York Stock Exch.*, 99 F.3d 49, 58 (2d Cir. 1996) (same, with regard to New York Stock Exchange); *Graman v. NASD*, 1998 WL 294022, at * 3 (D.D.C. Apr. 27, 1998) ("Every court that has considered the question has concluded that NASD is not a governmental actor."); *Kim v. FINRA*, 698 F. Supp. 3d 147, 161 (D.D.C. 2023) (same); *Meyers v. NASD*, 1996 WL 1742619, at *8-10 (E.D. Mich. Mar. 29, 1996) (finding that allowing the complaint to be amended would be futile because NASD's regulatory actions do not constitute state action); *Epstein v. SEC*, 416 F. App'x 142, 148 (3d Cir. 2010) ("Epstein cannot bring a constitutional due process claim against the NASD, because the NASD is a private actor, not a state actor.") (alterations and internal quotation marks omitted); *Mohlman v. FINRA*, 2020 WL 905269, at *6 (S.D. Ohio Feb. 25, 2020) ("Courts have held without exception that FINRA is a private entity and not a state actor.")

(collecting cases), *aff'd*, 977 F.3d 556 (6th Cir. 2020). *Cf. D.L. Cromwell, Inc.*, 279 F.3d at 162; *Scher v. NASD*, 386 F. Supp. 2d 402, 407-08 (S.D.N.Y. 2005), *aff'd* 218 Fed. Appx. 46 (2d Cir. 2007); *Weinraub v. Glen Rauch Sec., Inc.*, 399 F. Supp. 2d 454, 463 (S.D.N.Y. 2005); *Am. Benefits Grp. Inc. v. NASD*, 1999 WL 605246, at *8 (S.D.N.Y. Aug. 10, 1999); *Dobbins v. NASD*, 2007 WL 2407081, *3 (N.D. Ohio Aug. 22, 2007); *First Jersey Sec., Inc. v. Bergen*, 605 F.2d 690, 698 (3d Cir. 1979).

FINRA is a private entity organized as a not-for-profit corporation under Delaware law that does not receive state or federal funding. *See Meyers*, 1996 WL 1742619, at *1; *see also*, *Desiderio*, 191 F.3d at 206. No government official serves as a FINRA employee, and the government does not appoint any FINRA employees or officers. *Id*. Because FINRA is not a state actor, Plaintiff's purported constitutional claims against FINRA are futile.

### d.    Plaintiff has no basis to challenge FINRA's structure or existence

Plaintiff argues that FINRA violates the Article II Appointments Clause and that FINRA's authority derives from an unconstitutional delegation of power. Plaintiff's assertions are misguided.

Plaintiff's Appointments Clause argument—which apparently seeks to extend Article II's appointment and removal requirements to FINRA—is foreclosed by Plaintiff's inability to establish that FINRA is part of the government under *Lebron v. National Railroad Passenger Corp.*, 513 U.S. 374 (1995).

*Lebron* recognized an exceptional category of nominally private companies—in that case, Amtrak—that are actually "part of the Government" for constitutional purposes because the government "create[d]" the corporation for "governmental objectives" and "retains for itself permanent authority to appoint a majority of the directors of that corporation." *Id*. at 397, 400.

FINRA does not possess any of those unusual characteristics: the government did not create FINRA, *see Scottsdale Cap. Advisors v. FINRA*, 678 F. Supp. 3d 88, 103 (D.D.C. 2023); the government does not appoint a single member of FINRA's board, *see* FINRA Board of Governors, available at https://www.finra.org/about/governance/finra-board-governors, and the government does not fund or otherwise control FINRA, *see Desiderio*, at 206-07; *Kim*, 689 F. Supp. 3d 147, at 157-58; *see also*, *Nat'l Horsemen's Benevolent & Protective Ass'n v. Black*, 107 F.4th 415, 440 (5th Cir. 2024) (holding that a "private entity" is "not subject to Article II's Appointments Clause" or removal requirements and that "*Lebron* is the governing test to determine whether an entity is private or public.").

Plaintiff's claims that FINRA violates the private nondelegation doctrine relies entirely on the recent decision in *Alpine Securities Corp. v. Financial Industry Regulatory Authority and United States of America*, 121 F.4th 1314 (D.C. Cir. 2024). *See* Proposed SAC, ECF no. 112-3, ¶¶ 54-58. However, that reliance is misplaced. Plaintiff's claim that he "will suffer irreparable harm if the U3 halt continues and this harm exactly mirrors the harm identified in *Alpine*," *id.* ¶ 56, is wholly misguided and inaccurate. The D.C. Circuit expressly stated that "our opinion is **narrow** and **limited to** expulsion orders issued in [FINRA] expedited proceedings…." *Alpine*, 121 F.4th at 1330 (emphasis added). Plaintiff is not a FINRA member firm, and this case does not involve a disciplinary proceeding, much less an expedited proceeding seeking expulsion. The *Alpine* decision has no application whatsoever to the facts in this case.

For all of these reasons, Count V in the Proposed SAC is futile, and the Court should deny Plaintiff leave to include this claim in the Proposed SAC.

### 6. Plaintiff Does Not State a Claim Under the 9th Amendment for Purported Violations of Plaintiff's Economic Liberties (Count XV)

The Proposed SAC includes a separate claim for purported violations of his economic liberties under the Ninth Amendment of the United States Constitution.

The Ninth Amendment is narrow in scope and inapplicable in this case. "The Ninth Amendment is recognized as a rule of construction, not one that protects any specific right." *Rini v. Zwirn*, 886 F. Supp. 270, 289 (E.D.N.Y. 1995) (citation omitted). *See also United States v. Bifield*, 702 F.2d 342, 349 (2d Cir. 1983) (same). "Moreover, the Ninth Amendment has not been interpreted to be incorporated into the due process clause of the Fourteenth Amendment, and therefore has no applicability to the allegations against these non-federal actors." *Rini v. Zwirn*, 886 F. Supp. at 289. Plaintiff attempts to argue the Ninth Amendment allows him to bring claims under Article I, Sections 8 and 10, the Fifth Amendment, and the Fourteenth Amendment. Proposed SAC, ECF no. 112-3, ¶ 316. However, as discussed above, FINRA is not a state actor and, therefore, constitutional claims cannot be asserted against it. *See supra* Section II.E.5.c. Moreover, the Second Circuit has recognized that the "Ninth Amendment is not an independent source" of constitutional rights. *See Jenkins v. Comm'r of I.R.S.*, 483 F.3d 90, 92 (2d Cir. 2007).

Therefore, Count XV of the Proposed SAC is futile, and the Court should deny Plaintiff leave to include this claim in the Proposed SAC.

### CONCLUSION

For all of the foregoing reasons, FINRA respectfully requests that the Court deny Plaintiff's Motion *with prejudice* and without further leave to amend, and judgment should be entered dismissing FINRA from this action, *with prejudice*.

Respectfully submitted,
January 13, 2025

FINANCIAL INDUSTRY REGULATORY
AUTHORITY, INC.

By:      */s/ Walter E. Judge, Jr.*_____

Walter E. Judge, Jr.
Downs Rachlin Martin PLLC
199 Main Street, P.O. Box 190
Burlington, VT  05402-0190
Telephone: 802-863-2375
E-mail: wjudge@drm.com

John P. Mitchell, Pro Hac Vice
Faegre Drinker Biddle & Reath LLP
105 College Rd. East, P.O. Box 627
Princeton, NJ  08542
john.mitchell@faegredrinker.com

*Attorneys for Financial Industry
Regulatory Authority ("FINRA")*

## CERTIFICATE OF SERVICE

I, Walter E. Judge, Jr., attorney for the Financial Regulatory Authority, hereby certify that on Monday, January 13, 2025, I electronically filed with the Clerk of Court the foregoing Defendant Financial Industry Regulatory Authority, Inc.'s Memorandum of Law In Opposition to Plaintiff's Motion for Leave to Amend using the CM / ECF system. The CM / ECF system will provide service of such filing via Notice of Electronic Filing to counsel for the parties.

*/s/ Walter E. Judge, Jr.*_____
Walter E. Judge, Jr.