U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2025 JAN 16 AM 9: 25

BY _____ CLERK
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| SCOTT TRAUDT, <br> Plaintiff <br><br> v. <br><br> ARI RUBENSTEIN <br> Defendant <br><br> GTS SECURITIES LLC <br> GTS EQUITY PARTNERS LLC <br> GTS EXECUTION SERVICES LLC <br> Defendant <br><br> CHARLES W. SCHWAB AND CO. INC. <br> SCHWAB HOLDINGS, INC. <br> Defendant <br><br> FINANCIAL INDUSTRY <br> REGULATORY AUTHORITY <br> Defendant <br><br> GARY GENSLER <br> US SECURITIES AND EXCHANGE <br> COMMISSION <br> Respondent | Docket Number: 2:24-cv-00782 <br> **JURY TRIAL DEMANDED** <br><br> 2ND Amended Complaint |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### PLAINTIFF SCOTT TRAUDT'S ("TRAUDT") REPLY MEMORADUM TO DEFENDANT GTS' AND DEFENDANT RUBENSTEIN'S OBJECTION TO PLAINTIFF'S MOTION TO AMEND THE COMPLAINT

GTS Securities has a long and sordid history of SEC violations, fines, and criminal activity yet approached the beginning of this case with attacks on Traudt for being an activist over corporate negligence and dangerous products, police violence and corruption, and seaman's

1

rights.[1] This wellspring of legal detritus was naturally followed by an aggressive response from Traudt.

## 1. Traudt is neither dilatory nor acting in bad faith in this case and in filing the Second Amended Complaint.

GTS is busy asserting that Traudt is deliberately wasting the Court's time with his filings and misrepresents Traudt's social media post *in toto*. Traudt argues confusion and misunderstanding of RICO and CFAA elements in the early pleading stages were excusable error, sort of on par with GTS routinely making multi-million dollar trading errors of the same flavor over decades that invariably lead to slaps on the wrist from the SEC. In *Barton v. LeadPoint, Inc.*, No. 22-35130, 2023 WL 4646103, at *2 (9th Cir. July 20, 2023) the court held in a case involving another pro se litigant's confusion over jurisdictional issues that "Barton's arguments in this case, although ultimately unsuccessful, were not frivolous. See *Blixseth v. Yellowstone Mountain Club, LLC*, 796 F.3d 1004, 1007 (9th Cir. 2015); *Bldg. Indus. Ass'n of Wash. v. McCarthy*, 218 P.3d 196, 208 (Wash. Ct. App. 2009). The mere fact that Barton is a frequent TCPA litigant does not evince bad faith, and there is no other evidence to that effect— the conflicting positions on nuanced issues of federal jurisdiction in his motion to remand and First Amended Complaint appear to have been the product of a pro se plaintiff's confusion, not a lack of good faith." See *Blixseth*, 796 F.3d at 1007; *Zambrano v. City of Tustin*, 885 F.2d 1473, 1481 (9th Cir. 1989).

---

[1] Upon information and belief, Rubenstein actually fled the country for 18 months from roughly 1 December 2022 to early 2024 to escape a potential SEC charge(s). Counsel for Rubenstein refused to answer questions about his out-of-country dates.

Traudt is not even into discovery and has given plenty of notice as to his desire to amend going back to September and October 2024 in previous filings involving GTS. In *Bryant v. Thoratec Corp.*, 343 F. Supp. 3d 594, 603-4 (S.D. Miss. 2018) the court found Plaintiffs were not dilatory or abusing process when asking to amend after motions to dismiss had been heard and briefings were complete was no bar to amending. Traudt is wrestling with complicated securities law issues and Sherman Antitrust laws. That he got it wrong initially but has provided this Court with numerous filings loaded with evidence of prior bad acts in other stocks (NWBO for sure and now GTII) by GTS is more than compelling.

"In addition, Plaintiff, as a *pro se* litigant, is entitled to liberal construction of her pleadings.[2] If the court can reasonably read the pleadings to state a valid claim on which the *pro se* plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, confusion of various legal theories, or unfamiliarity with pleading requirements."[3] *Patterson v. Williams*, CIVIL ACTION No: 10-4094-CM-GLR, 2 (D. Kan. Jun. 29, 2011)

Since the first objections in September, Traudt has alerted through multiple motions that unsure of the Court's acceptance of the RICO or CFAA claims he reserved the rights to amend by leave of the Court. GTS cannot argue as it does that Traudt's claims are new; all of them were identified earlier. GTS is attempting to rewrite the history of this lawsuit in other ways, too, in its

---

[2] *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding pro se plaintiff to "less stringent standards than formal pleadings drafted by lawyers"); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers.").
*Patterson v. Williams*, CIVIL ACTION No: 10-4094-CM-GLR, 3 n.7 (D. Kan. Jun. 29, 2011)

[3] "*Hall*, 935 F.2d at 1110." *Patterson v. Williams*, CIVIL ACTION No: 10-4094-CM-GLR, 3 n.8 (D. Kan. Jun. 29, 2011)

3

instant Response: *"In his myriad public statements about this litigation, he confirms that this litigation is animated by a desire to impose undue costs upon the GTS Defendants."*

Wrong. Traudt is operating under the fact that the Private Security Litigation Reform Act is an all but perfect bar to securities fraud claims for small investors. Traudt has provided updates on a variety of social media platforms about his case status, the Constitutional principles at stake, and early on in motions within this case asked for this litigation to be stayed before it went too far in order to get simple pieces of evidence (part of which was the 5 December 2022 bluesheets created by FINRA VP Fraud Sam Draddy showing the extent of the fraud in the MMTLP trading) that would have effectively ended this case. Neither the protective order motion nor the expedited limited discovery motion were ruled on by this Court until months after they were filed – that's not the Plaintiff's fault here.

Traudt is unaware of any dispositive motion cutoff in this case. Traudt has attempted no discovery after first abortive attempts were then ended by Traudt even though he had acquired information from one of the brokerages that traded in MMTLP (not Schwab but a company that used Schwab for certain fund servicing) in September, 2024, that there was additional materials possibly available showing or tending to show oversold conditions by yet another broker in MMTLP. (The Court has ample evidence of this in Tradestation's admission as such in the 2nd Amended Complaint.)[4]

---

[4] Traudt had erroneously issued subpoenas prior to a discovery order, and a brokerage with large holdings responded confirming that they had trade data to supply for MMTLP. Though it may have been critical to Traudt's case and the 65,000 other MMTLP shareholders, Traudt declined to accept the data out of respect for the FRCPs and the "learn as he goes" course corrections needed for dealing with the byzantine levels of complexity in securities law and various FRCPs that seem designed purely to protect the wealthiest and most powerful financial people and organizations in America.

Furthermore Traudt has deliberately agreed to motions with other defendants to halt proceedings (notably Schwab in the motion to stay any further action) after it was apparent that decisions to put Traudt into arbitration would obviate the need to address motions to dismiss. *Rikhy v. AMC Computer Corp.,* No. 01CIV7007WHPJCF, 2002 WL 1424596 (S.D.N.Y. July 2, 2002) comes close to Traudt's pleadings situation at the moment: "[A]n Employee's delay in filing motion to amend employment discrimination complaint to add discrimination claims, under New York State Human Rights Law (NYSHRL), and the New York City Human Rights Law (NYCHRL), and fraud claim, did not prejudice employer and its officers and did not evince bad faith, so as to warrant denial of leave to amend; need for additional discovery alone would not prejudice defendants, and employee was inexperienced pro se litigant, such that his failure to recognize all potential causes of action at outset of action did not demonstrate bad faith." *Fed.Rules Civ.Proc.Rule 15(a),* 28 U.S.C.A.; *N.Y.McKinney's Executive Law § 296; New York City Administrative Code, § 8–101* et seq.

## 2. "Scorched earth" and dead cancer patients

GTS is correct when they repeat Plaintiff's "Scorched Earth" line: Traudt has profound contempt for an organization (GTS) and its CEO (Rubenstein) that made money on the MMTLP trading by naked shorting illegally (they never did locate any shares used to short MMTLP as they were required to by law) but also by routine abuses of the SEC's 10b-5 rule in two separate case involving market manipulation.[5] One in particular (*Northwest Biotherapeutics, Inc. v.*

---

[5] Upon information and belief, GTS is routinely closing out fails-to-deliver by creating shares in ETFs that it maintains and provides markets for which GTS has close out obligations under Rule 204(a) for which GTS has a Rule 204(a) close-out obligation through an Authorized Participant ("AP") of the covered ETF. This what is known as a "Creation Order" which means GTS literally can hide enormous volumes of artificial "naked shorts" at will by creating shell ETF's as hollow as the naked short shares that are contained therein.

5

*Cannacord Genuity et. al.* CANO: 1:22-cv-10185-GHW-GS) resonated with Plaintiff as here was GTS and Rubenstein making money by literally thousands of illegal "spoofing" incidents in the trading of NWBO (the stock ticker for Northwest Biotherapeutics.) once again showing that market makers, brokers, and hedge funds can destroy small companies at will.[6] NWBO was doing interesting and possibly revolutionary research in treating brain cancers when it was attacked by GTS and half a dozen other market makers and market predators.[7]

GTS was sued in another case, too for the same conduct and Traudt assumes they settled out of court to end that case. In *Global Tech Industries Group, inc. v. Canaccord Genuity LLC* Case No. 1:23-cv-02139-JGLC SDNY 2023) the same unpunished-by-the-SEC pattern and practice of conduct regarding spoofing took place, with GTII reporting to the court clear, undeniable evidence that GTS conducted 25,275 separate baiting sell orders for just one ticker – GTII – in 7 separate episodes across 4 dates:

---

[6] Stock spoofing is an illegal trading practice in which a trader places a large number of fake orders in the stock market with no intention of executing them. The goal is to manipulate the price of a stock by creating a false impression of demand or supply, thereby deceiving other market participants into making trades that benefit the spoofer.

[7] In 2021, Northwest Biotherapeutics (NWBO) was actively working on developing cancer immunotherapies, particularly its lead product candidate, DCVax®-L. DCVax-L is an experimental personalized dendritic cell-based vaccine aimed at treating glioblastoma multiforme (GBM), a highly aggressive form of brain cancer.
The company was conducting clinical trials, including a Phase 3 trial for DCVax-L, and its preliminary results showed promise. NWBO was also exploring the potential use of DCVax for other types of solid tumors.

### *GTS Spoofing Examples*

99. The following table lists the share volume of Baiting Sell Orders that were subsequently cancelled by GTS, the share volume of Genuine Buy Orders that were executed by GTS at artificially depressed prices, and the resulting decline in GTII's share price on the dates of each example.

| Date | No. of Episodes | Baiting Sell Orders | Genuine Buy Orders | Ratio of Baiting Sell Orders to Genuine Buy Orders | Average Price Decline |
|---|---|---|---|---|---|
| 9/26/2022 | 1 | 8,079 | 100 | 80.79-to-1 | -6.7901% |
| 9/27/2022 | 3 | 11,188 | 350 | 31.9657-to-1 | -8.1878% |
| 10/4/2022 | 2 | 4,398 | 300 | 14.66-to-1 | -20.28% |
| 10/5/2022 | 1 | 1,610 | 100 | 16.10-to-1 | -27.0035% |

Contrary to the nearly hysterical screeds by GTS in their Response stating "Plaintiff's amendment is further improper because it does not present any new, material facts." Hogwash. Traudt has added significantly to the FACTS of the 1st Amended Complaint in the 2nd Amended Complaint with many of FACTS 146 to 168 being evidence gathered in 5 months of motion practice and diligence done by social media allies. This includes the proof of the NWBO spoofing to prove prior bad acts and literally millions of dollars in fines and other evidence of misconduct that GTS is a beastly, predatory, abusive player in the market. Traudt responds as follows to GTS's quote that Traudt wants *"to turn every MMTLP investors into a financial insurgent."*:

HELL YEAH! (Really, what options do Americans have?)[8]

---

[8] Against a backdrop of regulatory unconstitutionality as seen in the holdings of *Alpine Securities Corp. v. Financial Industry Regulatory Authority and United States of America* (Case No. 1:23-cv-01506, https://media.cadc.uscourts.gov/opinions/docs/2024/11/23-5129-2086156.pdf) that put FINRA on the proverbial US Constitutional bubble,[8] FOIA requests to the SEC in the thousands that have gone unanswered by the SEC, requests of the SEC to restart trading to no avail, more than 70 Congressman and Senators authoring letters to the SEC and FINRA asking what happened with the MMTLP trade halt (yet all of them not having any strength of character or determination to issue a simple subpoena to the SEC for the trading records, Consolidated Audit

7

Traudt has vigorously and successfully supported getting MMTLP investors to finally understand that the only possible way home for people to get their funds unfrozen by the illegal trade halt by FINRA in MMTLP is the US District Courts nationally.[9]

And this is happening across the country. But this is not to say Traudt is encouraging frivolous lawsuits nor is he counseling any other plaintiffs in the suite of Texas and Connecticut cases to sue in US District Courts using RICO, CFAA, or even to sue broker dealers.[10] *In this respect, Traudt has illuminated the new plaintiffs that RICO, CFAA, and "infinity arbitration clauses" litigation against broker-dealers should not even be considered. In this respect, if Traudt was, as GTS maintains, merely out to add costs, he would never have encouraged the other litigants to drop RICO, CFAA, and broker-dealer claims. In the interests of judicial economy, Traudt has advised as a layman that the six (and growing) other cases nationally do not have these elements, thereby making sure the other cases waste no time or resources by either defendants or plaintiffs, or the courts.* Traudt has given simple advice that true systemic change must come from terminating FINRA and getting the PSLRA adjudged to be

---

Trail (CAT), or the bluesheets for MMTLP), and on and on, Traudt has made the correct assessment that spreading out the battlefield and getting Americans to battle even *pro se* is the only way to get recovery.

[9] The national reboot of markedly improved *Traudt* derivatives are *Pease v. SEC* No: 7:24-cv-00322-DC (US Dist. Ct. West Texas), Auxier v. SEC No. 7:24-cv-00318 (US Dist. Ct. West Texas), *Rolo v. SEC* No. 3:24-cv-02053 (US Dist. Ct. CT), *Willcot v. SEC* No. MO:24-cv-317 (US Dist. Ct. West Texas), Spears v. Next Bridge Hydrocarbons Inc. No. 7:24-cv-321 (US Dist. Ct. West Texas), *Vetrano v. Brda* No. 7:24-cv-325 (US Dist. Ct. West Texas), *Davis v. Next Bridge Hydrocarbons Inc*. No. 3-24-cv-03058-K-BW (US Dist. Ct. NorthTexas).

[10] How could anyone think to sue a broker-dealer since this Court and others basically assess arbitration agreements (as it did here in the *Traudt* case against Schwab) as "infinity agreements" meaning even the slimmest of relationship to a broker-dealer/client agreement will lead to a judge ordering arbitration under the Federal Arbitration Act.

unconstitutional, and to that extent he has shared generously case law, historical research, and drafts for others to assault these two horrific stains on the US economy and the economic civil rights of Americans. And yes, social media is the "new news." Much of what GTS assails Traudt for is not having the 3 years of law school to learn how to read all of the Sacred Scrolls perfectly. So be it.

GTS claims *"...many of Plaintiff's allegations ...crowdsourced by him on Twitter without any independent investigation."* Of course. How would I be able to get into GTS' trading software without a discovery order? And were it not for Twitter, Reddit, or Facebook, much of the sins of the financial leviathans would be buried to a depth approaching Marianas Trench proportions. So soliciting evidence is not a crime. Yet GTS has also been silent when Traudt has raised in prior motions the following evidence of fraud and what could have been chargeable criminal securities fraud against GTS as evinced in *Aggregate FINRA Broker Check for GTS Securities LLC From February 3, 2014 to 13 March 2024* by Marcos Montiero. **(See Appendix A).**

### 3. Market manipulation and reliance claims are based on Traudt assuming a fair market and was not aware of the extent of naked shorting provided by GTS

Traudt has never stated that he was aware of naked shorting and other illegalities at the time of his purchase on 30 November 20223 of the MMTLP shares. For GTS to argue that Traudt "knowingly" came to what it admits via its arguments here is a fraudulent market (!) makes Traudt's case that more persuasive…essentially GTS is arguing that Traudt is just another uppity peasant who should know the markets are rigged.

Traudt has perfectly stated he was unaware of market manipulation by GTS at the time he purchased. "Furthermore, a complaint alleging a violation of (SEC) § 10(b) is required to state

9

that the transactions that caused the loss were made "in ignorance of the fact that the price was affected by the alleged manipulation." *Gurary v. Winehouse,* 190 F.3d 37, 45 (2d Cir. 1999).

"We write only to state the obvious: our opinion did not require that reliance by a victim on direct oral or written communications by a defendant must be shown in every manipulation case. Indeed, we agree with the propositions of law asserted by the SEC that, in a manipulation claim, a showing of reliance may be based on "market activity" intended to mislead investors by sending "a false pricing signal to the market," upon which victims of the manipulation rely. *ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 100 (2d Cir. 2007) However, the discussion in <u>*ATSI*</u> of "false pricing signal[s] to the market" is derived from the Supreme Court's use of the efficient market hypothesis to establish a rebuttable presumption of reliance based on the effect of misrepresentations on the market price of securities. *Basic Inc. v. Levinson,* 485 U.S. 224, 241-45, 108 S. Ct. 978, 99 L. Ed. 2d 194 (1988). *Fezzani v. Bear, Stearn's & Co.,* 777 F.3d 566, 571-572, 2015 U.S. App. LEXIS 1572, *11-13, 2015 WL 400547

### 4. Ample opportunity for discovery must be given in Clayton Act claims/Traudt meets the 12(b)(6) standard of review to beat dismissal in an antitrust case

In deciding a motion to dismiss, all inferences must be drawn in favor of the plaintiff, and the facts must be viewed as the plaintiff most strongly can plead them. The district court may not, then, grant a motion to dismiss for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief. <u>The Supreme Court has applied this standard rigorously in antitrust cases, holding that in such cases dismissals prior to giving the plaintiff ample opportunity for discovery should be granted very sparingly</u>. (underline

emphasis added) *Sun Dun, Inc. v. Coca-Cola Co.*, 740 F. Supp. 381, 384, 1990 U.S. Dist. LEXIS 7813, *1, 1990-2 Trade Cas. (CCH) P69,244.[11]

Purposes of § 4 of Clayton Act (15 USCS § 15) are (1) to deter violators and deprive them of fruits of their illegality, and (2) to compensate victims of antitrust violations for their injuries. *Pfizer, Inc. v. Government of India*, 434 U.S. 308, 98 S. Ct. 584, 54 L. Ed. 2d 563, 1978-1 Trade Cas. (CCH)

Primary purpose of 15 USCS § 15 is to encourage private persons to undertake enforcement of antitrust laws to carry out more effectively Congressional policy against illegal monopolies and restraints of trade. *Perkins v. Standard Oil Co.*, 474 F.2d 549, 1973-1 Trade Cas. (CCH) ¶ 74383, 1973 U.S. App. LEXIS 11701 (9th Cir

*Harry v. Total Gas & Power N. Am., Inc.*, 889 F.3d 104, 115-16 (2d Cir. 2018) (""the Supreme Court carved a narrow exception to the market participant requirement for parties whose injuries are 'inextricably intertwined' with the injuries of market participants." *Id.*(quoting *American Ad Management v. Inc. the General Telephone Co. of California* , 190 F.3d 1051, 1057 n.5 (9th Cir. 1999) ); *see also Blue Shield of Virginia v. McCready* , 457 U.S. 465, 484, 102 S.Ct. 2540, 73 L.Ed.2d 149 (1982). An injury is "inextricably intertwined" when the defendants "use the plaintiff's injury as the means, fulcrum, conduit, or market force to realize their illegal ends," or when they "corrupt a separate market [in which a plaintiff is a participant] in order to achieve [their] illegal ends." *Id.* at 160–61")

---

[11] Based on the number of spoofing lawsuits against GTS and the presumption that there are quite a few more being researched, Traudt posits that discovery against GTS might lead to evidence that GTS has literally been spoofing hundreds of securities without being caught – probably to the detriment of retail traders. This is exactly why the Clayton Act's liberal view of pleadings and discovery must hold sway here and Traudt must be allowed to proceed to discovery.

Regarding 15 USCS 4, [T]he potency of the [§ 4] remedy implies the need for some care in its application." *McCready,* 457 U.S. at 477. At the same time, the "unrestrictive language of the section, and the avowed breadth of the congressional purpose" in enacting this remedial provision "cautions [courts] not to cabin § 4 in ways that will defeat its broad remedial objective." Id. Accommodation of both aims requires courts to consider "the relationship of the injury alleged with those forms of injury about which Congress was likely to have been concerned, in making . . . conduct unlawful and in providing a private remedy under § 4." Id. at 478. The Sherman Act safeguards consumers from marketplace abuses; appellants are consumers claiming injury from a horizontal price-fixing conspiracy. They have accordingly plausibly alleged antitrust injury. *Gelboim v. Bank of Am. Corp.,* 823 F.3d 759, 777, 2016 U.S. App. LEXIS 9366, *36-37, 2016-1 Trade Reg. Rep. (CCH) P79,642

"[C]onspiracies are rarely evidenced by explicit agreements" and "nearly always must be proven through 'inferences that may fairly be drawn from the behavior of the alleged conspirators.'" Id. at 183 (quoting *Michelman v. Clark-Schwebel Fiber Glass Corp.,* 534 F.2d 1036, 1043 (2d Cir. 1976)). "At the pleading stage, a complaint claiming conspiracy, to be plausible, must plead 'enough factual matter (taken as true) to suggest that an agreement was made . . . .'" Id. at 184 (quoting *Twombly,* 550 U.S. at 556). *Gelboim* at 781.

The line separating conspiracy from parallelism is indistinct, but may be crossed with allegations of "interdependent conduct," "accompanied by circumstantial evidence and plus factors." *Mayor & City Council of Balt. v. Citigroup, Inc.,* 709 F.3d 129, 136 (2d Cir. 2013) (quoting Todd, 275 F.3d at 198).

FINRA is a private regulator against whom Traudt already has similar Clayton Act claims. Because FINRA was acting for ill reason, and was acting in the U3 halt in the interest of

the cabal/cartel/monopoly, FINRA is named separately as a defendant under Clayton and the SEC violations. Until FINRA's actions are analyzed and found Constitutionally acceptable in *Traudt v. Rubenstein*, then Traudt has no intervening government agency deflecting causation for his injuries away from GTS Defendants. In fact, with *Traudt v. Gensler* Petition No. 2:24-cv-01360-cr being filed in this Court, the entire GTS-using-FINRA-as-a-shield defense collapses as both GTS and FINRA were working hand in glove to arrive at the U3 halt for purely financial, and not regulatory, reasons.

### 5. Circumstantial evidence of an agreement is acceptable in Clayton Act claims

("'[U]nder *Twombly*, the Court abdicates probability weighing, assumes that all the well-pleaded 'allegations in the complaint are true (even if doubtful in fact),' and decides whether the totality of those allegations 'suggest that an agreement was made.'" (quoting *Twombly*, 550 U.S. at 556)) *Tichy v. Hyatt Hotels Corp.*, 376 F. Supp. 3d 821, 837, 2019 U.S. Dist. LEXIS 46511, *30, 201-1 Trade Cas. (CCH) P80,714, 2019 WL 1294746

### 6. Service of process on Rubenstein was effective yet not exactly by the book

Traudt emailed GTS twice, called GTS twice, mailed return receipt requested copies of the 1st Amended Complaint to GTS HQ in NYC and GTS Securities LLC's agent for service in Albany, NY. Traudt was made aware that Rubenstein might be outside the country (again) and that he owned multiple homes in the USA. For GTS and Rubenstein to on one hand say Traudt is abusive in this court for forcing the GTS defendants to handle one more round of elevated claims against them when a *de minima* of effort letting Traudt know where Rubenstein was available to be served is implicitly hypocritical. That Rubenstein has counsel representing him for the last 5 months is somewhat self-evident that he got the memo.

### 7. Rubenstein's vanishing act and the train of evidence leading to it clearly shows monopolistic behavior and manipulative acts and devices

13

The Court must observe the chain of events leading to Rubenstein leaving the country for 18 months:

1. GTS began pumping the market full of MMTLP naked short shares in September 2021 after it and possibly CanaccordGenuity used dated data and falsified filings to get MMTLP trading again. GTS did a deal with Schwab on 31 July 2021 placing roughly 50,000 shares of MMTLP into a Schwab Index fund.

2. MMTLP began "officially" trading on 8 or 12 October 2021. Defendant Schwab acknowledged having a special relationship with a market maker (believed to be GTS).

3. MMAT CEO Georgio Palikaras stated in an affidavit on 15 August 2024 that "[O]n or about October 14, 2021, Mr. Rice had a phone call with Ms. Casimates regarding META II's MMTLP complaint. During the call, Mr. Rice reported to me that FINRA refused to provide the identity of the broker(s) or individual(s) that applied for the exemption. Mr. Rice reported to me that FINRA or the related broker(s) or individual(s) who applied for the exemption would not edit, delete or modify the false and outdated Company information that was listed on the OTC Market's website." **(See Appendix B).**

4. On 29 November 2021, FINRA's VP at the UPC Committee (Patrica Casimates) WAS emailed by Draddy that there was a problem with MMTLP trading. **(See Appendix C).**

5. All of the foregoing was unknown to Traudt when he purchased his 305 shares on 30 November 2022.

6. Also on 30 November 2022, Rubenstein made his last tweet on Twitter saying "Regulators need to have the same level of transparency that industry participants provide." He then left the country for 18 months sometime shortly thereafter.

If Traudt brings Occam's Razor to court here, the circumstantial evidence is breathtaking that Rubenstein and GTS were aware of the Biblical levels of fraud in MMTLP trading, were alerted by FINRA personnel, knew they'd implicated because Casimates was emailing everyone with the keys to the circus to be able to shut it down, and then Draddy collapses the whole tent on the circus with his now infamous 5 December 2022 emails saying he had the bluesheets and there was a problem.

Traudt asks one simple question of this Court: *why did Rubenstein drop from public view for 18 months after this and go overseas?*

### 8. Schwab, Fidelity, and E-Trade weren't the only ones who oversold by using market making from GTS...how many shares did Virtu America LLC put on the market when their allotment was only 720 shares?

Due to Traudt's social media efforts and as GTS says "crowdsourcing" his due diligence, a list of all 105 broker-dealers and other financial institutions has fallen quite unceremoniously into his lap. The numbers are thought provoking. Virtu took 720. Credit Suisse took 3,500. How many did they actually trade?

Oddly enough, the number of shares of MMTLP issued to these 105 are somewhat interesting and at least give a baseplate for discovery should this case move forward in that Traudt already knows who got the original Depository Trust Clearing Corporation's (DTCC) distribution of MMTLP shares. **(See Appendix D).** Traudt maintains that the oversold longs and counterfeit naked shorts created by keystroke wizardry in NYC have now lead to this set of circumstances which are now beyond dispute: the fraud in the US stock market is beyond anything even the most jaded observer would believe.

New CUSIP  591994371

| Participant # | Participant Name & Address | Tax ID | Total Old | Total New |
|---|---|---|---|---|
| 0295 | VIRTU AMERICAS LLC<br>ONE LIBERTY PLAZA 165 BROADWAY, 5TH FLOOR<br>NEW YORK NY  NEW YORK 10006   US. | 26 - 4219373 | 720 | 720 |
| 0352 | J P. MORGAN SECURITIES LLC/JPMC<br>FOUR CHASE METROTECH CENTER 3RD FLOOR<br>BROOKLYN NY NEW YORK 11201   US. | 13 - 4110995 | 1,746,582 | 1,746,582 |
| 0355 | CREDIT SUISSE SECURITIES (USA) LLC<br>ONE MADISON AVE 3RD FLOOR NEW YORK NY<br>NEW YORK 10010-3643   US. | 13 - 5659485 | 3,500 | 3,500 |
| 0361 | D.A. DAVIDSON & CO.<br>8 3RD STREET NORTH  GREAT FALLS MT  MONTANA<br>59401   US. | 81 - 0139474 | 26,000 | 26,000 |
| 0374 | JANNEY MONTGOMERY SCOTT LLC<br>1717 ARCH STREET 17TH FLOOR PHILADELPHIA PA<br>PENNSYLVANIA 19103   US. | 23 - 0731260 | 8,017 | 8,017 |
| 0385 | E*TRADE CLEARING LLC<br>HARBORSIDE FINANCIAL CENTER 501 PLAZA 2<br>JERSEY CITY NJ  NEW JERSEY 07311   US. | 94 - 2844166 | 13,052,719 | 13,052,719 |

**WHEREFORE,** Traudt request that this Court deny the GTS Defendants objection and allow Traudt to amend the complaint as appropriate.

Dated: January 9, 2025

Scott Traudt, *pro se ipso*
191 Kibling Hill Road
Strafford, VT 05072

I hereby certify that a true copy of the foregoing was sent to all named defendants and respondent at the addresses delineated below either by 1st Class mail or via email on this 9 day of January, 2025.

SCOTT TRAUDT

**Ari Rubenstein/GTS Securities LLC** Atty. Jonathan R. Voegele, Morris Kandinov LLP, 4915 Mountain Rd., Stowe, VT 05672

**Ari Rubenstein/GTS Securities LLC** Atty. Aaron T. Morris, Morris Kandinov LLP, 4915 Mountain Rd., Stowe, VT 05672

16

**Ari Rubenstein/GTS Securities LLC** Atty. Jonathan Miller, Williams, Barber & Morel Ltd., Willis Tower, 233 S. Wacker Dr., Ste. 6800, Chicago, IL 60606

**Ari Rubenstein/GTS Securities LLC** Atty. Stephen Fraser, Williams, Barber & Morel Ltd., Willis Tower, 233 S. Wacker Dr., Ste. 6800, Chicago, IL 60606

**FINRA** Atty. Walter Judge, DRM, 199 Main St. POB 190 Burlington VT 054020-190

**FINRA** Atty. John P. Mitchell, Faegre, Drinker, Biddle & Reath LLP 105 College Road East 105 College Road East, POB 627 Princeton NJ 08542-0627

**Schwab** Atty. Justin Barnard, Dinse P.C. 209 Battery St., Burlington VT 05401

**Schwab** Atty. Anne B. Rosenblum, Dinse P.C. 209 Battery St., Burlington VT 05401

**Schwab** Atty. Felipe Escobedo, Morgan, Lewis & Bockius LLP One federal St., Boston MA 02110-1726

**Schwab** Atty. Jeff Goldman Morgan, Lewis & Bockius LLP One federal St., Boston MA 02110-1726

**SEC** Atty. Mike Bailey 100 F Street, NE Washington, D.C. 20549