U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2025 FEB 14 AM 11: 10

BY _____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

```
*****************************************
SCOTT TRAUDT,                          *
Plaintiff                              *
                                       *
v.                                     *   Docket Number: 2:24-cv-00782
                                       *   **JURY TRIAL DEMANDED**
ARI RUBENSTEIN                         *
Defendant                              *   2ND Amended Complaint
                                       *
GTS SECURITIES LLC                     *
GTS EQUITY PARTNERS LLC                *
GTS EXECUTION SERVICES LLC             *
Defendant                              *
                                       *
CHARLES W. SCHWAB AND CO. INC.         *
SCHWAB HOLDINGS, INC.                  *
Defendant                              *
                                       *
FINANCIAL INDUSTRY                     *
REGULATORY AUTHORITY                   *
Defendant                              *
                                       *
GARY GENSLER                           *
US SECURITIES AND EXCHANGE             *
COMMISSION                             *
Respondent                             *
                                       *
*****************************************
```

## PLAINTIFF SCOTT TRAUDT'S REPLY TO FINRA'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT

1

Plaintiff Scott Traudt ("Traudt" or "Plaintiff") has successfully amended his 1st Amended Complaint. Traudt contests certain point raised in opposition by Defendant Financial Industry Regulatory Authority ("FINRA") herein.

## 1. Traudt's Second Amended Complaint ("SAC") is Compliant to the Best of His Abilities as a Pro Se Litigant.

Traudt submitted redlined versions in keeping with Local Rule 15. The Second Amended Complaint ("SAC") itself was reduced in size and parts of both Actions for Declaratory Relief against FINRA and the Private Security Litigation Reform Act ("PSLRA") were greatly shortened to comply with FRCP 8 requiring a short and clear statement of the claim. FINRA is not prejudiced if there is one line of error as the finished document is complete, FINRA is not prejudiced, and FINRA bears no additional costs. "It is too late in the day and entirely contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of such mere technicalities. The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley* v. *Gibson*, 355 U.S. 41, 48. *Foman v. Davis*, 371 U.S. 178, 181-82 (1962)

Traudt is entitled to deference on this small technicality as FINRA has had 6 months of litigation and motions to comprehend Traudt's claims and Traudt has supplied volumes of evidence on behalf of his claims showing FINRA and FINRA's officers' wrongdoings. "The Court of Appeals' departure from the liberal pleading standards set forth by Rule 8(a)(2) is even more pronounced in this particular case because petitioner has been proceeding, from the litigation's outset, without counsel. A document filed *pro se* is "to be liberally

2

construed," *Estelle*, 429 U.S., at 106, 97 S. Ct. 285, 50 L. Ed. 2d 251, and "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," *ibid.* (internal quotation marks omitted). Cf. Fed. Rule Civ. Proc. 8(f) ("All pleadings shall be so construed as to do substantial justice"). *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)

## 2. The SAC's Amendments are Not Futile

FINRA argues Traudt has added no new Facts to the SAC which is a patent lie and typical of the conduct of both FINRA's and GTS's defendants. Plaintiff's SAC adds significant new evidence of FINRA fraud and evidence obtained from new sources since July 2024. See SAC (Docket #112 Facts 169-174 and 181-192). None of the claims are futile, especially the Constitutional claims. FINRA continues to maintain that it has immunity because its duties were regulatory while Traudt argues they shouldn't be doing the duties at all. FINRA's actions in the U3 halt were taken in excess of its authority under the Exchange Act and the SAC identifies these properly as violating Traudt's substantive and procedural due process rights. U.S. Supreme Court has addressed the issue of constitutional claims being independent of any private right of action and the necessity to address them regardless of regulatory immunity. In *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), the decision established that individuals could seek damages for constitutional violations directly under the Constitution itself, independent of any statutory private right of action. The Court stated that "where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done." Traudt's economic civil rights have been violated under the 9th Amendment and Traudt argues with support in *Alpine* and *Lucia v. SEC*, 585 U.S. ___ (2018), 138 S. Ct. 2044, 2051 (2018) "The Appointments Clause prescribes the

exclusive process by which certain federal officers may be selected. Its purpose is to ensure public accountability for both the appointment and oversight of officers who exercise significant authority pursuant to the laws of the United States." FINRA was in fact a state actor operating in every way conceivable as a branch of the US government (Docket #112 Facts 254 – 264).

Traudt and 65,000 shareholders in MMTLP continue to face economic catastrophe at the hands of FINRA. Traudt is in person the parallel to the Alpine Securities company that successfully obtained an injunction against FINRA precisely because FINRA is not within Constitutional bounds. "Alpine faces irreparable harm because it faces a grave risk of being forced out of business before full SEC review, rendering any opportunity for later review at best inadequate and, at worst, moot. A business's "destruction in its current form" commonly qualifies as irreparable harm." *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977); *see In re NTE Conn., LLC*, 26 F.4th 980, 990 (D.C. Cir. 2022) ("[F]inancial injury can be irreparable where no adequate compensatory or other corrective relief will be available at a later date[.]") (formatting modified): *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) ("Recoverable monetary loss may constitute irreparable harm" if "the loss threatens the very existence of the movant's business."). *Alpine Sec. Corp. v. Fin. Indus. Regulatory Auth.*, No. 23-5129, 24-25 (D.C. Cir. Nov. 22, 2024)

## 2. Traudt Has Submitted in Prior Motions Clear and Convincing Evidence of FINRA's Personal and Specific Jurisdiction in Vermont

In Traudt's 22 October 2024 filing with this Court (Docket #78) Traudt argued law and facts from pages 3 to 8 explaining to the Court why FINRA was hooked in US District Court under specific, personal, and Vermont's "Long Arm" statute. Traudt incorporates them here by reference. Traudt did not include all of that in the SAC for brevity's sake but for FINRA to argue Traudt didn't make his case they once again are at variance with the record.

### 3. Traudt Has a Private Right of Action for Conduct Not in Keeping With FINRA's Regulatory Duties

As stated in the SAC, FINRA officers on the UPC were the ones who called for the U3 trade halt that was an unconstitutional, unappealable, seizure of property without just compensation and an illegal takings under the 5th Amendment. It was not regulatory but predatory in nature as the SAC illustrates the nexus between Schwab, GTS, and FINRA in performing the trade halt. There is the admission by a Schwab employee that they called FINRA to protect itself from damages (Docket #112 131-145). The Schwab employee's statements have never been denied by Schwab.

### 4. FINRA Misrepresents Traudt's Facts to this Court Over and Over Again…

FINRA states Traudt knew when he bought his shares that the assets at the core of the MMTLP trading (the Torchlight Energy oil fields in the Orogronde Basin in Texas) were worthless. This is exactly the line GTS used, but it misrepresents the facts. Traudt only discovered this in October of 2024, though FINRA was aware of this more than likely in October 2021 but did nothing.

### 5. Traudt Can Argue Reliance, Insider Trading, and Trading in A Supposedly Efficient Market

FINRA is charged with regulating the OTC-BB and now OTC-UTP markets upon which MMTLP traded. Its missions statement: "FINRA's mission is to safeguard the investing public against fraud and bad practices."[1]

FINRA uses the oldest legal cliché in the book to assert that OTC markets are *knowingly* corrupt, Traudt and 65,000 other MMTLP investors should have seen this, and therefore Traudt

---

[1] See https://www.finra.org/about/what-we-do/five-steps-protecting-market-integrity?utm_source=chatgpt.com

has no business bringing a claim for damages. ("Plaintiff (Traudt) cannot reasonably argue that the stock (MMTLP) was trading in an efficient market or argue reliance.") This is the securities law equivalent of the old legal hypothetical where children murder their parents and then throw themselves on the mercy of the court because they are now orphans; citing *Salvani v. InvestorsHub.com Inc.* 628 F. App'x 784, 786 (2nd Cir 2015). FINRA completely obfuscates the fact that FINRA had superior knowledge to the fraud in MMTLP, took no action, then put the blame on investors when it stole all the investors' money with the U3 halt. *FINRA can't even assess the case properly, either as FINRA has a duty to insure safe, effective, and fair markets, it then it hides behind a paper shield asserting essentially that everyone is aware OTC markets are rigged – and then in the same breath says "its not our problem."* This clearly creates a unique admission against interest right here, and right now, and continues the "here and now injury" identified in *Alpine* that Traudt is suffering. So Traudt's reliance was on FINRA doing its job, which it now admits it didn't, nor has it ever over the duration of Traudt's ownership of MMTLP shares.[2] Traudt easily distinguishes the cases cited by FINRA on the issue of OTC being an "inefficient market" as those cases deal with market participants – NOT market regulators like the SEC or FINRA.

## 6. Traudt has Article III Standing for Declaratory Relief for Claims and Damages Suffered as Elaborated in Docket #112 Counts I – V

Article III of the U.S. Constitution limits federal court jurisdiction to actual cases or controversies. To establish standing, a plaintiff must demonstrate three essential elements:

---

[2] FINRA as an SRO has no legal obligation to open its books under Freedom of Information Act Requests.

Injury in fact: The plaintiff must have suffered an injury that is both concrete and particularized and actual or imminent, not conjectural or hypothetical. Traudt has established that he has suffered a personalized injury in fact in the loss of his $3000 investment in MMTLP that is traceable to the challenged acts of the defendant FINRA that is likely to be addressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 578 US 330, 338-339 (2016). Traudt has met the causation burden of *Spokeo*, too; the injury must be fairly traceable to the defendant's challenged conduct. Traudt's injuries came from the arbitrary and capricious actions of a corrupted SRO and were specifically focused on damaging him and other MMTLP holders. These elements were emphasized in *Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992)*. The Court explained that a generalized grievance shared by all citizens is insufficient for Article III standing. Applying *Lujan* to the U3 halt, unlike the general public's interest in regulatory compliance at issue in *Lujan*, Traudt's injury is specific to Traudt's position as a shareholder in MMTLP and is distinguishable from the abstract harm experienced by others on general "I don't like the law" claims.

### 7. The SAC Complaint falls Within the "Zone of Interest" Test Identified in *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014)

"A statutory cause of action is presumed to extend only to plaintiffs whose interests "fall within the zone of interests protected by the law invoked." *Allen v. Wright*, 468 U.S. 737, 751, 104 S. Ct. 3315, 82 L. Ed. 2d 556. "[T]he breadth of [that] zone . . . varies according to the provisions of law at issue." *Bennett v. Spear*, 520 U.S. 154, 163, 117 S. Ct. 1154, 137 L. Ed. 2d 281. *Lexmark,* 119.

The *zone of interest* test, as defined in *Lexmark*, determines whether a plaintiff's claims are closely related to the purposes of the statute under which the claims are brought. Traudt's Second Amended Complaint demonstrates that FINRA's illegal U3 halt on MMTLP shares—a

halt that permanently froze trading for over 65,000 investors—constitutes an unlawful exercise of regulatory power that violates both the major questions doctrine and the statutory limits on trading suspensions under the Securities Exchange Act of 1934. Traudt's claims fall squarely within the "zone of interest" protected by both the Clayton Act and the Exchange Act.

## A. The Major Questions Doctrine and FINRA's Lack of Congressional Authorization

In *West Virginia v. Environmental Protection Agency*, 597 U.S. ___ (2022), the Supreme Court held that regulatory agencies may not assert broad powers over major issues of economic and political significance without explicit authorization from Congress. FINRA's regulatory overreach cannot be justified absent explicit Congressional authorization for such sweeping interference in market operations. Traudt's injury in the loss of his property interest in his MMTLP shares arises from this unauthorized exercise of power, which violates the securities laws Congress intended to uphold.

## B. *SEC v. Sloan* and the Limits on Trading Halts

The Supreme Court in *SEC v. Sloan*, 436 U.S. 103 (1978), addressed the statutory limits on the SEC's authority to suspend trading in securities. The Court ruled that under Section 12(k) of the Exchange Act (15 U.S.C. § 78l(k)), the SEC may only impose a trading suspension for up to 10 days without seeking Presidential approval. The Court emphasized that indefinite or repeated suspensions violate both statutory constraints and fundamental principles of procedural fairness. Ten day limits have been abused to now 795 days without trading restarted, just compensation for the takings, or even any basic answers to how many shares short and long existed at the U3 halt. (Plaintiff's SAC makes efforts to show three separate share counts have

taken place and the outstanding long shares could easily be between 400 and 500 million shares. The original DTCC issued float was approximately 163 million shares.[3]

FINRA, acting as an SRO under SEC oversight, is bound by the same statutory framework. Yet, FINRA imposed an indefinite U3 halt on MMTLP without any statutory authorization or procedural safeguards, effectively freezing trading and rendering the shares untradeable. This action parallels the regulatory overreach condemned in *Sloan*. The Exchange Act does not empower FINRA to impose indefinite trading halts that deprive investors of their property rights, and FINRA's actions must be deemed ultra vires.

## C. Traudt's Injuries Fall Within the Zone of Interest of the Exchange and Clayton Acts

Under the *zone of interest* analysis, Traudt's claims directly implicate the statutes' core purposes: protecting market integrity, preventing manipulation, and ensuring fair trading practices. The Securities Exchange Act of 1934 and the Clayton Act were both designed to safeguard investors and promote transparent, competitive markets.

The Clayton Act, through Section 4 (15 U.S.C. § 15), authorizes private suits for damages caused by anticompetitive conduct. In *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477 (1977), the Court held that actionable injuries under antitrust law must result from conduct that harms competition itself. FINRA's actions were the ultimate antitrust violation by taking action to protected one set of interests over another. When Congress enacted the Clayton Act in 1914, it "extend[ed] the remedy under section 7 of the Sherman Act" to persons injured by virtue of any antitrust violation. H.R. Rep. No. 627, 63d Cong., 2d Sess., 14 (1914). The initial House debates concerning provisions related to private damages actions reveal that these actions

---

[3] This prima facie evidence of fraud fairly screams for discovery against the defendants to get at the truth.

9

were conceived primarily as "open[ing] the door of justice to every man, whenever he may be injured by those who violate the antitrust laws, and giv[ing] the injured party ample damages for the wrong suffered." 51 Cong. Rec. 9073 (1914) (remarks of Rep. Webb); *Brunswick* at 486 n.10. The SAC outlines the ultimate anti-competitive activity: theft.

Similarly, the Exchange Act, under Section 10(b) and Rule 10b-5, prohibits manipulative and deceptive practices in securities transactions. In *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975), the Court emphasized that the statute protects investors from market manipulation.

FINRA's illegal U3 halt implicates both the major questions doctrine, as articulated in *West Virginia v. EPA*, and the statutory limitations established in *SEC v. Sloan*. By permanently freezing the ability of over 65,000 investors to trade MMTLP shares without Congressional authorization, FINRA engaged in a regulatory overreach of significant consequence. These actions caused direct harm to Traudt, whose injuries fall within the "zone of interest" protected by both the Clayton Act and the Securities Exchange Act. Courts must recognize that FINRA's actions were *ultra vires* and unlawful, and Traudt's claims should proceed to protect the integrity of the securities markets and the rights of investors.

## 8. Conclusion

"Constitutional rights are enshrined with the scope they were understood to have when the people adopted them." *District of Columbia v. Heller,* 554 U.S. 570 at 634-635. FINRA's existence as a "self-regulatory organization" is the modern equivalent of a British Crown Company whose operations and abuses were one of the reasons for the US Revolutionary War. It's a simple historical fact that the entire existence of FINRA with the power it has unchecked, exercised by unelected bureaucrats with their own economic interests at stake, unaccountable to

the President of the United States, and able to rain economic hellfire and damnation at will upon investors (as was the case in the MMTLP trade halt on 8 December 2022) without appeal is simply and incontrovertibly unconstitutional under *Heller*. Our forefathers would have tarred and feathered the whole outfit by now and sent them packing.

Dated: February 10, 2025

Scott Traudt, *pro se ipso*
191 Kibling Hill Road
Strafford, VT 05072

I hereby certify that a true copy of the foregoing was sent to all named defendants and respondent at the addresses delineated below either by 1st Class mail or via email on this 10 day of February, 2025.

SCOTT TRAUDT

**Ari Rubenstein/GTS Securities LLC** Atty. Jonathan R. Voegele, Morris Kandinov LLP, 4915 Mountain Rd., Stowe, VT 05672

**Ari Rubenstein/GTS Securities LLC** Atty. Aaron T. Morris, Morris Kandinov LLP, 4915 Mountain Rd., Stowe, VT 05672

**Ari Rubenstein/GTS Securities LLC** Atty. Jonathan Miller, Williams, Barber & Morel Ltd., Willis Tower, 233 S. Wacker Dr., Ste. 6800, Chicago, IL 60606

**Ari Rubenstein/GTS Securities LLC** Atty. Stephen Fraser, Williams, Barber & Morel Ltd., Willis Tower, 233 S. Wacker Dr., Ste. 6800, Chicago, IL 60606

**FINRA** Atty. Walter Judge, DRM, 199 Main St. POB 190 Burlington VT 054020-190

**FINRA** Atty. John P. Mitchell, Faegre, Drinker, Biddle & Reath LLP 105 College Road East 105 College Road East, POB 627 Princeton NJ 08542-0627

**Schwab** Atty. Justin Barnard, Dinse P.C. 209 Battery St., Burlington VT 05401

**Schwab** Atty. Anne B. Rosenblum, Dinse P.C. 209 Battery St., Burlington VT 05401

11

**Schwab** Atty. Felipe Escobedo, Morgan, Lewis & Bockius LLP One federal St., Boston MA 02110-1726

**Schwab** Atty. Jeff Goldman Morgan, Lewis & Bockius LLP One federal St., Boston MA 02110-1726

**SEC** Atty. Mike Bailey 100 F Street, NE Washington, D.C. 20549