```
                                          ·U.S. DISTRICT COURT
                                           DISTRICT OF VERMONT
                                                 FILED
       UNITED STATES DISTRICT COURT
    FOR THE DISTRICT OF VERMONT  2025 FEB 28  AM II: 41

                                                 CLERK
*************************************           BY_____
SCOTT TRAUDT,                       *              DEPUTY CLERK
Plaintiff                           *
                                    *
v.                                  *    Docket Number: 2:24-cv-00782
                                    *    JURY TRIAL DEMANDED
ARI RUBENSTEIN                      *
Defendant                           *    2ND Amended Complaint
                                    *
GTS SECURITIES LLC                  *
GTS EQUITY PARTNERS LLC             *
GTS EXECUTION SERVICES LLC          *
Defendant                           *
                                    *
CHARLES W. SCHWAB AND CO. INC.      *
SCHWAB HOLDINGS, INC.               *
Defendant                           *
                                    *
FINANCIAL INDUSTRY                  *
REGULATORY AUTHORITY                *
Defendant                           *
                                    *
GARY GENSLER                        *
US SECURITIES AND EXCHANGE          *
COMMISSION                          *
Respondent                          *
                                    *
*************************************
```

## Motion for Relief from Judgment Under Federal Rule of Civil Procedure 60(b)

### 1. Introduction

Plaintiff Scott Traudt ("Traudt") respectfully moves this Honorable Court for relief from its judgment compelling arbitration, pursuant to Federal Rule of Civil Procedure 60(b). The court's order rests on a critical error: it found that Traudt signed Charles Schwab's brokerage agreement when, in fact, he merely failed to opt out following Schwab's acquisition of TD Ameritrade—a mistake contradicted by Schwab's own evidence. This factual misstep, coupled

1

with the deletion of Traudt's emails by Schwab, obscures notice and compounds legal defects in both Schwab's and TD Ameritrade's arbitration agreements, including lack of mutual assent, unconscionable terms, and an impermissible retroactive scope in the TD Ameritrade agreement governing disputes predating Traudt's assent. Under FRCP 60(b)(1) and (6), relief is warranted for mistake and other justifiable reasons, as federal case law deems these agreements unenforceable. Traudt seeks reversal of the judgment or, alternatively, a protective order ensuring fair discovery in arbitration.

Traudt also admits that as a pro se he did not entirely understand the distinctions raised in terms of what the court could or could not do in *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010), which he had researched much earlier but did not use because of the distinction between challenging an entire arbitration agreement versus what *Rent-A-Center* held in that individual clauses within an arbitration agreement were the province of the court to decide as to their enforcement.

## 2. Factual Background

Traudt maintained a brokerage account with TD Ameritrade prior to its acquisition by Charles Schwab, finalized with client transitions in May 2024. The TD Ameritrade agreement, signed by Traudt at an earlier unspecified date, contains an arbitration clause purporting to govern disputes predating his assent—a retroactive reach he contends is void. This court's decision referenced this in its decision on pages 3 to 4:

I agree that any controversy between you and your affiliates, any of their respective officers, directors, employees, or agents and me (including any of my officers, directors, employees, or agents) arising out of or relating to this Agreement, our relationship, any Services provided by you, or the use

3

of the Services, and whether arising before or after the date of this Agreement, shall be arbitrated and conducted under the provisions of the Code of Arbitration of the FINRA.

Plaintiff points out the unconscionable language of being bound by the arbitration terms for events that *predated* the arbitration agreement being signed.

Following the acquisition, Schwab imposed a new brokerage agreement, asserting Traudt "opted in" by not affirmatively rejecting it after notification (likely via mail, email, or portal). Traudt never signed this Schwab agreement; his inaction or continued account use was deemed assent under a negative-option framework. In its order compelling arbitration, the court ruled that Traudt signed both agreements—a finding at odds with Schwab's evidence that Traudt's Schwab assent derived solely from failing to opt out. Traudt did not; Traudt only signed the first TD Ameritrade agreement. This is from Page 6 of the court's decision:

**Plaintiff further agreed that "any controversy over the arbitrability of a dispute[] will be settled by arbitration." (Doc. 8-8 at 41.) Plaintiff counters that the arbitration agreements are unenforceable and unconscionable, violate the federal antitrust laws, and that arbitration was not reasonably foreseeable when he signed the agreements.**

Compounding this, Schwab has deleted Traudt's email correspondence, leaving no record of how notice of the new terms was provided, its conspicuity, or whether Traudt received or read it. Based on this erroneous premise, the court entered judgment compelling arbitration, necessitating this motion.

### 3. Legal Argument

Relief from judgment is justified under FRCP 60(b)(1) for mistake and 60(b)(6) for extraordinary circumstances, as the order misapplies contract law and federal precedent across four grounds:

1. Lack of mutual assent to Schwab's agreement, undermined by the court's error and unprovable notice;

2. The TD Ameritrade agreement's unenforceable retroactivity;

3. Unconscionability of both agreements' terms; and

4. The court's failure to conduct required judicial review.

Each mandates vacating the judgment.

### I. Lack of Mutual Assent to Schwab's Agreement

Contract formation requires offer, acceptance, and consideration, with acceptance demanding mutual assent—express or implied through knowing conduct. Schwab asserts Traudt accepted its agreement by not opting out post-acquisition, despite no signature. The court's finding that he signed it is a mistake under FRCP 60(b)(1), clashing with Schwab's admission of inaction-based

assent. In *Rowland v. Sandy Morris Financial & Estate Planning Services*, 993 F.3d 253 (4th Cir. 2021), the Fourth Circuit rejected an arbitration agreement absent proven assent, requiring findings to match evidence. Schwab's record refutes the court's conclusion, justifying relief. Inaction binds only with conspicuous notice and a fair chance to reject. In *Specht v. Netscape Communications Corp.*, 306 F.3d 17 (2d Cir. 2002), the Second Circuit voided a contract with terms hidden in a hyperlink, holding unaware inaction isn't assent. Similarly, *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171 (9th Cir. 2014), struck a "browsewrap" agreement linked obscurely, absent affirmative consent or notice evidence.

### II. TD Ameritrade's Retroactive Scope Lacks Assent and Fairness

The TD Ameritrade agreement's claim to govern pre-assent disputes—termed "ex post facto" in spirit—further justifies relief. While *Calder v. Bull*, 3 U.S. 386 (1798), applies *ex post facto* to criminal law, civil retroactivity offends fairness without prior notice and consent. In *Landgraf v. USI Film Products*, 511 U.S. 244 (1994), the Supreme Court presumed against retroactive civil statutes absent clear intent, a principle guiding contracts.

### III. Unconscionability of Both Arbitration Provisions

Even if assented to, both agreements' arbitration clauses are unconscionable, warranting relief under FRCP 60(b)(6) for extraordinary unfairness. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011), upholds arbitration unless terms are grossly unfair. Two provisions offend. First, discovery is severely limited (likely via FINRA rules), denying Traudt evidence like Schwab's internal communications or trading data (e.g., MMTLP halts). *Mathews v. Eldridge*, 424 U.S. 319 (1976), demands a fair chance to present one's case—arbitration's restrictions violate this, rendering the clause unconscionable.

### IV. Judicial Review Required Under Precedent

The court's failure to address these issues before compelling arbitration is a mistake under FRCP 60(b)(1). In *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010), the Supreme Court mandated judicial resolution of specific provision challenges—like assent or unconscionability—prior to arbitration. "An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other. The additional agreement is valid under §2 'save upon such grounds as exist at law or in equity for the revocation of any contract,' and federal courts can enforce it under §§3 and 4, unless the delegation provision itself is specifically challenged on such grounds." Traudt basically is asking this court to assess whether the clauses identified above violate Traudt's substantive and procedural due process rights, and under *Rent-A-Center* this is for the court to decide, not an arbitrator. (561 U.S. at 70).

Ignoring the signature error, retroactivity, and unfair terms violates *Rent-A-Center*, necessitating relief.

### V. Schwab's actions waived the right to arbitrate

#### U.S. Supreme Court and Vermont Precedent: Intentional Relinquishment as Waiver

The U.S. Supreme Court's decision in *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708 (2022), provides a foundational framework for analyzing waiver of arbitration rights. In *Morgan*, the Court held that waiver under the Federal Arbitration Act (FAA) does not require a showing of prejudice to the opposing party, overturning prior circuit tests. Instead, waiver turns on whether a party "knowingly relinquish[es] the right to arbitrate by acting inconsistently with that right" (*id.* at 1714). Applying this to Charles Schwab's conduct, the intentional destruction of emails and audio recordings, knowing arbitration was likely, could be construed as an act inconsistent with

6

the right to arbitrate. Arbitration presumes a good-faith process where parties resolve disputes fairly. By deliberately eliminating evidence to thwart discovery, Schwab undermines the integrity of that process, signaling an intent to abandon arbitration's procedural norms. Charles

## Schwab Waived Its Right to Arbitrate Under Vermont Law

Charles Schwab's intentional destruction of emails and audio recordings, undertaken with the explicit purpose of defeating discovery and compromising an anticipated arbitration, constitutes a clear waiver of its right to arbitrate under Vermont law. While no Vermont case directly addresses spoliation as a waiver trigger, the Vermont Supreme Court's reasoning in *Lamell Lumber Corp. v. Newstress Int'l, Inc.*, 182 Vt. 147, 938 A.2d 1215 (2007), combined with principles from *Trevino v. Ortega*, 169 Vt. 540, 969 A.2d 140 (1998), and the Vermont Arbitration Act (VAA), 12 V.S.A. §§ 5651–5681, provides a compelling basis to find that Schwab knowingly relinquished its arbitration rights through conduct fundamentally inconsistent with the arbitral process.

### Intentional Relinquishment Under *Lamell*

In *Lamell Lumber Corp. v. Newstress Int'l, Inc.*, the Vermont Supreme Court established that waiver of arbitration rights occurs when a party knowingly and intentionally relinquishes that right through actions inconsistent with it. The court found waiver where the defendant litigated for over a year, filing motions and engaging in discovery, before invoking arbitration (182 Vt. at 152, 938 A.2d at 1219). The key is not the forum but the intent: "Waiver depends on the conduct of the party" and whether it demonstrates a "deliberate choice" to abandon arbitration (182 Vt. at 151, 938 A.2d at 1218). Here, Schwab's conduct fits this mold. By intentionally destroying emails and audio recordings it knew were favorable to the anticipated arbitration, Schwab made a deliberate choice to undermine the process. This is not mere delay or

7

oversight—it is a premeditated act to manipulate the evidentiary landscape, thwarting the fair resolution arbitration demands under the VAA (12 V.S.A. § 5652(a)). Just as litigation in *Lamell* showed intent to bypass arbitration, Schwab's spoliation reveals an intent to subvert it, satisfying Vermont's waiver standard.

### Bad-Faith Conduct Compromises Arbitration's Integrity

Vermont law, informed by *Trevino v. Ortega*, views intentional evidence destruction as a grave offense against fair proceedings. In *Trevino*, the court acknowledged that spoliation— particularly when intentional and aimed at affecting a legal process—could warrant severe consequences, even if it stopped short of recognizing a tort (169 Vt. at 543, 969 A.2d at 143). Arbitration under the VAA is no less a legal process; it vests arbitrators with discovery powers, including subpoenas (12 V.S.A. § 5674(a)), and presumes good-faith participation. Schwab's destruction of critical evidence directly attacks this framework. By eliminating records to defeat discovery, Schwab ensures arbitration cannot proceed fairly, effectively rendering the agreement "inoperative"—a concept Vermont courts could adopt from federal and international law (see *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1714 (2022); New York Convention, Art. II(3)). This bad-faith act is inconsistent with asserting arbitration rights, as it sabotages the very process Schwab seeks to invoke.

### Consistency with Federal Precedent and the VAA

The Federal Arbitration Act (FAA) reinforces this argument. In *Morgan v. Sundance, Inc.*, the U.S. Supreme Court held that waiver requires only intentional relinquishment, not prejudice (142 S. Ct. at 1714). Vermont courts align with FAA principles where consistent with state law, as seen in *Little v. Midnight Velvet, Inc.*, No. 2013-193, 2014 WL 4980276 (Vt. Oct. 2014) (unpublished). Schwab's deliberate spoliation meets *Morgan*'s test: it knew arbitration

8

was imminent and chose to destroy evidence to gain an unfair advantage. Under the VAA, arbitration agreements are enforceable only absent grounds like fraud or unconscionability (12 V.S.A. § 5652(a)). While spoliation is not fraud, its bad-faith nature—akin to "willful misconduct"—justifies revocation or waiver, echoing *Lamell*'s focus on intentionality.

Traudt looks also to California law for further support. In *Quach v. California Commerce Club, Inc.*, 78 Cal. App. 5th 470 (2024), the California Supreme Court reiterated that waiver of arbitration requires "clear and convincing evidence" of intentional relinquishment of a known right (*id.* at 482). The court examined a party's litigation conduct, but the principle extends to pre-arbitration acts. Here, Schwab's intentional destruction of evidence, aimed at defeating discovery, demonstrates knowledge of the impending arbitration and a deliberate attempt to manipulate its outcome. Earlier precedent, such as *Sobremonte v. Superior Court*, 61 Cal. App. 4th 980 (1998), bolsters this view. In *Sobremonte*, the court denied arbitration where a party engaged in "bad faith" conduct, noting that "willful misconduct" could justify refusing to enforce an arbitration agreement (*id.* at 992). Destroying favorable evidence to compromise arbitration aligns with such misconduct, suggesting Schwab relinquished its right by acting in bad faith.

**Federal Circuit Guidance: Conduct Inconsistent with Arbitration**

Federal circuits reinforce this reasoning. The Ninth Circuit in *Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011 (9th Cir. 2023), found waiver where a party knowingly acted inconsistently with arbitration rights, emphasizing intent over delay (*id.* at 1016). Schwab's premeditated destruction of evidence, designed to skew arbitration, fits this mold. By undermining discovery—a cornerstone of fair arbitration—Schwab's actions are inconsistent with invoking arbitration as a dispute resolution mechanism. Similarly, in *Ivax Corp. v. B. Braun of America, Inc.*, 286 F.3d 1309 (11th Cir. 2002), the court applied a test for waiver based on

9

intentional acts inconsistent with arbitration (*id.* at 1316). Though *Ivax* predates *Morgan* and included prejudice, its focus on intent remains relevant. Schwab's deliberate spoliation could meet this threshold, as it intentionally subverts the arbitration process.

### International Perspective: Inoperability of the Agreement

Internationally, the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (New York Convention), Article II(3), provides that an arbitration agreement may be deemed "inoperative" if circumstances—like a party's conduct—render it incapable of being performed fairly (9 U.S.C. § 201). English courts have interpreted similar breaches of arbitration's core terms as grounds for rescission (see *Aceris Law LLC*, Arbitration Waiver Analysis, 2023). If Schwab's destruction of evidence compromises arbitration's fairness—by denying the opposing party access to critical emails and recordings—a court could find the agreement inoperative, effectively treating Schwab's actions as a waiver.

### Application to Facts: Schwab's Conduct as Waiver

Applying these principles, Charles Schwab's intentional destruction of emails and audio recordings, knowing arbitration was anticipated, strongly suggests a waiver. First, Schwab's intent is clear: the destruction was designed to defeat discovery and compromise arbitration, not merely to manage records. This satisfies *Morgan*'s requirement of knowing relinquishment (*Morgan*, 142 S. Ct. at 1714). Second, the act is inconsistent with arbitration's purpose—fair dispute resolution—as seen in *Armstrong* (59 F.4th at 1016) and *Ivax* (286 F.3d at 1316). Third, under *Sobremonte*, such bad-faith conduct could forfeit arbitration rights (61 Cal. App. 4th at 992). Finally, the New York Convention's fairness principle supports a finding that Schwab's actions render arbitration untenable.

### Conclusion and Prayer for Relief

The judgment compelling arbitration fails:

- Schwab's agreement lacks assent due to unprovable notice and no signature (*Specht, Nguyen, Schnabel*).

- TD Ameritrade's retroactive clause lacks assent or fairness (*Landgraf, Xue Qin Liu*).

- Both agreements are unconscionable (*Mathews, Lamps Plus*).

- Schwab's destruction of evidence prevents a fair arbitration

Under FRCP 60(b)(1) and (6), Traudt requests relief from judgment, vacating the arbitration order per *Rent-A-Center* as Traudt is also contesting elements within the arbitration agreement that under Rent-A-Center are rightly the province of this court to decide whether or not they are valid, enforceable against Traudt, and Constitutional.

Alternatively, if arbitration persists, Traudt seeks a protective order ensuring:

- Full access to Schwab's internal communications on trading decisions (e.g., MMTLP).

- Records of Schwab-FINRA interactions.

- Complete transaction and trading data.

- Depositions of key Schwab personnel.

- Schwab's "Electronic Blue Sheets" as retained for FINRA and the SEC for MMTLP.

Absent this, arbitration prejudices Traudt's rights.

Dated: February 27, 2025

Scott Traudt, *pro se ipso*
191 Kibling Hill Road
Strafford, VT 05072

I hereby certify that a true copy of the foregoing was sent to all named defendants and respondent at the addresses delineated below either by 1st Class mail or via email on this 27th day of February, 2025.

11



SCOTT TRAUDT

**Ari Rubenstein/GTS Securities LLC** Atty. Jonathan R. Voegele, Morris Kandinov LLP, 4915 Mountain Rd., Stowe, VT 05672

**Ari Rubenstein/GTS Securities LLC** Atty. Aaron T. Morris, Morris Kandinov LLP, 4915 Mountain Rd., Stowe, VT 05672

**Ari Rubenstein/GTS Securities LLC** Atty. Jonathan Miller, Williams, Barber & Morel Ltd., Willis Tower, 233 S. Wacker Dr., Ste. 6800, Chicago, IL 60606

**Ari Rubenstein/GTS Securities LLC** Atty. Stephen Fraser, Williams, Barber & Morel Ltd., Willis Tower, 233 S. Wacker Dr., Ste. 6800, Chicago, IL 60606

**FINRA** Atty. Walter Judge, DRM, 199 Main St. POB 190 Burlington VT 054020-190

**FINRA** Atty. John P. Mitchell, Faegre, Drinker, Biddle & Reath LLP 105 College Road East 105 College Road East, POB 627 Princeton NJ 08542-0627

**Schwab** Atty. Justin Barnard, Dinse P.C. 209 Battery St., Burlington VT 05401

**Schwab** Atty. Anne B. Rosenblum, Dinse P.C. 209 Battery St., Burlington VT 05401

**Schwab** Atty. Felipe Escobedo, Morgan, Lewis & Bockius LLP One federal St., Boston MA 02110-1726

**Schwab** Atty. Jeff Goldman Morgan, Lewis & Bockius LLP One federal St., Boston MA 02110-1726

**SEC** Atty. Mike Bailey 100 F Street, NE Washington, D.C. 20549