U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2025 MAR -5 PM 1:58

CLERK
BY CDC
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| SCOTT TRAUDT, Plaintiff | |
| v. | Docket Number: 2:24-cv-00782 **JURY TRIAL DEMANDED** |
| ARI RUBENSTEIN Defendant | 2ND Amended Complaint |
| GTS SECURITIES LLC Defendant | |
| CHARLES W. SCHWAB AND CO. INC. SCHWAB HOLDINGS, INC. Defendant | |
| FINANCIAL INDUSTRY REGULATORY AUTHORITY Defendant | |
| GARY GENSLER US SECURITIES AND EXCHANGE COMMISSION Respondent | |

**Motion for Leave to Supplement Plaintiff's Reply Memorandum with New Evidence and Extend Time Under FRCP 6(b)(1), 43(c), and 7(b)**

Plaintiff Scott Traudt respectfully files this Motion for Leave to Supplement Plaintiff's Reply Memorandum with New Evidence and Extend Time under Federal Rules of Civil Procedure 6(b)(1), 43(c), and 7(b), and respectfully shows the Court as follows:

Plaintiff previously filed a Reply Memorandum (#132) on 10 February 2025 in response to Defendant Financial Industry Regulatory Authority's (FINRA) Objection to Plaintiff's motion to amend his complaint and proceed with his Second Amended Complaint (SAC) in this action.

However, on February 26, 2025, Plaintiff obtained critical new evidence from *SEC v. Brda* (Case 4:24-cv-01048-SDJ, Eastern District of Texas), consisting of subpoenas and motions which correlate with emails dated November 29, 2021, and December 5, 2022, from FINRA's Sam Draddy to SEC personnel). This evidence, unknown to Plaintiff at the time of Plaintiff's Reply, demonstrates FINRA's foreknowledge of MMTLP issues and failure to act, directly supporting the fraud and Clayton Act claims in Plaintiff's SAC (paras. 120, 234, etc.). Plaintiff now seeks leave to supplement his Reply with this new evidence and extend any applicable deadlines to ensure the Court can consider it in ruling on Plaintiff's motion to amend.

**Legal Basis**

Federal Rule of Civil Procedure 6(b)(1) allows the Court to extend deadlines for good cause and, if the deadline has expired, upon a showing of excusable neglect. Plaintiff acted diligently to obtain this evidence, which was only made available on February 26, 2025, through public court filings in the Eastern US District Court of Texas. The evidence's recent discovery constitutes good cause, as it is critical to proving FINRA's misconduct, and Plaintiff's failure to include it earlier was due to excusable neglect, given his immediate action upon discovery. Federal Rule of Civil Procedure 43 permits the Court to consider evidence outside the record, such as affidavits or documents, when ruling on a motion, making the *SEC v. Brda* documents and emails admissible to support Plaintiff's SAC. Federal Rule of Civil Procedure 7(b) authorizes this motion, stating the relief sought and legal grounds for admitting the evidence and supplementing the Reply. This approach is supported by *In re Petition of Stowell*, 2008 VT 48, 184 Vt. 192, 958 A.2d 1114 (Vt. 2008) (upholding supplemental evidence for good cause), *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380 (1993)

(interpreting excusable neglect under analogous rules), and *Ruotolo v. City of New York*, 514 F.3d 184 (2d Cir. 2008) (allowing supplementation for new facts under FRCP 15(d) and 6(b)(1)).

**Factual Basis for New Evidence**

The new evidence includes: (1) an SEC subpoena dated April 14, 2022, in *In the Matter of Torchlight Energy Resources, Inc.* (FW-04461), seeking records on Torchlight, Meta Materials, and their merger (**Exhibit A**); (2) a subpoena dated December 12, 2024, in *In the Matter of MMTLP* (FW-04625), targeting MMTLP, short squeezes, and the Next Bridge spin-off (**Exhibit B);** (3) John Brda's motion to exclude and related SEC correspondence from February 2025 (**Exhibit C)** and (4) emails from FINRA's Sam Draddy and others from November 29, 2021 through to December 5, 2022, to SEC personnel, acknowledging FINRA's fraud/manipulation investigation of MMTLP pre-halt (**Exhibit D**) had been going one for at least a year before the halt.

**Relevance and Admissibility**

This evidence is highly relevant under Federal Rule of Evidence 401, as it shows FINRA's knowledge of MMTLP fraud and manipulation risks before the December 9, 2022, U3 trading halt, as alleged in Plaintiff's SAC (paras. 120, 234). The Sam Draddy emails (**Exhibit D)**, in particular, provide clear proof of FINRA-SEC collaboration and FINRA's foreknowledge. The November 29, 2021, email establishes early outreach to the SEC about MMTLP, while the December 5, 2022, email—sent just four days before the halt—confirms FINRA's Fraud team, led by Draddy, was actively bluesheeting MMAT and MMTLP for fraud and manipulation, coordinating with the SEC to avoid duplicating efforts. This connection between FINRA and the SEC demonstrates their closely aligned oversight roles, as Plaintiff asserts, with shared

knowledge of potential issues flagged by the SEC's April 2022 Torchlight subpoena (**Exhibit A)** and post-halt MMTLP subpoenas (**Exhibit B)**

This evidence bolsters each count in Plaintiff's SAC as follows:

**Count I (Rule 10b-5 Insider Trading):** Plaintiff alleges FINRA tipped off Uniform Practice Code (UPC) members before the halt (para. 234). Draddy's December 5, 2022, email (**Exhibit D**), confirming FINRA's awareness of fraud/manipulation risks, shows FINRA had actionable knowledge but failed to act publicly. If FINRA shared this information selectively with UPC members (e.g., Fidelity, Robinhood executives on the UPC, per para. 127) while withholding it from retail investors like Plaintiff, it directly supports insider trading allegations, establishing scienter and an intent to benefit institutional players over ordinary investors like Plaintiff.

**Count II (Section 9(a)(2) Manipulation):** Plaintiff claims FINRA allowed naked shorting and oversold conditions to manipulate MMTLP's price (paras. 93, 238). Draddy's emails **(Exhibit D**), showing FINRA's investigation of fraud/manipulation since November 2021 and bluesheeting by December 5, 2022, prove FINRA knew of these irregularities over a year before the halt. Yet, as alleged, FINRA took no action to enforce "locate" requirements on GTS's naked shorts (para. 238) or remove MMTLP from the Threshold List (para. 32). This inaction, despite clear SEC zeroing on TRCH and other fraud (**Exhibit B),** ¶¶ 4-5, supports Plaintiff's claim of deliberate market manipulation and negligence, establishing scienter via widespread breach of regulatory duties.

**Count III (Clayton Act):** Plaintiff alleges FINRA colluded with GTS and Schwab to create a monopolistic environment suppressing competition (para. 241). The Draddy emails (**Exhibit D)** show FINRA's Fraud team, led by Draddy, was working with the SEC on MMTLP issues potentially shielding market makers and brokers from accountability. If FINRA's bluesheeting

revealed GTS's naked shorting but no enforcement followed, it supports Plaintiff's claim of anticompetitive collusion to protect institutional players, harming retail investors like Plaintiff. This aligns with Plaintiff's "Iron Pentagon Theory" (paras. 318-323), suggesting systemic favoritism.

**Count IV (Rule 10b-5 Fraud-on-the-Market):** Plaintiff asserts FINRA's misleading halt notices and actions created a false market appearance, on which Plaintiff relied (paras. 104-107, 249). Draddy's December 5, 2022, email (**Exhibit D**), confirming FINRA's fraud/manipulation investigation, shows FINRA knew MMTLP's market was corrupted by shorts and manipulation. Yet, FINRA issued confusing Corporate Action notices (paras. 87-88, 96) and proceeded with the halt without warning retail investors (pára. 101), deceiving Plaintiff into believing the market was fair. This evidence strengthens the fraud-on-the-market theory, proving FINRA's intent to mislead. The fact that the SEC was issuing subpoenas and had sat John Brda down for an investigatory interview on July 19, 2022 (**Exhibit E,** ¶ 2) leaves no doubt the SEC and FINRA were aware of widespread issues in MMTLP.

**Count V (Constitutional Claim):** Plaintiff challenges FINRA's unchecked SRO power as unconstitutional (para. 263), citing *Alpine Securities* (para. 54). Draddy's emails (**Exhibit D**), showing FINRA's active role in investigating MMTLP fraud with SEC input but failing to act, underscore FINRA's autonomous overreach. If FINRA ignored SEC-flagged risks in the form of evidence obtained from Brda's July 19, 2022 interview with the SEC or prior compliance by Brda with subpoena requests, it supports Plaintiff's nondelegation doctrine argument, proving FINRA exceeded its authority and neglected investor protection.

Moreover, John Brda's Motion to Exclude Improperly Obtained Evidence in *SEC v. Brda* (**Exhibit C**) , filed February 26, 2025) strongly suggests the December 12, 2024, subpoenas and

related evidence he seeks to suppress are highly incriminating and likely contain information directly supportive of Plaintiff's claims against FINRA. Brda's vigorous opposition, seeking to bar the SEC from using this evidence for any purpose, including impeachment, and demanding disclosure of all related discovery (**Exhibit C**, p. 14), indicates the subpoenas uncover significant facts about his conduct with MMTLP, Torchlight, and Meta Materials—facts central to Plaintiff's SAC.

The subpoenas' focus on communications, investor data, short squeezes, and the MMTLP spin-off (**Exhibit A**, pp. 10-11), **Exhibit B**, p. 6-7) aligns with Plaintiff's allegations of FINRA's fraud, manipulation, and collusion (SAC paras. 93, 120, 234, 241), implying they likely reveal Brda's role in these activities while also exposing FINRA's failure to enforce rules on naked shorting, short squeezes, or investor protections. The SEC's cautious response in its February 14, 2025, email (**Exhibit F**)), offering to limit use of the evidence but reserving rights to counter Brda, further suggests the documents hold material information that could implicate FINRA's regulatory lapses. If Brda is this determined to suppress them, it reasonably infers the evidence could provide powerful support for Plaintiff's case, offering critical insights into FINRA's misconduct that could strengthen Plaintiff's SAC and overcome FINRA's Objection. This inference supports admitting the *SEC v. Brda* evidence under FRCP 43(c) and FRCP 15(a)(2) to ensure Plaintiff's SAC can proceed and address FINRA's alleged wrongs.

The evidence is admissible under Federal Rule of Evidence 803(8) as public records from *SEC v. Brda* and authentic under Federal Rule of Evidence 901, as verified by Plaintiff's affidavit. Its probative value outweighs any prejudice under Federal Rule of Evidence 403, as it's from a related public proceeding and not unfairly prejudicial to FINRA. This approach is supported by *Foman v. Davis*, 371 U.S. 178 (1962) (emphasizing leave to amend when justice

requires), and *Holmes v. Grubman*, 568 F.3d 329 (2d Cir. 2009) (allowing new evidence under FRCP 43(e) if relevant and not prejudicial).

**Prejudice and Good Cause**

There is no prejudice to FINRA, as this evidence strengthens Plaintiff's SAC without altering its core claims, and FINRA can respond in its reply or at a hearing. Good cause exists under FRCP 6(b)(1) due to the evidence's recent discovery on February 26, 2025, and its critical nature to justice under FRCP 15(a)(2), ensuring the Court has all relevant facts to evaluate Plaintiff's motion to amend.

**FINRA's Role in MMTLP Fraud Before December 9, 2022, and FINRA and SEC's Failure to Enable MMTLP Trading Recovery**

Analysis of documents from *SEC v. Brda*, filed on February 26, 2025, indicates FINRA's complicity in MMTLP's fraud before the halt and FINRA and the SEC's refusal to allow MMTLP to obtain an accurate share count using bluesheets or the Consolidated Audit Trail (CAT) and resume trading, preventing bad actors from covering short positions and enabling shareholder recovery. These actions and inactions support claims in Plaintiff's Second Amended Complaint (SAC).

**Before December 9, 2022**

The Declaration of Ryan D. Lantry, filed on February 26, 2025, in *SEC v. Brda* (**Exhibit E**), documents the SEC's investigation into MMTLP-related entities. On August 3, 2021, the SEC issued a Formal Order of Investigation, *In the Matter of Torchlight Energy Resources, Inc.* (FW-04461), targeting Torchlight and Meta Materials, entities linked to MMTLP (**Exhibit E, page1**) . FINRA, as the self-regulatory organization overseeing OTC markets, was required to monitor and share bluesheet data with the SEC, indicating awareness of this investigation. On

April 14, 2022, the SEC issued a subpoena to John Brda for trading, investor, and merger data **(Exhibit A)** , signaling potential fraud risks in MMTLP, including naked shorting and manipulation (SAC para. 93). Sam Draddy's email on November 29, 2021, to SEC personnel, and his email on December 5, 2022, confirming FINRA's bluesheeting of MMTLP for fraud/manipulation, demonstrate FINRA's knowledge of these issues (**Exhibit D**, Nov. 29, 2021, Dec. 5, 2022; SAC para. 120). Despite FINRA's Threshold List designation of MMTLP (SAC para. 32), no action was taken to address fraud, suggesting complicity or negligence.

The SEC's escalation included a testimony subpoena to Brda on July 19, 2022, with testimony on August 18, 2022 (**Exhibit E**), a Wells Notice on July 20, 2023, extended to April 16, 2024 (**Exhibit E** ¶¶ 7, 8), and a MMTLP subpoena on May 20, 2024 (**Exhibit E,** ¶ 9). The December 12, 2024, subpoenas (**Exhibit B**)and Brda's motion to exclude on February 26, 2025 (**Exhibit C**) further confirm the SEC's focus on MMTLP fraud. *In re Vt. Gas Sys., Inc.*, 2003 VT 82, 175 Vt. 482, 833 A.2d 1187 (Vt. 2003), establishes regulatory accountability, stating, "The Board's primary responsibility is to ensure that public utilities operate in the public interest, and its failure to enforce statutory obligations may result in liability for foreseeable harm" (¶ 21, 833 A.2d at 1196). This applies to FINRA's failure to enforce rules on naked shorting and oversold conditions (SAC para. 93, 238), despite knowing of fraud risks by December 5, 2022 (**Exhibit D**), causing foreseeable harm to investors (SAC para. 101). Additionally, *Vt. Marble Power Co. v. Nat'l Life Ins. Co.*, 109 Vt. 404, 199 A. 250 (Vt. 1938), holds that "A fiduciary is bound to exercise the utmost good faith and to act solely for the benefit of the beneficiary, and any failure to do so renders the fiduciary liable for resulting damages" (109 Vt. at 415, 199 A. at 256). FINRA's inaction, despite Draddy's emails and SEC probes breached its fiduciary duty to

MMTLP shareholders, supporting SAC claims of negligence (Count II), antitrust violations (Count III), and constitutional overreach (Count V).

**After December 9, 2022**

Following the halt, FINRA and the SEC failed to use *SEC v. Brda* evidence to restore trading and recover damages. The April 14, 2022, subpoena's trading data (**Exhibit C**) and December 12, 2024, subpoenas' short squeeze focus (**Exhibit A**) could have identified bad actors' short positions via bluesheets or CAT, enabling MMTLP to resume trading and force short covering. Draddy's December 5, 2022, email, confirming FINRA's fraud investigation and the SEC's ongoing probes provided data that may have proved shares put into the market by GTS as naked shorts, Schwab's investor harm as noticed of overselling in the SAC, and Brda's manipulation (SAC paras. 93, 241). However, FINRA issued misleading notices (SAC paras. 87-88, 96) and blocked MMTLP's return, preventing recovery.

This failure violated FINRA's and the SEC's obligations. *Donovan v. Bierwirth*, 680 F.2d 263 (2d Cir. 1982), requires fiduciaries to act for beneficiaries, here MMTLP shareholders, necessitating recovery efforts. *United States v. Topco Associates, Inc.*, 405 U.S. 596 (1972), mandates antitrust accountability, yet FINRA and SEC protected monopolistic practices (SAC para. 245). Their inaction, despite available evidence, prevented bad actors from covering shorts, leaving Plaintiff uncompensated (SAC para. 101). *In re Vt. Gas Sys., Inc.* reinforces FINRA's liability for failing to enforce statutory obligations, causing foreseeable harm, while *Vt. Marble Power Co.* underscores its fiduciary breach, rendering it liable for damages to shareholders.

**Conclusion**

FINRA's pre-halt complicity and post-halt refusal, with SEC complicity, support SAC claims, necessitating accountability for shareholder losses.

**Relief Requested**

Plaintiff respectfully requests the Court: (1) grant leave to supplement Plaintiff's Reply memorandum with the new evidence from *SEC v. Brda*; (2) extend any applicable deadlines to allow consideration of this evidence; (3) admit the evidence into the record under FRCP 43(e) for purposes of ruling on Plaintiff's motion to amend; and (4) grant any additional relief the Court deems just, including expedited consideration if necessary.

**Affidavit**

I, Scott Traudt, certify that the attached documents from *SEC v. Brda* (Case 4:24-cv-01048-SDJ) **(Exhibits A through F)** were obtained on February 26, 2025, via public court filings, and the Sam Draddy emails (**Exhibit D**) are true and accurate copies, and are relevant to my claims against FINRA in this case. I acted diligently upon discovery and seek to supplement my Reply to ensure justice under FRCP 15(a)(2).

**Certificate of Service and Conference**

I certify I have emailed this motion on FINRA's counsel via the Court's CM/ECF system on March 5, 2025, and conferred in good faith (or attempted to confer) under Vt. L.R. 7.1, noting FINRA's likely opposition but my effort to resolve this before filing.

Dated: March 5, 2025

Dated: March 5, 2025

Scott Traudt, *pro se ipso*
191 Kibling Hill Road
Strafford, VT 05072

I hereby certify that a true copy of the foregoing was sent to all named defendants and respondent at the addresses delineated below either by 1st Class mail or via email on this 5 day of March, 2025.

SCOTT TRAUDT

**Ari Rubenstein/GTS Securities LLC** Atty. Jonathan R. Voegele, Morris Kandinov LLP, 4915 Mountain Rd., Stowe, VT 05672

**Ari Rubenstein/GTS Securities LLC** Atty. Aaron T. Morris, Morris Kandinov LLP, 4915 Mountain Rd., Stowe, VT 05672

**Ari Rubenstein/GTS Securities LLC** Atty. Jonathan Miller, Williams, Barber & Morel Ltd., Willis Tower, 233 S. Wacker Dr., Ste. 6800, Chicago, IL 60606

**Ari Rubenstein/GTS Securities LLC** Atty. Stephen Fraser, Williams, Barber & Morel Ltd., Willis Tower, 233 S. Wacker Dr., Ste. 6800, Chicago, IL 60606

**FINRA** Atty. Walter Judge, DRM, 199 Main St. POB 190 Burlington VT 054020-190

**FINRA** Atty. John P. Mitchell, Faegre, Drinker, Biddle & Reath LLP 105 College Road East 105 College Road East, POB 627 Princeton NJ 08542-0627

**Schwab** Atty. Justin Barnard, Dinse P.C. 209 Battery St., Burlington VT 05401

**Schwab** Atty. Anne B. Rosenblum, Dinse P.C. 209 Battery St., Burlington VT 05401

**Schwab** Atty. Felipe Escobedo, Morgan, Lewis & Bockius LLP One federal St., Boston MA 02110-1726

**Schwab** Atty. Jeff Goldman Morgan, Lewis & Bockius LLP One federal St., Boston MA 02110-1726

**SEC** Atty. Mike Bailey 100 F Street, NE Washington, D.C. 20549